**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| RICHARD HORTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| CITY OF COLUMBUS, Columbus Division of Police | ) |
| Officers BRENDA K. WALKER (Badge #1176), SAM | ) |
| SIAS (Badge #1871), and AS-YET UNKNOWN | )    JURY TRIAL DEMANDED |
| COLUMBUS POLICE OFFICERS, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## COMPLAINT

NOW COMES Plaintiff RICHARD HORTON, by his undersigned attorneys, LOEVY & LOEVY and LAW OFFICES OF MICHELE BERRY, complaining of Defendants CITY OF COLUMBUS, Columbus Division of Police Officers BRENDA K. WALKER (Badge #1176), SAM SIAS (Badge #1871), and AS-YET UNKNOWN COLUMBUS POLICE OFFICERS, and alleging in support as follows:

### INTRODUCTION

1.     Plaintiff Richard Horton was wrongfully arrested, prosecuted, and convicted for a 2004 armed robbery in Columbus, Ohio which he had nothing to do with.

2.     Plaintiff was entirely innocent of this crime. The fingerprint evidence recovered from the scene excluded him as the perpetrator, and later DNA testing on a shell casing fired by the robber confirmed Plaintiff's innocence.

3.     Despite his innocence, Plaintiff was convicted as a result of serious misconduct committed by Defendants. Defendants used inappropriate and highly suggestive identification procedures, including a photo array in which only Plaintiff's photograph matched the victims' description of the robber. Defendants also fabricated false evidence to support the unreliable identification they obtained, and suppressed critical exculpatory evidence—including handwritten interview notes confirming that one of the victims had initially identified an entirely different man—a man named Richard Diggs—as the perpetrator.

4.     Plaintiff has always maintained his innocence. At his sentencing hearing, he pleaded with the trial judge to let him take a polygraph test to prove to the court that he didn't commit this crime.

5.     As a result of Defendants' misconduct, Plaintiff was wrongfully convicted and sentenced to 23 years in prison. He spent over 17 years behind bars for a crime of which he was completely innocent before his convictions were finally vacated in 2022 and charges against him dropped in 2023.

6.     Plaintiff now seeks justice for the harms Defendants caused him and redress for the loss of liberty and terrible hardship that he endured and continues to endure because of Defendants' illegal actions.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. § 1983 and Ohio law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

8.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

9.     Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district. The events and omissions giving rise to Plaintiff's claims occurred within this judicial district, including the investigation, prosecution, and trials resulting in Plaintiff's convictions. And many, if not all, of the Defendants reside in this judicial district.

## PARTIES

10.     Plaintiff is an African-American man and resident of Franklin County, Ohio, who spent more than 17 years incarcerated for an armed robbery of which he was completely innocent.

11.     At all times relevant to the events described in this Complaint, Defendants Brenda K. Walker and Sam Sias were police officers in the Columbus Division of Police.

12.     Defendant City of Columbus is an Ohio municipal corporation that is or was the employer of the above-named Individual Defendants. Each of those Individual Defendants acted during their investigation as agents or employees of the City of Columbus. The City of Columbus is liable for all torts committed by the Individual Defendants pursuant to the doctrine of *respondeat superior*. The City of Columbus is also responsible for the policies and practices of the Columbus Division of Police, regardless of whether the Individual Defendants were aware that acting in accordance with certain of the Division's policies and practices would deprive Plaintiff of his constitutional rights.

13.     Each and every Individual Defendant, known and unknown, acted under color of law and within the scope of his or her employment at all times relevant to this lawsuit. Each of the Individual Defendants is sued in his or her individual capacity unless otherwise noted.

3

## PLAINTIFF'S FACTUAL ALLEGATIONS

### The Crime

14.     In the morning of October 9, 2004, a man committed an armed robbery at 927 Loew Street in Columbus, Ohio, the home of Richard McClanahan and his girlfriend, Rhonda Curry.

15.     The robber knocked on the door and, after McClanahan began to open the door, the robber, who was armed with a handgun, forced his way into the home.

16.     Neither McClanahan nor Curry were able to see the robber's face. The robber had a hood pulled up over his face. Additionally, the robber ordered Curry not to look at him, and threatened to kill her if she did not comply, causing Curry to cover her eyes with her pillow.

17.     McClanahan also did not get a good look at the robber. McClanahan was immediately knocked backwards onto an open fold-out couch as the robber forced his way into the home. The robber then struck McClanahan in the head with the handgun, causing it to bleed.

18.     The robber demanded money from the occupants. When McClanahan denied having any, the robber became irate, stating that he knew McClanahan had gotten paid the day before. The robber then shot McClanahan in the leg.

19.     The robber ransacked the home, looking for money.

20.     The robber dragged McClanahan around on the floor while McClanahan looked for his boot, where he had stashed the money remaining from his paycheck.

21.     Eventually, the robber left, taking only $40 which McClanahan had given him from his boot.

### The Initial Police Investigation

22.     Defendant Brenda K. Walker, a detective with the Columbus Division of Police, was assigned as the lead investigator for the Loew Street robbery.

4

23.     At some point, Defendant Sam Sias, also a detective with the Columbus Division of Police, was assigned to assist Defendant Walker with the Loew Street robbery investigation.

24.     Defendant Walker interviewed Curry later in the morning on the same day as the robbery, at Grant Hospital, where McClanahan had been taken to treat the gunshot wound to his leg.

25.     Defendant Walker took contemporaneous handwritten notes of her interview with Curry on October 9, 2004.

26.     During this interview, Curry told Defendant Walker what had happened during the robbery.

27.     Curry gave Defendant Walker a description of the robber, including that the robber was a black male with light skin, and that he had been wearing a grey hoodie tied tight around his face so that only his eyes and nose were visible.

28.     Curry did not tell Defendant Walker that she would be able to identify the suspect if she saw him again.

29.     Defendant Walker interviewed McClanahan a few days after the robbery, on October 13, 2004. The interview took place at Grant Hospital, where McClanahan was still being treated for his injuries.

30.     Defendant Walker took contemporaneous handwritten notes of her interview with McClanahan on October 13, 2004.

31.     During this interview, McClanahan told Defendant Walker what had happened during the robbery.

32.     McClanahan gave Defendant Walker a description of the robber, including that the robber was a black male with light skin who was between 5 feet 9 inches and 6 feet tall.

33.     During this interview, McClanahan told Defendant Walker that he could identify the robber, and gave her the name "Richard Diggs" along with a nickname "Adidas boy".

34.     Defendant Walker informed Defendant Sias of all of the developments in the Loew Street robbery investigation, including the substance of the information gathered during her interviews with Curry and McClanahan.

**Defendants Start to Build a False Case Against Plaintiff**

35.     Rather than conduct an honest investigation, looking into the multiple potential suspects named by the victims and attempting to develop additional evidence to determine the real perpetrator, Defendants quickly settled on a narrative that Plaintiff had committed this crime, and set out to convict him at all costs, no matter the truth of what had actually happened.

36.     Both McClanahan and Curry had described to Defendant Walker that the robber had touched the frame of the fold-out couch while ransacking the home.

37.     At least two latent fingerprints were recovered from the scene, including the frame of the fold-out couch.

38.     Shortly after Defendants first learned the name "Richard Horton" in connection with the Loew Street robbery, Defendant Walker requested that a fingerprint analysis be conducted to compare the latent prints recovered from the crime scene with Plaintiff's known fingerprints.

39.     A fingerprint analysis was conducted by police which confirmed that the latent fingerprints recovered from the crime scene were not left by Plaintiff.

40.     Defendants did not request any further fingerprint analysis of the latent prints recovered from the crime scene prior to Plaintiff's criminal trial.

41.     No further fingerprint analysis of the latent prints recovered from the crime scene was conducted at any point prior to Plaintiff's criminal trial.

42.  Defendants chose not to pursue further fingerprint analysis because they were concerned that it would result in additional evidence pointing away from Plaintiff as the perpetrator of the Loew Street robbery.

43.  Defendants decided to conduct a photo array identification procedure to try to bolster their evidence against Plaintiff.

44.  Defendants knew that the photo array identification procedure would not actually yield any legitimate evidence with any probative value to aid the investigation.

45.  One or more of the robbery victims had told police that they knew Plaintiff from the neighborhood.

46.  Because the victims knew Plaintiff from the neighborhood, showing them a photo array containing his photo would establish nothing more than that they were able to recognize him from a photo, and would do nothing to help prove who committed the robbery.

47.  Defendants knew that McClanahan and Curry had not been able to see the face of the robber.

48.  Defendants knew that the main characteristics of the robber which McClanahan and Curry had been able to perceive were the robber's voice, the robber's height, and the fact that the robber was a young, light-skinned Black man.

49.  Defendants knew that a photo array identification procedure would not help the victims identify the robber based on his voice or based on his height.

50.  Defendants constructed a photo array with six photographs: a photo of Plaintiff, and five photographs of other young, Black men.

51.  Defendants deliberately concocted a suggestive identification procedure with the goal of "locking-in" an identification of Plaintiff from both victims.

52.     Plaintiff was the only light-skinned person depicted in the photo array. The five other photographs in the array depicted Black men with dark skin.

53.     The photograph of Plaintiff was also the only photo in the photo array which matched the description of the robber given by the victims.

54.     Defendants knew that showing McClanahan and Curry a photo array with photographs of five dark-skinned Black men and one light-skinned Black man (Plaintiff) would likely result in McClanahan and Curry picking the photograph of Plaintiff, because the photograph of Plaintiff was the only photo which matched their description of the robber's skin complexion.

55.     Defendants knew that showing McClanahan and Curry a photo array with a photograph of Plaintiff, who the victims knew from the neighborhood, along with photographs of five other unrelated individuals, would likely result in McClanahan and Curry picking the photograph of Plaintiff because they recognized him from the neighborhood and not because he had anything to do with the Loew Street robbery.

56.     On December 4, 2004, Defendant Walker showed the six photo array to McClanahan and to Curry. Before showing the array to each of the victims, Defendant Walker instructed them to "Look carefully at the photographs of all six people then advise the detective whether or not you recognize anyone."

57.     As a result of the highly-suggestive photo array and identification procedures which Defendants had concocted, both McClanahan and Curry picked Plaintiff's photo out of the photo array.

58.     Defendant Walker took contemporaneous handwritten notes of her conversations with McClanahan and Curry on December 4, 2004.

**Plaintiff's Arrest**

59.    On December 15, 2004, approximately a week-and-a-half after the photo array identifications, Defendant Walker filed a criminal complaint against Plaintiff alleging that he was the perpetrator of the Loew Street robbery on October 9, 2004.

60.    Based on Defendant Walker's assertions in the criminal complaint, an arrest warrant for Plaintiff was issued that same day.

61.    The sole basis for Defendant Walker's assertions in the criminal complaint that Plaintiff was responsible for the Loew Street robbery on October 9, 2004 was the result of the suggestive and improper photo identification process which Defendants had designed and carried out.

62.    There was no probable cause to believe that Plaintiff had committed the Loew Street robbery.

63.    At some point after the arrest warrant issued, Plaintiff learned about the arrest warrant.

64.    Plaintiff voluntarily turned himself in to police on December 27, 2004.

**Plaintiff's Innocence**

65.    Plaintiff is entirely innocent of the Loew Street robbery. He was not present at McClanahan and Curry's home on October 9, 2004, and had no knowledge of or involvement in the planning or commission of this crime.

66.    Plaintiff has consistently maintained his innocence, from 2004 to the present day.

67.    Plaintiff has an alibi. At the time of the Loew Street robbery, Plaintiff was with his then-girlfriend, Janette Harmon, at her home approximately 11 miles away from the scene of the crime, in Grove City, Ohio.

68.     There has never been any physical evidence linking Plaintiff to the Loew Street robbery.

69.     During the initial police investigation, Plaintiff was excluding as having been the source of the latent fingerprints recovered from the crime scene.

70.     Subsequent DNA testing conducted as part of Plaintiff's post-conviction proceedings excluded Plaintiff as being the source of DNA found on the bullet casing recovered from the crime scene after the robber shot McClanahan.

**Defendants Fabricate and Suppress Evidence**

71.     Despite Plaintiff's clear innocence, Defendants remained determined to secure his conviction for the Loew Street robbery.

72.     Because Plaintiff was entirely innocent of this crime, there was no legitimate evidence implicating him. Instead, Defendants set about to supplement the suggestive and improper photo array identifications by fabricating additional false evidence against Plaintiff, and suppressing critical exculpatory evidence which he could have used to defend himself at trial.

73.     Defendants did not create any typed documentation of their communications with Curry and McClanahan and their other investigative activity in the case until weeks or months after the events described had taken place.

74.     Defendants did not create any typed documentation of their investigative activity until December 29, 2004, two days after Plaintiff's arrest.

75.     Defendants conspired together to craft a fabricated, false narrative to implicate Plaintiff.

76.     Pursuant to that agreement, Defendant Walker created several typed police reports which contained knowingly false details about the criminal investigation which were intended to falsely implicate Plaintiff as the perpetrator.

77.     The typed police reports falsely state that Curry told Defendant Walker on the day of the robbery that she recognized the robber but just could not remember from where, and that she would be able to identify the robber if she saw him again. Curry made no such statements to Defendant Walker, and did not get a good look at the robber because his face was obscured and she was ordered not to look at him.

78.     The typed police reports falsely state that McClanahan told Defendant Walker on October 13, 2004 that he knew that the robber's name was "Richard" but that he did not know his last name, and would contact police if he was able to find out the last name. McClanahan made no such statements to Defendant Walker. Instead, McClanahan had given Defendant the full name of who he believed was the robber: a man named Richard Diggs, not Richard Horton.

79.     Defendants also conspired together to suppress exculpatory evidence which Plaintiff could have used to defend himself at his criminal trial.

80.     Defendants agreed amongst themselves that they would omit key exculpatory evidence from the typed reports that would be prepared to turn over to the prosecution and defense attorneys, and that they would hold back and not turn over the original handwritten notes documenting that evidence.

81.     Specifically, Defendants suppressed the handwritten notes from Defendant Walker's October 13, 2004 interview of McClanahan.

11

82.     The October 13 interview notes contained the information that McClanahan had told Defendant Walker that he could identify the robber, and that he had named a different man, Richard Diggs, as the perpetrator.

83.     The October 13 interview notes contained the information that McClanahan had told police that the robber was between 5 feet 9 inches and 6 feet tall, a range that is inconsistent with Plaintiff's 6 feet 1 inches in height, but consistent with Diggs' height.

84.     Instead, the typed police reports falsely stated that McClanahan had told Defendant Walker that the robber was 6 feet tall, massaging the statement to bring it much closer in line with Plaintiff's actual height.

85.     Neither the October 13 interview notes, nor the substance of these exculpatory details, were disclosed to the prosecution or defense counsel at any point prior to or during Plaintiff's criminal trial.

86.     Defendants also suppressed the handwritten notes from Defendant Walker's December 4, 2004 interviews of McClanahan and Curry in the run-up to the photo array identification procedures containing other exculpatory facts.

87.     Neither the December 4 interview notes, nor the substance of these exculpatory details, were disclosed to the prosecution or defense counsel at any point prior to or during Plaintiff's criminal trial.

**Defendants' Misconduct Causes Plaintiff To Be Convicted**

88.     In February 2006, Plaintiff was tried for the Loew Street robbery.

89.     As a result of Defendants' use of improper and unduly suggestive photo identification procedures, by the time of trial Curry and McClanahan had both convinced themselves with certainty that Plaintiff was the perpetrator, and testified to that effect to the jury.

12

90.     The false narrative fabricated by Defendants to bolster these identifications was introduced against Plaintiff at trial, including through the testimony of Defendant Walker and of McClanahan and Curry.

91.     Plaintiff was unable to impeach the false identifications with the exculpatory evidence which Defendants had suppressed which cast serious doubt on the identifications, including most significantly that McClanahan had initially named an entirely different person as the perpetrator of the crime.

92.     Defendants' unconstitutional misconduct continued during Plaintiff's criminal trial.

93.     At the direction of Defendants, while Plaintiff's criminal trial was ongoing, additional fingerprint comparisons were conducted on the latent prints which had been recovered from the crime scene, from which had already been excluded as a source.

94.     One of the fingerprints was matched to McClanahan, but one or more remaining latent prints could not be matched to McClanahan.

95.     The results of this mid-trial fingerprint analysis were exculpatory—with both McClanahan and Plaintiff eliminated as potential sources, it suggested that the fingerprints were left by another individual who might have been the actual perpetrator.

96.     Defendants suppressed this newly-developed exculpatory evidence, failing to turn it over to either prosecutors or Plaintiff's criminal defense attorneys.

97.     As a direct result of all of Defendants' misconduct, Plaintiff was wrongfully convicted of the Loew Street robbery.

98.     Plaintiff was sentenced to 23 years in prison for crimes with which he had no involvement, and of which he was entirely innocent.

**Plaintiff's Exoneration**

99.     From the time Plaintiff was falsely charged with the Loew Street robbery, he has consistently maintained his innocence. He continued to do so after his conviction, vigorously pursuing all available avenues of appeal and post-conviction relief.

100.     In January 2022, Plaintiff's convictions were vacated based on new evidence of his innocence, specifically the DNA testing which excluded him as the source of the DNA on the shell casing which was ejected when the robber shot McClanahan.

101.     In May 2023, prosecutors dropped all charges against Plaintiff.

**Defendant City of Columbus' Deficient Policies & Practices**

102.     The misconduct by Defendants described in detail above was undertaken pursuant to the policies and practices of the City of Columbus and the Columbus Division of Police.

103.     Plaintiff was the victim of, and his injuries were proximately caused by, policies and practices on the part of the City of Columbus and the Columbus Division of Police to pursue and secure false convictions through profoundly flawed investigations and unconstitutional methods and tactics.

104.     At the time of the investigation into the 2004 Loew Street robbery, in the period leading up to Plaintiff's wrongful conviction in 2006, and for a period continuing thereafter, officers in the Columbus Division of Police engaged in a systematic pattern of fabrication of evidence, withholding of exculpatory information, unduly suggestive identification procedures, and other illegal tactics, the sum total of which completely corrupted the investigative process.

105.    In 2021, the U.S. Department of Justice (DOJ) undertook a review of the Columbus Division of Police to bring about reform, including the need to better address subjects like training and early intervention for officers.

106.    At the time of the Loew Street robbery investigation and Plaintiff's wrongful conviction, the above-described widespread pattern and practice of extensive misconduct was so well-settled and firmly established that it constituted the de facto policy or custom of the Columbus Division of Police.

107.    This policy or custom of widespread misconduct was able to exist and thrive because municipal policymakers with authority over the same either concurred with the practices or exhibited deliberate indifference to the problem.

108.    At the time of the Loew Street robbery investigation, policymakers for the City of Columbus had knowledge of serious misconduct and constitutional violations committed by Columbus police officers, yet took no meaningful steps to change City policies and practices, implement new or better training, increase supervision or discipline the officers involved.

109.    The institutional desire to close cases through unconstitutional tactics regardless of actual guilt or innocence, in order to enhance police officers' personal standing in the Columbus Division of Police, was known to the command personnel, who themselves participated in the practice.

110.    The widespread practices described in the preceding paragraphs were allowed to exist and thrive because the City of Columbus declined to implement sufficient training. Among the training deficiencies, in the years immediately preceding and continuing through the time of the Loew Street robbery investigation, Plaintiff's conviction, and beyond, the City

of Columbus had no meaningful training on: (a) promptly and accurately documenting witness interviews and other investigative stpes; (b) preserving all relevant or potentially relevant information from handwritten interview notes in the eventual typewritten reports; (c) producing copies of handwritten interview notes to prosecutors and defense attorneys; (d) conducting appropriate, non-suggestive, constitutionally-compliant photo identification procedures; (e) using identification procedures in a manner that avoided contaminating eyewitness memory and avoided inflating the confidence of eyewitnesses; and interrogations so that the tactics and techniques could be reviewed by supervisors; (f) the prevalence of and risk factors for eyewitness misidentification; and (g) the importance of avoiding tunnel vision and continuing to meaningfully investigate cases even after obtaining an eyewitness identification. The need for such training was obvious on its face, and was further demonstrated by incidents known to City policymakers where failures in these areas led to violations of constitutional rights.

111. Among the many deleterious effects of the deficient or non-existent training described above is that it led to the use of improper investigative techniques including the fabrication and suppression of evidence and unduly suggestive identification procedures in the Loew Street robbery investigation, which harmed Plaintiff, violated his constitutional rights, and caused his wrongful prosecution, conviction and imprisonment.

112. The widespread practices described in the preceding paragraphs were allowed to exist and thrive because the City of Columbus declined to implement any legitimate mechanism for oversight or punishment of its officers. Indeed, in the years immediately preceding and continuing through the time of the Loew Street robbery investigation and Plaintiff's convictions and beyond, the Columbus Division of Police's systems for

investigating and disciplining police officers and other employees accused of the type of misconduct that befell Plaintiff was for all practical purposes nonexistent. The Department maintained a "code of silence" that effectively eliminated any form of accountability, discipline or oversight. In fact, officers were encouraged to cover up incidents of misconduct by destroying evidence and lying about the circumstances of their investigations and their interactions with witnesses and suspects, including through creating false police reports and committing perjury. The need for robust systems of oversight and discipline was obvious on its face, and the deficiencies of the essentially nonexistent systems that were in place were further demonstrated by the incidents known to City policymakers where Columbus police officers were able to commit serious misconduct, and engage in deceit to cover up their own and other officers' misconduct, without meaningful supervision and oversight, and without any discipline or meaningful consequences to ensure the misconduct was corrected.

113. Instead, Columbus police officers and the other employees of the City of Columbus who manufactured criminal cases against individuals such as Plaintiff had every reason to know that they not only enjoyed de facto immunity from criminal prosecution and departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses like the misconduct at issue in this case.

114. Among the many deleterious effects of the deficient or non-existent supervision and discipline described above is that it provided Defendants with the opportunity, authority and impetus to use improper investigative techniques including the fabrication and suppression of evidence and use of unduly suggestive identification procedures in the Loew Street robbery investigation, and emboldened Defendants to act with

impunity and without fear of meaningful consequences in doing so, which harmed Plaintiff, violated his constitutional rights, and caused his wrongful prosecution, conviction and imprisonment.

**Plaintiff's Devastating Injuries**

115.    During his more than 17 years of wrongful imprisonment, Plaintiff was deprived of the ability to interact freely with his loved ones; to be present for holidays, births, deaths, and other life events; to pursue his passions and interests; to engage in meaningful labor and develop a career; and to live freely, as an autonomous being.

116.    Instead, Plaintiff was detained in harsh, dangerous, and isolating conditions in prison.

117.    As a result of his wrongful conviction and incarceration, Plaintiff must now attempt to rebuild his life outside of prison, all without the benefit of the life experiences that ordinarily equip adults for such a task.

118.    In addition to causing the severe trauma of Plaintiff's wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, fear, anxiety, depression, despair, and other physical and psychological effects.

**COUNT I**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**

119.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

120.    In the manner described more fully above, the Individual Defendants—acting individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—deprived Plaintiff of his constitutional

right to a fair trial and due process by fabricating false evidence implicating Plaintiff in a crime he did not commit, which Defendants knew to be false.

121.    In the manner described more fully above, the Individual Defendants—acting individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—deprived Plaintiff of his constitutional right to a fair trial and due process by deliberately withholding exculpatory evidence from Plaintiff and from state prosecutors.

122.    In the manner described more fully above, the Individual Defendants—acting individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—deprived Plaintiff of his constitutional right to a fair trial and due process by procuring false eyewitness identifications through the use of unduly suggestive identification procedures.

123.    In addition, based upon information and belief, the Individual Defendants concealed, fabricated, and destroyed additional evidence that is not yet known to Plaintiff.

124.    The misconduct described in this Count was objectively unreasonable, and was undertaken and effected intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

125.    The misconduct described in this Count directly resulted in the unjust and wrongful criminal prosecution and conviction of Plaintiff and the deprivation of Plaintiff's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

126.     As a result of the misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

127.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Columbus Division of Police and the City of Columbus, in the manner more fully described above.

## COUNT II
### 42 U.S.C. § 1983 –Deprivation of Liberty without Probable Cause (Fourth and Fourteenth Amendments)

128.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

129.     In the manner described above, the Individual Defendants—acting individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment—suppressed exculpatory evidence and used false evidence that they had manufactured, including eyewitness identifications procured through the use of unduly suggestive tactics, in order to accuse Plaintiff of criminal activity and caused the initiation, continuation, and perpetuation of judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

130.     In so doing, the Individual Defendants caused Plaintiff to be deprived of his liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

131.     These Defendants instituted and continued these judicial proceedings against Plaintiff maliciously, resulting in injury.

132.     The judicial proceedings against Plaintiff were terminated in his favor when state prosecutors ultimately dismissed all charges against him.

20

133.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with malice, and in total disregard of the truth and Plaintiff's clear innocence.

134.     As a result of the misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

135.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Columbus Division of Police and the City of Columbus, in the manner more fully described above.

### COUNT III
### 42 U.S.C. § 1983 – Failure to Intervene

136.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

137.     In the manner described above, during the constitutional violations described herein, one or more of the Individual Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the duty and the opportunity to do so.

138.     As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had ample, reasonable opportunities as well as the duty to prevent this harm but failed to do so.

139.     The misconduct described in this Count was objectively unreasonable, was undertaken and committed intentionally.

140.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

141.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Columbus Division of Police and the City of Columbus, in the manner more fully described above.

## COUNT IV
### 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

142.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

143.    As described more fully in the preceding paragraphs, the Individual Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

144.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

145.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

146.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

147.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Columbus Division of Police and the City of Columbus, in the manner more fully described above.

## COUNT V
### State Law Claim – Malicious Prosecution

148.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

149.    In the manner described above, the Individual Defendants, individually, jointly, and/or in conspiracy with one another, and others unknown, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

150.    In so doing, the Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

151.    The judicial proceedings against Plaintiff were terminated in his favor when state prosecutors ultimately dismissed all charges against him.

152.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's clear innocence.

153.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VI
### State Law Claim – Intentional Infliction of Emotional Distress

154.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

155.    The actions, omissions, and conduct of the Individual Defendants as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and

authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

156.    As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

## COUNT VII
### State Law Claim – Civil Conspiracy

157.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

158.    As described more fully in the preceding paragraphs, the Individual Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose and/or to achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

159.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

160.    The violations of Ohio law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

161.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

162.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VIII
### State Law Claim – *Respondeat Superior*

163.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

164.    While committing the misconduct alleged in the preceding paragraphs, the Individual Defendants were employees, members, and agents of the City of Columbus, acting at all relevant times within the scope of their employment.

165.    Defendant City of Columbus is liable as principal for all torts committed by its agents.

## COUNT IX
### State Law Claim – Indemnification

166.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

167.    The City of Columbus has a legal obligation to pay any tort judgment for compensatory damages for which its employees are liable within the scope of their employment activities.

168.    The Individual Defendants are or were employees and agents of the City of Columbus, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

169.    Defendant City of Columbus is responsible to pay any judgment entered against the Individual Defendants. Plaintiff therefore demands judgment against Defendant City of Columbus, in the amounts awarded to Plaintiff against the Individual Defendants as compensatory damages, attorneys' fees, costs and interest.

WHEREFORE, Plaintiff RICHARD HORTON respectfully requests that this Court enter a judgment in his favor and against Defendants CITY OF COLUMBUS, Columbus Division of Police Officers BRENDA K. WALKER (Badge #1176), SAM SIAS (Badge #1871), and AS-YET UNKNOWN COLUMBUS POLICE OFFICERS, awarding compensatory damages, attorneys' fees and costs against each Defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the Individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff RICHARD HORTON hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

BY:  /s/ Michele Berry_____
*One of Plaintiff's Attorneys*

Jon Loevy*
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
jon@loevy.com
*pro hac vice forthcoming*

Michele Berry
The Law Office of Michele L. Berry, LLC
3584 Mooney Avenue
Cincinnati, OH 45208