# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD HORTON, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 23-cv-3888 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | |
| CITY OF COLUMBUS, Columbus Division | ) | Magistrate Judge Elizabeth P. Deavers |
| of Police Officers BRENDA K. WALKER | ) | |
| (Badge #1176), MIEKO SIAS as personal | ) | **JURY TRIAL DEMANDED** |
| representative of the ESTATE OF SAM SIAS | ) | |
| (Badge #1871), and AS-YET UNKNOWN | ) | |
| COLUMBUS POLICE OFFICERS, | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR ORDER DETERMINING DEPOSITION PRIORITY

### INTRODUCTION

The parties have reached an impasse on a discovery issue that requires the Court's adjudication. Specifically, both sides desire to be the first to question a third-party deponent, Rhonda Curry, at her upcoming deposition.

Ms. Curry is an important witness. She is the only evidence purportedly linking Plaintiff to the 2004 Loew Street robbery. No physical evidence ever connected him to the crime. In fact, DNA evidence lifted from the scene and from the bullet casings excluded Plaintiff as the perpetrator.

As background, only Plaintiff has validly served Ms. Curry with a subpoena. Moreover, Ms. Curry has not appeared for previously scheduled depositions, but has made clear she wants no involvement in this case, and has several health issues which could make her unavailable for trial. As such, her deposition testimony is likely to be her trial testimony. Although she is decidedly adverse to him, Plaintiff intends to call Ms. Curry in his case-in-chief at the upcoming

trial. Under the circumstances, the applicable law (discussed below) dictates that he should be permitted to question her first.

## RELEVANT FACTUAL BACKGROUND

Plaintiff filed this action alleging violations of his constitutional rights stemming from his wrongful arrest, conviction, and imprisonment for the 2004 Loew Street robbery. During the crime, Ms. Curry and her boyfriend Richard McClanahan were robbed inside their home, and Mr. McClanahan was shot in the leg. Plaintiff had nothing to do with the incident. Regardless, through fabricating evidence, suppressing exculpatory information, and engineering an unduly suggestive line-up, Defendant Officers were able to frame Plaintiff. The parties exchanged 26(a)(1) initial disclosures in early February 2024. Defendants did not produce any documents pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), so Plaintiff issued a set of Requests to Produce to Defendants. Defendants asked for an extension on June 11, 2024 to July 15, 2024 by which to produce documents, and Plaintiff did not object.

Before producing a single document in this case, Defendants unilaterally chose a date (June 25, 2024) and filed a deposition notice for Rhonda Curry's deposition. Dkt. 27. The same day, Defendants emailed Plaintiff an unsigned certified mail receipt and stated they were not able to confirm with Ms. Curry whether she received the subpoena. Plaintiff conferred with Defendants to raise several issues and concerns he had, including: (1) that Plaintiff's counsel was not available for the unilaterally chosen deposition date, and (2) that he objected to the scheduling of such a key witness before Defendants had produced any documents.

The parties thus tentatively re-scheduled the deposition for August 6, 2024, by when Defendants anticipated they would have produced documents. Counsel for the Defendants attempted to serve Ms. Curry for August 6, 2024, but Ms. Curry was only handed the subpoena.

2

According to her, the process server did not say anything to her, and counsel for Defendants did not issue a check for her appearance pursuant to Fed. R. Civ. P. 45(b)(1).

Unexplainedly, despite having agreed to reschedule, counsel for the Defendants attempted to proceed with Ms. Curry's deposition on June 25, 2024. When she did not appear, defense counsel went on the record to note her non-appearance.

On August 6, 2024, Ms. Curry again did not appear.[1] Plaintiff then raised for Defendants that, in light of Ms. Curry not appearing for her deposition, he was concerned about the fact that Ms. Curry could be unavailable for trial and the high potential for prejudice to Plaintiff's case if he is not allowed to examine her first. Exhibit A at 3-5. Plaintiff attempted to confer on the issue, but Defendants refused. *Id.* at 2.

Counsel for Plaintiff and an investigator subsequently spoke with Ms. Curry. She relayed to them that she wanted nothing to do with the lawsuit, and that she felt as if counsel for the defense were harassing her. She even changed her phone number. She also told Plaintiff's counsel that she does not recall receiving a subpoena for a June 25 deposition date and that the process server who handed her the subpoena for the August 6 date simply gave her the paper and left, with no explanation or witness check.

Plaintiff then effectuated proper service upon Ms. Curry and served her with a deposition subpoena for September 27, 2024 and issued her a witness fee payment pursuant to Fed. R. Civ. P. 45(b)(1) and 28 U.S.C. § 1821(b). In response, Defendants issued a subpoena to Ms. Curry, two weeks after Plaintiff, for the same date, time, and place.

---

[1] From late-July to early August, Plaintiff's counsel was on a trial in the Northern District of Illinois. The day before the scheduled deposition, it was not clear if the jury would be returning that day, so counsel for Plaintiff emailed Defendants and left a voicemail for Ms. Curry apprising them of the potential conflict. Defendants stated that regardless of whether Plaintiff's counsel could be in attendance or not, they would be proceeding with the deposition. Plaintiff objected, and fortunately, the jury returned a verdict late that afternoon, so Plaintiff notified counsel and left another voicemail for Ms. Curry asking her to ignore the previous voicemail and notifying her that her attendance the next day was mandatory.

3

Defendants are planning to depose at least eight other witnesses, and they have indicated their intention to depose all of the witnesses on Plaintiff's 26(a)(1) initial disclosures for which Plaintiff has not already noticed or served. Plaintiff is not contesting the deposition question priority for any of those witnesses. Ms. Curry presents a special case because her prior testimony is so solidly aligned with the Defendants and adverse to Plaintiff.

Defendants have refused to meet and confer with Plaintiff, and stand on their position that they should get to question Ms. Curry first for the date and time first subpoenaed by Plaintiff. The parties are thus at impasse, requiring this Court's assistance.

## LEGAL STANDARD

Trial courts have broad discretion to tailor discovery narrowly and to dictate discovery under Federal Rule of Civil Procedure 26(c) and (d)—including witness priority and determining which party should question a witness first. *Crawford-EL v. Britton*, 523 U.S. 574, 598 (1998). It is Plaintiff's position that the "interest of justice" dictates that Plaintiff get to question Ms. Curry first. *See Maguffey v. Marquette Transportation Co., LLC*, No. 520CV00185TBRLLK, 2022 WL 1091593, at *5 (W.D. Ky. Apr. 12, 2022) (the parties should consider "the interest of justice" when conferring on discovery disputes). Further, Federal Rule of Civil Procedure 30 does not explicitly dictate the order of questioning during depositions, and absent an agreement between the parties, it is within the Court's discretion to determine an appropriate protocol for conducting the deposition.

## ARGUMENT

The interest of justice weighs in favor of Plaintiff proceeding first with his questioning at Ms. Curry's upcoming deposition. For starters, Plaintiff was the first party to effect proper service upon Ms. Curry. That aside, to meet his burden at trial, Plaintiff will be calling Ms. Curry as a key witness in his case-in-chief. Every legal principle that potentially applies here justifies

4

Plaintiff questioning this witness first, and Plaintiff thus requests this Court affirm that Plaintiff may question her first at her deposition.

### I. Plaintiff Served the First Proper Subpoena

Plaintiff's position is simple: Defendants did not effect valid service upon Ms. Curry, and Plaintiff did. Defendants first attempted to serve her through certified mail but did not receive a signed receipt and did not confirm with Ms. Curry whether she even received the subpoena. It was thus invalid service. *McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-CV-1160, 2006 WL 2380601, at *2 (S.D. Ohio Aug. 14, 2006); *OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 753–55 (E.D. Mich. 2011). Defendants also attempted to serve Ms. Curry through a process server, but no check was included with the service which also renders that service incomplete. Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena ***requires*** delivering a copy to the named person and, ***if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law***.") (emphasis added). Plaintiff served Ms. Curry in person with a witness check pursuant to 28 U.S.C. § 1821(b) and Fed. R. Civ. P. 45(b)(1) on August 28, 2024. Courts adjudicating similar disputes have appropriately rewarded the diligence of the party that has gone out and perfected proper service of a subpoena on a witness, allowing them to question first. *See, e.g., Occidental Chem. Corp. v. OHM Remediation Services*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996) (holding that where two subpoenas were served, the first properly served took priority). Plaintiff seeks to apply that simple principle here.

To be clear, Plaintiff's position is that service—not notice—should control the sequence of questioning. If notice controlled, then in each case a party could simply send out a notice for all the important witnesses in the case and go first. Taken to its extreme, it would be a race to see which party was quicker to push "Send" after completing the Rule 26(f) conference, or perhaps which party's packets of email data happened to traverse the internet faster. Or, a party could

simply notice as many depositions as it likes and then indefinitely delay (or fail) in serving them, self-helping themselves to delay and/or the strategic sequencing of depositions as they choose.

Both the Federal Rules and caselaw recognize the problem with relying on notice, making clear it is not the favored approach. *See* Fed. R. Civ. P. 26, 1970 Committee Comments ("This new provision is concerned with the sequence in which parties may proceed with discovery and with related problems of timing . . . . A priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects . . . . Subdivision (d) is based on the contrary view that the rule of priority based on notice is unsatisfactory and unfair in its operation."); *Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. 2013) ("Under the federal rules, a discovery priority is not established based upon which party noticed a deposition first."); *U.S. v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill. 1986) ("[I]t is clear that the priority rule, which confers priority on the party who first serves notice of taking a deposition, is abolished by Rule 26(d).").

**II.     The Interest of Justice Weighs in Favor of Plaintiff Questioning Ms. Curry First**

Critically, the equities favor Plaintiff proceeding first with questioning at Ms. Curry's deposition. First, Plaintiff bears the burden of proof and intends to call Ms. Curry in his case-in-chief at trial, cross-examining her where necessary about her past statements procured during Defendants' investigation. Federal Rule of Civil Procedure 30(c) dictates that "[t]he examination and cross examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Fed. R. Civ. P. 30(c)(1). As such, allowing Plaintiff to question the witness first will promote judicial efficiency, clarity, and fairness in the proceedings by ensuring that the examination flows logically, starting with Plaintiff's claims before transitioning to Defendant's cross-examination. This sequence is consistent with courtroom

practice and will help clarify the issues for the benefit of all parties involved. On this basis alone, Plaintiff should be permitted to question this witness first at a deposition.

Second, Plaintiff should be allowed to question the witness first because it will aid the jury's comprehension of the evidence at trial. In the event that Ms. Curry is unavailable for trial, her deposition testimony may be read at trial in lieu of live testimony. In such circumstances, particularly as with here where the witness is the sole living witness to the underlying event, courts repeatedly have allowed plaintiff to question witnesses first, even when they have not first served them or noticed their depositions. *E.g.*, *Walker v. Burge*, No. 21 C 4231 (N.D. Ill.), Dkt. 222 (joint statement of dispute) & Dkt. 223 (Order of July 7, 2023); *Jacques Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), Trans. Of March 12, 2013 Hrg. & Dkt. 54 (Order of March 12, 2013) (Exhibit B); *Hernandez, et al. v. Guevara, et al.*, No. 22 C 1737 (N.D. Ill.), Dkt. 98 (Order of January 5, 2024); *John Martinez v. Guevara, et al.*, No. 23 C 1741 (N.D. Ill.), Dkt. 124 (Order of January 29, 2024); *Gamalier Rivera v. Guevara, et al.*, No. 23 C 1743 (N.D. Ill.), Dkt. 80 (Order of January 22, 2024).

In *Jacques Rivera*, for example, Judge Rowland specifically focused on the plaintiff's burden to prove his case and on the importance of the third-party witness at issue over all other collateral issues. Ex. B at 14:10-12 (finding that despite the fact defendants first served the deposition subpoena, the Court was "really concerned that [Plaintiff] has the burden [] and [this witness was] going to be probably the most important witness in the case."). In *Gamalier Rivera*, Judge Harjani held that whoever served the witness first was persuasive but ultimately witness alignment ruled the day as certain witnesses are "adverse to Plaintiff, not in their control, and their testimony needs to be memorialized by Plaintiff in the event that they are unavailable for trial." *Id.* at Dkt. 80.

7

Courts also take into account the age of a witness as a central concern. Such is true in this case, as it arises from a criminal investigation and prosecution that commenced many decades ago. Due to Ms. Curry's age and some of the health problems she relayed to Plaintiff, it is likely that she could become unavailable for trial, and thus her deposition testimony will be what the jury hears. Plaintiff should be permitted to call the witness, with Defendants free to follow up as they deem appropriate.

Most importantly, courts frequently consider witness alignment as the deciding factor for witness priority. Ms. Curry is a witness aligned with the defense, as she provided a statement to the police incriminating Plaintiff, testified against Plaintiff in his criminal case, and is hostile to Plaintiff, which are all recognized reasons to let Plaintiff question her first at her deposition. *See Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) ("[T]he party whose witness is being deposed generally knows what the witness's testimony will be, and the purpose of the deposition is to allow the other side to find out what the witness knows about the matter."); *Rivera*, No. 12 C 4428, Dkt. 54; *Rivera*, No. 23 C 1743, Dkt. 80. This will also not unduly prejudice Defendants as they will have the opportunity to cross-examine the witness thereafter, ensuring that all relevant facts are fully explored.

Applying these factors here, the equities also favor Plaintiff being able to question Ms. Curry first. Ms. Curry is the sole surviving witness of the 2004 Loew Street robbery. She is the only witness implicating Plaintiff in the crime. No physical evidence or any other type of evidence ever connected Plaintiff to the crime. She identified Plaintiff in a police lineup, testified against Plaintiff in his criminal proceedings, and has never recanted her prior testimony incriminating Plaintiff, thus remaining hostile to him. If she were to become unavailable, Plaintiff would be prejudiced if he could not preserve her testimony, in an organized and coherent fashion, by conducting an initial trial exam.

8

In sum, Plaintiff does not seek a declaration that he should question first for any witness in this case other than this one. Only one party can go first. Under the circumstances, that party should be Plaintiff.

## CONCLUSION

For the reasons set forth above, Plaintiff requests that this Honorable Court enter an order determining that Plaintiff may proceed first with questioning Ms. Curry at her upcoming deposition, along with any other relief this Court deems just.

RESPECTFULLY SUBMITTED,

/s/ Michele Berry_____
*One of Plaintiff's Attorneys*

| | |
|---|---|
| Michele L. Berry (0018939) | Jon Loevy |
| THE LAW OFFICE OF MICHELE BERRY, LLC | Alyssa Martinez |
| 114 East 8th Street | LOEVY & LOEVY |
| Cincinnati, OH 45202 | 311 N. Aberdeen, 3rd FL |
| Tel: 513.919.5315 | Chicago, IL 60607 |
| Fax: 513.376.8752 | (312) 243-5900 |
| mberry@mberrylaw.com | alyssa@loevy.com |
| | |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |

9

**CERTIFICATE OF SERVICE**

    I, Alyssa Martinez, an attorney, certify that a copy of the foregoing was filed electronically on September 20, 2024 by using the Court's CM/ECF System, and that notice of this filing was sent that same day to the other parties to this case by operation of the Court's CM/ECF System.

                                                                      /s/ Alyssa Martinez
                                                                      *One of Plaintiff's Attorneys*