**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Richard Horton, | ) | **Case No. 2:23-cv-3888** |
| | ) | |
| **Plaintiff,** | ) | **Judge Algenon L. Marbley** |
| | ) | |
| **vs.** | ) | **Magistrate Judge Elizabeth Preston** |
| | ) | **Deavers** |
| City of Columbus, *et al*., | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**THIRD PARTY WITNESS BRIAN HOWE'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL**

---

Now comes Attorney Brian Howe, a third-party witness, by and through his undersigned

counsel, and hereby submits his memorandum opposing Defendants' Motion to Compel, which,

if granted, would violate the sanctity of the attorney-client privilege.  The privilege between

Plaintiff and his criminal defense attorney has not been waived, and thus Defendants' Motion

must fail as a matter of law.

**I.      INTRODUCTION**

The attorney-client privilege is one of the oldest and most respected privileges; it is

typically inviolate.  Yet here, Defendants ask the Court to disregard the attorney-client privilege

merely because Attorney Howe was preserved as a potential "witness" within a Civil Rule 26(a)

initial disclosure.  No proposition of law exists to support such a ruling.

**II.     BACKGROUND**

In 2004, Plaintiff Richard Horton was wrongfully arrested, prosecuted, and convicted

for armed robbery in Columbus, Ohio, despite evidence of his innocence.  Fingerprint and DNA

1

evidence excluded him as the perpetrator, but due to alleged police misconduct, including the fabrication and suppression of evidence, Mr. Horton spent over 17 years of his life in prison before his convictions were vacated in 2022 and the charges dropped in 2023. Mr. Horton now seeks redress for his wrongful conviction and imprisonment with a Section 1983 action against the City of Columbus and two Columbus police detectives. *Horton v. City of Columbus, et al.*, Case No. 23-cv-3888 (S.D. Ohio, filed March 7, 2024).

The Ohio Innocence Project ("OIP") is a student-involved clinic at the University of Cincinnati College of Law. OIP investigates and identifies cases of wrongful conviction, representing innocent individuals convicted of crimes they did not commit, while seeking to overturn those convictions. Attorney Brian Howe ("Howe") serves as a Professor of Clinical Law at UC's College of Law, also serving as a staff attorney with OIP. Given Mr. Horton's unwavering plea of innocence and the improper circumstances surrounding his conviction, OIP agreed to represent Mr. Horton in his post-conviction proceedings. This representation included requests for post-conviction forensic testing, a motion for a new trial, and a petition for post-conviction relief, among others. OIP and Howe's representation of Mr. Horton ended shortly after the criminal case against him was dismissed.

In his initial disclosure for the instant lawsuit, Mr. Horton identified Howe as a potential witness. Howe's previous representation of Mr. Horton could potentially allow Howe to provide information regarding Mr. Horton's original conviction, its eventual reversal, and Mr. Horton's consistent declarations of innocence throughout the case. After all, Civil Rule 26(a) requires the disclosure of persons likely to have discoverable information – "that the disclosing party *may* use to support its claims or defenses."

By rule, Mr. Horton was thus required to disclose Attorney Howe as a potential witness. As a result of Howe being listed as a potential person with discoverable information, Defendants issued a deposition subpoena to Howe.

### III.    ATTORNEY HOWE'S DEPOSITION TESTIMONY

Howe's deposition took place on March 11, 2025.  During the deposition, defense counsel asked many questions that, if answered, would violate Mr. Horton's attorney-client privilege.  Accordingly, these questions drew prompt and repeated objections, with instructions from Mr. Horton's counsel not to answer them.  In their motion, Defendants surgically selected a portion of the transcript to argue that Howe answered parts of privileged communications to which he deemed favorable and then withheld other parts of that same conversation. Defendants mischaracterized the deposition testimony, which can be seen in reviewing the entirety of the relevant portion of the transcript for full context:

Q:      During those conversations did Mr. Horton tell you that he was innocent of these crimes?

A:      Just to be clear --

MR. CALLAHAN: Objection, subject to attorney/client privilege. What can you share consistent with that?

A:      My understanding is that there's some sort of limited privilege waiver that allows us to discuss certain subjects? I haven't been told anything so far about exactly the bounds of that, but –

MR. EPSTEIN:    Alyssa, do you want to speak to that?

MS. MARTINEZ: Yeah, I can clarify for the record. Plaintiff is making a subject matter limited waiver as to Brady evidence in this case, particularly the handwritten notes by Detective Walker containing the name Richard Diggs, the fingerprint analysis that was run during Mr. Horton's criminal trial, and a potential photo show up Detective Walker made with

|  |  |
|---|---|
|  | Rhonda Curry of only plaintiff's photo. And he is also making a subject matter waiver as to his attestations of innocence. |
| THE WITNESS: | Okay. |
| Q: | With that understanding, when you -- during these meetings with Mr. Horton, did he tell you that he was innocent of these crimes? |
| A: | Yes, he has always unequivocally maintained his innocence to me. |
| Q: | What else did he tell you during those meetings? |
| MR. CALLAHAN: | Objection, subject to the attorney/client privilege. Is there any other information that you collect as a procedural matter that you can share outside of the attestations of innocence? |
| A: | You're asking for what my client told me during multiple privileged meetings at Chillicothe Correctional?   Just everything that he said during that time? |
| Q: | Correct.  I want to know, when he told you that he was innocent, I want to know what else he told you, I want to know what else you asked him, and I want to know what else you talked about. |
| MS. MARTINEZ: | Counsel, I think that goes outside the bounds of the subject matter waiver. |
| Mr. EPSTEIN: | Well, then my next point would be -- I would normally ask, are you instructing the witness not to answer, but I'm not sure who to direct that to. |
| MR. CALLAHAN: | I'll – because the witness was an attorney representing Mr. Horton, I'm instructing him not to answer questions about attorney/client privilege communications. |

(Doc. 63, p. 48-51).

The record, in context, reveals that proper objections were made on the grounds of attorney-client privilege.  Additionally, to the extent any privilege has been waived by Howe,

the subject matter of any such waiver was specifically defined and limited in scope. This was reaffirmed in a later portion of the deposition:

> MR. EPSTEIN:    Alyssa, have we made a sufficient record that you've asserted privilege or – I don't want to go to the court and feel that I haven't laid the groundwork sufficiently. Can we agree that he has been sufficiently instructed that he's not going to answer my questions about conversations with Mr. Horton other than protestations of innocence?
>
> MS. MARTINEZ:  As I stated earlier on the record, Mr. Horton has also made a waiver as to the specific subject matter of the Brady evidence. So outside of the Brady evidence and the attestations of innocence he does retain that privilege and – so the foundation as to the questions you've asked has been laid.

(Doc. 63, pp. 52-53).

Defendants seek to compel testimony from Howe by arguing that Mr. Horton waived the attorney-client privilege. However, no such waiver has occurred. Howe's attestations of Mr. Horton's publicly professed innocence are not privileged communications, and even so, any such waiver of a privilege by Howe is limited by the narrow scope of the subject matter waivers.

## IV.    LAW AND ARGUMENT

Under Federal Evidence Rule 501, the federal common law governs a claim of attorney-client privilege for which federal law supplies the rule of decision.

The attorney-client privilege serves to protect all "confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir. 1989) (internal quotation marks omitted). For this privilege to apply, the Sixth Circuit requires that legal advice, of any kind, is sought from an attorney where the communications relate to that purpose, are made in

confidence by the client, and are protected from disclosure by both the client and attorney (unless waived). *Lucas v. Gregg Appliances, Inc.*, No. 1:14-cv-70, 2014 U.S. Dist. LEXIS 168751, at *3 (S.D. Ohio Dec. 5, 2014) (citing *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998)). "The burden of establishing the existence of the attorney-client privilege lies with the person asserting it." *Id.* (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)).

Federal Evidence Rule 502 provides that if a privilege is waived by intentional disclosure, that waiver extends to undisclosed materials if the disclosed and undisclosed communications or information concern the same subject matter, and they ought in fairness be considered together. Courts will examine whether a significant part of privileged communications have been disclosed to determine if the privilege has actually been waived. See *In re Perrigo Co.*, 128 F.3d 430, 438 (6th Cir.1997); *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254-55 (6th Cir. 1996). If the court finds that a privilege waiver has occurred, it must decide next on the scope of such waiver based upon the facts of the case, guided by fairness concerns. *Yarberry v. Gregg Appliances*, No. 1:12-cv-611, 2013 U.S. Dist. LEXIS 117198, at *8 (S.D. Ohio Aug. 19, 2013).

## A. A FORMER ATTORNEY MAY SERVE AS A WITNESS ON BEHALF OF A FORMER CLIENT WITHOUT AUTOMATICALLY WAIVING THE ATTORNEY-CLIENT PRIVILEGE

In their motion, Defendants argue that by listing Attorney Howe as a potential witness, Mr. Horton has effectively waived all claims of attorney-client privilege relating to his anticipated testimony. Defendants assert this argument without any supporting legal authority. In essence, the Defendants seek to merely anticipate a disclosure—one which has not occurred—and use that speculative disclosure as the basis for asserting that the entire privilege

has been waived.  Howe, on the other hand, is not aware of a single proposition of law supporting this novel argument.

Moreover, the Ohio Rules of Professional Conduct contemplate that an attorney may be called to serve as a witness:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case;
> >
> > (3) the disqualification of the lawyer would work *substantial* hardship on the client.

Ohio Professional Conduct Rule 3.7(a).

This Rule 3.7(a) specifically and unequivocally contemplates an attorney serving as a witness, so long as the testimony relates to an uncontested issue, as pertaining to a situation in which the lawyer is also an advocate at trial.  There is nothing in the Rule – or in the accompanying Commentary – even remotely suggesting that an attorney's potential testimony as a witness waives the attorney-client privilege.

Here, Mr. Horton identified Howe as a potential witness to attest to specific, non-privileged matters, including Mr. Horton's consistent declarations of innocence and the circumstances surrounding his exoneration. Such testimony is permissible and does not inherently implicate privileged communications.  Indeed, Federal Civil Rule 26(a) required this disclosure by Mr. Horton as to the likelihood of Howe possessing discoverable information. Mr. Horton properly objected to the questions asked of Howe, thereby preserving any privileged communications.

Accordingly, Howe's position as a potential third-party witness does not give rise to any sort of waiver of the attorney-client privilege, and Defendants' Motion must be denied.

### B. MR. HORTON'S PUBLIC ATTESTATIONS OF INNOCENCE ARE NOT PRIVILEGED COMMUNICATIONS, AS CONCERNING ANY ALLEGED WAIVER OF PRIVILEGE

Mr. Horton and Attorney Howe maintain that all communications between Mr. Horton and Howe are attorney-client privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.")

Defendants, however, suggest that Mr. Horton and/or Howe waived the privilege because Howe testified that Mr. Horton had always professed his innocence to Howe. As a result, Defendants argue, Mr. Horton cannot "selectively" waive the privilege as to parts of his communications, and Howe should be compelled to testify as to all communications between client and attorney.

Defendants' argument misses the mark. Solely as pertaining to Defendants' "selective waiver" argument, Mr. Horton's consistent public declarations of innocence, reaffirmed by Attorney Howe during his deposition, arguably do not fall within the scope of the attorney-client privilege. The attorney-client privilege protects only *confidential* communications made for the purpose of obtaining legal advice, but it does not necessarily extend to *public* statements and declarations, such as a party's plea of innocence. *See Upjohn Co*, 449 U.S. at 389 ("The attorney-client privilege is the oldest of the privileges for *confidential* communications known to the common law.") (*emphasis added*).

By extension, when Howe answered the question, confirming that Mr. Horton had always professed his innocence, Attorney Howe was merely restating and reaffirming a fact publicly available and well known to the general public. Mr. Horton's assertion of innocence is a fact of public record. He proclaimed his innocence from the start, pleading not guilty before, during, and after his trial and maintained his innocence post-conviction. *See State v. Horton*, 2007-Ohio-4309, ¶ 5 (10th Dist.) ("Defendant pled not guilty to these charges").

It was this public and maintained statement of innocence that prompted OIP to take Mr. Horton's case. And it was this very same declaration of innocence that ultimately led to Mr. Horton's exoneration. At no time was Mr. Horton's assertion of innocence necessarily a confidential communication, nor was it ever meant to be concealed behind the attorney-client privilege.

Howe's deposition was taken on March 11, 2025. Indeed, several newspaper publications were issued related to Mr. Horton's innocence prior to this date. *See* Cedrick Ricks, Ohio Innocent Project at the University of Cincinnati helps free 34th individual (Jan. 20, 2022), https://www.uc.edu/news/articles/2022/01/ohio-innocence-project-at-the-university-of-cincinnati-helps-free-34th-individual.html (accessed April 21, 2015) ("Horton, who has maintained his innocence in this matter since the time of his arrest, has been represented for the last several years by OIP staff attorney Brian Howe").

While Defendants may not have definitively known verbatim what Mr. Horton said to his attorney regarding his innocence, they undoubtedly knew that the statement was a declaration of innocence. Publicly and consistently, Mr. Horton declared his innocence. Further, the OIP only represents the innocent, as explained by Howe in his deposition. *See*

Doc. 63, p. 15.  Mr. Horton was exonerated due, at least in part, to his consistent professions of innocence.  The disclosure itself could only serve to repeat what was already known by the Defendants, even if implicitly, and offered no additional insight into Mr. Horton's private conversations with his counsel.

The fact that Mr. Horton maintained his innocence, a preexisting fact in public record, should be regarded as a reiteration of information already known by the Defendants.  Nothing of confidence was disclosed by Howe when he testified in his deposition to this known fact.  Allowing Defendants to use *non-confidential* communications to circumvent the restriction of *privileged* communications would unjustly and unethically require Howe to violate his duty to preserve the attorney-client privilege.

Mr. Horton has not made any waiver of the privilege whatsoever, as his attorney was merely reaffirming what was already in the public record – that Mr. Horton has always maintained his innocence.

Therefore, Defendants' argument that Mr. Horton has effectively "waived" the attorney-client privilege based upon this tiny sliver of deposition testimony must fail, and Howe cannot be compelled to violate Mr. Horton's attorney-client privilege.

**C.**      **ANY WAIVER OF PRIVILEGE, TO THE EXTENT A WAIVER EXISTS, IS LIMITED TO MR. HORTON'S PREVIOUSLY AGREED SUBJECT MATTER WAIVERS**

Assuming, *arguendo*, that a waiver occurred based upon the most miniscule of deposition testimony, any such waiver would be limited by Mr. Horton's previously agreed subject matter waivers.

On the record, and as quoted above, Mr. Horton expressly limited any waiver of privilege to two specific subject matters: *Brady* evidence and attestations of innocence. Mr. Horton's counsel has consistently maintained that the waiver applies only to the following *Brady* evidence: (1) handwritten notes by Detective Walker containing the name Richard Diggs, (2) fingerprint analysis conducted during Plaintiffs criminal trial, and (3) a potential photo show-up involving Plaintiff's photograph. Defendants' attempt to broaden the scope of the waiver to include all communications between Howe and Mr. Horton is unsupported by the record.

The Sixth Circuit explained the scope of the subject matter waiver as follows:

> We do not have the marketing plan before us, and so we cannot know how advice on the specific points might be inextricably linked with advice on the entire twenty-four-point marketing plan. ***But we do not believe that the owner and president's waiver of the privilege by divulging the attorney's advice on several specific items of the marketing plan necessarily constitutes waiver as to the attorney's advice on the entire plan***. We are thus persuaded by the line of cases that try to make prudential distinctions between what was revealed and what remains privileged. *See*, *e.g.*, *In re Sealed Case*, 278 U.S. App. D.C. 188, 877 F.2d 976, 981 (D.C. Cir. 1989) (remanding district court decision finding company waived privilege on six documents by inadvertently disclosing one of the documents, because lower court "did not fully explain why the communications were related"); *United States v. (Under Seal)*, 748 F.2d 871, 875 n.7 (4th Cir. 1984) ("If any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged, must be removed by the reviewing court before the document may be produced."); *United States v. Cote*, 456 F.2d 142, 145 n.4 (8th Cir. 1972) (requiring in camera review of documents to protect information not already published, for "too broad an application of the rule of waiver requiring unlimited disclosure . . . might tend to destroy the salutary purpose of the privilege"); *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (finding waiver "only as to communications about the matter actually disclosed"); *Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988) ("The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.").

*In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 255-256 (6th Cir.1996).

In the *Grand Jury* case, the Sixth Circuit held that "the government may ask questions that clearly pertain to the subject matter of the specific points on which a waiver did occur." *Id*.

Here, Defendants' Motion seeks to compel testimony that is beyond the scope of the limited waiver that the Parties had discussed. For example, Defendants seek information about whether Howe and Mr. Horton discussed prior drug sales and an allegation of bribery. *See* Doc. 63, p. 51-52. Neither subject can fall within the specific subject matters discussed. These requests are not only overbroad but would result in an impermissible fishing expedition into all privileged communications, allowing Defendants to obtain information well beyond the subject matter waivers. This would be an unnecessary intrusion into Mr. Horton's protected relationship with his attorney.

Therefore, to the extent any waiver exists, it must be specifically limited to the subject matters discussed and agreed upon by counsel at Howe's deposition.

## V.    CONCLUSION

Attorney Howe cannot be compelled to testify in violation of the attorney-client privilege held by Mr. Horton. The attorney-client privilege is sacred – and should only be disturbed in the rarest of circumstances, as set out in the federal common law.

Here, Mr. Horton has not waived the privilege merely by listing his attorney as a potential witness, which he was required to do under Civil Rule 26(a). Nor has Mr. Horton waived the privilege simply by way of his attorney's testimony reaffirming the publicly available fact that Mr. Horton has always professed his innocence. And finally, to the extent any waiver of the privilege exists, it is strictly limited to those subject matters discussed at Howe's depositions.

Accordingly, Defendants' Motion to Compel must be denied because it seeks to compel testimony protected by the attorney-client privilege.

Respectfully submitted,


*/s/ W. Martin Midian*
**W. MARTIN MIDIAN (0080941)**
**ROSS, MIDIAN & BREITMAYER, L.L.C.**
846 South High Street
Columbus, Ohio 43206
Phone: (614) 228-4488
Fax: (614) 228-4455
*Counsel for Non-Parties Ohio Innocence*
*Project and Brian Howe*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum Opposing Motion to Compel was filed electronically on April 24, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ W. Martin Midian*
**W. MARTIN MIDIAN (0080941)**
**ROSS, MIDIAN & BREITMAYER, L.L.C.**
846 South High Street
Columbus, Ohio 43206
Phone: (614) 228-4488
Fax: (614) 228-4455
*Counsel for Non-Parties Ohio Innocence*
*Project and Brian Howe*