**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

Richard Horton,

        Plaintiff,

   v.

City of Columbus, et al.,

        Defendants.

Case No. 2:23-cv-3888

Judge Algenon L. Marbley

Magistrate Judge Elizabeth Preston Deavers

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL**

The memoranda submitted by plaintiff Richard Horton and third-party witness Brian Howe in opposition to defendants' motion to compel *confirm* that Mr. Horton is attempting to use the attorney-client privilege as both a shield and a sword. Mr. Horton and his attorney have waived the attorney-client privilege, and should be compelled to testify about their conversations.

**I.**     **Mr. Howe has confirmed that he intends to testify to privileged communications and to his own attorney mental processes**

"Generally, a party that voluntarily discloses part of a conversation covered by the attorney-client privilege waives the privilege as to the portion disclosed *and to all other communications relating to the same subject matter*." (Emphasis added.) *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2021). In this case, attorney Howe testified that he met privately with Mr. Horton, and that their conversation was privileged and not disclosed to outsiders. And then he proceeded to answer some questions concerning the substance of that conversation, without asserting privilege. He offered that testimony with the full consent of Mr. Horton, whose current attorney, Ms. Martinez, permitted Mr. Howe to testify regarding Mr.

Horton's confidential statements and (as discussed below) stated on the record that they were selectively waiving privilege.

Mr. Howe now asserts that he was referring to other, non-privileged protestations of innocence made by Mr. Horton at trial and in the media, not to anything Mr. Horton told him in confidence.  But in deposition Mr. Howe was specifically asked about privileged, jail cell conversations.  If he meant to refer only to hearsay statements he heard from other sources, then he should have made that clear and asserted privilege as to any statements he heard confidentially from Mr. Horton in the course of his representation.  He did not do so.

The parties agree that postconviction pleadings may often operate as a partial waiver of the attorney-client privilege as to communications to and from a criminal defendant's *trial counsel*. *See, e.g., State v. Montgomery*, 8th Dist. Cuyahoga No. 99452, 2013-Ohio-4193, 997 N.E.2d 579, ¶ 28 (holding that "it would be incongruous that a postconviction petitioner could accuse trial counsel of failing to provide adequate representation, yet invoke the privilege to bar any evidence from the source most likely to contradict the evidence").  But Mr. Horton is attempting to suggest that he can choose to waive privilege as to some statements made to *postconviction* counsel, while shielding everything else told to that same attorney.

Thus, Mr. Horton's current counsel, Alyssa Martinez, represented at Mr. Howe's deposition that:

> Plaintiff is making a subject matter limited waiver [of the attorney-client privilege] as to *Brady* evidence in this case, particularly the handwritten notes by Detective Walker containing the name Richard Diggs, the fingerprint analysis that was run during Mr. Horton's criminal trial, and a potential photo show up Detective Walker made with Rhonda Curry of only plaintiff's photo. *And he is also making a subject matter waiver as to his attestations of innocence*.
>
> * * *

> So outside of the *Brady* evidence and the attestations of innocence, he does retain that privilege * * *.

(Emphasis added.) [Doc. 63, p. 49, 53]  The items listed in the first sentence are proper subjects of a *Brady* claim, and hence subject to waiver.  But Mr. Horton's self-serving proclamations of innocence are not an aspect of the *Brady* claim.  Instead, Mr. Horton is trying to carve out a "limited subject matter waiver" of confidential statements he wants to introduce at trial.  And of course, neither Mr. Horton nor Mr. Howe cite any legal authority for the proposition that a party can selectively waive privilege as to certain statements in a conversation while preserving the privilege as to all other statements made in the same conversation.

There is no allegation that the police and prosecutors withheld any statements made by Mr. Horton from his defense team.  Therefore, his protestations of innocence are not relevant to the *Brady* claim.  So the question becomes, "why does Mr. Horton seek to introduce this evidence?"  The memorandum filed by Mr. Howe offers an explanation.  According to Mr. Howe,

> It was this public and maintained statement of innocence that prompted OIP to take Mr. Horton's case.
>
> * * *
>
> Further, the OIP only represents the innocent, as explained by Mr. Howe in his deposition.

[Doc. 73, p. 9]  Thus, Mr. Howe apparently intends to vouch for Mr. Horton's innocence by testifying that he (Horton) consistently maintained his innocence, that OIP will not take a case unless it believes the incarcerated felon to be actually innocent, and that Mr. Horton's protestations of innocence were compelling enough to convince the experienced OIP team to take him on as a client.  In other words, Mr. Howe *admits* that he intends to testify to OIP's internal deliberations

3

about the strength of Mr. Horton's case.[1]  By doing so, Mr. Howe and OIP are necessarily waiving privilege.  Because Horton and Howe have raised OIP's deliberative process as an issue, the defense has the right to inquire into that deliberative process, to ascertain what other information they may have possessed, lacked, or disregarded.  That is the essence of a waiver as to the "deliberative process," and nothing informs the deliberative process more than the communications from the client himself.

## II.      The fairness doctrine exists precisely to prevent partial waivers

Mr. Horton correctly observes that when determining the scope of a waiver, "the District Court must be guided by fairness concerns." *In re Grand Judy Proceedings October 12, 1995*, 78 F.3d 251, 2546 (6th Cir. 1996).  But Mr. Horton misses two essential points about the fairness doctrine.

First, the issue in this motion is one of implicit waiver.  " 'Most of the cases that have found implied waivers involved assertions made by a client  that made  . . . confidential communications a material issue in a judicial proceeding.' " *Union Ins. Co. v. Delta Casket Co.*, W.D. Tenn. Case No. 06-2090, (Dec. 1, 2009), *22, *quoting United States v. Aronoff*, 466 F.Supp. 855, 863 (S.D.N.Y. 1979).  The fairness doctrine comes into play when a waiver exists, and the Court is attempting to ascertain the scope of that waiver.  A party who has arguably waived the privilege cannot invoke the fairness doctrine as a way to avoid a finding of waiver, nor does the doctrine authorize the waiving party to unilaterally and selectively choose the scope of the waiver.

Second, the entire point of the fairness doctrine is to prevent the party asserting privilege from using it as a sword and a shield.  Under the fairness doctrine, "a party is disallowed from '[preventing] disclosure of damaging communications while . . . [disclosing] other selected

---

[1] The City Defendants reserve the right to challenge the admissibility of such testimony.

communications solely for self-serving purposes.' " *In re Shin Wei Su*, E.D.N.Y. No. 06 CV 687 (RJD), 2007 U.S. Dist. LEXIS 114235 (Sept. 6, 2007), * 14, *quoting Smith v. Alyeska Pipeline Serv., Co.*, 538 F. Supp. 977, 979 (D. Del. 1982).  As the Second Circuit Court of Appeals explained,

> These considerations -- which underlie "the fairness doctrine" -- aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information. Under the doctrine the client alone controls the privilege and may or may not choose to divulge his own secrets. But it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. *Hunt v. Blackburn*, 128 U.S. 464, 470-71, 32 L. Ed. 488, 9 S. Ct. 125 (1888). From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder. *McCormick On Evidence* § 93, at 194-95 (2d ed. 1972).

*In re Von Bulow*, 828 F.2d 94, 101 (2d Dist. 1987).  The inverse must also be true: if the attorney testifies to a portion of the communication, with the client's express consent, the remainder of the conversations on that topic cannot be shielded.

**III.     Mr. Horton's memorandum rests on two straw man arguments**

> A.     *The City is not asserting a "blanket" waiver*

Mr. Horton argues at great length that the City's is mistaken to claim that there has been a blanket waiver of privilege.  This is a straw man argument.  The City recognizes that privilege continues to exist for other work Mr. Howe may have done (interviewing third-party witnesses, for example), and even for certain statements made to him by Mr. Horton.

The City's argument is that there has been a waiver of privilege concerning communications between Mr. Horton and Mr. Howe (and OIP) as to his claims of innocence.  That waiver extend to other facts Mr. Horton may have communicated to Mr. Horton during those conversations that bear on those pronouncements.  For example, the primary eyewitness against

5

Mr. Horton at trial was the gunshot victim, Rick McClanahan.  Mr. McClanahan testified that he was able to identify Mr. Horton as the shooter because he spoke with Mr. Horton at a convenience store the night before the robbery, and that the robber sounded like Horton, wore the same clothes as Horton, and during the attack made specific references to their conversation of the evening before.  Mr. Horton testified that the encounter at the convenience store never happened.  If Mr. Horton told his attorneys he was innocent but admitted the encounter with Mr. McClanahan happened, that would bear directly on his claim of innocence.

        B.     *The City's waiver argument is not based solely on the Rule 26 disclosures*

Mr. Horton's Rule 26 disclosures put the City Defendants on notice that a question of waiver might arise in the future.  But the City is not claiming that a waiver occurred *because* the names of the attorneys appeared on the disclosures.  Rather, the waiver exists because the attorneys (specifically, Mr. Howe) affirmed at trial that they would testify about privileged matters, answered the questions they wanted to answer about privileged matters, and then, invoked privilege when the questions exceeded the bounds of what Mr. Horton defined as the "limited subject-matter waiver."

## IV.    Counsel for the City did not agree to a limited waiver

Perhaps aware that a party cannot unilaterally declare a partial waiver of privilege, Mr. Horton asserts that the City agreed to the limited waiver relating to his innocence statements, and that the City then broke the agreement.  However, the exhibit Mr. Horton submitted shows nothing of the sort.

Prior to the deposition of attorney Alyssa Holfinger (one of Mr. Horton's trial attorneys), undersigned counsel asked for clarification of what Mr. Horton's attorneys believed the scope of the waiver to be.

> I am puzzled why you think, if there has been a waiver as to Mr. Horton's attestations of innocence to his counsel, we are not permitted to inquire into what else he did or did not tell his attorneys.
>
> If you can provide some insight on these points, then we may be able to have a more fruitful conversation.

[Doc. 74, Ex. A]  Mr. Horton's counsel responded with an explanation of why they believed they could make a limited waiver of a specific subject—his protestations of innocence—without waiving privilege more broadly.  In response, counsel for the City wrote,

> Thank you for the clarifications.  Because you have now confirmed that you will not assert privilege during Ms. Holfinger's deposition, I do not believe we need to confer again this evening.  I may still have some questions about the scope of the waiver with respect to Mr. Howe, but we can discuss those on Monday.

[*Id.*]  The purpose of the emails from undersigned counsel was to understand the position Mr. Horton's attorneys were taking (and thus, to be better able to anticipate privilege objections during Mr. Howe's deposition).  Nothing in that message expressly or implicitly *agreed* to the scope of the waiver as proposed by Mr. Horton's counsel.  The email messages were never a negotiation, and it is misleading to suggest that undersigned counsel broke an agreement or acted unethically.[2]

## V.  The Ohio Rules of Professional Conduct are inapplicable

Finally, Mr. Howe invokes the Ohio Rules of Professional Conduct as support for the proposition that an attorney may be called to testify as a witness.  In fact, Rule 3.7(a) provides that

---

[2] Mr. Howe also objects to defense counsel's questioning as irrelevant.  Of course, relevance is not a proper basis upon which to instruct a witness not to answer, and certainly does not implicate the attorney-client privilege.  Moreover, questions such as whether Mr. Horton gave his postconviction counsel accurate information about his prior drug convictions is extremely relevant to both the credibility of those lawyers' assessments, as well as Mr. Horton's own credibility.  The evidence shows that Mr. Horton misrepresented his criminal history at trial, which was relevant to his motive for committing the crime of which he was convicted.  If the jury believes he perjured himself at the first trial, that will be relevant to the fundamental question whether the alleged *Brady* material was material enough to have deprived him of a fair trial.

an attorney may not simultaneously serve as an advocate and witness in the same proceeding, unless certain exceptions are satisfied.  Because Mr. Howe is not counsel in the current litigation, Rule 3.7(a) does not apply.  Moreover, although Mr. Howe cites the conditions that trigger the exception, he does not even suggest that any of those exceptions actually apply.  Rule 3.7(a) allows attorney testimony if it "relates to an uncontested issue."  *Whether* Mr. Horton constantly proclaimed his innocence is not an uncontested issue—the defendants have no idea what statements Mr. Howe is referring to—and certainly the truthfulness of those protestations (which is, after all, what the statements are being offered to prove) is very much a contested issue.

## VI.    Messrs. Horton and Howe did not address the issue of their anticipated damages testimony

The City's motion to compel has a second facet.  As Mr. Horton acknowledges, "[t]o put privileged material at issue, a party must affirmatively use privileged communications to attack * * * the opposing party.  *See Beery v. Thomson Consumer Electronics, Inc.*, 218 F.R.D. 599, 604 (S.D. Ohio 2003)."  [Doc. 74, p. 5]  Horton identified Mr. Howe and his other prior counsel as damages witnesses, thus indicating his intention to use Mr. Howe's knowledge of these facts to "attack" the defense.  And yet, when asked to testify regarding that knowledge, Mr. Howe immediately asserted attorney-client privilege.  The two memoranda in opposition to the motion to compel do not even mention this issue, much less explain how Mr. Howe may testify as a witness about facts he is claiming are privileged.

However, Mr. Horton makes one relevant admission.  He writes that, "[e]ach of the categories Plaintiff listed his prior counsel of potentially having knowledge of are all categories that they have learned about through the course of their representation of [Horton], and not from specific conversations with him."  [Doc 74, p. 6]  But rather than serving as a defense, this admission throws the door open wider: Mr. Howe and the other attorneys are going to (selectively)

8

testify about the results of their work product, and assert privilege over whatever they do not wish to reveal.

## VII.    Conclusion

When Mr. Horton permitted Mr. Howe to testify regarding some privileged communications, he waived privilege as to those conversations and topics.  When he allowed Mr. Howe to testify as to his assessment of the case and Mr. Horton's innocence, and proffered Mr. Howe as a trial witness on those topics, he opened the door for an inquiry into the information provided to Mr. Howe, as well as his work-product assessment of that information.  And when he preferred Mr. Howe as a fact witness to discuss his damages, he waived privilege as to the methods and sources by which Mr. Howe obtained that information.  For all these reasons, the City Defendants respectfully ask the Court to grant the motion, define the scope of the waiver, and order Mr. Howe to appear for a second deposition.

Respectfully submitted,

/s/ Aaron D. Epstein
Aaron D. Epstein (0063286) – Lead
Alana V. Tanoury (0092265)
Sarah N. Feldkamp (0099464)
David J. Dirisamer (0092125)
Assistant City Attorneys
CITY OF COLUMBUS, DEPARTMENT OF LAW
77 N. Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
adepstein@columbus.gov
avtanoury@columbus.gov
snfeldkamp@columbus.gov
djdirisamer@columbus.gov
*Counsel for Defendants*
*Brenda Walker and the City of Columbus*

**CERTIFICATE OF SERVICE**

On May 8, 2025, I served a copy of the foregoing via the Court's CM/ECF system upon

all parties of record.

/s/ Aaron D. Epstein<br>Aaron D. Epstein