THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Richard Horton,<br><br>       Plaintiff,<br><br>   v.<br><br>City of Columbus, et al.,<br><br>       Defendants. | Case No. 2:23-cv-3888<br><br>Judge Algenon L. Marbley<br><br>Magistrate Judge Elizabeth Preston Deavers |

**DEFENDANTS CITY OF COLUMBUS AND BRENDA WALKER'S RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

**I.**    **INTRODUCTION**

Detective Brenda Walker and the City of Columbus ("the City Defendants") propounded discovery requests related to Plaintiff Richard Horton's economic damages and income flow. Plaintiff either provided no documents, as is the case with his W-2s, or provided information that was later found to be incomplete. Therefore, in order to assess Plaintiff's claim of economic loss, the City Defendants served a subpoena on Huntington Bank for Mr. Horton's bank records, to see the actual amount of income flowing to him. Huntington Bank has not opposed the subpoena as unduly burdensome and has in fact supplied the requested documents.[1]

However, Plaintiff has filed a motion to quash the subpoena, arguing that the materials are needlessly duplicative. As explained below, the records are not duplicative of information the City Defendants already possess. For this reason, the Court should deny the Motion for a Protective Order.

---

[1] Counsel for the City Defendants has honored its promise not to open or review the records until the Court resolves the current motion.

## II. RELEVANT BACKGROUND

The parties have engaged in extensive discovery befitting the scope and scale of the Plaintiff's remaining seven-count case.

*Interrogatory 9*

Interrogatory 9 of the City Defendant's first set of discovery requests asked Plaintiff to state all money damages he sought from Defendants. PLAINTIFF'S FIRST DISCOVERY RESPONSE, attached as Ex. A, pgs. 10-12. Plaintiff objected and did not provide a calculation, but as part of his nearly two-page explanation, stated

> Plaintiff states that he held employment before he was wrongfully arrested and framed for crimes he did not commit. During the decades of wrongful imprisonment that followed his arrest, Plaintiff was denied the opportunity to continue working, or to pursue other employment and gain meaningful wages. He was not able to rise within his profession, and he missed out on the opportunity to develop professional skills. Defendants' misconduct also deprived Plaintiff of the opportunity to pursue further education. Plaintiff cannot presently quantify the extent of or provide a calculation of the total lost wages that Defendants' misconduct caused him, and he intends to ask the jury to calculate his total lost wages, likely with the assistance of expert witnesses.

*Id.* at 10-12.

On October 9, 2024, Plaintiff responded to the City's second set of discovery requests. PLAINTIFF'S SECOND DISCOVERY RESPONSES, attached as Ex. B.

*Interrogatory 22*

The City requested in Interrogatory 22 all of Mr. Horton's employers, whether as an employee or independent contractor, the dates he worked for each, his job title, and his rate of pay. *Id.* at pgs. 9-10. Plaintiff objected, but provided seven employers from 1998 to present. *Id.* at pg. 10. He did not provide any rates of pay. *Id.* After receiving this incomplete information, on October 11, 2024, Defendants issued subpoenas to the three most recent employers Plaintiff

identified. EMPLOYER SUBPOENAS, attached as Ex. C. Two provided documents, but the third ultimately had no responsive records. A week later, on October 16, 2024, Defendants sent an email setting forth Plaintiff's discovery deficiencies. DEFENDANTS' DEFICIENCIES LETTER, attached as Ex. D. Plaintiff responded about two weeks later on November 1, 2024, with additional objections. PLAINTIFF'S RESPONSE TO DEFENDANTS' DEFICIENCIES LETTER, attached as Ex. E. Specifically regarding Interrogatory #22, Plaintiff explained he did not remember how much he was paid by his employers and that the subpoenas issued to the employers by the City Defendants should capture this information. *Id.* at pg. 3. However, Plaintiff's responses never identified any income for paid appearances at universities and other fora on behalf of the Ohio Innocence Project.

However, during Mr. Horton's December 19, 2024, deposition, he admitted that he gets paid to speak on behalf of the Innocence Project by the hosting venues. HORTON DEP., at 316-317. He testified that in the last three years, he has spoken at the Ohio State University, the University of Toledo, Ohio University, the University of Illinois, Dayton College, and the University of Cincinnati, some of them twice. *Id.* at 317. He further testified that each school paid him about $250-$350. *Id.* at 318. Although they would have been responsive, these speaking engagements were not mentioned in Plaintiff's response to Interrogatory 22.

The City Defendants have served subpoenas on these and other universities, looking for payment records. But given the discrepancy between the interrogatory responses and Mr. Horton's testimony, the City Defendants have no confidence that they are aware of all the locations where Mr. Horton gave speeches for a fee. Because the City Defendants know the amount of the speaking fee per appearance, a review of the bank records will give a more definite picture of Mr. Horton's income from these sources.

3

*Production Request 51*

The City Defendants requested that Plaintiff produce copies of his W-2s for 2000-2004 and 2022-2023.  Ex. B at pg. 16.  Plaintiff responded that this request was unduly burdensome, overly broad, disproportionate to the needs of the case, and infringed upon his privacy interest.  *Id*.  Plaintiff instead offered to produce paystubs.  *Id.*  In their deficiencies letter, the City Defendants explained that the paystubs would be relevant to other requests but would not substitute for W-2s, as there is additional relevant information W-2s that is not on paystubs.  Ex. D at pg. 3.  Plaintiff renewed his objections and again offered to produce paystubs.  Ex. E at pgs. 4-5.  In the end, the City Defendants had to subpoena the employers for pay stubs, and the W-2s were never produced from any source.

*Production Request 52*

Request 52 read, "Produce your bank account records from January 1, 2022 to present."  Ex. B at pg. 16.  As with Request 51 for Plaintiff's W-2s, Plaintiff objected that this request was unduly burdensome, overly broad, disproportionate to the needs of the case, and infringed upon his privacy interest.  *Id*.  In their deficiency letter, the City Defendants explained that this information was relevant to Mr. Horton's purported damages, which allegedly include lost wages, by reflecting all sources of Mr. Horton's income upon his release from prison.  Ex. D at pgs. 3-4.  Defendants also offered to consider limiting the time period.  *Id.* at pg. 3.  Plaintiff reiterated and expanded upon his previous arguments and stated that he could not comply with the request without compromising his privacy rights unnecessarily.  Ex. E at pg. 5.

On November 5, 2024, Defendants issued a subpoena to Plaintiff's bank.  BANK SUBPOENA, attached as Ex. F.  Two days later, Plaintiff's counsel again objected, reiterating their objections to the document production request.  EMAIL EXCHANGE ABOUT BANK SUBPOENA,

4

attached as Ex. G at pgs. 3-4. That same day, Defense counsel responded that they were "genuinely unclear what information the bank records could contain that is *not* germane to this case or that could infringe on Mr. Horton's privacy interests," and offered to schedule a time to talk, which the parties did. *Id.* at pgs. 2-3. Plaintiff's counsel responded the next week, raising the same arguments now reiterated in Plaintiff's motion to compel. *Id.* at 1-2.

In Mr. Horton's December deposition, he testified that he has a bank account at KEMBA in his name, a mortgage through U.S. Bank in his name, and a bank account at Huntington where he deposits his paychecks that is jointly held with Jannette Horton. HORTON DEP., at 316.

### III. LAW AND ARGUMENT

#### A. Standard of Review.

Courts have wide discretion to balance the parties' interests in discovery. *Goldblum v. Univ. of Cincinnati,* 62 F.4th 244, 256 (6th Cir. 2023) citing *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008). When a moving party seeks a protective order to preclude discovery demanded by a third-party subpoena, the party must show good cause resulting from one of the harms identified in Civil Rule 26(c)(1): annoyance, embarrassment, oppression, or undue burden or expense. *See Hi-Vac Corp. v. Coley*, No. 2:23-cv-4184, 2025 U.S. Dist. LEXIS 12902, at *10-11 (S.D. Ohio Jan. 24, 2025); Fed. R. Civ. P. 26(c)(1). To demonstrate good cause, the moving party cannot rely on merely conclusory statements, but must instead show clearly defined prejudice or harm that will result in serious injury resulting from the discovery sought. *Id.* at *11.

#### B. There is no inherent privacy right to financial information.

Courts, including this Court, have recognized that "[t]here is no inherent privacy right in financial information[.]" *Id.* at *9 citing *PCA-Corrections, LLC v. Akron Healthcare LLC*, No.

1:20-cv-428, 2021 U.S. Dist. LEXIS 96737, at *12 (S.D. Ohio May 21, 2021) quoting *Simonoff v. Saghafi*, No. 1:17 CV 2574, 2018 U.S. Dist. LEXIS 251427, at *5 (N.D. Ohio May 18, 2018); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 575 (6th Cir. 2002).[2] Like Plaintiff here, one defendant in *Hi-Vac Corp. v. Coley* objected to the disclosure of his bank accounts held jointly by himself and his non-party wife and children. *Id.* at *13. However, those privacy concerns were insufficient to quash the subpoena. *Id.* at *15. Similarly, this Court should deny Plaintiff's request for a protective order that completely prohibits Defendants from using and disclosing these records.

Civil Rule 45 contains a confidentiality provision to quash a subpoena. Fed. R. Civ. P. 45(d)(3)(B)(i). The rule contains protections for "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Confidential commercial information is defined as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from who the information was obtained." *Anderson v. Old Nat'l Bancorp*, No. 5:02-CV-00324-R, 2010 U.S. Dist. LEXIS 138629, at *10 (W.D. Ky. Dec. 28, 2010). Plaintiff is not asserting damages to a competitive position, and therefore he cannot rest his protective order motion on Civil Rule 45.

Nevertheless, recognizing that an individual's financial information is sensitive—but not a fundamental right—courts have sometimes required protective orders (or spoken approvingly of such agreements) to prevent disclosure of the information to unapproved parties or for purposes unrelated to the litigation. *See, e.g., Simonoff v. Saghafi*, No. 1:17 CV 2574, 2018 U.S. Dist.

---

[2] Plaintiff cites only one decision in support of his claim that courts have recognized a substantial privacy interest in the disclosure of financial records, *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 822 (6th Cir. 2015). However, that case actual holds the opposite, that there is no fundamental right to privacy in one's financial affairs and that the plaintiff made "no attempt to show that his alleged privacy right in his personal financial affairs is 'implicit in the concept of ordered liberty.'" *Id.* at 823.

6

LEXIS 251427, at *4-6 (N.D. Ohio May 18, 2018) (requiring the parties to draft a mutually agreeable protection order); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 U.S. Dist. LEXIS 189646, at *9 (E.D. Mich. Aug. 13, 2013) (suggesting an adequate protection order should be paired with sensitive financial information); *Hi-Vac Corp.* at *15 (noting that privacy concerns are lessened when there is a protective order in place).  A protective order to protect against the unnecessary disclosure of confidential information is already in place in this case.  PROT. ORD., ECF No. 32, PAGEID # 245.  Therefore, Plaintiff's privacy concerns are lessened and his request for a protective order preventing Defendants from using the banking information should be denied.

        **C.**        **This discovery is relevant and benefits the City Defendants.**

The scope of discovery allows for discovery of any nonprivileged matter that is relevant to any party's claim or defense, and proportionate to the needs to the case; discovery does not need to be admissible to be discoverable.  Fed. R. Civ. P. 26(b)(1).

In *Serrano v. Cintas Corp*, the Sixth Circuit quoted *8A Charles Alan Wright & Arthur R. Miller et. al.* stating "To justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and . . . these limits grow more formidable as the showing of need decreases.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012).  The Court continued the quote "Thus even very slight inconvenience may be unreasonable *if there is no occasion for the inquiry and it cannot benefit the party making it*." [emphasis added] *Id.* at 901 (6th Cir. 2012).  Thus, "slight inconvenience" alone is not enough to justify restricting discovery; instead, this concept comes into play when there is no basis for the inquiry and the discovery request "cannot benefit the party making it."

### i. This discovery is relevant, benefits the City Defendants, and is different from what was previously obtained, so it is not cumulative.

The information Plaintiff already provided is relevant for economic damages and income flow, but incomplete. *See Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 267 (E.D. Mich. 2007).

First, Plaintiff's First Amended Complaint details in paragraphs 118 and 119 that

> 118. As a result of his wrongful conviction and incarceration, Plaintiff must now attempt to rebuild his life outside of prison, all without the benefit of the life experiences that ordinarily equip adults for such a task.
>
> 119. In addition to causing the severe trauma of Plaintiff's wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, fear, anxiety, depression, despair, and other physical and psychological effects.

AM. COMPL., ECF No. 17, ¶¶ 118, 119. Both paragraphs allege continuing and future damages and because each of Plaintiff's remaining counts fully incorporate each paragraph of the Complaint, these paragraphs are incorporated into each claim. Each remaining count additionally alleges "continuing injuries and damages as set forth above." *Id.* at ¶¶ 120, 127 (Count 1 - § 1983 Due Process); ¶¶ 129, 135 (Count 2 - § 1983 Deprivation of Liberty without Probable Cause); ¶¶ 137, 141 (Count 3 - § 1983 Failure to Intervene); ¶¶ 143, 147 (Count 4 - § 1983 Conspiracy to Deprive Constitutional Rights); ¶¶ 149, 154 (Count 5 – State Law Malicious Prosecution); ¶¶ 155, 157 (Count 6 – State Law Intentional Infliction of Emotional Distress); and ¶¶158, 163 (Count 7 – State Law Civil Conspiracy).

Furthermore, in Plaintiff's response to Defendants' Ninth Interrogatory, Plaintiff stated that he intends to seek lost wages based on his inability to continue working, or to rise through his profession, or pursuing other employment and meaningful wages, or developing other professional

skills. Ex. A at pg. 12. Therefore, the requested financial information goes to the extent Plaintiff has rebuilt his life, the extent he is equipped to fulfill adult tasks, the extent his is presently obtaining other employment and meaningful wages, and his financial damages.

Plaintiff has declined to provide any damages calculations, declined to provide W-2s, and declined to provide wage information from past employers. Defendants had to seek that information directly from Plaintiff's past employers and have not been able to close every gap. Defendants still do not know the full extent of Plaintiff's theory of damages and under the current trial schedule, discovery closes the same day primary expert disclosures are due. Thus, the information obtained in Plaintiff's bank records is relevant to his damages claims. It has the potential to reveal new information that the City Defendants were unable to obtain through discovery requests to Plaintiff or through the other subpoenas, and thus, it would not be cumulative.

    ii.    **The discovery is not disproportionate.**

In *Popeck v. Rawlings Co. LLC,* the defendants issued five subpoenas for seven years of banking and gaming records, which began a full three years before the event at issue. *Popeck v. Rawlings Co. LLC,* No. 3:16-CV-138-GNS, 2017 U.S. Dist. LEXIS 238701, at *20 (W.D. Ky. Apr. 5, 2017) (hereinafter referred to as *Popeck I).* The defendants sought the information to "double check her credibility" but had no underlying factual examples to connect the plaintiff to abusing her disability leave to gamble. *Popeck I* at *5, 21. The plaintiff objected that this was a fishing expedition and done in an effort to put her character on trial. *Popeck I* at *3, 22. The records sought would not prove that the plaintiff was gambling, just that someone using her card was doing so. *Popeck I* at *21. The court agreed with the plaintiff and issued a protective order due to:

> (1) the extreme overbreadth of the time period of records sought; (2) the absence of any factual basis to presently suggest that Popeck was

9

> secretly gambling when away on disability-related leave; (3) the inability of the banking and gaming records to meaningfully establish the underlying question for which such records are purportedly sought; (4) the substantial possibility of unfair prejudice to the Plaintiff through the repeated introduction of minimally relevant gaming records; and (5) the failure of the Defendants to show that the requested discovery is proportional to the needs of the case considering its minimal relevance to the central issues in the present action

*Popeck I* at *24.

The case proceeded, and two months later the court issued another discovery order. This time, the defendants sought permission to send revised subpoenas, which the court ultimately granted. *Popeck v. Rawlings Co. LLC*, No. 3:16-CV-138-GNS, 2017 U.S. Dist. LEXIS 238702, at *21 (W.D. Ky. June 21, 2017) (hereinafter referred to as *Popeck II*). This second set consisted of two subpoenas, down for the original five, and which requested information from one year, rather than the seven years initially requested. *Popeck II* at *13. These subpoenas requested three things:

> (1) all monthly bank statements for accounts individually or jointly owned by Adrian Popeck;
> (2) all automated teller machine (ATM) or point-of-sale (POS) transaction records that reflect the date, time, and location for each POS or ATM transaction for any withdrawals at the Horseshoe Casino and Belterra Casino for all accounts individually or jointly owned by Adrian Popeck; and
> (3) all documents that reflect any claims of fraud, identity theft or unauthorized transactions for all bank accounts individually or jointly owned by Adrian Popeck

*Popeck II* at *13-15. The defendants argued that the factual basis these requests were tied to was (1) the discovery of a month-long bank statement showing bank withdrawals during a time she had emailed her supervisor about taking FMLA and (2) that her financial records were relevant to determining if the plaintiff's emotional distress could be attributed to a bankruptcy caused by her

10

own making. *Popeck II* at *16-18. This time the court agreed with the Defendants because the requests were (1) substantially narrower, (2) reasonably limited to a single year, and (3) tied to the evidence of the bank statement that provided additional bolstering for their defense. *Popeck II* at *19. Therefore, the court found "[t]hus, we are not faced with the same type of extreme overbreadth, or the absence of a factual basis, that created the possibility of unfair prejudice and disproportionate discovery that originally led to our April 6 Order." *Popeck II* at *18-19.

The one subpoena at issue here also lacks the extreme overbreadth and absence of factual basis that characterized the *Popeck I* discovery dispute. First, it is one subpoena to one institution, rather than the seven at issue in *Popeck I*. Defendant has not sought Plaintiff's mortgage information, or his KEMBA bank account, but only the account he has testified he makes his direct deposits into. Second, the subpoena's timeframe was for January 14, 2022, to the present with a compliance date of November 25, 2024, so it was seeking information for a period just short of two years, a far cry from the seven years sought in *Popeck I*. Third, the subpoena dates to the beginning of Plaintiff's release from prison, unlike the years prior that were in the case in *Popeck I*.

And like in the *Popeck II* dispute, Plaintiff has claims for emotional distress, including a count specifically for the intentional infliction of emotional distress. Money issues, if relevant, do play into an individual's emotional distress. If Plaintiff has money trouble, this information could provide an alternative explanation for at least some of Plaintiff's emotional distress. And on the other hand, Plaintiff also alleges that he has to rebuild his life, without the benefit of adult life experience. He alleges that he has been denied the ability to rise within his profession and gain meaningful wages. His banking information is directly relevant to how successful he has been in rebuilding that life. If he is not having money trouble, then he has been at least successful in the financial aspect of rebuilding a life.

11

### D. Plaintiff fails to meet his heavy burden of demonstrating by specific evidence one of the protective order harms required by Civil Rule 26(c)(1).

"Because entry of a protective order is contrary to the basic policy in favor of broad discovery," a moving party bears "a heavy burden to make a strong showing why discovery should be denied." *Cook v. Nation Express, LLC*, No. 3:20-cv-77, 2021 U.S. Dist. LEXIS 272608, at *3 (S.D. Ohio Feb. 18, 2021) quoting *UPS Co. v. DNJ Logistic Grp., Inc.,* No. 3:16-CV-00609-GNS, 2018 U.S. Dist. LEXIS 112961, at *30 (W.D. Ky. Apr. 16, 2018). This showing requires a moving party to articulate particular and specific facts about serious harm relating to one or more of the harms identified in Civil Rule 26(c)(1)(A). *See Hi-Vac Corp. v. Coley*, No. 2:23-cv-4184, 2025 U.S. Dist. LEXIS 12902, at *11 (S.D. Ohio Jan. 24, 2025). The rule lists four harms: (1) annoyance, (2) embarrassment, (3) oppression, and (4) undue burden or expense. Fed. R. Civ. P. 26(c)(1). Plaintiff's argument contains three arguments with two subparts:

> I. The discovery sought is not relevant to any party's claims or defense
>    a. Plaintiff's bank records are not relevant
>    b. The only potentially relevant discovery sought is duplicative
> II. The discovery sought is disproportionate to the needs of the case
> III. The discovery sought infringes upon the privacy rights of plaintiff and his wife.

None of these arguments are centered on one of the four reasons a protective order may be issued. And the harms Plaintiff articulates sound in privacy violations, but, as addressed above, there is no inherent privacy right in financial information. Therefore, Defendants request that this Court find that Plaintiff has failed to carry his heavy burden.

Nevertheless, Plaintiff peppers these concepts within his argument. Plaintiff's motion states that the subpoena is intrusive, which is another privacy concern, as addressed above. PTF. MOT. PROT. ORD. MEMO IN SUPPORT, ECF NO. 71-1, PAGEID 2489-90. Plaintiff also makes the conclusory statement that "Plaintiff and his wife would suffer embarrassment and harm from having their personal financial situation and decisions over more than a three year period disclosed

to the very parties that them so much pain." *Id.* at 2490. And Plaintiff further argues "[a]llowing such discovery would set a dangerous precedent, chilling access to justice for wrongfully convicted individuals by exposing them to intrusive, irrelevant inquires." *Id.* Lastly, Plaintiff states "Plaintiff and his wife should not be forced to disclose intimate details about their spending habits, purchases, donations, or personal financial matters that bear no relationship to Plaintiff's claims." *Id.* These conclusory statements fail to carry Plaintiff's heavy burden. Plaintiff has provided no specific examples and has attached no affidavits or other evidence.

Lastly, only the entity responding to the subpoena has standing to assert an undue burden argument. *Hi-Vac* at *16 (S.D. Ohio Jan. 24, 2025) citing *Covert Mfg., Inc. v. Covert Innovations*, LLC., No. 1:21-CV-1682-DAR, 2024 U.S. Dist. LEXIS 38992, at *3 (N.D. Ohio Mar. 1, 2024). Here, Huntington has already produced the files and Defendants are abstaining from reviewing them until this issue is decided by the Court. Therefore, Defendants request that the Court deny Plaintiff's request for a protective order.

**III.    Conclusion**

In light of the protective order already in place, Plaintiff's lack of a fundamental privacy right, and the relevance and usefulness of these documents, Defendants ask the Court to decline to issue an order completely precluding Defendants from using or further disseminating Plaintiff's bank records as Plaintiff requests.

Respectfully submitted,

/s/ Aaron D. Epstein
Aaron D. Epstein (0063286) – Lead
Alana V. Tanoury (0092265)
Sarah N. Feldkamp (0099464)
David J. Dirisamer (0092125)
Assistant City Attorneys
CITY OF COLUMBUS, DEPARTMENT OF LAW
77 N. Front Street, Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
adepstein@columbus.gov
avtanoury@columbus.gov
snfeldkamp@columbus.gov
djdirisamer@columbus.gov
*Counsel for Defendants*
*Brenda Walker and the City of Columbus*

## CERTIFICATE OF SERVICE

On May 9, 2025, I served a copy of the foregoing via the Court's CM/ECF system upon all parties of record.

/s/ Aaron D. Epstein
Aaron D. Epstein