**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD HORTON, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 23-cv-3888 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | |
| CITY OF COLUMBUS, Columbus Division | ) | Magistrate Judge Elizabeth P. Deavers |
| of Police Officers BRENDA K. WALKER | ) | |
| (Badge #1176), MIEKO SIAS as personal | ) | **JURY TRIAL DEMANDED** |
| representative of the ESTATE OF SAM SIAS | ) | |
| (Badge #1871), and AS-YET UNKNOWN | ) | |
| COLUMBUS POLICE OFFICERS, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION**
**FOR ENTRY OF A PROTECTIVE ORDER (DKT. 71)**

## INTRODUCTION

Defendants' response to Plaintiff's motion for a protective order of his private banking records rests on overbroad characterizations of case law that do not reflect the factual and procedural context of this case. And, contrary to Defendants' assertion, the law does recognize and protect the privacy interests implicated by compelled disclosure of personal financial information—particularly where it concerns nonparties such as Plaintiff's spouse. Courts have consistently guarded against unfettered access to such private records, especially when the relevance is marginal, the discovery is cumulative, or the potential for embarrassment, undue burden, and intrusion outweighs any alleged probative value.

Plaintiff's bank records are not relevant to any claim or defense in this wrongful conviction lawsuit. Defendants already possess the materials necessary to assess Plaintiff's post-release earnings through extensive employment- and income-related discovery. Their request to inspect Plaintiff's entire financial life—including his wife's—serves no legitimate purpose and would amount to a fishing expedition explicitly disfavored by Rule 26 and well-settled precedent. As such, Plaintiff respectfully requests this Honorable Court grant his motion for a protective order.

## ARGUMENT

### I. The Discovery Sought is Cumulative and Disproportionate to the Needs of the Case

Defendants attempt to justify their demand by arguing that Plaintiff has placed his financial condition at issue. Dkt. 76 at 8-9. But Plaintiff's claims for general damages and loss of income do not render every aspect of his post-release financial life fair game. Courts routinely hold that discovery must be "proportional to the needs of the case," and should not be used to troll for information when other, less intrusive means are available. *See* Fed. R. Civ. P. 26(b)(1); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012); *Omokehinde v. Detroit Bd. of Educ.*,

251 F.R.D. 261, 267 (E.D. Mich. 2007); *Popeck v. Rawlings Co. LLC*, No. 3:16-CV-138-GNS, 2017 WL 11725427, at *6 (W.D. Ky. Apr. 6, 2017).

In truth, Defendants already have the discovery they seek. Defendants have already received wage and employment information and have had the opportunity to conduct ample discovery into such topics. Defendants have issued subpoenas to every employer Plaintiff has had since 1998 for his wage information—including every job he worked while incarcerated and since being released. *See* Ex. A (Plaintiff's November 7, 2024 Supplemental Discovery Responses); Ex. B (Employment Subpoenas). Defendants have also issued a subpoena to every single university where Plaintiff had a speaking engagement (as someone who was wrongfully convicted), or his wife did (as the spouse of someone who was wrongfully convicted). Ex. C (University Subpoenas). Further, Plaintiff gave fulsome testimony on those speaking engagements and the money he received for them during his deposition. Dkt. 62-1 at 316-18. Defendants have also subpoenaed the Ohio Innocence Project for any financial information they have pertaining to Plaintiff's speaking engagements. Ex. D (OIP Subpoenas). There is no information that Defendants can be seeking pertaining to Plaintiff's income since being released from incarceration that has not already been attained.

Further, Defendants' claim that "Plaintiff has declined to provide any damages calculations, declined to provide W-2s, and declined to provide wage information from past employers" is pure sophistry. First, Plaintiff testified extensively to his damages during his deposition, *see generally* Dkt. 62-1, and in response to written discovery, *see* Ex. E (Plaintiff's Responses to Defendant City's First Set of Discovery Requests) at 10-13 & Ex. F (Plaintiff's Responses to Defendant City's Second Set of Discovery Requests) at 6-8, 10; has disclosed many damages witnesses (all of whom have been, or soon will be, deposed); and has provided a

3

settlement demand as part of mediation that lays out his damages. Second, Plaintiff has produced everything within his possession pertaining to this case and Defendants' discovery requests. He cannot produce something he does not have, regardless of whether it is something Defendants wish they had or not. He is not intentionally withholding any W-2s. Third, Plaintiff has explicitly identified the wages he received for every job he has held since 1998 in written discovery—including while incarcerated.[1] Ex. A.

Defendants also state that "Plaintiff's responses never identified any income for paid appearances at universities and other fora on behalf of the Ohio Innocence Project," which is also inaccurate.[2] Plaintiff testified at length in his deposition about the speaking engagements he conducted and included wage information for those engagements in his responses to Defendants interrogatories. Dkt. 62-1 at 316-18; Ex. A at 4.

Plaintiff does not dispute that the wage information for jobs he has held is discoverable. What is at issue is the plethora of private financial information that will be contained in his and his wife's banking records that has nothing to do with this case, and the limited entries that are income deposits are duplicative and cumulative. Defendants state that they have had to seek such wage information from Plaintiff's past employers and have "not been able to close every gap," but that is the very nature of discovery. That does not justify a fishing expedition into Plaintiff's private life that falls outside the parameters of any claim or defense in this lawsuit.

Defendants also attempt to justify such a broad subpoena by stating they "still do not know the full extent of Plaintiff's theory of damages." It is unclear how Plaintiff's banking information,

---

[1] This is one of several examples where the Defendants' response omits certain relevant happenings in discovery. In this instance, Defendants ignore in their brief that Plaintiff made a supplemental response to Defendant City's Second Set of Discovery Requests on November 7, 2024 that—among other things—provided nearly 30 years' worth of employment history and wage information for those jobs. Ex. A.
[2] This appears to also stem from the omission of Plaintiff's November 7, 2024 supplemental responses.

4

and that of his wife since the account is joint, from the last three years will elucidate that. Further, considering discovery has been ongoing for over a year, extensive discovery has been completed into Plaintiff's damages—including depositions and several rounds of written discovery, and Defendants are represented by experienced counsel who have been actively litigating the case, it is difficult to see how that is true.

Put simply, Defendants' current request for full banking records is duplicative and seeks to fill speculative gaps rather than pursue well-founded lines of inquiry. The speculation that Plaintiff's financial records might reveal inconsistencies is not sufficient under Rule 26 or the Sixth Circuit's standard in *Serrano*, 699 F.3d at 901, which plainly cautions against allowing even minor intrusions where there is no real prospect of material benefit to the case. Defendants' desire to "double check" the financial information provided by Plaintiff and his employers by sweeping up three years of joint financial records—without identifying any inconsistencies or gaps—is plainly improper and serves no legitimate discovery goal.

## II. Defendants Misstate the Nature of Privacy Rights in Financial Information

Defendants assert broadly that there is "no inherent privacy right" in financial information, citing *PCA-Corrections* and similar cases. Dkt. 76 at 5-6. This proposition, however, ignores the critical caveat embedded in the very cases they cite: courts routinely condition access to such information on the presence of strong relevance, narrow tailoring, and adequate protective measures. *See PCA-Corr., LLC v. Akron Healthcare LLC,* No. 1:20-CV-428, 2021 WL 2043118, at *5 (S.D. Ohio May 21, 2021); *Simonoff v. Saghafi,* No. 1:17 CV 2574, 2018 WL 11306069, at *2 (N.D. Ohio May 18, 2018).

Further, the cases Defendants cite are evaluating financial information privacy *under Fed. R. Civ. P. 45 instead of Fed. R. Civ. P. 26.*[3] While it is true that Rule 45 allows a court to quash a subpoena that seeks confidential business information—which then has a string of case law to interpret the terminology—the standard is different for a Rule 26 protective order. Rule 26 aims to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The analysis then of disclosure of financial information is different. And while the case Plaintiff cited in his motion for a protective order, *Moore v. WesBanco Bank, Inc.*, does ultimately find that an individual does not have a fundamental due process right to privacy in her financial information, ***there is still a substantial interest in preventing disclosure of private financial affairs***. 612 F. App'x 816, 822 (6th Cir. 2015). Such is also acknowledged in the case law cited by Defendants. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 575 (6th Cir. 2002).

Courts have repeatedly rejected this overreach where wage and employment records are already available. As the court explained in *Omokehinde v. Detroit Board of Education*, banking records are "much less relevant" than wage and tax documents and "likely contain a great deal of personal information . . . that has no relevance whatsoever to this case." 251 F.R.D. at 267. The same is true here. Plaintiff's banking records do not relate to the underlying constitutional violations from 2004. Nor are they necessary to calculate damages stemming from those violations. Defendants have already subpoenaed every entity that has provided Plaintiff with a paycheck in the last nearly 30 years which is certainly sufficient to elucidate a comprehensive view of Plaintiff's post-release income. Bank records add nothing material to that picture. If they reveal

---

[3] There are references in Defendants' response to Plaintiff having filed a "motion to quash," "motion to compel," or seeking relief under Fed. R. Civ. P. 45. Dkt. 76 at 1, 5-6. For clarity, Plaintiff reiterates that he seeks relief under Fed. R. Civ. P. 26(c).

anything at all, it would be private and irrelevant details—purchases, donations, or account transfers—none of which bear on damages.

Defendants' invocation of offset or mitigation defenses is similarly unavailing. Whether Plaintiff has succeeded or struggled financially since his release does not negate the damage inflicted by his wrongful conviction. Further, Defendants' contention that Plaintiff having money troubles as potentially being the true explanation for Plaintiff's emotional distress does not find support in the history or record of this case. Regardless, financial post-release activity is not a measure of liability or a valid defense to emotional or liberty-based harm.

No case Defendants cite supports the notion that disclosure of one's private banking records is insufficient grounds for issuance of a protective order. The *Popeck v. Rawlings Co. LLC* decisions, relied on by Defendants, reinforce Plaintiff's position. In *Popeck I*, the court issued a protective order due to lack of relevance, absence of factual basis, and overbreadth. Although *Popeck II* later allowed a narrower subpoena, it did so based on evidence suggesting the records were tied to potential fraud and bankruptcy concerns relevant to the emotional distress claim. In contrast, Defendants here have provided no such factual basis. They point only to generic damages language in the complaint and vague references to "rebuilding a life." Dkt. 76 at 8, 11. There is no allegation or evidence that Plaintiff is concealing income, exaggerating distress, or misrepresenting his financial situation.

Moreover, unlike *Popeck II*, the subpoena here targets joint accounts shared with Plaintiff's spouse—who is a nonparty—and contains no safeguards to limit disclosure of irrelevant and intimate financial decisions, such as family purchases, donations, or medical expenses. Defendants cite *Hi-Vac Corp. v. Coley* as an example of an instance where a court allowed discovery into a nonparty's financial information to justify the same here. However, the analysis from *Hi-Vac* is

7

inapposite here. First, the nonparty in that instance was the defendant's wife *who was also personally liable for the conduct at issue in the case*. *Hi-Vac Corp. v. Coley*, No. 2:23-CV-4184, 2025 WL 286490, at *4–5 (S.D. Ohio Jan. 24, 2025). Such is not the case here. Further, the defendants' bank records directly pertained to the fraud and civil racketeering charges being brought against him. *Id.* Plaintiff's banking records do not have the same connection here.

### III. The Current Protective Order is Insufficient to Safeguard Privacy Interests

Defendants argue that the model protective order entered in this case, Dkt. 32, renders further relief unnecessary. This misstates the nature of the harm. The concern is not merely downstream dissemination, but the initial disclosure of highly personal and irrelevant information to Defendants—especially where the information concerns a nonparty spouse and includes details far beyond any legitimate inquiry into income, assets, or earning capacity. That order governs treatment of materials *after* they are produced. It does not address the far more serious concern here: the unnecessary and intrusive production itself. Courts routinely issue specific protective orders to prevent the production of private materials where, as here, the relevance is slight and the burden severe. See *Popeck I*, No. 3:16-CV-138-GNS, 2017 WL 11725427, at *6.

Defendants fail to meaningfully address the unique privacy interests implicated here, particularly as to Plaintiff's wife. The Sixth Circuit has recognized that while financial records may not enjoy a fundamental constitutional privacy right, they still implicate substantial interests. See *Moore*, 612 F. App'x at 822. This interest is amplified when third parties are involved, and when the documents sought contain details of daily life—spending habits, purchases, donations— bearing no connection to any legal claim or defense.

Subjecting Plaintiff and his wife to such a search—especially at the hands of the same institutions that devastated their lives—is not only unjustified, it is punitive. It sends a chilling

message to others who might seek redress for wrongful convictions: prepare to have every aspect of your post-release life scrutinized and exposed, no matter how remote from the legal issues in the case.

### IV. Plaintiff Has Demonstrated Specific Harms Warranting Protection

Defendants claim Plaintiff has not made a "strong showing" of harm, but ignore the clear articulation in the motion of the specific forms of embarrassment, intrusion, and nonparty harm that will result. Plaintiff and his spouse face disclosure of sensitive personal decisions to the very actors responsible for Plaintiff's original injury. Courts routinely grant protective orders in similar cases even absent affidavits, particularly where the nature of the records is self-evidently sensitive and the relevance speculative. *See Popeck I*, No. 3:16-CV-138-GNS, 2017 WL 11725427, at *6.

### CONCLUSION

Defendants' attempt to gain unfettered access to Plaintiff's private financial records—particularly those shared with his spouse—is unsupported by the facts and out of step with governing legal standards. The discovery is duplicative, disproportionate, and premised on speculation rather than need. Plaintiff respectfully requests that this Court grant his motion for a protective order to prevent further use or dissemination of the banking records in question.

RESPECTFULLY SUBMITTED,

/s/ Michele Berry
*One of Plaintiff's Attorneys*

Michele L. Berry (0018939)
THE LAW OFFICE OF MICHELE BERRY, LLC
114 East 8th Street
Cincinnati, OH 45202
Tel: 513.919.5315
Fax: 513.376.8752
mberry@mberrylaw.com

Jon Loevy
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

9

## CERTIFICATE OF SERVICE

I, Alyssa Martinez, an attorney, certify that a copy of the foregoing was filed electronically on May 30, 2025 by using the Court's CM/ECF System, and that notice of this filing was sent that same day to the other parties to this case by operation of the Court's CM/ECF System.

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*