IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD HORTON,**

    **Plaintiff,**

v.

**CITY OF COLUMBUS,** *et al.*,

    **Defendants.**

Case No. 2:23-cv-3888
Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on two formal discovery motions, both of which are now fully briefed. The first motion, filed by Defendants City of Columbus and Brenda Walker, is a Motion to Compel. (ECF Nos. 64, 73, 74, 75.) The second motion, filed by Plaintiff Richard Horton, is a Motion for a Protective Order. (ECF Nos. 71, 76, 81, 99.) Further, this Order resolves an issue raised in the parties' separate letter briefing relating to Plaintiff's counsel's representation agreement, submitted to the Court for *in camera* review. For the following reasons, the Motion to Compel and the Motion for a Protective Order are both **DENIED.** Further, upon the Court's *in camera* of the representation agreement, the Court will not order its disclosure.

**I.**

Briefly, for background, Plaintiff was convicted in February 2006 of a home-invasion robbery and sentenced to a 23-year prison term. In 2018, Brian Howe of the Ohio Innocence Project ("OIP"), a student-involved clinic at the University of Cincinnati College of Law, assumed Plaintiff's representation and sought a new trial. In 2022, Plaintiff's convictions were

vacated. Plaintiff was released from prison in January 2022. The charges against him were dropped in 2023. Plaintiff filed the current action on November 20, 2023, asserting constitutional violations arising from his alleged wrongful arrest, conviction, and imprisonment.

## II.

### A. Defendants' Motion to Compel

Defendants seek an order compelling third-party witness Brian Howe, Plaintiff's counsel from OIP, to answer deposition questions he previously refused to answer based on an assertion of attorney-client privilege. According to Defendants, Plaintiff waived this privilege by identifying Mr. Howe as a trial witness to testify concerning privileged communications and allowing Mr. Howe to testify at deposition about only portions of those conversations.

#### 1. Legal Standard

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a deponent fails to answer a question asked under Rule 30 or 31 …. Fed. R. Civ. P. 37(a)(3). "District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1).

#### 2. Relevant Deposition Testimony

By way of brief background, Mr. Howe testified at deposition on March 11, 2025. For context, the Court restates the relevant testimony as follows:

2

Q. During those conversations did Mr. Horton tell you that he was innocent of these crimes?

A. Just to be clear –

MR. CALLAHAN: Objection, subject to attorney/client privilege. What can you share consistent with that?

A. My understanding is that there's some sort of limited privilege waiver that allows us to discuss certain subjects? I haven't been told anything so far about exactly the bounds of that, but –

MR. EPSTEIN: Alyssa, do you want to speak to that?

MS. MARTINEZ: Yeah, I can clarify for the record. Plaintiff is making a subject matter limited waiver as to *Brady* evidence in this case, particularly the handwritten notes by Detective Walker containing the name Richard Diggs, the fingerprint analysis that was run during Mr. Horton's criminal trial, and a potential photo show up Detective Walker made with Rhonda Curry of only plaintiff's photo. And he is also making a subject matter waiver as to his attestations of innocence.

THE WITNESS: Okay.

Q. With that understanding, when you -- during these meetings with Mr. Horton, did he tell you that he was innocent of these crimes?

A. Yes, he has always unequivocally maintained his innocence to me.

Q. What else did he tell you during those meetings?

MR. CALLAHAN: Objection, subject to the attorney/client privilege. Is there any other information that you collect as a procedural matter that you can share outside of the attestations of innocence?

A. You're asking for what my client told me during multiple privileged meetings at Chillicothe Correctional? Just everything that he said during that time?

Q. Correct. I want to know, when he told you that he was innocent, I want to know what else he told you, I want to know what else you asked him, and I want to know what else you talked about.

MS. MARTINEZ: Counsel, I think that goes outside the bounds of the subject matter waiver.

Mr. EPSTEIN: Well, then my next point would be -- I would normally ask, are you instructing the witness not to answer, but I'm not sure who to direct that to.

MR. CALLAHAN: I'll – because the witness was an attorney representing Mr. Horton, I'm instructing him not to answer questions about attorney/client privilege communications.

Q. During your meetings with Mr. Horton, did Mr. Horton tell you about his prior drug use?

A. I –

MR. CALLAHAN: Objection. The same – the same objection based on privilege. And instruct you not to answer.

Q. During your meeting with Mr. Horton, did Mr. Horton tell you about his past history selling drugs?

MR. CALLAHAN: The same objection. Instruct the witness not to answer based on privilege.

Q. Are you aware that during the trial there was an allegation by Mr. McClanahan, the victim, that Mr. Horton had tried to bribe him; are you aware that that allegation was made?

A. Yes.

Q. During your meetings with Mr. Horton, did Mr. Horton tell – did Mr. Horton discuss the bribery allegation with you?

MR. CALLAHAN: Objection as to attorney/client privilege communications and instruct the witness not to answer.

Q. At any time did Mr. Horton admit to you that he had in fact attempted to bribe Mr. McClanahan?

MR. CALLAHAN: The same objection. Assertion of privilege. Instruct you not answer.

MR. EPSTEIN: Alyssa, have we made a sufficient record that you've asserted privilege or – I don't want to go to the court and feel that I haven't laid the groundwork sufficiently. Can we agree that he has been sufficiently instructed that he's not going to answer my questions about conversations with Mr. Horton other than protestations of innocence?

>MS. MARTINEZ:  As I stated earlier on the record, Mr. Horton has also made a waiver as to the specific subject matter of the *Brady* evidence.  So outside of the *Brady* evidence and the attestations of innocence he does retain that privilege and – so the foundation as to the questions you've asked has been laid.
>MR. EPSTEIN:  Thank you.

(ECF No. 63 at 48-53.)

### 3. Discussion

Moving on to the parties' briefing, the Court is satisfied that, contrary to Plaintiff's characterization, Defendants are not asserting that Plaintiff has made a blanket waiver of the attorney-client privilege altogether and the Court will not consider the arguments addressed to this issue.[1]  Rather, as Defendants seem to have clarified in their Reply, they have confined their arguments to the following.  First, in making a subject matter waiver as to his assertions of innocence, Plaintiff has waived privilege as to OIP's internal deliberations regarding the strength of Plaintiff's case.  Defendants view the waiver as implicit.  (ECF No. 75 at 4 "the issue in this motion is one of implicit waiver.")[2]  As Defendants state it, "there has been a waiver of privilege concerning communications between Plaintiff, Mr. Howe (and OIP) as to [Plaintiff's] claims of innocence" and this waiver "extend[s] to other facts [Plaintiff] may have communicated to Mr. [Howe] during those conversations that bear on those pronouncements."  (ECF No. 75 at 5.)  That is, according to Defendants, the waiver extends to OIP's "deliberative process," which in their view, Plaintiff and Mr. Howe have raised as an issue.  (*Id.* at 4.)  Or, as they more directly

---

[1]To be sure, Defendants' assertions in their Motion were expansive.  For example, Defendants contended that "Mr. Horton has waived privilege because he voluntarily made his attorneys witnesses in this case for the specific purpose of having them testify about his privileged statements."  (ECF No. 64 at 5.)  Nevertheless, in the Reply, they state that they are not asserting a blanket waiver.  (ECF No. 75 at 5.)

[2] Defendants contend that there was no agreement as to a limited waiver on the subject of Plaintiff's attestations of innocence.  (ECF No. 75 at 7.)

5

state, in his brief "… Mr. Howe *admits* that he intends to testify to OIP's internal deliberations about the strength of Mr. Horton's case." (*Id*. at 3-4) (emphasis in original).

Defendants also contend that Plaintiff has waived privilege on the subject of damages. This argument appears to rely on the fact that Plaintiff identified Mr. Howe and other prior counsel as damages witnesses in his initial disclosures under Fed.R.Civ.P. 26(1)(a). Defendants characterize this as evidence of an "intention to use Mr. Howe's knowledge of the facts to 'attack' the defense." (ECF No. 75 at 8.) Defendants cite to a statement in Plaintiff's Response as confirming Plaintiff's intention to "(selectively) testify about the results of their work product, and assert privilege over whatever they do not wish to reveal." (*Id.* at 8-9.)

For his part, Plaintiff explains that, in an effort to prevent unnecessary motions practice, he offered a limited, explicit subject-matter waiver related to two narrow topics: (1) his *Brady* allegations and (2) his continued assertions of innocence.[3] In offering this explanation, Plaintiff notes that, despite his agreement to make a subject-matter waiver as to statements concerning his guilt or innocence, the information is a matter of public record, including news coverage, and may not constitute an attorney-client communication. (ECF No. 74, n.1.) Plaintiff disputes that Mr. Howe's testimony constitutes an implicit waiver as characterized by Defendants. Moreover, Plaintiff argues that, assuming any subject matter waiver relating to his assertions of innocence, under principles of fairness, it must be construed narrowly. Plaintiff also contends that identifying Mr. Howe in his initial disclosures cannot serve as a basis for finding a waiver of attorney-client privilege.

In a separate response, Mr. Howe argues that he may serve as a witness on behalf of a former client without automatically waiving the attorney-client privilege. Further, he asserts that

---

[3] Again, whether Defendants accepted this offer is in dispute.

Plaintiff's assertions of innocence are a matter of public record.  As support, Mr. Howe cites Plaintiff's not guilty plea and his maintaining of innocence throughout both his trial and post-conviction.  He also points to newspaper publications noting Mr. Horton's claim of innocence, published prior to the deposition date. (ECF No. 73 at 9.)  Indeed, Mr. Howe asserts, given Plaintiff's professions of innocence, the testimony at issue only served to repeat what Defendants already knew.  Thus, in Mr. Howe's view, his restatement of a publicly available fact at his deposition did not result in a disclosure of a confidential communication and cannot support a finding of waiver.

Given the above, the first issue for consideration is whether Mr. Howe's deposition response - that Plaintiff always unequivocally maintained his innocence - is protected by the attorney-client privilege.  If the Court concludes it is not, there is no need for a waiver analysis.  To this end, the elements of attorney-client privilege, which are long-established and not in dispute here, include the following:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).  Without belaboring it, "[t]he attorney-client privilege is recognized as the oldest privilege relating to **confidential** communications." *Dadosky v. Mid-Am. Conversion Servs., LLC,* No. 2:22-CV-02503, 2025 WL 1104560, at *2 (S.D. Ohio Apr. 14, 2025) (citing *Upjohn v. United States,* 449 U.S. 383, 389 (1981) (emphasis added)).  Further, the attorney-client privilege serves two purposes:  (1) to promote loyalty between lawyers and their clients; and (2) to encourage full disclosure by clients to their attorneys.  *Id.* (citing *Reed,* at 356).

Here, both Plaintiff and his former counsel represent that Plaintiff had long made assertions of his innocence publicly such that they cannot be considered confidential. Defendants do not seriously dispute these representations. Instead, they offer the following. First, they contend that the line of questioning was only directed to "privileged, jail cell conversations" and if, in response, Mr. Howe intended to refer only to hearsay statements from other sources, he should have made that clear. (ECF No. 75 at 2.) Defendants, however, do not explain why Plaintiff's own public affirmations of his innocence constitute hearsay statements from other sources. In response to a different point they also assert that "[w]hether Mr. Horton constantly proclaimed his innocence is not an uncontested issue- the defendants have no idea what statements Mr. Howe is referring to-and certainly the truthfulness of those protestations (which is, after all, what the statements are being offered to prove) is very much a contested issue." (ECF No. 75 at 8.) Those are different issues, however, and go far beyond the terms of the question to which Mr. Howe responded. Thus, as asked and answered, the question regarding Plaintiff's statement of innocence addressed publicly available information. This places Mr. Howe's response outside the scope of the attorney-client privilege. Further, looking to the purposes of the privilege, as Mr. Howe suggests, Plaintiff's full disclosure of this information would not have been made in reliance on the existence of the privilege. Indeed, Plaintiff would not have needed to disclose his belief in his innocence to Mr. Howe, as it was, by the point of their first meeting, a matter of public record. Accordingly, Mr. Howe's testimony that Plaintiff told him he was innocent of the crimes underlying this action did not divulge a confidential communication. Therefore, it cannot constitute an implicit waiver of the attorney-client privilege as Defendants contend. For this reason, the Court does not need to undertake a

waiver analysis or consider whether fairness requires a further disclosure of related, protected information.

As for Defendants' argument that Plaintiff has waived attorney-client privilege as it relates to damages, that claim also is unavailing. As noted, this argument appears based solely on Plaintiff's identification in his initial disclosures of Mr. Howe and other prior counsel as potential damages witnesses. To be clear, in both his Rule 26(a)(1)(A)(i) disclosure and supplemental disclosures, Plaintiff identified Mr. Howe as a person who

> may have information about Plaintiff's criminal proceedings and evidence disclosed during those proceedings, Plaintiff's criminal defense, investigation of the crimes at issue, the reversal of Plaintiff's conviction, Plaintiff's consistent declarations of innocence, as well as Plaintiff's wrongful prosecution and conviction and the resulting damages.

(ECF Nos. 64-1; 64-2.) From this, Defendants draw the conclusion that Plaintiff intends to use Mr. Howe's "knowledge of these facts to 'attack' the defense" and selectively testify regarding work product while asserting privilege over information they do not wish to reveal. (ECF No. 75 at 8, 9.) This argument fails for two reasons. First, the claim that identifying former counsel in initial disclosures, standing alone, somehow constitutes a waiver of the attorney-client privilege is both poorly developed and unaccompanied by supporting authority. Further, the argument as presented relies solely on Defendants' speculation regarding Plaintiff's intentions. Accordingly, the Court declines to find a waiver of the attorney-client privilege on this basis.[4]

---

[4] The Court also notes that, in their initial motion, Defendants summarily state that "Mr. Howe and OIP have similarly withheld documents under a claim of privilege, although they have never produced a [mandated] privilege log …." (ECF No. 64 at 5.) This cursory argument is undeveloped and the Court will not consider it here.

B. **Motion for a Protective Order**[5]

Plaintiff, in part, seeks a protective order preventing the disclosure of bank records sought by Defendants by way of a subpoena issued to Huntington Bancshares, Inc. on November 11, 2024. (ECF No. 71-3.) That subpoena sought "[a]ny and all records related to any account in [Plaintiff's name] …, including all deposits and all withdrawals, from January 14, 2022 to present." (*Id*.) According to the parties, Defendants have received these records but have agreed not to view them until after the Court's ruling on this issue. Plaintiff also argues much more broadly that the Court should preclude further disclosure of private financial information that is neither relevant nor proportionate to the needs of this case.

"Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from 'annoyance, embarrassment, oppression, or undue burden or expense." *Morris v. Kia Motors Corp.,* No. 2:24-MC-51120, 2024 WL 4595116, at *2 (E.D. Mich. Oct. 28, 2024) (quoting *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 (6th Cir. 2016)). Additionally, a district court is tasked with balancing "the right to discovery with the need to prevent fishing expeditions." *Id.* (quoting *Ohio Execution Protocol Litig.* at 236-237) (internal quotation marks and citation omitted)). "To sustain a protective order under Rule 26(c), the moving party must show good cause for protection from one (or more) harms identified in Rule 26(c)(1)(A) with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id*. (quoting *Ohio Execution Protocol Litig.* at 236) (internal quotation marks and citation omitted). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id.* (internal quotation marks and citation omitted); *see also Nix v. Sword*, 11 F. App'x 498, 500 (6th

---

[5] Contrary to Defendants' characterization, Plaintiff did not file a motion to quash.

Cir. 2001) ("To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements."). "'[C]ourts within the Sixth Circuit have interpreted Rule 26(c) to permit a party to seek a protective order to preclude discovery demanded by a third-party subpoena.'" *Morris,* at *2 (quoting *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-cv-0722, 2020 WL 12968432, at *3 (M.D. Tenn. Apr. 23, 2020) and citing *Bridgestone Ams., Inc. v. Intn'l Business Machs. Corp.*, No. 3:13-cv-1196, 2016 WL 11786198, at *5 (M.D. Tenn. May 16, 2016) ("Where discovery is requested from a third party and the information sought affects a litigant's interests, the litigant may seek a protective order on behalf of the third party.")).

    This dispute does not warrant extensive discussion. Initially, several arguments raised by Plaintiff do not weigh in favor of granting his requested protective order. For example, contrary to Plaintiff's characterizations, at issue here is one subpoena to one financial institution covering the period from January 14, 2022, through the present with a compliance date of November 25, 2024. (ECF No. 71-3.) Further, as Plaintiff appears to concede, financial information is relevant to some of Plaintiff's claims and there is no inherent privacy right in such information. Additionally, there is a protective order already in place designed to address confidential matters and Plaintiff has not provided any support for his claim that it is insufficient to protect his wife's interests. And, importantly, for the reasons described in Defendants' supplemental response, the Court agrees that, at this point, the subpoena at issue is "the most reliable way to assess Plaintiff's economic-loss claim." Accordingly, the Motion for a Protective Order is **DENIED**. Further, the Court declines Plaintiff's request for a blanket, preemptive order restricting further disclosure of private financial information that is neither relevant nor proportionate to the needs of this case.

**III.**

Finally, the Court has reviewed the representation agreement at issue.  From its *in camera* review, the Court is satisfied that the agreement does not provide the basis for production cited by Defendants.   Accordingly, the Court will not direct Plaintiff to produce the representation agreement in response to Defendants' discovery request.

**IV.**

For the reasons stated above, Defendants' Motion to Compel (ECF No. 64) is **DENIED.** Plaintiff's Motion for a Protective Order (ECF No. 71) also is **DENIED.**

**IT IS SO ORDERED.**

**Date:  August 8, 2025**               */s/ Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**