# Exhibit 2



**IN THE COURT OF COMMON PLEAS**
**FRANKLIN COUNTY, OHIO**
**CRIMINAL DIVISION**

**STATE OF OHIO,**
Plaintiff,

vs.

**Case No. 05CR-146**
**Judge Bender**

**RICHARD HORTON,**
Defendant.

---

### PETITION TO VACATE OR SET ASIDE
### JUDGMENT AND SENTENCE

---

**I.      Introduction:**

1)      Petitioner Richard Horton files this post-conviction petition to vacate and/or set aside the judgment and/or sentence imposed in 2006 for Aggravated Robbery, Aggravated Burglary, Kidnapping, Felonious Assault with firearm specifications and Having a Weapon Under Disability.  He requests an evidentiary hearing.

**II.      Case history:**

TRIAL:

| Charges: | Disposition |
|---|---|
| 1 count of Aggravated Burglary-R.C. §2911.11 | Guilty |
| 2 counts of Aggravated Robbery-R.C. § 2911.01 | Guilty |
| 2 counts of Kidnapping-R.C. § 2905.01 | Guilty |
| 1 count of Felonious Assault-R.C. § 2903.11 | Guilty |
| 1 count of Having Weapon Under Disability- R.C. § 2923.13 | Guilty |

| Sentence | Mr. Horton received a total sentence of 23 years imprisonment on these charge. |
|---|---|

1

R. HORTON 001649

<u>Date Sentenced</u>: March 6, 2006

<u>Names of trial attorney</u>: Myron Schwartz

<u>Was this conviction the result of a</u> (circle one):    **Guilty Plea    No Contest    Trial**

<u>If the conviction resulted in a trial, what was the length of the trial?</u> 2 days

<u>Appeal to Appellate Court</u>: Court of Appeals, No. 06-311 (Franklin Ct. App.)

<u>Disposition</u>: pending with Oral Argument scheduled January 17, 2007

<u>Name of appellate attorneys</u>: Carol A. Wright

HAS A POST-CONVICTION PETITION BEEN FILED BEFORE IN THIS CASE?

       [  ] YES          [ X ] NO

OTHER RELEVANT CASE HISTORY:  N/A

Now comes Petitioner, by and through counsel, and petitions this Honorable Court for an order setting aside the judgment of conviction and sentence journalized by the Court in the judgment entry filed on or about March 6, 2006.

The conviction and sentence entered against Petitioner are void and voidable as a result of the violation of rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 2, 5, 9, 10 and 16, and Article II, Section 26 of the Ohio Constitution.  The following pleading sets forth these violations in greater detail.

An evidentiary hearing is requested.  The petition and request for an evidentiary hearing are supported by affidavit and other evidentiary documents.  Summary disposition of this petition is therefore inappropriate. *See* <u>State v. Jackson</u> (1980), 64

R. HORTON 001650

Ohio St.2d 107; State v. Pankey (1981), 68 Ohio St.2d 58; State v. Kapper (1983), 5 Ohio St.3d 36. This court should hold the evidentiary hearing and resolve any disputed questions of fact which are outside the record of this case as it is presently constituted. *See* State v. Milanovich (1975), 42 Ohio St.2d 46. After the evidentiary hearing, this hearing, this Court should issue written findings of fact and conclusions of law with the judgment entry granting or denying relief. *See* State v. Lester (1975), 41 Ohio St.2d 51.

Petitioner also requests discovery under the Ohio Rules of Civil Procedure to fully develop and pursue these claims.

## JURISDICTIONAL FACTS

1. Petitioner was indicted in a eleven count indictment by the Franklin County Grand Jury in January 2005 stemming from a home invasion robbery and shooting.

2. He was represented by Attorney Myron Schwartz. Following a jury trial, he was found guilty of one count of aggravated burglary, two counts of aggravated robbery, two counts of kidnapping, one count of felonious assault and one count of having a weapon under disability, and firearm specifications. Petitioner was subsequently sentenced to a total sentence of 26 years.

3. Petitioner filed a Notice of Appeal to the Tenth District Court of Appeals. His appeal is pending at this time.

4. Petitioner Horton alleges a denial or infringement of his rights as to render his conviction and/or sentence void and/or voidable under the Ohio Constitution and the United States Constitution.

3

R. HORTON 001651

5.    Some of the constitutional errors which entitle Mr. Horton to relief and which could not have been fully and completely asserted on appeal, include the following:

## FIRST CLAIM FOR RELIEF

6.    Petitioner Horton hereby incorporates paragraphs one through five as if fully rewritten herein.

7.    Petitioner Horton's conviction and sentence are void and/or voidable because his trial counsel's performance was deficient in that he failed to consult with, obtain funding for and/or present an eyewitness expert. See, attached exhibits A, B, C, D. An eyewitness expert could have explained to the jury scientific research that indicates several factors present in this case decreases the likelihood that the identifications of Richard Horton by the victims were accurate.

8.    As a result of trial counsel's failure to consult with, obtain funding for and/or present an eyewitness expert, Petitioner Horton's rights, as guaranteed by the following provisions of the United States Constitution, were violated: (1) substantive due process and other unenumerated rights as guaranteed by the Ninth Amendment; (2) the due process and equal protection clauses of the Fourteenth Amendment; (3) the right to effective assistance of counsel guaranteed by the Sixth Amendment; (4) the guarantees of procedural and substantive due process protected by the Fifth Amendment.

9.    The rights guaranteed to Petitioner Horton in Sections 1, 2, 5, 9, 10, 16,

4

R. HORTON 001652

and 20 of the Ohio Constitution were also violated.

10. Petitioner Jeffers was prejudiced by these same violations of his State and Federal constitutional rights in that counsel's actions fell below a minimal standard of professional competency and there is reasonable probability that but for the deficient performance of counsel, the outcome of the trial would have been different.

11. Petitioner requests an evidentiary hearing as provided by the R.C. 2953.21 in order to fully develop this claim. Denial of the request for a hearing as it relates to this claim would amount to a denial of substantive due process as guaranteed by the aforementioned State and Federal constitutional provisions.

## SECOND CLAIM FOR RELIEF

12. Petitioner hereby incorporates paragraphs one through eleven as if fully rewritten herein.

13. Petitioner Horton's convictions and sentence are void and/or voidable because trial counsel's performance was deficit in failing to present witnesses that offered character evidence relating to Horton's character for non-violence and truthfulness. See, attached Exhibits F and G.

14. As a result of trial counsel's deficient performance, Petitioner was prejudiced. Petitioner Horton's rights, as guaranteed by the following provisions of the United States Constitution, were violated: (1) substantive due process and other unenumerated rights as guaranteed by the Ninth Amendment; (2) the due process and equal protection clauses of the

5

R. HORTON 001653

Fourteenth Amendment; (3) the right to effective assistance of counsel guaranteed by the Sixth Amendment; (4) the guarantees of procedural and substantive due process protected by the Fifth Amendment were violated by trial counsel's unreasonable failure to present character witnesses once Horton took the stand.

15. The rights guaranteed to petitioner Horton in Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution were also violated.

16. Petitioner Horton was prejudiced by these same violations of his State and federal constitutional rights in that counsel's actions fell below a minimal standard of professional competency and there is reasonable probability that but for the deficient performance of counsel, there is a reasonable probability that the outcome at trial would have been different.

17. Petitioner requests an evidentiary hearing as provided by the R.C. 2953.21 in order to fully develop this claim. Denial of the request for a hearing as it relates to this claim would amount to a denial of substantive due process as guaranteed by the aforementioned State and Federal constitutional provisions.

## THIRD CLAIM FOR RELIEF

18. Petitioner Horton hereby incorporates paragraphs one through seventeen as if fully rewritten herein.

19. Petitioner Horton's convictions and sentence are void and/or voidable because his trial counsels' performance was deficient in that he failed to object and demonstrate through factual evidence, presentation of witnesses

6

R. HORTON 001654

and/or legal argument the repeated admission of the photo array evidence, the hearsay testimony of Detective Walker, and the admission of the array forms was prejudicial error. Counsel's failure to advocate against the repeated admission of this irrelevant (and inadmissible) critical evidence was not strategic and was not based on an independent thorough investigation. See, attached Exhibit A, B, C, D and E.

20. As a result of trial counsel's failure to object to and demonstrate the inadmissibility of this critical evidence Petitioner Horton's rights, as guaranteed by the following provisions of the United States Constitution, were violated: (1) substantive due process and other unenumerated rights as guaranteed by the Ninth Amendment; (2) the due process and equal protection clauses of the Fourteenth Amendment; (3) the right to effective assistance of counsel guaranteed by the Sixth Amendment; (4) the guarantees of procedural and substantive due process protected by the Fifth Amendment.

21. The rights guaranteed to Petitioner Horton in Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution were also violated.

22. Petitioner Horton was prejudiced by these same violations of his State and Federal constitutional rights in that counsel's actions fell below a minimal standard of professional competency and there is reasonable probability that but for the deficient performance of counsel, the outcome at trial would have been different.

23. Petitioner requests an evidentiary hearing as provided by the R.C. 2953.21

7

R. HORTON 001655

in order to fully develop this claim. Denial of the request for a hearing as it relates to this claim would amount to a denial of substantive due process as guaranteed by the aforementioned State and Federal constitutional provisions.

## FOURTH CLAIM FOR RELIEF

24. Petitioner Horton hereby incorporates paragraphs one through twenty three as if fully rewritten herein.

25. Petitioner Horton's convictions and sentence are void and/or voidable because trial counsel failed to obtain funding for or perform an independent investigation into the case against Petitioner. Trial counsel also failed to present impeachment evidence which would have cast doubt on the credibility of the victim Richard McClanahan. This is particularly critical where these is an allegation that at least one of the victims is involved in the drug trade, and the facts of the crime suggest some type of drug transaction gone bad. An independent investigation would have provided evidence which could have been used to impeach Richard McClanahan. See, Exhibit D, E, and H.

26. As a result of trial counsel's failure to conduct a thorough investigation and/or present impeachment evidence Petitioner Horton's rights, as guaranteed by the following provisions of the United States Constitution, were violated: (1) substantive due process and other unenumerated rights as guaranteed by the Ninth Amendment; (2) the due process and equal protection clauses of the Fourteenth Amendment; (3) the right to effective

8

R. HORTON 001656

assistance of counsel guaranteed by the Sixth Amendment; (4) the guarantees of procedural and substantive due process protected by the Fifth Amendment.

27. The rights guaranteed to Petitioner Horton in Sections 1, 2, 5, 9, 10, 16, and 20 of the Ohio Constitution were also violated.

28. Petitioner Horton was prejudiced by these same violations of his State and Federal constitutional rights in that counsel's actions fell below a minimal standard of professional competency and there is reasonable probability that but for the deficient performance of counsel, the outcome at trial would have been different.

29. Petitioner requests an evidentiary hearing as provided by the R.C. 2953.21 in order to fully develop this claim. Denial of the request for a hearing as it relates to this claim would amount to a denial of substantive due process as guaranteed by the aforementioned State and Federal constitutional provisions.

**WHEREFORE**, Petitioner Richard Horton requests the following relief:

1. That Petitioner be granted adequate opportunity pursuant to the Ohio Rules of Civil Procedure to obtain discovery as to the claims contained in the Petition as well as to any other claims not contained in the Petition that may be revealed by the discovery which make Petitioner's convictions and/or sentences void or voidable.

2. That Petitioner be granted an evidentiary hearing pursuant to R.C. 2953.21.

3. That Petitioner's conviction be determined void or voidable as to Claims one

9

R. HORTON 001657

through four and for any other reasons which arise form the facts of his case, and that he be granted a new trial.

4. For such other relief as the Court may deem just and proper.

Respectfully submitted,

*Carol A Wright*

Carol A. Wright (0029782)
318 Berger Alley
Columbus, Ohio 43206
(614) 224-2999

Counsel for Defendant
Richard Horton

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Petition was served by personal hand delivery to Counsel for Appellee, Steven Taylor, Assistant Franklin County Prosecutor, 373 South High Street, Columbus, Ohio 43215 this 2nd day of January, 2007.

*Carol A Wright*

Carol A. Wright (0029782)

10

R. HORTON 001658

## Carol

| | |
|---|---|
| **From:** | "leippemr" <leippemr@slu.edu> |
| **To:** | "Carol" <cwright1@columbus.rr.com> |
| **Sent:** | Friday, December 29, 2006 7:32 PM |
| **Attach:** | References for eyewitness report.doc; Leippe cv. nov06.doc |
| **Subject:** | Re: Richard Horton |

Dear Ms. Wright,
I received and read through the materials you sent me on the
Richard Horton case. I believe there are several factors
associated with the eyewitness evidence in this case that
scientific research indicates would decrease the likelihood
that the identifications of Richard Horton by the victims
are accurate. I can provide a full and official report of
my impressions and the science on which they are based soon
after I return to to work after the holidays. In the
meantime, here is a brief synopsis of the major issues (but
not the only ones) I will articulate in my report.

1. There is a very real possibiility that both victim
McClanahan and victim Curry experienced an unconscious
transference of memory. Based on resemblence, McClanahan
may have mistaken the actual culprit for Horton during the
phone booth incident the night preceding the crime. Curry
may have made the same transference error during the crime.
The conditions in both situations were favorable for this
kind of mistaken recognition, including poor witnessing
conditions (especially during the crime when only part of
the culprit's face could be seen and trauma, weapon focus,
and fast pace were operative) and prior exposure that was
infrequent, passive, and temporally distant. The fact that
victim Curry was unable to tell the police who the culprit
resembled when she gave her initial report to the police
suggests the vagueness of the resemblence -- far from what a
veridical recognition would result in.

2. If trasnference occurred, then it simply cannot be
determined whether the victims' identification involve
recognition of an (innocent) Horton or recognition of who
actually invaded their home.

3. A number of sources of memory error surround the lineup
identification itself. The retention interval exceeded 2
months -- a time period in which considerable forgetting
usually occurs along with distortions in the memory trace in
the direction of expectations and beliefs. In addition, if
Horton's was indeed the only light-skinned face in the
lineup --and that complexion was indeed mentioned by both
victim-witnesses -- then the lineup was highly suggestive.
It is really inexcusable to exclude a feature prominently

EXHIBIT A

mentioned in descriptions of the culprit when choosing lineup foils.

4. Eyewitness confidence is not a good indicator of eyewitness accuracy. This is especially so when witnesses have had months to convince themselves of their theory of who the culprit was.

5. These and other factors, as well as the generally poor reliability of eyewitness testimony, are not commonsensical to jurors. Jurors' ability to judge the validity of eyewitness evidence would be improved if they were apprised of what science knows about eyewitness testimony. This seems especially important when the prosecution's evidence begins and ends with the eyewitness testimony.

These and other matters will be included in my report if you wish me to prepare one. In the meantime, I have attached my. updated c.v. that you may file with the court. For the moment, if you need them, you can find scientific references regarding the issues in the report I prepared for you in the previous case of yours on which I consulted. I have also included an expanded list of references from a more recent report that I authored.

Let me know if you have any questions or if there is anything else I can provide you with. I am reachable by e-mail and cell phone (314-239-8764) over the holiday. Happy New Year.

Sincerely,
Michael R. Leippe, Ph.D.

1/2/2007

R. HORTON 001660

M. Leippe

1

## VITA

### Michael R. Leippe

November 2006

Birth Date:              April 10, 1952

Place of Birth:          Rochester, New York, USA

Address:                 91 Frederick Lane
St. Louis, MO 63122
(314) 918-1368

Office Address:          Department of Psychology
Saint Louis University
221 North Grand Blvd. -- Shannon Hall 201
St. Louis, MO 63103
(314) 977-2299; fax: (314) 977-3679
E-mail: leippemr@slu.edu
Web: www.slu.edu/colleges/AS/PSY/people/faculty/leippe/index.html

## EDUCATIONAL HISTORY

B. A., cum laude         University of Rochester, 1974
Major:  Psychology; Minor:  Sociology

M.A.                     The Ohio State University, 1976
Major:  Social Psychology

**Thesis title:** Methodological developments in a computerized
procedure for studying persuasion.

Ph.D.                    The Ohio State University, 1979
Major:  Social Psychology
Minors: Statistics; Industrial/Organizational Psychology

**Dissertation title:**  Message exposure duration and attitude change:
An information processing  analysis of persuasion.

## PROFESSIONAL EMPLOYMENT/EXPERIENCE

**Teaching**

1997-Present             Professor (tenured), Department of Psychology, Saint Louis University

Position involves teaching, research, and direction of research
(including dissertations) at the graduate and undergraduate levels in areas of expertise.

EXHIBIT B

R. HORTON 001661

M. Leippe
2

| 1985-1997 | Associate Professor (tenured in 1986), Derner Institute (1991-97), Department of Psychology (until 1991), Adelphi University |
|---|---|
| 1982-1985 | Assistant Professor, Department of Psychology, Adelphi University |
| | Positions at Adelphi University involved teaching graduate and undergraduate courses in Social Psychology, Statistics and Experimental Design, Law and Human Behavior, Industrial/Organizational Psychology Psychological Testing, and other areas, research, and direction of dissertation and other guided graduate and undergraduate research. |
| 1978-1982 | Assistant Professor, Department of Psychology, St. Norbert College |
| | Position involved teaching Social Psychology, Industrial/Organizational Psychology, Psychological Testing, Statistics, and other courses. |
| 1976-1977 | Graduate Teaching Associate, The Ohio State University. Introductory and Social Psychology. |

**Administrative**

| 1997-2000 | Chairperson of Department of Psychology, Saint Louis University |
|---|---|
| 1992-1994 | Director of Ph.D. Program in Social/Personality Psychology, Derner Institute, Adelphi University |
| 1987-1988 | Director of Undergraduate Studies, Dept. of Psychology, Adelphi University |

**Research**

| 1978-Present | Research on social influence processes (e.g., persuasion, cognitive dissonance, reactions to feedback about self); psychology and law (e.g., eyewitness memory and confidence and its communication; juror motivation and decision-making); prejudice, self-awareness and self-concept change |
|---|---|
| 1974-1978 | Graduate Research Assistant, The Ohio State University Research on attitudes, persuasion, social cognition, and eyewitness testimony |

**Editorial Experience**

Editorial Board Member, *Personality and Social Psychology Bulletin*, 1997-2002
 (previously and since an occasional reviewer beginning 1982).
Editorial Board Member, *Law and Human Behavior*, 1988-2003 (occasional reviewer since 1985).
Editorial Board Member, *Journal of Personality and Social Psychology: Attitudes and Social Cognition*,
 1993-1994 (previously, and since, an occasional reviewer beginning 1985).
Editorial Board Member, *Journal of Applied Psychology*, 1989-1992 (occasional reviewer beginning 1988).

R. HORTON 001662

M. Leippe

3

Occasional Reviewer for: *Basic and Applied Social Psychology* (since 1992), *Criminal Justice and Behavior* (since 1993), *Journal of Applied Social Psychology* (since 1984), *Journal of Experimental Psychology: Applied* (since 1999), *Journal of Experimental Social Psychology* (since 1987), *Psychological Bulletin* (since 1992), *Psychological Science* (since 1994), *Representative Research in Social Psychology* (1977-78), *Self and Identity* (since 2000), *Social Influence* (since 2005).

Reviewer for conventions of the American Psychological Association (Division 8; 1988, 1996), American Psychology-Law Society (1990, 1994-98, 2004, 2005), Eastern Psych. Assoc. (1996).

Ad hoc reviewer for National Science Foundation, Law and Social Sciences and Social and Developmental Psychology divisions, 1984, 1988-98, 2000, 2004-2006.

Book reviewer for Allyn and Bacon (April, 2000); Holt, Rinehart, & Winston; Lawrence Erlbaum Associates; McGraw-Hill; and Scott, Foresman (graduate, undergraduate, and professional texts), occasionally, since 1986.

## Other Professional Service

Primary Organizer (Chair, Organizing Committee; Co-Chair, Program Committee) of 1999 Annual Meeting of the Society of Experimental Social Psychology (SESP). The Executive Board of SESP invited me to submit a proposal to hold its 1999 meeting in St. Louis, with Saint Louis University (SLU) serving as host institution (University of Missouri at Columbia subsequently served as co-host institution). The proposal was accepted and the meeting, attended by 445 social psychologists from around the world, was held in St. Louis, October 14-16, 1999.

## Legal System Consultation and Expert Testimony

Consultant to the United States Department of Justice. Served as one of a small group of experts asked to review and provide input regarding proposed national guidelines for collecting eyewitness evidence. The proposal culminated in a set of guidelines for law enforcement officers, published by Department of Justice and entitled "Eyewitness Evidence: A Guide for Law Enforcement" (1999).

Have given expert testimony and/or consultation on adult and child eyewitness testimony (e.g., memory, suggestibility, proper testing procedures) in more than 40 criminal cases in Arkansas, California, Connecticut, Georgia, Indiana, Iowa, Kansas, Maryland, Missouri, New Jersey, New York, Ohio, Pennsylvania, Virginia, and Wisconsin. Expert testimony has been given in more than a dozen jury trials in open court, including state cases (e.g., *State of New York v. Wade Fraser*, 1997), federal cases (e.g., *U.S. v. Norwood*, 1996), and capital cases (e.g., *State of Connecticut v. Roy White*, 1989).

Have provided consultation to legal community based on comprehensive review of research literatures on rape and child sexual abuse trauma and testimony (New York, 1995).

## Technical, Applied, and Other Professional Experience

Member, Behavioral and Social Science Institutional Review Board of Saint Louis University. Nominated and appointed member of committee that reviews ethical aspects of human research protocols in social, behavioral, and communication sciences. 2003-2005.

Member, Institutional Review Board of Saint Louis University. Nominated and appointed member of university-wide board that reviews ethical aspects of human research protocols in all fields (e.g., psychology, social science, education, medicine, nursing, etc.), 2000-2003.

R. HORTON 001663

M. Leippe
4

Served as paid technical consultant on psychological measurement for Learning Research Associates, Inc. (NY). Advised on design and analysis of reliability and validation studies for an inventory of reading styles designed for placing children into reading instruction programs (1987).

Organized and chaired symposia for annual Adelphi Applied Experimental Psychology Conferences. Symposia included nationally known researchers on topics of "Small Groups Research" (1987), "Psychology and Law" (1986), and "Work Motivation and Productivity" (1985).

Member of Goals Impact Committee, St. Norbert College. Involved in design and administration of instruments for discerning college's impact on student values and goals, and multiple regression analyses of collected data (1979-1982).

Developed attitude surveys and program assessment methods for the Columbus (OH) Citizens' Crime Watch project (1977).

## TEACHING INTERESTS

**Undergraduate Courses Taught:** Social Psychology; Industrial and Organizational Psychology; Psychological Testing; Psychology and Law; Small Groups and Organizational Behavior; General (Introductory) Psychology; Psychological Statistics; Research Methods; Environmental Psychology; "Mind Control: Persuasion, Propaganda, and Compliance."

**Graduate Courses Taught:** Social Psychology; seminars on Attitudes, Persuasive Communication, Social Influence Processes, and Psychology and Law; Statistics and Experimental Design (full first year of graduate sequence for experimental doctoral students); Research Methods and Design.

## AWARDS AND HONORS

Elected Fellow of the Association for Psychological Science (2006)
Adelphi University Merit Award for Scholarship (1988, 1989).
Adelphi University Merit Award for Research (1987).

## PUBLICATIONS: BOOK

Zimbardo, P. G., & Leippe, M. R. (1991). *The psychology of attitude change and social influence.* New York: McGraw-Hill. (Hardcover edition: Philadelphia: Temple University Press.)

## PUBLICATIONS: JOURNAL ARTICLES AND BOOK CHAPTERS

Leippe, M. R., Eisenstadt, D., Rauch, S. M., & Stambush, M. (2006). Effects of social-comparative memory feedback on eyewitnesses' identification confidence, suggestibility, and retrospective memory reports. *Basic and Applied Social Psychology, 28,* 201-220.

Leippe, M. R., & Eisenstadt, D. (2006, in press). Eyewitness confidence and the confidence-accuracy relationship in memory for people. In R. C. L. Lindsay, D. F. Ross, J. D. Read, & M. P. Toglia (Eds.), *Handbook of eyewitness psychology* (Vol. 2, pp. 377-425). Mahwah, NJ: Erlbaum.

R. HORTON 001664

M. Leippe
5

Eisenstadt, D., Leippe, M. R., Stambush, M. A., Rauch, S. M., & Rivers, J. A. (2005). Dissonance and prejudice: Personal costs, choice, and change in attitudes and racial beliefs following counterattitudinal advocacy that benefits a minority. *Basic and Applied Social Psychology, 27,* 127-141.

Eisenstadt, D., & Leippe, M. R. (2005). Dissonance and importance: Attitude change effects of personal Relevance and race of the beneficiary of a counterattitudinal advocacy. *Journal of Social Psychology, 145,* 447-467.

Leippe, M. R., Eisenstadt, D. E., Rauch, S. M., & Seib, H. (2004) Timing of eyewitness expert testimony, jurors= need for cognition, and case strength as determinants of trial verdicts. *Journal of Applied Psychology, 89,* 524-541.

Eisenstadt, D., Leippe, M. R., Rivers, J. A., & Stambush, M. (2003). Counterattitudinal advocacy on a matter of prejudice: Effects of commitment, distraction, and personal importance. *Journal of Applied Social Psychology, 33,* 2123-2152.

Eisenstadt, D., Leippe, M. R., & Rivers, J. A. (2002). Asymmetry and defense in self-comparison: Differential reactions to feedback about the rejected and ideal selves. *Self and Identity, 1,* 289-311.

Leippe, M. R., & Eisenstadt, D. (1999). A self-accountability model of dissonance reduction: Multiple modes on a continuum of elaboration. In E. Harmon-Jones & J. Mills (Eds.), *Cognitive dissonance: Progress on a pivotal theory in social psychology* (pp. 201-232). Washington, D.C.: American Psych. Assoc.

Leippe, M. R. (1995). The case for expert testimony about eyewitness memory. *Psychology, Public Policy, and Law, 1,* 909-959.

Leippe, M. R., & Wells, G. L. (1995). Should we be partial to partial identification? Observations about the Levi-Jungman proposal. *Criminal Justice and Behavior, 22,* 373-385.

Leippe, M. R., & Eisenstadt, D. (1994). The generalization of dissonance reduction: Decreasing prejudice through induced compliance. *Journal of Personality and Social Psychology, 67,* 395-413.

Eisenstadt, D., & Leippe, M. R. (1994). The self-comparison process and self-discrepant feedback: Consequences of learning you are what you thought you were not. *Journal of Personality and Social Psychology, 67,* 611-626.

Leippe, M. R. (1994). The appraisal of eyewitness testimony. In D. F. Ross, J. D. Read, & M. P. Toglia (Eds.), *Adult eyewitness testimony: Current trends and developments* (pp. 385-418). New York: Cambridge University Press.

Leippe, M. R., Manion, A. P., & Romanczyk, A. (1993). Discernibility or discrimination? Understanding jurors' reactions to accurate and inaccurate child and adult eyewitnesses. In G. Goodman & B. Bottoms (Eds.), *Child victims, child witnesses: Understanding and improving testimony* (pp. 169-201). New York: Guilford.

R. HORTON 001665

M. Leippe

6

Leippe, M. R., Manion, A. P., & Romanczyk, A. (1992). Eyewitness persuasion: How and how well do factfinders judge the accuracy of adults' and children's memory reports? *Journal of Personality and Social Psychology, 63,* 181-197.

Ferrari, J. R., & Leippe, M. R. (1992). Noncompliance with persuasive appeals for a prosocial, altruistic act: Blood donating. *Journal of Applied Social Psychology, 22,* 83-101.

Leippe, M. R. (1991). A self-image analysis of persuasion and attitude involvement. In R. C. Curtis (Ed.), *The relational self: Theoretical convergences in psychoanalysis and social psychology* (pp. 37-63). New York: Guilford.

Leippe, M. R., Romanczyk, A., & Manion, A. P. (1991). Eyewitness memory for a touching experience: Accuracy differences between child and adult witnesses. *Journal of Applied Psychology, 76,* 367-379.

Leippe, M. R., & Romanczyk, A. (1989). Reactions to child (versus adult) eyewitnesses: The influence of jurors' preconceptions and witness behavior. *Law and Human Behavior, 13,* 103-131.

Leippe, M. R., Brigham, J. C., Cousins, C., & Romanczyk, A. (1989). The opinions and behavior of criminal attorneys regarding child eyewitnesses: A survey. In S. J. Ceci, D. F. Ross, & M. P. Toglia (Eds.), *Perspectives on children's testimony* (pp. 100-130). New York: Springer-Verlag.

Pratkanis, A. R., Greenwald, A. G., Leippe, M. R., & Baumgardner, M. H. (1988). In search of reliable persuasion effects: III. The sleeper effect is dead. Long live the sleeper effect. *Journal of Personality and Social Psychology, 54,* 203-218.

Leippe, M. R., & Romanczyk, A. (1987). Children on the witness stand: A communication/persuasion analysis of jurors' reactions to child witnesses. In S. J. Ceci, M. P. Toglia, & D. F. Ross (Eds.), *Children's eyewitness testimony* (pp. 155-177). New York: Springer-Verlag.

Leippe, M. R., & Elkin, R. A. (1987). When motives clash: Issue involvement and response involvement as determinants of persuasion. *Journal of Personality and Social Psychology, 52,* 269-278.

Elkin, R. A., & Leippe, M. R. (1986). Physiological arousal, dissonance, and attitude change: Evidence for a dissonance-arousal link and a "don't remind me" effect. *Journal of Personality and Social Psychology, 51,* 55-65.

Pratkanis, A. R., Greenwald, A. G., Ronis, D. L., Leippe, M. R., & Baumgardner, M. H. (1986). Consumer-product and socio-political messages for use in studies of persuasion. *Personality and Social Psychology Bulletin, 12,* 536-538.

Greenwald, A. G., Pratkanis, A. R., Leippe, M. R., & Baumgardner, M. H. (1986). Under what conditions does theory obstruct research progress? *Psychological Review, 93,* 216-229.

Leippe, M. R. (1985). The influence of eyewitness nonidentifications on mock-jurors' judgments of a court case. *Journal of Applied Social Psychology, 15,* 656-672.

Leippe, M. R. (1985). The world according to social psychology. (Review of the fourth edition of Aronson's *The Social Animal.) Contemporary Psychology, 30,* 543-544.

R. HORTON 001666

M. Leippe

7

Hosch, H. M., Leippe, M. R., Marchioni, P. M., & Cooper, D. S. (1984). Victimization, self-monitoring, and eyewitness identification. *Journal of Applied Psychology, 64*, 280-288.

Baumgardner, M. H., Leippe, M. R., Ronis, D. L., & Greenwald, A. G. (1983). In search of reliable persuasion effects: II. Associative interference and persistence of persuasion in a message-dense environment. *Journal of Personality and Social Psychology, 45*, 524-537.

Leippe, M. R., Greenwald, A. G., & Baumgardner, M. H. (1982). Delayed persuasion as a consequence of associative interference: A context confusion effect. *Personality and Social Psychology Bulletin, 8*, 644-650.

Wells, G. L., & Leippe, M. R. (1981). How do triers of fact infer the accuracy of eyewitness identifications: Using memory for peripheral detail can be misleading. *Journal of Applied Psychology, 66*, 682-687.

Leippe, M. R. (1980). Effects of integrative memorial and cognitive processes on the correspondence of eyewitness accuracy and confidence. *Law and Human Behavior, 4*, 261-274.

Wells, G. L, Leippe, M. R., & Ostrom, T. M. (1979). Guidelines for assessing the fairness of a lineup. *Law and Human Behavior, 3*, 285-293.

Lingle, J. H., Geva, N., Ostrom, T. M., Leippe, M. R., & Baumgardner, M. H. (1979). Thematic effect of person judgments on impression organization. *Journal of Personality and Social Psychology, 37*, 674-687.

Leippe, M. R., Wells, G. L., & Ostrom, T. M. (1978). Crime seriousness as a determinant of accuracy in eyewitness identification. Journal of Applied Psychology, 63, 345-351.

Ronis, D. L., Baumgardner, M. H., Leippe, M. R., Cacioppo, J. T., & Greenwald, A. G. (1977). In search Of reliable persuasion effects: I. A computer-controlled procedure for studying persuasion. *Journal of Personality and Social Psychology, 35*, 548-569.

**MANUSCRIPTS UNDER REVIEW**

Leippe, M. R., & Eisenstadt, D. (2007). Social influences on eyewitness confidence: The social psychology of memory self-certainty. Invited chapter for R. M. Arkin, K. C. Oleson, & P. J. Carroll (Eds.), *The uncertain self: A handbook of perspectives from social and personality psychology*. Mahwah, NJ: Erlbaum. (Chapter delivered in October, 2006.)

Leippe, M. R., Rauch, S. M., & Eisenstadt, D. Cueing confidence in eyewitness identifications: The roles of lineup instructions and presumed memory for the witnessed event. (Invited resubmission to *Law and Human Behavior*, November 2006.)

**MANUSCRIPT IN PREPARATION AND WORK IN PROGRESS**

Leippe, M. R. Reasonable doubt definitions and perceptions of guilt: The moderating roles of timing and jurors' need for cognition. (To be submitted by December, 2006.)

R. HORTON 001667

M. Leippe

8

Leippe, M. R., Eisenstadt, D., & Rauch, S. M. Losing confidence and speed in making lineup identifications: The effects of attempting recall and pre-judging confidence. (To be submitted by December, 2006.)

Leippe, M. R., Manion, A. P., & Eisenstadt, D. Impression involvement and persuasion: Effects of self-presentation goals on message processing. (Manuscript being revised for resubmission.)

**INVITED PRESENTATIONS AND OTHER PROFESSIONAL PARTICIPATION**

Leippe, M. R., Eisenstadt, D., & Kiddoo, K. (2005, March).  Eyewitness expert testimony and instructions about reasonable doubt:  Independent influences on perceptions of trial evidence.  Presented in a symposium entitled AImpact of Expert Testimony on Jurors: Moderator Effects≅ (B. Cutler, Chair) at the annual meeting of the American Psychology-Law Society, La Jolla, CA.

Leippe, M. R., Rauch, S. M., & Eisenstadt, D. (2003, July).  General-knowledge expert testimony in a Strong prosecution case: Evidence for heightened skepticism in a trial simulation.  Presented in a symposium entitled AEyewitness Experts in Court≅ (B. Cutler, Chair) at the International, Interdisciplinary Conference on Psychology and Law, Edinburgh, Scotland.

Leippe, M. R., & Eisenstadt, D (2000, April).  Mentally doing what it takes to defend the self: For better or worse.  Presented at annual meeting of Social Psychologists Across the Midwest, St. Louis, MO.

Eisenstadt, D., & Leippe, M. R. (1999, October).  In defense of the self: Asymmetric patterns of acceptance, generalization, and compensation following rejected-self and ideal-self feedback. Invited presentation given in a symposium entitled "The Psychological Art of Self-Defense Exploring Fundamental Ideas" (J. Greenberg, Chair) at the annual meeting of the Society of Experimental Social Psychology, St. Louis, MO.

Leippe, M. R., & Eisenstadt, D. (1997, October).  Modes of dissonance reduction: Self-accountability and The elaborative continuum.  Presented in a symposium entitled "Dissonance  Theory after Forty Years: Current and Future Directions" (P. Devine, Chair) at the meeting of the Society of Experimental Social Psychology, Toronto, Ontario, Canada.

Leippe, M. R., & Eisenstadt, D. (1997, February-March).  Dissonance reduction following induced compliance: Transcending attitude change on  matters of social significance, self-presentation, and (racial) symbolism.  Presented at an APA-sponsored international conference entitled "Cognitive Dissonance 40 Years Later: A Revival with Revisions and Controversies."  Arlington, TX.

Discussant for symposium entitled "Conscious and Unconscious Factors in Social Influence" at the Lindemann Centenniel Conference on the "Frontiers of Consciousness: Perspectives From Psychology, Psychoanalysis, and Philosophy." (Conference included many of the most Prominent consciousness researchers and scholars; part of Adelphi University's centenniel celebration.)  Garden City, NY (1995, November).

Leippe, M. R., & Eisenstadt, D. (1993, May).  Prejudice and induced compliance: The generalization of dissonance reduction.  Presented at the Nags Head Conference on Self  and Social Identity.  Nags Head Conference Center, Highland Beach, FL.

R. HORTON 001668

Eisenstadt, D., & Leippe, M. R. (1993, May).  Reactions to rejected-self and ideal-self feedback: A self-comparison process.  Presented at the Nags Head Conference on Self and Social Identity.  Nags Head Conference Center, Highland Beach, FL.

Leippe, M. R. (1992, October).  Judging another's memory: A validity-intuition model of eyewitness persuasion.  Presented in a symposium entitled "Interface of Social Psychology and Law" (N. Kerr, Chair) at the meeting of the Society of Experimental Social Psychology, San Antonio. TX.

Leippe, M. R. (1991, May).  Motivation, the self, and persuasion: The case of impression involvement  Presented at the  Eighth Interdisciplinary Conference on Motivation and Emotion. Nags Head Conference Center, Highland Beach, FL.

Discussant for symposium entitled "Current Trends in Research on Adult Eyewitness Memory and Identification Accuracy."  American Psychological Society meeting, Washington, D.C. (1991, June).

Chair, paper session entitled "The Testimony of Children."  Biennial Convention of the American Psychology-Law  Society.  Williamsburg, VA, (1990, March).

Leippe, M. R. (1990, March).  Persuasion, involvement, and concern for the private and public selves.  Presented at conference on the "The Self in Relationship," Adelphi University, Garden City, NY.

Leippe, M. R. (1989, July).  Sincerely right or wrong?  Toward understanding how and how well people Judge the credibility of nondeceptive memory reports.  Presented in a symposium entitled "The Attribution of Communicator Credibility" at the First European Congress of Psychology, Amsterdam, The Netherlands.

Discussant for symposium entitled "Simulated Jury Research on the Child Witness."  Eastern Psychological Association meeting, Buffalo, NY (1988, April).

Leippe, M. R. (1987, May).  Dissonance reduction strategies and accountability to self and others: Ruminations  and some initial research.  Presented at the Fifth International Conference on Affect, Motivation and Cognition, Nags Head Conference Center, Kill Devil Hills, NC.

Leippe, M. R., & Romanczyk, A. (1986, August).  Eyewitness  age and amount of evidence as determinants of  mock-jurors' verdicts.  Presented in a symposium entitled "Children as Witnesses: jurors' Perceptions of Credibility and Guilt" at American Psychological Association, Washington, D.C.

Leippe, M. R. (1985, May).  Cognition and motives:  A new look at recipient involvement in persuasion contexts. Presented at the Second Invitational Conference on Attitudes and Influence, Nags Head Conference Center, Kill Devil Hills, NC.

Leippe, M. R. (1982, March).  Toward better and systematic interrogation of eyewitnesses:  A state-of-the-art review and prospectus.  Presented at the annual meeting of the Academy of Criminal Justice Sciences, Louisville, KY.

Leippe, M. R. (1980, June).  The eyewitness accuracy-confidence relationship: Comments from a cognitive social psychologist. Presented in the role of invited discussant at the International Conference on the Psychology of Eyewitness Testimony, Edmonton, Alberta, Canada.

## OTHER CONVENTION PRESENTATIONS

Leippe, M. R., Eisenstadt, D., Rauch, S. M., Walls, L. H., Kiddoo, K. L., & Frommelt, A. A. (2006, May). Attempted Recall and Pre-identification Certainty Judgments Reduce Eyewitness Identification Confidence and Speed. Presented at the annual meeting of the Association For Psychological Science, New York, NY.

Leippe, M. R., Eisenstadt, D., Rauch, S. M., Stambush, M. A., & Fox, M. (2005, March). The impact of biased lineup instructions and pre-identification memory feedback on eyewitness identification confidence and the confidence-accuracy relationship. Presented at the annual meeting of the American Psychology-Law Society, La Jolla, CA.

Leippe, M. R., Eisenstadt, D., McIntyre, K., Rivers, J. A., Rauch, S. M., Stambush, M., Hicks, J., & Whitworth, A. (2004, January). AHow am I not perfect?≅ Self-descriptiveness and certainty of ideal-self traits as a function of self-esteem. Presented at the annual meeting of the Society of Personality and Social Psychology, Austin, TX.

Eisenstadt, D., Leippe, M. R., et al. (2004, January). Counterattitudinal advocacy and racial beliefs: The mediating role of positive thoughts. Presented at the annual meeting of the Society of Personality and Social Psychology, Austin, TX.

Eisenstadt, D., Leippe, M. R., Rauch, S. M., Stambush, M., Hicks, J. L., Rivers, J. A., Whitworth, A., & Salas, J. (2003, July). Effects of co-witness feedback about an eyewitness report on identifications and susceptibility to misleading information. Presented at the International, Interdisciplinary Conference on Psychology and Law, Edinburgh, Scotland.

Eisenstadt, D., Leippe, M. R., Rivers, J. A., Hicks, J. L., Rauch, S. M., Stambush, M., Whitworth, A, Salas, J., Bujaker, G., & McIntyre, K. (2003, February). The self-comparison process: Mediational roles of counterargument accessibility and negative affect in judgments about the self-concept and self-esteem. Presented at the annual meeting of the Society of Personality and Social Psychology, Los Angeles, CA.

Leippe, M. R., Eisenstadt, D., Votraw, L. M., Hicks, J. L., & Rauch, S. M. (2002, March).. Eyewitness expert testimony: Recency and a judge's reminder can make it work for the defense. Presented at the annual meeting of the American Psychology-Law Society, Austin, TX.

Eisenstadt, D., Leippe, M. R., Rivers, J. A., Rauch, S., Stambush, M., Seib, H., Millinger, R., Louis, L., McCaslin, M., & Whitworth, A. (2002, February). Counterargument accessibility and distraction As buffers against negative (rejected-self) personality feedback. Presented at the annual meeting of The Social of Personality and Social Psychology, Savannah, GA.

Eisenstadt, D., Leippe, M. R., Rivers, J. A., Murphy, C.R., & Millinger, R. (2001, February). Dissonance and prejudice: When thinking is a mixed bag. Presented at the annual meeting of the Society of Personality and Social Psychology, San Antonio, TX.

Eisenstadt, D., Leippe, M. R., Rivers, J. A., Murphy, C. R., Seib, H. M., Bennett, K. L., Sachs, S. R., Sirotak, J. S., Wolf, D. M. (1999, April). Dissonance reduction and prejudice: Effects of costs and distraction on attitude change and restructuring. Presented at the annual meeting of the Midwestern Psychological Association, Chicago.

R. HORTON 001670

Leippe, M. R., Seib, H. M., Eisenstadt, D., & Alia-Klein, N. (1998, August).  Effects of eyewitness expert testimony in strong and weak cases.  Presented at American Psychological Association annual meeting, San Francisco, CA.

Leippe, M. R., Allard, R., Bukszpan, C., & Gele, K.  (1997, April).  Effects of feedback about recall memory on eyewitness identification, confidence, and suggestibility. Presented at Eastern Psychological Association annual meeting, Washington, D.C.

Leippe, M. R., Eisenstadt, D., Cusick, D., Antar, S., Tappen, E. R., & Garczynski, J. A. (1996, August).  Asymmetry and defense in reactions to feedback about the self.  Presented at American Psychological Association annual meeting, Toronto, Ontario, Canada.

Eisenstadt, D., Leippe, M. R., Darr, B. I., Fanning, K., Antar, S., & Cusick, D. (1996, August).  Dissonance, personal relevance, and change in prejudice-relevant attitudes.  Presented at American Psychological Association annual meeting, Toronto, Ontario, Canada.

Leippe, M. R., Eisendtadt, D., Darr, B. I., & Fanning, K. (1994, June).  Prejudice and dissonance: The role of racial ambivalence and beliefs in responses to induced compliance.  Presented at American Psychological Society annual meeting, Washington, D.C.

Eisenstadt, D., Fleishman, J. A. G., & Leippe, M. R. (1994, June).  The effects of self-comparison on mood and self-belief.  Presented at American Psychological Society annual meeting, Washington, D. C.

Leippe, M. R., Eisenstadt, D., & Fanning, K. (1994, April). Prejudice reduction through the generalization of dissonance reduction.  Presented at Eastern Psychological Association annual meeting, Providence, RI.

Fleishman, J. A., Eisenstadt, D., & Leippe, M. R. (1994, April).  The role of counterarguing in reactions to feedback about the self.  Presented at Eastern Psychological Association annual meeting, Providence, RI.

Eisenstadt, D., Garczynski, J. A., Leippe, M. R., Woolaway, K., & Bryant, L. (1993, August). The effects Of trait importance on self-comparison and persuasion.  Presented at American Psychological Association annual meeting, Toronto, Ontario, Canada.

Eisenstadt, D., Leippe, M. R., Garczynski, J. A., Bryant, L., & Woolaway, K. (1993, April).  Self-comparison and persuasion. Presented at Eastern Psychological Association annual meeting, Crystal City, VA.

Leippe, M. R., Eisenstadt, D., & Lorentzen, E. (1992, July).  Impression involvement and persuasion: Evidence for biased processing and strategic self-presentation.  Presented at 25th International Congress of Psychology, Brussels, Belgium.

Eisenstadt, D., Leippe, M. R., Malik, R., & Bryant, L. (1992, July).  The role of self-importance in the acceptance of feedback inconsistent with the self.  Presented at 25th International Congress of Psychology, Brussels,Belgium.

R. HORTON 001671

M. Leippe
12

Lorentzen, E., & Leippe, M. R. (1992, August). Effects of jury note taking on verdict and information processing. Presented at American Psychological Association annual meeting, Washington, D.C.

Leippe, M. R. (1991, June). Impression involvement and persuasion following a pretest: Strategic opposition to counterattitudinal advocacy. Presented at American Psychological Society annual meeting, Washington D. C.

Lorentzen, E., & Leippe, M. R. (1991, June). Jury note-taking creates a leniency bias in ambiguous cases. Presented at American Psychological Society annual meeting, Washington, D.C.

Virgile, C., Manion, A. P., & Leippe, M. R. (1991, June). Arousal and free gifts increase donations: A new compliance technique. Presented at American Psychological Society annual meeting, Washington, D.C.

Manion, A. P., Oberstein, S. G., Romanczyk, A., & Leippe, M. R. (1990, June). Factfinders can discriminate accurate from inaccurate adult and (to some extent) child eyewitnesses. Presented at American Psychological Society annual meeting, Dallas, TX.

Manion, A. P., & Leippe, M. R. (1990, May). Response involvement and biased elaboration in persuasion. Presented at Midwestern Psychological Association annual meeting, Chicago, IL.

Leippe, M. R., Romanczyk, A., & Manion, A. P. (1989, August). Believability of adults' and children's memories for real events. Presented at American Psychological Association annual meeting, New Orleans, LA.

Manion, A. P., Romanczyk, A., & Leippe, M. R. (1989, May). Eyewitness memory for a participatory Event as a function of age. Presented at Midwestern Psychological Association annual meeting, Chicago, IL.

Romanczyk, A., Manion, A. P., & Leippe, M. R. (1989, May). The effects of eyewitness age, judge's instructions and assigned reasonable doubt criterion on perceptions of mock jurors. Presented at Midwestern Psychological Association annual meeting, Chicago, IL.

Romanczyk, A., & Leippe, M. R. (1988, April). Reactions to child (versus adult) eyewitnesses: Telling arguments for child witnesses. Presented at Eastern Psychological Association annual meeting, Buffalo, NY.

Jackson, J. M., Leippe, M. R., Francasso, M. P., & Krizman, A. M. (1986, May). Do juries socially loaf? Presented in a symposium entitled "Jury Size and Juror Motivation" at Midwestern Psychological Association annual meeting, Chicago, IL.

Saad, I., & Leippe, M. R. (1986, April). Beliefs about alcohol and cognitive dissonance: Relief from a bottle of near-beer. Presented at Eastern Psychological Association annual meeting, New York, NY.

Leippe, M. R., & Ferrari, J. R. (1985, April). Polarization versus reversal of persuasion: Effects of processing set and message exposure duration. Presented at Eastern Psychological Association annual meeting, Boston, MA.

R. HORTON 001672

M. Leippe

13

Elkin, R. A., & Leippe, M. R. (1985, April). Arousal in cognitive dissonance: The physiology of attitude change. Presented at Eastern Psychological Association annual meeting, Boston, MA.

Ferrari, J. R., & Leippe, M. R. (1985, April). Effects of persuasive messages on blood donation attitudes, intentions, and behavior. Presented at Eastern Psychological Association annual meeting, Boston, MA.

Leippe, M. R. (1984, April). Not guilty beyond a doubt: The impact of non-identifying eyewitnesses on mock-jurors' verdicts. Presented at Eastern Psychological Association annual meeting, Baltimore, MD.

Leippe, M. R. (1983, April). Persuasion, cognitive responses, and message exposure duration: Evidence for thought reversal. Presented at Eastern Psychological Association meeting, Philadelphia, PA.

Elfner, E. S., Hardy, R. R., Leippe, M. R., & Williamsen, J. A. (1982, June). Initial report of the St. Norbert goals impact study: A four-year longitudinal assessment of student outcomes. Presented at meeting of Association for Institutional Research in the Upper Midwest, LaCrosse, WI.

Hosch, H. M., Leippe, M. R., Marchioni, P. M., & Cooper, D. S. (1982, April). Victimization, self-monitoring, and eyewitness identification. Presented at Southwestern Psychological Association annual meeting, Dallas, TX.

Leippe, M. R. (1979, May). Amount of information processing and persuasion: The effects of message exposure duration and message quality. Presented at Midwestern Psychological Association annual meeting, Chicago, IL.

Baca, L. D., Williams, K., Leippe, M. R., Ostrom, T. M., & Garrison, C. (1977, November). Program evaluation of a crime watch project. Presented at Evaluation Research Society annual meeting, Washington, D.C.

Leippe, M. R., Baumgardner, M. H., & Greenwald, A. G. (1977, November). Associative interference and persistence of persuasion. Presented at Psychonomic Society annual meeting, Washington, D.C.

Baumgardner, M. H., Leippe, M. R., & Greenwald, A. G. (1977, May). Effects of topic characteristics on persistence of persuasion. Presented at Midwestern Psychological Association annual meeting, Chicago, IL.

Leippe, M. R., Wells, G. L., & Ostrom, T. M. (1976, August). Importance of the crime and accuracy in eyewitness identification. Presented at American Psychological Association annual meeting, Washington, D.C.

Baumgardner, M. H., Leippe, M. R., & Ostrom, T. M. (1976, May). The role of criterial attributes in the organization of cognitive representations. Presented at Midwestern Psychological Association annual meeting, Chicago, IL.

R. HORTON 001673

M. Leippe
14

## RESEARCH GRANTS

### Funded

Leippe, M. R. (principal investigator). The accuracy, credibility, and impact of children's eyewitness testimony. (Funded by the National Science Foundation. The grant was a three-year continuing one covering the period September 1, 1987 to February 1, 1991. The total amount awarded was $143,460.)

### Submitted and Under Review

Eisenstadt, D., & Leippe, M. R. The mediational roles of public self-awareness and social self-discrepancies in the negative affect-aggression relationship: A self-regulatory model. (Proposal submitted to National Science Foundation, Social Psychology Program, on 7/15/2006, and currently under review. Proposed time period is 3 years and requested amount is $364,112.)

Leippe, M. R., & Eisenstadt, D. The nature and determinants of eyewitness confidence and confidence-accuracy correspondence: A cue-belief model. (Proposal submitted in August, 2004 to National Science Foundation, Law and Social Science Program. Requested amount: $352,461. Proposal was favorably reviewed [4 of 7 reviews were "very good" or "excellent;" none were negative] and a resubmission encouraged. A revised proposal is to be resubmitted to NSF in January, 2007.)

### Submitted but Not Funded

Eisenstadt, D., & Leippe, M. R. Studies of self-comparison: The processes and factors involved in self-concept change and resistance to change. (Submissions of this proposal to National Science Foundation in 2001 and 2002 were favorably reviewed and fell just short of the funding cut-off.)

Leippe, M. R. Factors affecting the valid assessment of children's and adults' eyewitness testimony. (Submitted to National Science Foundation in 1991. The proposal, which requested $273,000, was favorably reviewed but not funded.)

Leippe, M. R. Persuasion and processing sets: A cognitive elaboration model of attitude change in communication settings. (Submitted to National Science Foundation in July, 1984. The proposal was favorably reviewed but not funded.)

Leippe, M. R. Behavior expectation, persuasion, and post-message behavior. (Submitted to National Institute of Mental Health Small Grant Program in December, 1982. The proposal was unanimously approved for funding but not funded due to insufficient agency money.)

**PROFESSIONAL MEMBERSHIPS:** Society of Experimental Social Psychology; American Psychology-Law Society; Association for Psychological Science (fellow); Society for Personality and Social Psychology; Psychonomic Society; Midwestern Psychological Association

R. HORTON 001674

## References

Anthony, T., Cooper, C., & Mullen, B. Cross-racial facial identification: A social cognitive integration. *Personality and Social Psychology Bulletin, 18*, 296-301.

Bothwell, R. K., Deffenbacher, K. A., & Brigham, J. C. (1987). Correlation of eyewitness accuracy and confidence: The optimality hypothesis revisited. *Journal of Applied Psychology, 72*, 691-695.

Benton, T. R., Ross, D. F., Bradshaw, E., Thomas, W. N., & Bradshaw, G. S. (2006) Eyewitness memory is still not common sense: Comparing jurors, judges and law enforcement officers to eyewitness experts. *Applied Cognitive Psychology, 20*, 115-129.

Brigham, J. C. & Bothwell, R. K. (1983). The ability of prospective jurors to estimate the accuracy of eyewitness identifications. *Law and Human Behavior, 7*, 19-30.

Connors, E., Lundregan, T., Miller, N., & McEwan, T (1996). *Convicted by juries, exonerated by science: Case studies in the use of DNA evidence to establish innocence after trial.* Alexandria, VA: National Institute of Justice.

Christianson, S-A., Karrlson, I, & Persson, L. G. W. (1998). Police personnel as eyewitnesses to a violent crime. *Legal an Criminological Psychology, 3*, 59-72.

Cutler, B. L., & Penrod, S. D. (1995). *Mistaken identification: The eyewitness, psychology and the law.* New York: Cambridge.

Deffenbacher, K. A. (1991). A maturing of research on the behaviour of eyewitnesses. *Applied Cognitive Psychology, 5*, 377-402.

Deffenbacher, K. A., & Loftus, E. F. (1982). Do jurors share a common understanding concerning eyewitness behavior? *Law and Human Behavior, 6*, 15-30.

Devine, P. G., & Malpass, R. S. (1985). Orienting strategies in differential face recognition. *Personality and Social Psychology Bulletin, 11*, 33-40.

Garrioch, L., & Brimacombe, C. A. E. (2001). Lineup administrators' expectations: Their impact on eyewitness confidence. *Law and Human Behavior, 25*, 299-315.

Kassin, S. M., & Barndollar, K. A. (1992). The psychology of eyewitness testimony: A comparison of experts and prospective jurors. *Journal of Applied Social Psychology, 22*, 1241-1249.

Kassin, S. M., Ellsworth, P. C., & Smith, V. L. (1989). The "general acceptance" of psychological research on eyewitness testimony: A survey of the experts. *American Psychologist, 44*, 1089-1098.

Kassin, S. M., Tubb, V. A., Hosch, H. M., & Memon, A. (2001). On the "general acceptance" of eyewitness testimony research: A new survey of the experts. *American Psychologist, 56*, 405-416.

Leippe, M. R. (1980). Effects of integrative memorial and cognitive processes on the correspondence of eyewitness accuracy and confidence. *Law and Human Behavior, 4*, 261-274.

Leippe, M. R. (1995). The case for expert testimony about eyewitness memory. *Psychology, Public Policy, and Law, 1*, 909-959.

Leippe, M. R., & Eisenstadt, D. (2006). Eyewitness confidence and the confidence-accuracy relationship in memory for people. In R. C. L. Lindsay, D. F. Ross, J. D. Read, & M. P. Toglia (Eds.), *Handbook of eyewitness psychology* (Vol. 2, pp. 377-425).

Leippe, M. R., Eisenstadt, D., Rauch, S. M., & Stambush, M. A. (2006). Effects of social-

EXHIBIT C

R. HORTON 001675

comparative memory feedback on eyewitnesses' identification confidence, suggestibility, and retrospective memory reports. *Basic and Applied Social Psychology, 28*, 201-220.

Leippe, M. R., Manion, A. P., & Romanczyk, A. (1992). Eyewitness persuasion: How and how well do factfinders judge the accuracy of adults' and children's memory reports? *Journal of Personality and Social Psychology, 63*, 181-197.

Leippe, M. R., Romanczyk, A., & Manion, A. P. (1991). Eyewitness memory for a touching experience: Accuracy differences between child and adult witnesses. *Journal of Applied Psychology, 76*, 367-379.

Leippe, M. R., Wells, G. L., & Ostrom, T. M. (1978). Crime seriousness as a determinant of accuracy in eyewitness identification. *Journal of Applied Psychology, 63*, 345-351.

Lindholm, T., Christianson, S-A., & Karlsson, I. (1997). Police officers and citizens as witnesses: Intergroup biases and memory performance. *Applied Cognitive Psychology, 11*, 431-444.

Lindsay, R. C. L., Ross, D. D., Read, J. D., & Toglia, M. P. (Eds.) (2006). *Handbook of eyewitness psychology* Mahwah, NJ: Erlbaum.

Lindsay, R. C. L., Wallbridge, H., & Drennan, D. (1987). Do clothes make the man? An exploration of the effect of lineup attire on eyewitness identification accuracy. *Canadian Journal of Behavioral Science, 19*, 463-478.

Loftus, E. F. (1979). Eyewitness testimony. Cambridge, MA: Harvard University Press.

Loftus, E. F., & Doyle, J. M. (1989). *Eyewitness testimony: Civil and criminal*. New York: Kluwer.

Loftus, E. F., Levidow, B., & Duensing, S. (1992). Who remembers best? Individual differences in memory for events that occurred in a science museum. *Applied Cognitive Psychology, 6*, 93-107.

Loftus, E. F., Miller, D. G., & Burns, H. J. (1978). Semantic integration of verbal information into a visual memory. *Journal of Experimental Psychology: Human Learning and Memory, 4*, 19-31.

Luus, C. A. E., & Wells, G. L. (1994). The malleability of eyewitness confidence: Co-witness and perseverance effects. *Journal of Applied Psychology, 79*, 714-723.

Meissner, C. A., & Brigham, J. C. (2001). Thirty years of investigating the own-race bias in memory for faces: A meta-analytic review. *Psychology, Public Policy, and Law, 7*, 3-35.

Memon, A., Hope, L., & Bull, R. (2003). Exposure duration: Effects on eyewitness accuracy and confidence. *British Journal of Psychology, 94*, 339-354.

Narby, D. J., Cutler, B. L., & Penrod, S. D. (1996). The effects of witness, target, and situational factors on eyewitness identifications. In S. L. Sporer, R. S. Malpass, & G. Koehnken (Eds.), *Psychological issues in eyewitness identification* (pp. 23-52). Mahwah, NJ: Erlbaum.

*Neil v. Biggers*, 409 U. S. 188, 93 S. Ct. 375; 34 L. Ed 2d. 401 (1972).

Penrod, S., & Cutler, B. (1995). Witness confidence and witness accuracy: Assessing their forensic relation. *Psychology, Public Policy, and Law, 1*, 817-845.

Pigott, M. A., Brigham, J. C., & Bothwell, R. K. (1990). A field study on the relationship Between quality of eyewitnesses' descriptions and identification accuracy. *Journal Of Police Science and Administration, 17*, 84-88.

Platz, S. J., & Hosch, H. M. (1988). Cross racial/ethnic eyewitness identification: A field study. *Journal of Applied Social Psychology, 18*, 972-984.

R. HORTON 001676

Ross, D. F., Read, J. D., & Toglia, M. P. (Eds.) (1994). *Adult eyewitness testimony: Current trends and developments*. New York: Cambridge.

Ross, D. F., Ceci, S. J., Dunning, D., & Toglia, M. P. (1994). Unconscious transference and lineup identification: Toward a memory blending approach. In D. F. Ross, J. D. Read, &.M. P. Toglia (Eds.) (1994). *Adult eyewitness testimony: Current trends and developments* (pp. 80-100). New York: Cambridge.

Scheck, B., Neufeld, P., & Dwyer, J. (2000). *Actual innocence: Five days to execution and other dispatches from the wrongly convicted*. New York: Cambridge University Press.

Schmechel, R. S., O'Toole, T. P., Easterly, C., & Loftus, E. F. (2006). Beyond the ken: Testing jurors' understanding of eyewitness reliability evidence. *Jurimetrics, 46*, 177-214.

Shapiro, P. N., & Penrod, S. D. (1986). Meta-analysis of facial identification studies. *Psychological Bulletin, 100*, 139-156.

Sporer, S. L. (2001). Recognizing faces of other ethnic groups: An integration of theories. *Psychology, Public Policy, and Law, 7*, 36-97.

Stanny, C. J., & Johnson, T. C. (2000). Effects of stress induced by a simulated shooting on Recall by police and citizen witnesses. *American Journal of Psychology, 113*, 159-186.

Steblay, N. M., Dysart, J., Fulero, S., & Lindsay, R. C. L. (2003). Eyewitness accuracy rates in police showup and lineup presentations: A meta-analytic comparison. *Law and Human Behavior, 27*, 523-540.

Thomassin, L., & Alain, M. (1990). Performance of witnesses when giving evidence and making eyewitness identifications. *Canadian Police College Journal, 14*, 233-246.

Wells, G. L. (1984). How adequate is human intuition for judging eyewitness testimony. In G. L. Wells & E. L. Loftus (Eds.), *Eyewitness testimony: Psychological perspectives* (pp. 256-272). New York: Cambridge University Press.

Wells, G. L. (1985). Verbal descriptions of faces from memory: Are they diagnostic of Identification accuracy? *Journal of Applied Psychology, 70*, 619-626.

Wells, G. L. (1993). What do we know about eyewitness identification? *American Psychologist, 48*, 553-571.

Wells, G. L., & Bradfield, A. L. (1998). "Good, you identified the suspect": Feedback to witnesses distorts their reports of the witnessing experience. *Journal of Applied Psychology, 83*, pp. 360-376.

Wells, G. L., & Loftus, E. F. (Eds.) (1984). *Eyewitness testimony: Psychological perspectives*. New York: Cambridge.

Wells, G. L. & Murray, D. M. (1984). Eyewitness confidence. In G. L. Wells & E. L. Loftus (Eds.), *Eyewitness testimony: Psychological perspectives* (pp. 155-170). New York: Cambridge.

Wells, G. L., & Olson, E. A. (2003). Eyewitness testimony. *Annual Review of Psychology, 54*, 277-295.

Wells, G. L., Small, M., Penrod, S., Malpass, R. M., Fulero, S. M., & Brinacomber, C. A. E. (1998). Eyewitness identification procedures: Recommendations for lineups and photospreads. *Law and Human Behavior, 22*, 603-647.

Woodhead, M. M., Baddeley, A. D., & Simmonds, D. C. V. (1979). On training people to recognize faces. *Ergonomics, 22*, 333-343.

Yarmey, A. D. (1986). Perceived expertness and credibility of police officers as eyewitnesses. *Canadian Police College Journal, 10*, 36-58.

Yarmey, A. D. (1990). *Understanding police and police work*. New York: New York

-3-

R. HORTON 001677

University Press.

Yarmey, A. D. & Jones, H. P. T. (1983).  Is the psychology of eyewitness identification a matter of common sense?  In S. M. A. Lloyd-Bostock, & B. R. Clifford (Eds.), *Evaluating witness evidence: Recent psychological research and new perspectives* (pp. 13-40). Chichester, England: Wiley.

Yarmey, A. D., Yarmey, M. J., & Yarmey, A. L. (1996).  Accuracy of eyewitness identifications in showups and lineups. *Law and Human Behavior, 20,* 459-477.

Yuille, J. C., Davies, G., Gibling, F., Marxsen, D. & Porter, S. (1994).  Eyewitness memory of police trainees for realistic role plays. *Journal of Applied Psychology, 79,* 931-936.

R. HORTON 001678

**IN THE COURT OF COMMON PLEAS**
**FRANKLIN COUNTY, OHIO**

STATE OF OHIO,                          :

    Respondent,                        :      Case No. 05 CR 146

    v.                                 :      Judge John F. Bender

RICHARD HORTON,                          :

    Petitioner.                        :

## AFFIDAVIT OF WILLIAM S. LAZAROW

STATE OF OHIO      )
                   )    SS:
COUNTY OF FRANKLIN  )

The affiant, being first duly cautioned and sworn, deposes and says that the following is true to the best of his knowledge and belief:

1) I am an attorney licensed to practice law in the State of Ohio since 1972. I am also admitted to practice before the United States District Courts for the Northern and Southern Districts of Ohio, the United States Court of Appeals for the Sixth and Ninth Circuits, and the United States Supreme Court.

2) I am a graduate of The Ohio State University College of Law and received my Juris Doctor degree in 1972. I have practiced criminal law since 1972 as a county, state and federal public defender as well as in private practice.

3) I am a member of the National Association of Criminal Defense Lawyers, the Ohio Association of Criminal Defense Lawyers, the Central Ohio Association of Criminal Defense Lawyers, as well as the Ohio State Bar Association and Columbus Bar Association.



EXHIBIT D

R. HORTON 001679

4) I am certified for appointment as trial co-counsel and appellate counsel for indigent defendants in capital cases pursuant to Rule 20 of the Rules of Superintendence for the Courts of Ohio.

5) I have represented criminal defendants at trial and on appeal in municipal, common pleas, and appellate courts throughout the State of Ohio; in federal district court proceedings in Ohio, California, and Arizona; in the United States Court of Appeals for the Sixth and Ninth Circuits; and before the United States Supreme Court.

6) I have attended numerous seminars on criminal litigation throughout the United States, and have lectured on criminal law issues and trial strategy at numerous continuing legal education seminars, including the Ohio Association of Criminal Defense Lawyers, the Ohio CLE Institute, and the former Ohio Federal Death Penalty Resource Center.

7) As a result of my education, my criminal trial experience, my attendance at continuing legal education seminars, my review of case law and literature regarding criminal litigation, I am familiar with the prevailing professional norms for attorneys engaged in the practice of criminal law.

8) The Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defense." The United States Supreme Court has set out the standards for determining whether or not counsel provides effective assistance in criminal actions. A criminal defendant has the right to be represented by counsel who performs above a minimal level of effectiveness. *Powell v. Alabama*, 287 U.S. 45 (1932). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court held that to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced him. *Id.*

2

R. HORTON 001680

at 687. To meet his burden of proof on the deficiency prong, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 668. To prevail on the prejudice prong, a defendant must demonstrate that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Counsel's errors are to be weighed cumulatively.

9) I was asked by Carol A. Wright, Richard Horton's appellate and post-conviction counsel, to render an opinion as to whether Mr. Horton's received the effective assistance of counsel in his jury trial held the end of January and beginning of February, 2006, particularly in regard to counsel's failure to obtain an expert on eyewitness identification or otherwise effectively challenge the prosecuting witnesses identification of Mr. Horton as the perpetrator of the armed robbery. Prior to rendering my opinion in this matter, I reviewed various portions of the state court record, including the transcript of the motion to suppress identification as well as the direct appeal Brief of Appellant Richard H. Horton filed in the Franklin County Court of Appeals on September 11, 2006. I also reviewed an email to Mr. Horton's current counsel from Dr. Michael R. Leippe, a Professor of Psychology at St. Louis University, raising questions about the accuracy of the eyewitness identification evidence submitted in Mr. Horton's case. I've also reviewed the Affidavit of Lakeon Horton, the defendant's cousin, who contradicts prosecuting witness McClanahan's trial testimony that he never went to or into Horton's house.

10) In any criminal case, it is incumbent upon trial counsel to identify the key factual and/or legal issues in the case, and develop a strategy for dealing with them. In some cases the issue will be self-defense. In others it will be alibi. In many it will be the defendant's intent at

R. HORTON 001681

the time the act was committed. In this case, there was no question as to whether or not a crime had been committed. The key issue in this case was the identification of the perpetrator.

11) Victim Richard McClanahan testified that the robber wore a pair of blue jeans and a grey hooded sweatshirt, and that the robber had the sweatshirt hood tied tightly around his face so that all that could be seen were his eyes. Although only the robber's eyes could be seen, McClanahan testified that he thought it was Horton and that he recognized his voice from the night before. McClanahan told the investigating detective that he would get the last name of the man from his niece. (Tr. at 60). He provided the last name on October 23, 2004, some two weeks after the incident. Six weeks later, on December 4, 2004, Detective Walker showed McClanahan a photo array which included a photo of Richard Horton. Not surprisingly, McClanahan picked out the photograph of Richard Horton, the person whose name McClanahan had given the police. (Tr. at 61).

12) Rhonda Curry's testimony was similar to McClanahan's. Curry testified that the robber wore dark jeans with white stitching and a gray hoodie pulled tight around his face. You could not see his lips. (Tr. at 97). After the robber pointed the gun at her and threatened to kill her, she put her head into a pillow. (Tr. at 86). She claimed that she knew Horton from the same niece's incident that McClanahan testified about, and acknowledged that she had discussed the incident with McClanahan. Not surprisingly, she also picked out the photograph of Richard Horton, the person whose name McClanahan had given the police.

13) Significantly McClanahan's identification of Horton was based not upon the robbery, but upon his conversation with an individual who asked him for a loan while he was making a call from a pay phone the previous night. McClanahan testified that the robber had on

4

R. HORTON 001682

the same clothes as the night before (blue jeans and a gray hooded sweatshirt), and that he recognized the voice from the night before.

14) Also significant is the fact that Horton resided in the area, and his face would be familiar to anyone who lived in the neighborhood. Rhonda Curry told Detective Walker that she thought she could recognize the guy from the neighborhood. (Tr. at 117). McClanahan recognized Horton because he put brakes on a car that belonged to his niece when she sold a car to Horton seven to ten years before. (Tr. at 55). McClanahan testified that he saw Horton a subsequent time at a Sunoco station, and that Horton had given him his telephone number. (Tr. at 66). McClanahan denied that he regularly bought drugs from Horton (Tr. at 71), and denied ever going to Horton's home to discuss the incident. (Tr. at 69).

15) Knowing that identification of the perpetrator was the key issue in this case, it was incumbent upon trial counsel to develop a strategy for dealing with the issue. Scientific research has established that people, in general, are heavily influenced by eyewitness testimony. In fact the tendency is to over-believe memory reports. Generally, jury eligible adults overestimate the likelihood that an eyewitness identification reflects accurate memory. *See*, Brigham, J.C. & Bothwell, R.K. (1983), The ability of prospective jurors to estimate the accuracy of eyewitness identifications, *Law and Human Behavior*, 7, 19-30. This is not new research. Competent defense counsel knows these facts and knows that mistaken eyewitness identification is the primary cause of the conviction of innocent people in the United States.

16) Here, defense counsel filed a boilerplate motion to suppress the identification (R. 10), but failed to properly support the motion. Counsel failed to object to the admission of the photo array for the proper reasons. First, the photo array was merely an attempt to bolster the identifications of the witnesses. It offered no relevant substantive evidence. Both McClanahan

5

and Curry claimed they already knew that the person who robbed them was Richard Horton. The correct choice of the photo of the person whom they claimed they knew and whose name they had provided to the police had no relevant purpose, and served solely to bootstrap the State's case. Counsel failed to object and failed to argue the meaninglessness of the photo array evidence, and also failed to argue the unfair prejudice arising from this procedure.

17) Trial counsel also failed to object to array evidence that was not based on the array. Detective Walker testified about the procedure used for the array, and read the instructions off the array procedure form. (Tr. at 126-28). In regard to the level of certainty, Walker wrote "voice, same eyebrow, wearing same pants from night before, 100% certain." (State's Exhibit 1-A). However, there was no voice array conducted, no view of the pants in any of the photos, and no mention of the eyes in State's Exhibit 1-A. What McClanahan was certain about had nothing to do with the array. Counsel failed to object to this testimony or raise the issue in a motion to suppress.

18) Trial counsel also failed to object to the admission of the array forms on the basis of hearsay. The forms and the statements set forth in the forms were inadmissible. The trial court noted that although the fact of prior identification was admissible under Evid. R. 801, the actual statements made were not admissible. While the court noted this distinction, it also permitted their admission based upon defense counsel's failure to object. (Tr. at 34).

19) Trial counsel also failed to object to the witness's failure to answer the questions asked, thereby permitting rambling explanations with inadmissible hearsay and prejudicial information. This was particularly apparent with Rhonda Curry as well as Detective Walker.

20) In contrast to trial counsel's limited efforts to attack the identification of their client as the robber, there are numerous things that trial counsel could have done that would have

6

R. HORTON 001684

significantly called into question the State's identification of Horton as the perpetrator of this crime.

21) Trial counsel should have first of all obtained an expert on eyewitness identification who could have explained to the jurors how people make identifications and the problems inherent in the identification procedure.[1] For example, an eyewitness identification expert could have explained to the jurors that:

A.  There is a very real possibility that both victim McClanahan and victim Curry experienced an unconscious transference of memory. Based on resemblance, McClanahan may have mistaken the actual culprit for Horton during the phone booth incident the night preceding the crime. Curry may have made the same transference error during the crime. The conditions in both situations were favorable for this kind of mistaken recognition, including poor witnessing conditions (especially during the crime when only part of the culprit's face could be seen and trauma, weapon focus, and fast pace were operative) and prior exposure that was infrequent, passive, and temporally distant. The fact that victim Curry was unable to tell the police who the culprit resembled when she gave her initial report to the police suggests the vagueness of the resemblance --- far from what a veridical recognition would result in.

---

[1] In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Supreme Court held that an indigent defendant charged with a capital offense has a due process right to a state-provided psychiatrist when he made an *ex parte* showing that his sanity will be a significant factor in his defense as well as on the question of dangerousness at the penalty stage.

7

R. HORTON 001685

B.     If transference occurred, then it simply cannot be determined whether the victims' identification involve recognition of an innocent (Horton) or recognition of who actually invaded their home.

C.     A number of sources of memory error surround the lineup identification itself.  The retention interval exceeded two months --- a time period in which considerable forgetting usually occurs along with distortions in the memory trace in the direction of expectations and beliefs.  In addition, if Horton's was indeed the only light-skinned face in the lineup (that complexion was mentioned by both victim witnesses), then the lineup was highly suggestive.  It is improper to exclude a feature prominently mentioned in descriptions of the culprits when choosing lineup foils.

D.     Eyewitness confidence is not a good indicator of eyewitness accuracy. This is especially true when witnesses have had months to convince themselves of their theory of who the culprit was.

22)  These and other factors, as well as the generally poor reliability of eyewitness testimony, are not commonsensical to jurors. Jurors' ability to judge the validity of eyewitness evidence would be improved if they were apprised of what science knows about eyewitness testimony.  This is especially important when the prosecution's evidence begins and ends with eyewitness testimony.

23)  Since Horton's identification as the robber relied upon the credibility of the victims, it was incumbent upon trial counsel to conduct a thorough investigation into their backgrounds. This is especially true in a case such as this in which one of the victims is alleged to have been involved in the drug trade.  Such an investigation would have revealed, for example, that Richard

8

R. HORTON 001686

McClanahan lied when he denied ever going to Horton's home to discuss the incident. (Tr. at 69). *See* Affidavit of LaKeon Horton, in which the affiant indicates he observed Richard McClanahan enter his cousin's residence in the summer of 2005.

24) For the reasons set forth above trial counsel's performance fell below an objective standard of reasonableness. Counsel failed to: a) raise proper objection to the admission of the photo array; b) object to "array evidence" not based upon the array; c) object to the admission of hearsay array forms; d) object to leading and improper questions, vouching and witness's failure to answer the questions asked; e) obtain an eyewitness identification expert who could have explained to the jurors how people make identifications, the problems inherent in the identification procedure, and how these problems could have led to a misidentification in Horton's case; and f) conduct a thorough investigation of the victims' backgrounds.

25) There is a reasonable probability that but for counsel's failures as set forth above, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. As noted in *Strickland*, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. *Id.* at 696. This was not an overwhelming case of guilt, but essentially a credibility contest. Furthermore the jury deliberated on this case for a number of hours. The jury began deliberations at 1:00 p.m. on February 2, 2006. (Tr. at 352-53). The jury continued deliberations at 9:00 a.m. the following day and a verdict was not returned until 12:20 that afternoon. Given that the only issue was identification, it is highly probable that the jury struggled with these issues.

9

R. HORTON 001687

Further affiant sayeth naught.

_____
WILLIAM S. LAZAROW

Sworn to before me and subscribed in my presence this ⸋ day of January, 2007.

**DAVID C. STEBBINS**
**ATTORNEY AT LAW**
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.

_____
Notary Public

10

R. HORTON 001688

# IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO
## CRIMINAL DIVISION

**STATE OF OHIO,**
    Plaintiff,

vs.

**Case No. 05CR-146**
**Judge Bender**

**RICHARD HORTON,**
    Defendant.

---

## AFFIDAVIT OF LAKEON HORTON

---

State of Ohio:        )
                      )
County of Franklin:   )

I, LaKeon Horton, after being duly cautioned and sworn, depose and state the following:

1)      I am a cousin of Richard Horton and I have known him all of my life.

2)      I lived with Richard Horton on Reynolds Avenue, in Columbus, Ohio during the summer of 2005. I knew who Richard McClanahan was just from the area.

3)      On one occasion, during the summer of 2005, I was in a car with Richard Horton on our way back to the house on Reynolds Avenue. We saw Richard McClanahan traveling in a car and he stopped to talk with Richard Horton. I heard Richard McClanahan tell Richard Horton that he wanted to talk with him. Richard Horton told Richard McClanahan to come to the house.



EXHIBIT E

1

R. HORTON 001689

4)      We got back to the house and I saw Richard McClanahan enter the house. I heard some of the conversation he had with Richard Horton. I heard Richard McClanahan tell Richard Horton that if Richard Horton gave him some sum of money, he would go to the police station and tell the police that Richard Horton had not been the man that robbed him. I went upstairs and did not hear all of the conversation. Richard McClanahan showed no sign of fear in stopping to talk with Richard Horton or entering the house to talk with him.

5)      I spoke with Richard Horton about this conversation and Richard told me that he was not going to pay any money because he was not guilty.

6)      I never saw Richard Horton with a gun when I lived with him.

7)      I was willing to testify to these facts during Richard Horton's trial and continue to be willing to testify.

Further affiant sayeth naught.

LaKeon Horton

Sworn to and subscribed before me this 1st day of January, 2007.

Notary Public

CAROL A. WRIGHT, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

2

R. HORTON 001690

December 28, 2006

To Whom It May Concern:

I am writing this letter on behalf of my nephew Richard Horton. I wanted to testify on his behalf at his trial, but since I was not able to I am going to take this opportunity to say some of the things you would have heard directly from my mouth.

I have known Richard all of his life as his mother was my older sister Janice Horton. We both were residents of Columbus and raised our children here even though we ourselves were born and raised in North Carolina. I have been closely connected to and involved in Richard's life since he was small. He and my son were close as children, Janice babysat for me while I worked, and I have attempted to fill the gap left by his mother's untimely death.

Richard and my son were close as they grew up, it was only years later that I discovered through conversations with my son how, even as Richard was making wrong choices, and he cautioned my son to steer clear of those same areas. He takes his role as one of the older cousins seriously, even to the point of being the peacemaker in arguments between his cousins, who are all in about the same age group.

Like all of my family, I watched Richard spiral out of control after the death of his mother. I am aware that Richard has prior criminal offenses, and do not pretend to justify his previous acts and wrong judgments. While I have not always condoned Richard's actions, I have always been impressed with the way he will stand up and take responsibility for his choices and face the consequences with dignity. His mother raised him with the belief that you take responsibility for your choices and actions whether they are good or bad. Richard has consistently done so.

In 2004 I noticed a marked improvement in the choices that Richard was making for his life. I believe that all of the good foundations his mother had carefully laid were finally beginning to make sense to him. Richard worked at becoming a better thinking person, getting a job and finally settling down and getting married. His life became about reaching out to better himself and his family by extension. I was in the process of rehabbing a house in the 4th and St. Clair area and Richard constantly checked on me, he helped me with the really heavy work offering encouragement when I became tired or got discouraged. Richard went out of his way to caution me about the area and he kept an eye out for me, even though I felt I had my previous years in law enforcement to alert me to potential trouble spots. Richard did this with love and dignity and never did he ever have or mention a gun or firearms of any type. He and I spent a fair amount of time together working on my project. I believe he had truly moved beyond that phase of his childhood, and it was demonstrated by his actions and words.

Richard was also there for my nephew as he turned 18 and decided to rebel against my younger sisters rules. When he moved out against my sister's wishes, it was Richard who stepped up and offered his home as a place to live. Richard did not stop with just providing a place for him to live, he continued to talk with my nephew and encourage him to find some middle ground with his mother.



Exhibit F

R. HORTON 001691

Ultimately my nephew and my sister were able to reconcile, neither totally got their way, but they were able to strike a balance that allowed them to once again enjoy a mother/son relationship. I know this was due in large part to Richard's actions and efforts behind the scenes.

Richard had finally made peace with his past actions and his mother's death. He was displaying a more mature critical thinking process and none of his actions were violent in nature. He had taken his role as the oldest cousin to new heights, reaching out to his younger cousins and to his younger brother to assist them in avoiding the painful mistakes he had made. He had assumed a more active role in the lives of his own children and had gotten married, and settled in to his new life style.

I do not believe that Richard was responsible for or had any involvement in the criminal offenses with which he was charged. I know that Richard had changed his life for the better, and am aware that sometimes leaving the past behind is more than walking away from it. The past has to walk away from you also; sometimes the people that are involved in that negative part of your life can't watch you move onto better things. I know that my nephew had turned the corner and was moving into better things. Please allow the appeal to move forward and the justice system to examine all of the circumstances surrounding this incident and I believe you will find that Richard is innocent of the charges.

Thank you for allowing me the opportunity to speak via written words on behalf of my nephew Richard H. Horton.

Sincerely,

Barbara Horton-Alomar

R. HORTON 001692

Dear Sir or Madame,

My name is Furquan McDougald. I am owner of McDougald Trucking in Columbus, Ohio. I am a close friend of Richard Horton. I have known Richard for about 15 years. We grew up in the same neighborhood and attended the same high school together. We played basketball together and hung out together all throughout high school.

I remember Richard telling me about his case and I couldn't believe this was going on. Especially at a time when he had made so many steps towards a new future. He had mentioned to me about the possibility of testifying as a character witness. I told Richard that I would definitely testify as a character witness if I were called, in fact, I encouraged him to tell his lawyer to go through with the testimony.

I have known Richard for 15 years and I can't remember a time when Richard has been in a fist fight let alone anything involving a gun. I can remember a incident when we were about 16 years old and Richard had a previous disagreement with another guy in our neighborhood named Lorenzo. One day Richard and I were playing basketball at our neighborhood park and Lorenzo comes up the street and sees Richard and goes after him. Richard sees Lorenzo and hops the fence and runs. I know it is probably tough for Richard to admit this in a time where everybody seems to be a tough guy but it is true. Richard is more of a comedian- jokester. Myself, my wife( who also went to school with Richard), and anyone else who knows him will attest to this. He always kept everyone around him laughing and that was and is one of the things I like about Richard. He knows knows how to laugh and have fun even in a tough time. One other thing that is important for me to say about Rich is that he is a hard worker and committed to his family. This has never been more clearer to me all these years that I have known him than his last year out of prison. I got to meet his son and his daughter. I got to see Richard in action as a loving father. I know a loving father when I see one because I am a father of a 8 year old little boy and I can't imagine life without him. He loves his children and wife as much as I love mine. He was looking very hard for work, doing any job that they would give him so that he could support his children and his new wife, Jeanette. We all know sometimes that this is a hard task to accomplish when you've made the mistakes that Richard has made in the past, but he got up everyday and put forth that effort. I have personally witnessed this for myself. Since Rich has been released from prison we have spent a lot of time together, he is like a brother to me. We come from the same past and I managed to turn my life around and Richard was holding on to that reality that even though you've made mistakes, you can positively direct your future. I can remember one of the many times that Rich and I have talked, he told me that he was proud of me and that he wanted to make the same changes to his life. He said and I quote, "if it ain't positive, I don't want nothing to do with it". And he manifested that. Over that short time, that year I saw him fight for a steady job and he got it as a maintenance man. I saw him take care of his wife and kids. He has a sick son from West Virginia that he was preparing to get custody of and he has a little brother, Skylar, who has been in foster care since their mother died, that he was planning to get legal guardianship of. This is a guy dedicated to family and doing the right thing regardless of what his past record says. I was at home incapacitated after having hernia surgery and my wife was taking care of my every need. Richard and his wife, Jeanette, surprised my



EXHIBIT G

R. HORTON 001693

wife and I by coming over and cooling dinner for us to give my wife a break. This is the kind of man we are talking about here. Yes, Richard has made A LOT of mistakes in his past, but this last year he has been a focused man. Focused on doing something positive with the rest of his life. Like I have said before, I have known Richard for 15 years and he has never been violent. Has he ever gotten angry, yes of course. Just like any other human being. But the things that he was accused of, robbery, kidnapping, assault. I don't believe it for one minute because this is totally out of Richards character. I pray that you can see past the previous mistakes and see the new man before you. I know all things are ultimately in Gods hands so I pray that you seek His face and that He directs your decision. Please release this innocent man. Thank you and God bless you

Sincerely,
Furquan and Latisha McDougald

R. HORTON 001694

# Columbus Division Of F    lice Preliminary Investigation

Case No. 040866104
Report No. 040866104.1
Report Date: 10/9/2004 9:29:49 AM

Columbus Division Of Police
120 Marconi Blvd
Columbus, OH 43215
614 645-4545

**1**

| Subject: | 450 - Robbery |
| --- | --- |

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Case Report Status | A - Approved | Date Entered | 10/9/2004 9:30:21 AM | Reporting Officer | ████ - Rhodeback, Pamela |
| Report Type | C - Preliminary Investigation | Entered By | ████ - Rhodeback, Pamela | | |
| Occurred On (and Between) | 10/9/2004 7:50:00 AM | Date Verified Verified By | | | |
| | | Date Approved | 10/9/2004 10:43:49 AM | | |
| Location | 927 Loew St | Approved By | ████ - Rhodeback, Pamela | Assisted By | |
| Zip Code | 43219 | | | | |
| Geo Code | | Connecting Cases | | | |
| Zone | 5 - Zone 5 | Disposition | Active | | |
| Call Source | | Clearance Reason | | | |
| District | 60 - 60 District | Date of Clearance | | | |
| Vehicle Activity | | Reporting Agency | Columbus Division Of Police | | |
| Vehicle Traveling | | Division | | | |
| Cross Street | | Map | 5 - Zone 5 | | |
| Jurisdiction | 01 - Columbus, OH | | | | |
| Means | | | | | |
| Other Means | | | | | |
| Motive | | | | | |
| Other Motives | | | | | |
| Threat Group | | Incident Number | | | |
| Latent Process | 10 - Not Applicable | Property Process | | | |
| Location Of Dispatched Run | 1412 GIBBARD AVE | Basic Called In | | | |
| Tech Number | | Reporting Officer Assignment | R52A | | |
| Detective Notified | 1985028 - Walker, Brenda | Detective Name | | | |
| Teletype # | | Unit Case File # | | | |
| NIC # | | LEADS ID Number | | | |

Report Narrative   **VICTIM STATES HE WAS ROBBED. CSSU RESPONDED.**

## Offense Detail: 291102.120 - Robbery

| | | | |
| --- | --- | --- | --- |
| Offense Description | 291102.120 - Robbery | No. Prem. Entered | |
| IBR Code | 120 - Robbery | Entry Method | |
| IBR Group | A | Method of Entry For Motor Vehicle Theft | |
| Crime Against | PR | Method of Entry For Burglary/B&E | |
| ORC Code | 291102.120 | Method of Entry For Burglary/B&E | |
| Offense Completed? | Yes | Direction of Entry | |
| Larceny Type | | Secondary Location | |
| Primary Location | 01 - Single Family Home | Force Level | |
| Hate/Bias | N - No Bias/Not Applicable | | |
| Domestic Violence | No | | |
| Method of Operation | | | |
| Using | | | |
| Criminal Activity | | | |
| Weapons/Force | 12 - Handgun | | |
| Type Security | | | |
| Tools Used | | | |
| Type Of Abuse | | Arrested By | |
| Warrant Filed By | | | |

Offense Notes   VICTIM STATES AN UNKOWN MALE KNOCKED ON THE FRONT DOOR OF HIS HOME. VICTIM OPENED THE DOOR THEN WAS "PISTOL WHIPPED" ON THE HEAD BY THE SUSPECT, KNOCKING VICTIM TO THE GROUND. SUSPECT KEPT SCREAMING AT THE VICTIM, USING VICTIMS NICKNAME, SAYING "I KNOW YOU JUST GOT PAID BITCH, GIMME THE MONEY". SUSPECT WAS STANDING OVER THE VICTIM, THEN SHOT VICTIMS LEG. VICTIM GAVE THE SUSPECT $40. SUSPECT BECAME EVEN MORE IRATE, WANTING THE REST OF THE MONEY AND BEGAN RANSACKING THE FRONT ROOM, TURNING OVER MISC. ITEMS. SUSPECT THEN WENT TO THE GIRLFRIEND (ALSO LISTED AS A VICTIM), WHO WAS LAYING ON A HIDE-A-BED AND BEGAN SLAMMING THE BED CLOSED ON HER, OVER AND OVER AGAIN, SCREAMING "WHERE'S THE MONEY BITCH?". SUSPECT EVENTUALLY LEFT, RUNNING OUT THE FRONT DOOR OF THE RESIDENCE. VICTIMS DROVE OVER TO A SISTERS HOME AT 1412 GIBBARD AVE WHERE THEY CALLED 911.

| Entry/Exit Direction | Location | Type | Entry/Exit |
| --- | --- | --- | --- |

NetRMS_CR.rtf v2f

EXHIBIT H

Printed: December 30, 2004 - 9:18 AM

R. HORTON 001695

## Columbus Division Of Police Preliminary Investigation

Case No. 040866104
Report No. 040866104.1
Report Date: 10/9/2004 9:29:49 AM

Columbus Division Of Police
120 Marconi Blvd
Columbus, OH 43215
614 645-4545

**2**

---

### Suspect S1: UNKNOWN SUSPECT

| | | | | | | |
|---|---|---|---|---|---|---|
| Suspect Number | S1 | DOB | | Place of Birth | | |
| Name | UNKNOWN SUSPECT | Age | 40 | SSN | | |
| AKA | | Sex | M - Male | DLN | | |
| Alert(s) | | Race | B - Black | DLN State | | |
| | | Ethnicity | N - Not of Hispanic Origin | DLN Country | | |
| Address | | Ht. | 6' 2" | Occupation/Grade | | |
| CSZ | | Wt. | 150 | Employer/School | | |
| | | Eye Color | BRO - Brown | Res. County | | |
| Home Phone | | Hair Color | U - Unknown | Res. Country | | |
| Work Phone | | Hair Style | | Resident Status | U - Unknown | |
| | | Hair Length | | | | |
| | | Facial Hair | | | | |
| | | Complexion | | | | |
| | | Build | 01 - Thin Build | | | |
| | | Teeth | | | | |

COPY

| | |
|---|---|
| Scars/Marks/Tattoos | |
| Suspect MO | |
| Other MO | |
| Habitual Offender Status | |
| Glasses | |
| Attire | |
| Suspect ID Number | |
| Prior DV Arrests? | |

| | |
|---|---|
| Complexion | |
| Speech | |
| Suspect Other Descriptors | |
| Reason Not Arrested | |
| Suspect Actions | |

Suspect Notes: GRAY HOODIE, PULLED TIGHT OVER THE FACE, LIGHT BLUE JEANS. VICTIM STATES HE COULDNT SEE THE FACE, BUT THE VOICE DID SOUND FAMILIAR. BELIEVES HE KNOWS SUSPECT.

---

### Victim V1: MCCLANAHAN, RICHARD Jr.

| | | | | | | |
|---|---|---|---|---|---|---|
| Victim Code | V1 | Victim Of | 291102.120 - Robbery | | | |
| Victim Type | I - Individual | | | | | |
| Name | MCCLANAHAN, RICHARD Jr. | DOB | ▓▓▓▓ | Place of Birth | | |
| AKA | | Age | 48 | SSN | ▓▓▓▓ | |
| Alert(s) | | Sex | M - Male | DLN | | |
| | | Race | B - Black | DLN State | | |
| Address | 927 Loew St | Ethnicity | N - Not of Hispanic Origin | DLN Country | | |
| CSZ | Columbus, OH 43219 | Ht. | 6' 3" | Occupation/Grade | | |
| | | Wt. | 165 | Employer/School | | |
| Home Phone | NONE | Eye Color | BRO - Brown | Res. County | | |
| Work Phone | | Hair Color | BRO - Brown | Res. Country | | |
| E-mail | | Facial Hair | | Resident Status | 1 - Resident | |
| Attire | | Complexion | | Testify | Yes | |
| Injury | 6 - Other Major Injury | | | Will Prosecute | | |
| Circumstances | | | | | | |

| Law Enforcement Officer Killed or Assaulted Information | Type | | Justifiable Homicide Circumstances | |
|---|---|---|---|---|
| | Assignment | | | |
| | Activity | | | |

| | | | | |
|---|---|---|---|---|
| Victim Taken To | Grant Hospital | Transported By | MEDIC 18 | |
| Treated/Pronounced By | DR. DIZON | Ordered In | | |
| Ordered In Date/Time | | Can ID | | |
| Victim Relationship to Suspect | | Has lived as spouse within one year of alleged incident | | |
| Person related by blood or marriage with offender | | The other "Natural" parent of the offender's child | | |
| Victim Currently live with the offender | | Has victim resided with the offender in the past | | |

Victim Injury/Severity
Injury Type    Injury Severity    Injury Location

Printed: December 30, 2004 - 9:18 AM

R. HORTON 001696

## Columbus Division Of F lice Preliminary Investigation

Case No. 040866104
Report No. 040866104.1
.eport Date: 10/9/2004 9:29:49 AM

Columbus Division Of Police
120 Marconi Blvd
Columbus, OH  43215
614 645-4545

**3**

| | |
|---|---|
| Injuries Visible | Victim called police |
| Reporting Officer Assignment | Reporting Officer Assignment |
| Victim Actions | Was suspect at the scene when officer arrived |
| Is there an existing CPO/TPO against offender | Jurisdiction |
| Case Number | Had the suspect been drinking or using drugs |
| Will Victim be Staying at temporary address? | If yes, Location |
| Confidential | |
| Has the victim been drinking or using drugs | Were children present at the scene? |

Children Present
Age          Sex          Interviewed

Is victim a juvenile?          Has FCCS been notified?
Primary Aggressor          Order to Prosecutor Office



**Victim Offender Relationships**

| Offender | Relationship |
|---|---|
| S1 | OK - Otherwise Known |

**Victim Notes** | GUNSHOT WOUND TO THE RIGHT LOWER LEG, LACERATION ON THE HEAD.

## Victim V2: CURRY, RHONDA

| | | | | |
|---|---|---|---|---|
| Victim Code | V2 | Victim Of | 291102.120 - Robbery | |
| Victim Type | I - Individual | | | |
| Name | CURRY, RHONDA | DOB | | Place of Birth |
| AKA | | Age | 47 | SSN |
| Alert(s) | | Sex | F - Female | DLN |
| | | Race | B - Black | DLN State |
| Address | 927 Loew St | Ethnicity | N - Not of Hispanic Origin | DLN Country |
| CSZ | Columbus, OH  43219 | Ht. | 5' 8" | Occupation/Grade |
| | | Wt. | 175 | Employer/School |
| Home Phone | NONE | Eyes Color | BRO - Brown | Res. County |
| Work Phone | | Hair Color | BRO - Brown | Res. Country |
| E-mail | | Facial Hair | | Resident Status | 1 - Resident |
| Attire | | Complexion | | Testify | Yes |
| Injury | 0 - None | | | Will Prosecute | |
| Circumstances | | | | |

| Law Enforcement Officer Killed or Assaulted Information | Type Assignment Activity | | Justifiable Homicide Circumstances |
|---|---|---|---|

Victim Taken To          Transported By
Treated/Pronounced By          Ordered In
Ordered In Date/Time          Can ID
Victim Relationship to Suspect          Has lived as spouse within one year of alleged incident
Person related by blood or marriage with offender          The other 'Natural' parent of the offender's child
Victim Currently live with the offender          Has victim resided with the offender in the past

Victim Injury/Severity
Injury Type          Injury Severity          Injury Location

Injuries Visible          Victim called police
orting Officer Assignment          Reporting Officer Assignment
Victim Actions          Was suspect at the scene when officer arrived
Is there an existing CPO/TPO against offender          Jurisdiction
Case Number          Had the suspect been

letRMS_CR.rtf v2f          Printed: December 30, 2004 - 9:18 AM

R. HORTON 001697

## Columbus Division Of F Jice Preliminary Investigation

Case No. 040866104
Report No. 040866104.1
Report Date: 10/9/2004 9:29:49 AM

Columbus Division Of Police
120 Marconi Blvd
Columbus, OH 43215
614 645-4545

**4**

| | |
|---|---|
| Will Victim be Staying at temporary address? | drinking or using drugs If yes, Location |
| Confidential | |
| Has the victim been drinking or using drugs | Were children present at the scene? |

**Children Present**
Age      Sex      Interviewed

Is victim a juvenile?     Has FCCS been notified?
Primary Aggressor     Order to Prosecutor Office

COPY

**Victim Offender Relationships**

| Offender | Relationship |
|---|---|
| S1 | OK - Otherwise Known |

Victim Notes

## Witness W1: CURRY, SHELLI

| | | | | | |
|---|---|---|---|---|---|
| Witness Code | W1 | DOB | ▬ | Place of Birth | |
| Name | CURRY, SHELLI | Age | 48 | SSN | ▬ |
| AKA | | Sex | F - Female | DLN | |
| Alert(s) | | Race | B - Black | DLN State | |
| | | Ethnicity | N - Not of Hispanic Origin | DLN Country | |
| Address | 1020 E 9th Ave Apt 6 | Ht. | 5' 7" | Occupation/Grade | |
| CSZ | 25701 | Wt. | 175 | Employer/School | |
| Home Phone | 304 697-4996 | Eye Color | BRO - Brown | Res. County | |
| Work Phone | | Hair Color | BRO - Brown | Res. Country | |
| E-mail | | Facial Hair | | Resident Status | |
| Attire | | Complexion | | Testify | Yes |
| Can ID | | | | | |

Witness Notes    VISITING VICTIMS, AT HOUSE WHEN ROBBERY OCCURRED.

## Other Entity: O1 -- SEARCY, CYNTHIA

| | | | | | |
|---|---|---|---|---|---|
| Entity Code | O1 | | | | |
| Entity Type | 12 - Interviewed At Scene | | | | |
| Name | SEARCY, CYNTHIA | DOB | 3/17/1953 | Place of Birth | |
| AKA | | Age | 51 | SSN | |
| Alert(s) | | Sex | F - Female | DLN | |
| | | Race | B - Black | DLN State | |
| Address | 1412 Gibbard Ave | Ethnicity | N - Not of Hispanic Origin | DLN Country | |
| CSZ | Columbus, OH 43219 | Ht. | 5' 9" | Occupation/Grade | |
| Can ID | | Wt. | 170 | Employer/School | |
| Home Phone | | Eye Color | BRO - Brown | Res. County | |
| Work Phone | | Hair Color | BRO - Brown | Res. Country | |
| E-mail | | Facial Hair | | Resident Status | 1 - Resident |
| Attire | | Complexion | | | |

Entity Notes    SISTERS HOME WHERE 911 CALL CAME FROM.

## Property Description Item 1: 2102 - Bills - Misc./Assorted - MISC BILLS

| | |
|---|---|
| Item No. | 1 |
| Property Category | 2102 - Bills - Misc./Assorted |
| IBR Type | 20 - Money |
| UCR Type | A - Currency, Notes, Etc... |
| Status | S - Stolen/Etc. (Bribed/Defrauded/Embezzled/Ransomed/Etc.). |
| State Type | 01 |
| Count | 1 |
| Value | 40 |

letRMS_CR.rtf v2f

Printed: December 30, 2004 - 9:18 AM

R. HORTON 001698

# Columbus Division Of F    .ice Preliminary Investigation

Case No. 040866104
Report No. 040866104.1
Report Date: 10/9/2004 9:29:49 AM

Columbus Division Of Police
120 Marconi Blvd
Columbus, OH 43215
614 645-4545

**5**

Manufacturer
Model
Serial No.
Other Identifying Numbers
License No.
Description          **MISC BILLS**
Color
Vehicle Year
License Year
State
Body Style
Recovered Date
Owner                V1 - MCCLANAHAN, RICHARD JR
Disposition
Evidence Tag
Alert(s)

Drug Type
Drug Quantity
Drug Measure
Evidence Technician                                     Vehicle Year
Body Style                                              State
License Year                                            Color Top
Color Bottom                                            Keys With Auto
Doors Locked                                            Insured
Recovered By                                            Location
Impounded                                               Insurance Company

Identification Used                                     Check Number
Type of Check                                           Signed By
Payable To                                              Endorsed By
Account Holder                                          Reason not Honored
Person Who Accepted Check                               Bank Name
or Credit Card
Ident-a-Seal                                            Account #
Credit Card Type                                        Card Presented
Signer's Name Generated By                             Prints of Value

Property Notes

COPY

Printed: December 30, 2004 - 9:18 AM

R. HORTON 001699