# Exhibit 15



LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA

# CASE NO. 23-CV-3888

# RICHARD HORTON

# V.

# CITY OF COLUMBUS, ET AL.

# DEPONENT:

# PAMELA RHODEBACK

# DATE:

# November 20, 2024



schedule@kentuckianareporters.com

877.808.5856   502.589.2273

www.kentuckianareporters.com

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

CHIEF JUDGE ALGENON L. MARBLEY

MAGISTRATE JUDGE ELIZABETH P. DEAVERS

CASE NO. 23-CV-3888


RICHARD HORTON,

Plaintiff


V.


CITY OF COLUMBUS, COLUMBUS DIVISION

OF POLICE OFFICERS BRENDA K. WALKER

(BADGE #1176), MIEKO SIAS AS PERSONAL

REPRESENTATIVE OF THE ESTATE OF SAM SIAS

(BADGE #1871), AND AS-YET UNKNOWN

COLUMBUS POLICE OFFICERS,

Defendants


DEPONENT:  PAMELA RHODEBACK

DATE:      NOVEMBER 20, 2024

REPORTER:  KAYLEIGH KINNAMON



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

2

APPEARANCES


ON BEHALF OF THE PLAINTIFF, RICHARD HORTON:

Alyssa Martinez, Esquire

Loevy & Loevy

311 North Aberdeen

Third Floor

Chicago, Illinois 60607

Telephone No.: (312) 243-5900

E-mail: alyssa@loevy.com

(Appeared via videoconference)


ON BEHALF OF THE DEFENDANTS, CITY OF COLUMBUS, COLUMBUS

DIVISION OF POLICE OFFICERS BRENDA K. WALKER

(BADGE #1176), MIEKO SIAS AS PERSONAL REPRESENTATIVE OF

THE ESTATE OF SAM SIAS (BADGE #1871), AND AS-YET

UNKNOWN COLUMBUS POLICE OFFICERS:

David Dirisamer, Esquire

Columbus City Attorney

77 North Front Street

Fourth Floor

Columbus, Ohio 43215

Telephone No.: (614) 645-7479

E-mail: djdirisamer@columbus.gov

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

3

                          INDEX

                                                  Page

PROCEEDINGS                                         5

DIRECT EXAMINATION BY MS. MARTINEZ                  6


                         EXHIBITS

Exhibit                                           Page

1 - Police Preliminary Progress Notes               78

    Date of Offense October 9, 2004

    Bates City 13-15

2 - Columbus Division of Police Preliminary         89

    Investigation Report - October 9, 2004

    Bates City 8-12

3 - Columbus Division of Police Preliminary        111

    Investigation Report - October 12, 2004

    Bates City 39-42

4 - Columbus Division of Police Follow-up          120

    Report - October 13, 2004

    Bates City 34-35

5 - Testimony of Pamela Rhodeback                  129

    State of Ohio v. Richard Horton

    Bates R. Horton 1768-70 and 1873-1877

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

STIPULATION

The deposition of PAMELA RHODEBACK was taken at KENTUCKIANA COURT REPORTERS, 730 WEST MAIN STREET, SUITE 101, LOUISVILLE, KENTUCKY 40202, on WEDNESDAY the 20TH day of NOVEMBER 2024 at 11:04 a.m. (ET); said deposition was taken pursuant to the FEDERAL Rules of Civil Procedure.

It is agreed that KAYLEIGH KINNAMON, being a Notary Public and Court Reporter for the State of OHIO, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

PROCEEDINGS

THE REPORTER:  We are now on record.  The time is 11:04 a.m. Eastern Time.  My name is Kayleigh Kinnamon.  I'm the online video technician and court reporter today representing Kentuckiana Court Reporters, located at 730 West Main Street, Suite 101, Louisville, Kentucky 40202.  Today is the 20th day of November 2024.

We are convened by videoconference to take the deposition of Pamela Rhodeback in the matter of Richard Horton v. City of Columbus, et al., pending in the United States District Court for the Southern District of Ohio, Eastern Division, Case number 12-CV-3888.  Will everyone, but the witness, please state your appearance, how you are attending, and the location you are attending from, starting with Plaintiff's Counsel?

MS. MARTINEZ:  This is Alyssa Martinez on behalf of plaintiff, Richard Horton, and I'm appearing remotely from Chicago.

MR. DIRISAMER:  David Dirisamer, counsel for the City of Columbus and Brenda Walker, and I am sitting in our office in Columbus, Ohio, attending remotely.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

THE REPORTER:  Thank you.  Ms. Rhodeback, will you please state your full name for the record and hold your ID up to the camera?

THE WITNESS:  Okay.  Yeah.  Well, first of all, my name is Pamela Von Schriltz, and I'm here in Fisher, Texas.

THE REPORTER:  Perfect.  Thank you so much.  Do all parties agree that the witness is, in fact, who she says she is?

MS. MARTINEZ:  Yes.

MR. DIRISAMER:  Yes.

THE REPORTER:  Thank you.  Ma'am, will you please raise your right hand?  Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes.

THE REPORTER:  All right.  Thank you.  Counsel, you may proceed.

DIRECT EXAMINATION

BY MS. MARTINEZ:

Q.  Good morning, ma'am.

A.  Good morning.

Q.  Could you please state and spell your name for the record?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Yes, Pamela Von Schriltz.  And it's P-A-M-E-L-A, last name is capital V, O, N as in Nancy, space, capital S as in Sam, C-H-R-I-L, T as in Tom, Z as in zebra.

Q.   Thank you.

A.   You're welcome.

Q.   And how old are you today?

A.   54.  54, yeah.

Q.   Sometimes it takes a second.

A.   Yeah.  Well, I think after you hit 40, you don't count anymore, so I don't know.

Q.   That sounds like a good plan to me.

A.   Yeah.

Q.   I'm going to go over some very quick ground rules for the deposition today so that we're on the same page, okay?

A.   Okay.

Q.   Okay.  So first, there is a court reporter that's on the call taking down everything that we say. So I ask that, to the best of your ability, you try to give loud verbal answers.  Head nods and shakes don't translate well for the record, okay?

A.   Okay.  Can you hear me clearly?

Q.   Yes.  And are you able to hear me?

A.   Yes.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay. Perfect.  Second, I ask that we do our best, especially because we're on a Zoom call, to talk one at a time.  I'm going to do my very best to not cut off any of your answers, and I ask that you please wait for me to get out my full question before you start responding, okay?

A.   Yes.

Q.   Okay.  If a question doesn't make sense at any point, please just let me know and I'll find a way to rephrase.  If you do answer a question, I'm going to assume you understood the question; is that fair?

A.   Yes.

Q.   Okay.  From time to time, Counsel may object to a question.  Unless you're specifically instructed not to answer, I ask that you please answer each question, okay?

A.   Yes, I understand.  Okay.

Q.   If you need a break at any point, please feel free to let us know.  I don't think we'll be going that long this morning, but again, at any point, just let us know.  I just ask that it not be when a question is pending; is that fair?

A.   Yes.

Q.   Okay. And ma'am, do you have any conditions that might affect your ability to provide truthful and

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

accurate testimony today?

A. No.

Q. Okay. And do you have any conditions that affect your memory?

A. No.

Q. Okay. And are you currently taking any medication that might affect your ability to provide truthful and accurate testimony today?

A. No.

Q. Okay. And are you currently taking any medications that affect your memory?

A. No.

Q. Okay. Is there anything else that might affect your ability to provide accurate testimony or your memory today?

A. Regarding my memory? Just time.

Q. Okay. Fair enough. And just to be clear, and in line for the questions later, you now go by Pamela Von Schriltz?

A. Yes.

Q. Okay. But at some point you went by Pamela Rhodeback?

A. Correct.

Q. Okay. Have you gone by any other names?

A. I have.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. And what are those other names?

A. It -- well, my -- with my first marriage, it was Fidler, F-I-D-L-E-R.

Q. And any other names besides those?

A. Yes. So I was also recently married and widowed, but his last name was Linscott, L-I-N-S-C-O-T-T.

Q. I'm really sorry to hear that.

A. Yes, thank you.

Q. And then outside of those names, have you ever gone by any other name?

A. No.

Q. Okay. Ma'am, do you understand this case concerns the October 9, 2004 armed robbery that occurred at 927 Loew Street in Columbus, Ohio?

A. Yes.

Q. Okay. And do you understand that the person who was charged and convicted of that crime was a man named Richard Horton?

A. Yes.

Q. Okay. And do you understand that Mr. Horton's conviction was vacated and all criminal charges against him were dismissed?

A. Yes.

Q. And are you aware that DNA from shell casings

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

recovered from the scene of the robbery were found to not be a match for Mr. Horton?

MR. DIRISAMER: Objection.

THE WITNESS: Yes. Okay.

BY MS. MARTINEZ:

Q. And are you aware that fingerprints that were lifted from the scene where the robber touched were found to not be a match for Mr. Horton?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: Yeah. I -- I mean, I only know what I've been told, but other than that, I'm not aware of any of the procedural process, so...

BY MS. MARTINEZ:

Q. Okay. And from time to time this morning, I might use the phrase, the robbery or the October 9th robbery or the Loew Street robbery. Can we understand that to mean the robbery that occurred on October 9, 2004 at 927 Loew Street in Columbus, Ohio?

A. Yes.

Q. Okay. Great. Thank you. Okay. And I want to --

MS. MARTINEZ: Actually very quickly, Counsel, I don't believe this was stated at the beginning, but you are representing the deponent in today's proceedings, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

MR. DIRISAMER: Correct.

MS. MARTINEZ: Okay. Great. Thank you.

BY MS. MARTINEZ:

Q.   So before I ask these next set of questions, I want to clarify, I don't want to know about the substance of your conversations with your attorneys, okay?  So anything you asked them, or they told you, I don't want you to talk about those in these -- in responding to these questions, okay?

A.   Yes.

Q.   Okay.  But -- so did you prepare for your deposition today?

A.   Yes.

Q.   Okay.  And what did you do to prepare?

A.   I spoke with city counsel -- attorney and, I mean, other than receiving a copy of my testimony, that's pretty much it.

Q.   Okay.  And how many times did you speak with counsel for the city?

A.   As far as preparing for this, just once.  I mean, other than phone calls.

Q.   Okay.  And when did you speak with your attorney to prepare for this deposition?

A.   Oh goodness.  I'd have to look at my e-mail to get the exact date.  Do you want me to do that?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.    No, it's okay.  Was it in the last few weeks?

A.    Yes.

Q.    Okay.  And how long was this meeting?

A.    I don't recall.  I -- you can ask David.  I honestly -- I don't -- I didn't -- I don't know, maybe an hour or so.  I'm not even sure.

Q.    Okay.  And then you stated that you've also spoken to your attorneys on the phone, correct?

A.    Correct.

Q.    Okay.  And how many times have you spoken with your attorneys on the phone?

A.    Including today, I believe three times.

Q.    Okay.  And were each of those in preparation for your deposition here today?

A.    Yes.

Q.    Okay.  And between all three of those calls, approximately how long did you speak with your attorneys?

A.    A few minutes.

Q.    Okay.  So then would it be fair to say you spent a total of maybe between one to two hours speaking with your attorneys in preparation for this deposition?

A.    Yes.

Q.    Okay.  And you stated that you reviewed your trial testimony?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.    Yes.

Q.    Okay.  And is that from Mr. Horton's criminal trial in 2006?

A.    Yes.

Q.    Okay.  And actually, sorry, taking a quick step back, in any of your conversations with your attorney, was anyone else present?

A.    Yes, during our Zoom meeting.

Q.    Okay.  Who else was on the -- or strike that, please.  Who else was present during the Zoom meeting?

MR. DIRISAMER:  Hold on.  I want to step in here.  I -- to be clear, myself and one of my co-counsel were on -- were present on a Zoom meeting, so I just wanted -- myself and Dexter Dorsey.  So that's who was here in our office.  So if you want to maybe rephrase the question and ask if somebody else was present with her, you can, but there was no non- attorneys.  Well, Mr. Gerard, our paralegal, may have been in for part of it as well, but there was no one other than folks associated with our office in our call with her.

MS. MARTINEZ:  Sure.  And that was going to be my next question, but so that's helpful.

BY MS. MARTINEZ:

Q.    I'm just going to clarify that with you,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

ma'am.  No one other than your Counsel or Mr. Gerard was present for any of these calls or conversations, correct?

A.   Correct.

Q.   Okay.  All right.  And outside of your trial testimony, did you review any other documents?

A.   Yes.  The -- I forget what they call it then, but it was the original offense report that we did on the computer at that point.

Q.   Okay.  And did you review just one report?

A.   I believe so, yes.

Q.   Okay.  And do you recall approximately how many pages that report was?

A.   It was one long page.

Q.   Okay.  And outside of that report and your trial testimony, do you recall reviewing any other documents?

A.   No.

Q.   Okay.  And so you didn't review any other testimony from Mr. Horton's criminal trial, correct?

A.   No.  I think it was just, yeah, just those I stated.

Q.   Okay.  And did you review any -- or strike that, please.  Have you reviewed any transcripts from depositions in this case?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   No.

Q.   Okay.  And ma'am, have you ever kept a personal file related to the Loew Street robbery, meaning one in your personal possession?

A.   No.

Q.   Okay.  And have you ever kept any personal notes relating to this civil lawsuit or the Loew Street robbery investigation?

A.   No.

Q.   Okay.  Have you done anything else to prepare for this deposition?

A.   No.

Q.   Okay.  And have you read the complaint that was filed in the civil case?

A.   No.

Q.   Okay.  So I've just got a couple background questions for you.  Have you ever testified as a witness in a civil case?

A.   In a civil case?  Yes.

Q.   Okay.  How many times?

A.   Once.

Q.   Okay.  And was it related to your employment with the Columbus Division of Police?

A.   You know what?  Actually, strike that.  It was twice and one of them was, yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. And the one that was related to your employment, do you remember the name of that case?

A. No, I have no idea. It was out of a car accident.

Q. Oh, okay. So the general allegations were pertaining to a car accident and a personal injury?

A. Yes.

Q. Okay. And then for the second case, that was not pertaining to your employment with the Columbus Division of Police. Do you remember the name of that case?

A. No. Sorry. It's been so long ago, I really don't.

Q. That's okay. Do you recall any of the allegations from that lawsuit?

A. You know, I'm trying to remember. I -- I don't. It might come to me, but right now I can't remember.

Q. Okay. Fair enough. If it comes to you at any point, feel free to let me know, but if not --

A. Okay.

Q. And have you ever -- or strike that, please. Outside of Mr. Horton's criminal trial, have you ever testified in court for a criminal case as part of your employment with the Columbus Division of Police?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Yes.

Q.   Okay.  Approximately how many times?

A.   Twice, maybe three times.

Q.   Okay.  So it's not something you did relatively often, is that a fair statement?

A.   No.

Q.   Okay.

A.   We didn't.

Q.   And do you remember any of the allegations from the other times that you testified outside of Mr. Horton's criminal case?

A.   Yes.

Q.   Okay.  And can you just briefly tell me a little bit about them?

A.   The one that I most remember is testifying in federal court regarding the murder of Officer Bryan Hurst.

Q.   And were you testifying as a witness?

A.   Yes.

Q.   Okay.  I'm sorry to hear that as well.  I'm not going to ask you any follow-up questions on that one.

A.   Okay.  Thank you.

Q.   And then the other times that you recall, do you remember any of those allegations?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   No.

Q.   Okay.  All right.  And ma'am, have you ever been deposed before?

A.   Yes.

Q.   Okay.  How many times?

A.   Once or twice, but it was in domestic court.

Q.   Okay.  And -- strike that, please. Were you a party in any of those cases?

A.   Yes.

Q.   Okay.  So I'm not going to ask you any in-depth questions about those.  And generally would like to note, when was the most recent time that you were deposed?

A.   Oh, wow.  15 to 20 years ago.

Q.   Okay.  And then if you were deposed a second time, it would've been before that?

A.   I believe so, yes.

Q.   Okay.  And do you recall if you were a party in both instances?

A.   I remember being deposed before, but I can't remember if it was out of one of those civil cases.

Q.   Okay.  And by that, do you mean one of the civil cases that you testified to earlier?

A.   Yes.

Q.   Okay.  And as you sit here today, do you



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

20

recall if any of those depositions concerned your employment with the Chicago -- strike that, please. With the Columbus Division of Police?

A.   No.   Neither one did.

Q.   Okay.   And you testified partly to this, but have you ever been a party to a civil lawsuit before?

A.   Yes.

Q.   Okay.   And how many times?

A.   I believe just once.

Q.   Okay.   And was that the domestic matter you testified to earlier?

A.   No.

Q.   Oh, okay.   What was -- or strike that, please. Can you tell me a bit about the allegations of the lawsuit you were party to?

A.   It was out of a use of force complaint.

Q.   Okay.   And do you recall the name of that case by any chance?

A.   No.   I have no idea.

Q.   Okay.   Was the -- or strike that, please. Were the allegations of excessive use of force made against you?

MR. DIRISAMER:   Objection.   You can answer if you can.

THE WITNESS:   I was one of the officers



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

involved in the run, yes.

BY MS. MARTINEZ:

Q.   And do you recall around when this lawsuit was filed?

A.   19 -- late '90s.

Q.   So more than 20 years ago?

A.   Oh, yes.

Q.   Okay.  And do you recall being deposed in that case?

A.   I don't believe I was.

Q.   Okay.  Do you recall the outcome of that case?

A.   It was dismissed.

Q.   Okay.  Do you recall any other officers or detectives who were also named in that lawsuit?

A.   I don't.  And I don't want to try to fill in blanks.

Q.   Okay.  Ma'am, what year did you graduate from high school?

A.   Oh, '88.

Q.   And where did you go?

A.   Canal Winchester.

Q.   And where is that?

A.   Canal Winchester, Ohio.

Q.   Okay.  And did you complete any college?

A.   Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

22

Q.   And where did you go for college?

A.   Ohio University.

Q.   And did you complete a certification or degree program?

A.   Yes.

Q.   Okay.  And what was your degree?

A.   I have a bachelor's in applied management and communications.

Q.   Okay.  And what year did you -- strike that, please.  What year did you receive your degree?

A.   2012.

Q.   And have you received any other post-high school certification or degree?

A.   Yes.

Q.   Okay.  And what did you receive?

A.   I am a licensed massage therapist.

Q.   That's pretty cool.

A.   Yeah, it is.  Certified in trauma touch therapy.  And that I am also a flight attendant.  So I have a certification through the FAA.

Q.   Okay.  And when did you receive your license to be a massage therapist?

A.   2013.

Q.   Okay.  And your flight attendant certification, or when did you complete your training?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.    Oh, wait.  You know, I have a correction on that.  It was 2015 that I received my -- my license to become a massage therapist.

Q.    Okay.

A.    And my FAA certification was in 2017.

Q.    Okay.  So you received your bachelor's degree in 2012, your license to be a massage therapist in 2015, and then your flight attendant certification in 2017?

A.    Correct.

Q.    Okay.  And ma'am, are you currently employed?

A.    Yes.

Q.    Okay.  And what do you do?

A.    I'm a flight attendant.

Q.    And where do you work?

A.    Southwest Airlines.

Q.    And how long have you been with Southwest?

A.    Ten years next month.

Q.    Congratulations.

A.    Thank you.

Q.    So you've been with Southwest since 2014?

A.    Yes, that's correct.

Q.    Okay.  And where were you at before then?

A.    Oh, I was -- I was a claims adjuster for Nationwide.

Q.    Okay.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   I forgot about that.

Q.   And how long were you in that role?

A.   Just a year.

Q.   Okay.  So around 2013 to 2014?

A.   I would say late 2012 to late 2013.

Q.   Okay.

A.   Early 2014.

Q.   Okay.  And where were you at before then?

A.   I was a civilian employee for the City of Columbus Division of Police.

Q.   And for the record, can you please explain what a civilian employee is?

A.   Yeah. I worked in the payroll department and also in employee benefits.

Q.   Okay.  And how long were you in that role?

A.   Six -- about -- well, about five months.

Q.   Five months?  Okay.  So maybe early to mid-2012 to late 2012?

A.   Yes.

Q.   Okay.  And where were you at before that?

A.   School.  I was -- I went back to college after I retired.

Q.   Oh, okay.  And that's where you got your bachelor's degree?

A.   Yes.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.    Okay.  And in what year did you retire?

A.    2009.

Q.    Okay.  And then you went to school full time?

A.    Correct.

Q.    Okay.  And which department were you with when you retired?

A.    Which department was I with?

Q.    Yes.

A.    The City of Columbus Division of Police.

Q.    Oh, okay.  Let me -- sorry.  I realize that was a very -- it was a poorly worded question.  Were you a patrol officer when you retired in 2009?

A.    Yes.

Q.    Okay.  And were you a patrol officer throughout your entire career with the Columbus Division of Police?

A.    Yes.

Q.    Okay.  And were you at the same precinct the entire time?

A.    No.

Q.    Okay.  So then can you please walk me through the different stages of your career?  So basically just your position, where you were located, and timeframes.

A.    So outside of -- okay.  Outside of the academy, I started off second shift relief on 9 and 14

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

Precinct, which is Columbus east side. And from there, I went to 11 Precinct and worked various shifts on 11 Precinct, which is the -- the near southeast side. And then I also worked on 5 Precinct, which is the near northeast side.

Q. Okay. And I know we're going back a little bit, but do you remember how long you were with the 9 and 14 Precinct?

A. Oh, it wasn't long. I think just a few months before I went to 11.

Q. Okay. But that was your initial assignment after graduating from the academy?

A. That was my initial -- no. You know what? I forgot one. Okay. Let me think. Give me one second.

Q. Okay.

A. So out of the academy on probation, I worked 11B Company. And then I went to 9 and 14. And by the end of that first year, I believe that's when I was -- I forgot I worked on campus. I worked at 4 Precinct. And that was only for a couple months as well.

Q. Okay. When did you first become a probationary patrol officer?

A. When I graduated from the academy.

Q. And what year was that?

A. Two -- or I'm sorry. '96.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.  Okay.  And then you said first you were assigned to the 11B Company?

A.  For what they call a coaching period, yes.

Q.  Okay.  And what is the 11B Company?

A.  It's second shift on the near southeast side.

Q.  Okay.  Is that -- does that mean it's with the 11 Precinct?

A.  Yes.

Q.  Okay.  Understood.  And then how long were you with the 11B Company?

A.  On coaching?  Gosh, I forget.  That first one is either four or five weeks.

Q.  Okay.  And then is that when you went to 9 and 14?

A.  Oh gosh, you're taking me back.  Okay.  Hold on a second.  Okay.  So back then, coaching was -- was with two different coaching officers.  So the -- the first one I had was on 11B.  The second one I had was on 4, which is OSU's campus area, Clintonville area first shift.  So 4A.  And that's also either four or five weeks.

Q.  Okay.  So after your weeks with 4A --

A.  Yes.

Q.  -- did you then go to 9 and 14?

A.  Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  And how long were you with 9?

A.   So it was a reserve assignment, so I kind of covered both of those precincts.

Q.   Okay.

A.   And that was just for a few months.

Q.   Okay.  And then after your reserve assignment, is that when you were transferred to 11?

A.   No.  I went to 4 Precinct evening mid-watch for a few months.  And that's the shift that covers second and third shift.

Q.   Okay.  And then after you were at 4 doing evening mid-watch, where did you go?

A.   The 11B Company.

Q.   All right.  So you went back to 11B?

A.   Yes.  Yes.

Q.   Okay.  And how long were you with 11B the second time?

A.   Oh, gosh.  Maybe close to a year.

Q.   Okay.  So at this point, it's around 1998?

A.   Okay.  Let me think about this.  I think -- I believe so.  I don't recall the exact year.

Q.   Okay.  And then after your second stint with 11B, where did you go?

A.   11 evening mid-watch.

Q.   Okay.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Which is the shift that covers second and third shift.

Q.   Okay.  And how long were you with 11 evening mid-watch?

A.   Maybe a year or so.

Q.   Okay.  All right.  Where did you go after that?

A.   11C Company.

Q.   Okay.  And I'm assuming that's the third shift?

A.   Third shift, yes.

Q.   Okay.  And how long were you with 11C?

A.   Also probably a year or so.  Well, no, maybe two years.

Q.   Okay.  And then where did you go after 11C?

A.   From there, I went to 5A Company, which was also a reserve assignment.

Q.   Okay.  And when you say, "reserve assignment," what does that mean?

A.   I mean, it just means that we're not assigned to a car every single day.  So we may be assigned to a car, say, two days maybe because we're -- we're basically filling the space of an officer that's on his days off, his or her days off.  So I might have two days on one car, two days on another and then one unassigned

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

30

day.

Q.  Okay.  Understood.

A.  Yeah.

Q.  And how long were you with 5A?

A.  Oh, gosh.  It was a good couple years.

Q.  And where did you go after 5A?

A.  11A.

Q.  And was that as reserve or were you --

A.  It starts off that way when you go generally, yes.

Q.  Okay.

A.  And then I was there until I retired.

Q.  Okay.  And do you recall approximately how many years that was from joining 11A to your retirement in 2009?

A.  It was -- yeah.  It was also a couple years.

Q.  Okay.  But would it be fair to say that you were with the Columbus Division of Police as a patrol officer for around 13 years?

A.  Just shy of, yes.

Q.  Okay.  And would you request desk transfers, or would you be reassigned?

A.  No, they were all requested.

Q.  Okay.  And as you sit here today, do you recall why you requested these transfers?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Well, I -- so each transfer was basically a better assignment -- was -- which was more conducive to my home life.

Q.   Okay.  And then as a patrol officer -- or actually, sorry, strike that, please.  Let me take a quick step back.  In 2004, would you have been with the 11A Company -- actually, strike that as well, please.  Sorry.  In 2004, would you have been with the 5A Company?

A.   Yes.  I believe that was the assignment I put on the report.

Q.   Okay.  And now as a patrol officer with 5A, what were your responsibilities?

A.   I mean, patrol on 5 Precinct during first shift.

Q.   And what were some of the things that that might entail?

A.   They were all calls for service, generally patrol.

Q.   And you would respond to these calls; is that correct?

A.   Yes.  I responded to dispatch calls as well as others.

Q.   And would your job include making arrests?

A.   Yes.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  And would it include interviewing witnesses?

A.   I'm not sure how to answer that because we were limited. I mean, on patrol, yes, to speak with witnesses and get their information.  Correct.

Q.   Okay.  And when you say get information, would you get substantive information about whatever crime you were responding to, or would you generally get contact information to pass along to detectives?

A.   Both.

Q.   Okay.  And what did -- strike that, please. Do you recall it ever being your responsibility to interview suspects as a patrol officer?

A.   I guess there needs to be some clarification on what you mean by interview.

Q.   Sure.  In your experience as a patrol officer, would you ever interrogate suspects at your precinct?

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   You can answer.

A.   Oh, sorry.  So the interrogation process was generally left up to detectives, which I was never one, so...

Q.   Okay.  As you sit here today, do you recall ever interrogating a suspect?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  Interrogation as far as it was -- would be more documenting spontaneous utterances and getting their personal information.  You know, if -- if a suspect or a victim -- I mean, not -- sorry, a suspect.  If a witness or a victim wanted us to ID a suspect, of course we were able to do that as well.

BY MS. MARTINEZ:

Q.   Okay.  And would it be fair to say that one of your responsibilities would also be securing a crime scene?

A.   Yes.

Q.   Okay.  Would it have been one of your responsibilities to search for evidence?

A.   Yes.

Q.   But it would not have been your responsibility to catalog or collect that evidence, correct?

A.   Well, that would depend --

Q.   Okay.

A.   -- on the circumstances.

Q.   Under what circumstances might it have been your responsibility to catalog and collect evidence?

A.   If there was a narcotics arrest, we would turn it into the property room.

Q.   Okay.  But in a case like this where it is an

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

aggravated robbery, that would not be your responsibility, correct?

A.   To catalog the evidence?

Q.   Uh-huh.

A.   Correct.  That would be crime scene.

Q.   Okay.  When you were a patrol officer, would one of your -- or strike that, please. Could one of your responsibilities have been conducting photo identification procedures like photo arrays?

A.   No.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   Or you said no?

A.   Correct.

Q.   Okay.  And would you ever -- or strike that, please.  As a patrol officer, would it have ever been your responsibility to perform a lineup?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   Okay.  And outside of all of the things we've talked about, can you think of any other responsibilities that you had as a patrol officer?

A.   No.

Q.   Okay.  And when you were with 5 Precinct, were

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

detectives also assigned to that precinct?

A. I don't know exactly at that point how they gave out, like, crime scene assignments, but I mean, in general, we had detectives that we knew were working a specific shift.

Q. Okay. And when you say that you knew they were working it, was that from familiarity or was there somewhere you could look that would tell you who was working that shift?

A. No. We just got to know them by who was available during, say, first shift or second shift or third shift, whatever.

Q. Okay. And is that true for each of the detective to -- or strike that, please. Was that true for each of the detective departments, for example, robbery and burglary, or would it be specific departments?

MR. DIRISAMER: Objection.

THE WITNESS: I can't answer to that. I don't know.

BY MS. MARTINEZ:

Q. Okay. So it would be fair to say, as you sit here today, you don't recall?

A. No. I --

Q. Okay. As you sit here today, are there any

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

detectives that you have a memory of working with when you were with 5 Precinct?

A.   Oh, I don't recall.  I mean, they may be familiar if I hear their name.

Q.   But you can't think of any right now?

A.   No.

Q.   Okay.  Or -- sorry.  Excuse me.  You're -- or strike that, please.  Throughout your entire time with 5A, were you always on A shift?

A.   While I was on 5A, yes.

Q.   Okay.  And do you recall what the approximate hours are for A shift?

A.   Yes.  So 6:00 a.m. to 2:00 p.m.

Q.   Okay.  And so in October of 2004, you would've been on A shift?

A.   Correct.

Q.   Okay.  And then I want to briefly ask you about your time at the academy.  You graduated in 1996, correct?

A.   Yes.

Q.   Okay.  When did you start?

A.   May.

Q.   And how long was the program?

A.   I believe it was four months.

Q.   Okay.  So you graduated around September of



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

'96?

A.   Oh, maybe it was five months.  I don't remember the exact graduation date.  I'm sorry.

Q.   It's okay.  But around four to five months is how long the program was?

A.   Yes.  Yes.

Q.   And during your time at the academy you had various forms of police work related training, correct?

A.   Yes.

Q.   Okay.  And what different trainings do you remember receiving during your time at the academy?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  I -- I mean, just, like, basic training that we needed to be OPOTA certified, anything from, you know, report taking to arrest, search, and seizure to, of course, all the self-defense and tactical techniques that we learned during training.

BY MS. MARTINEZ:

Q.   Okay.  And do you recall ever being trained on giving testimony in court?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  I mean, it wasn't like an official training.  We discussed it but was it.

BY MS. MARTINEZ:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

38

Q.   Okay.   Do you recall receiving a training on interviewing witnesses?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   Do you recall ever receiving a training on interviewing suspects?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  Oh, goodness.  Yes, but I don't recall the exact particulars of what it was.

BY MS. MARTINEZ:

Q.   Okay.  Do you recall ever receiving a training on note-taking?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  And you testified that you recall receiving a training on report writing?

A.   Yes.

Q.   Okay.  And do you recall ever receiving a training on photo identification procedures?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  I don't.  No.

BY MS. MARTINEZ:

Q.   Okay.  And do you recall ever receiving a

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

training on probable cause?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yes.

MR. DIRISAMER:  You can answer.

BY MS. MARTINEZ:

Q.   And do you recall ever receiving a training on the rights of criminal defendants?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  And then after you graduated from the academy, did you receive any other specialized training while you were a patrol officer?

A.   Yes.

Q.   Okay.  And what training is that?

A.   Oh, gosh.  I was CIT certified and it -- gosh, what did they call that back then?  It was a critical incident training that -- that we dealt with those that suffer from some mental capacities.

Q.   And do you mean, like, diminished mental capacity?

A.   Yes.  Yes.

Q.   Okay.  So you were -- or sorry.  So you were CIT certified?

A.   Yeah.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

40

Q.   Do you recall receiving any other specialized training while you were a patrol officer?

A.   Oh, goodness.  We were constantly being trained.  So specifically, I mean, I was -- for speed I was radar and laser certified.  Of course we did all of our tactical certifications.  I -- I don't know. There's -- there was a lot of them.

Q.   Okay.  And when you say, "constantly being trained," was it, you know, like an instituted program where, you know, every year you receive something new or was it more, the trainings would come up when they came up and then you could go and learn about a different subject or get a new certification?

A.   Both.  The thing that was a regular annual training was, of course, firearm certification.

Q.   Okay.  And then were any of the other trainings or certifications something that you had to do every year, or was it something and when the opportunity came up, you could go and learn a certain thing?

        MR. DIRISAMER:  Objection.  You can answer.

        THE WITNESS:  I would say a little bit of both.

BY MS. MARTINEZ:

Q.   Can you think of any other certifications that you had to do every single year?

        MR. DIRISAMER:  Objection.  You can answer.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

THE WITNESS:  Well, we had defensive tactics that we did regularly as well.

BY MS. MARTINEZ:

Q.   And since you were a patrol officer for 13 years, you know, as your career progressed, would you get trainings on new, best practices as they're developing?

A.   Yes.

MR. DIRISAMER:  Objection.  You can answer.

BY MS. MARTINEZ:

Q.   And then just quickly before I move on, can you think of any other trainings that you had that were every single year?

A.   That were every single year.  Gosh, I -- I really don't recall.

Q.   Okay.  Okay.  So I want to ask you a couple of questions about what your understanding was of the Columbus Division of Police policies back in 2004, okay?

A.   Okay.

Q.   And so, the first is in regard to note-taking. As you sit here today, do you know if there was an official Columbus Division of Police policy on note-taking back in 2004?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q.   No?

A.   No.

Q.   Okay.  In the process of documenting your investigations or different things that you would do on shift, would you take notes?

A.   Yes.

Q.   Okay.  And would you do that, you know, on a piece of paper or did you have a small computer out with you in the car?

A.   Both.

Q.   Okay.  And then under certain circumstances, you would write stuff down by hand, and others you would type up your notes?

A.   Yes.

Q.   Okay.  And to the best of your recollection in 2004, what would you do with your notes after you had taken them?

A.   Are we talking about handwritten notes?

Q.   Sure.  Yeah.  Well, yeah, we'll start with handwritten notes.

A.   They were in a small notebook that I would keep in my pocket.

Q.   Okay.  And then for the notes that you would type, where would those usually be saved?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
—— COURT REPORTERS ——

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Well, they were -- they were saved in the City database.  I mean, the report taking database.

Q.   Okay.  And in your experience, would you agree that it's generally important to take notes of an investigation while it's happening?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yeah.

BY MS. MARTINEZ:

Q.   Okay.  And would one of those reasons be to refresh your recollection sometime down the line?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  And could another reason be to update another officer that was going to be assisting with whatever you were investigating?

A.   Yes.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   Okay.  And would another reason that it could be important to take notes of an investigation while it's happening, be to make sure you're accurately documenting the investigation?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q.    Okay.  And could another reason be to use against a criminal defendant at a subsequent trial?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.    Okay.  And would it be a fair statement to say that it's important to take notes of an investigative step as it's happening, be to make sure that you're not relying on memory later to try to reflect what happened?

A.    Yes.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.    Okay.  And that's because memories fade, right?

A.    Yes.

Q.    Okay. And let's see.  Actually, that might be all I've got on notes.  Oh, sorry.  Was your practice of taking notes of your investigation in line with your belief of what the Columbus Division of Police's policy was on note-taking in 2004?

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.    You can answer.

A.    Okay.  Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  And was it in line with the training you had received on note-taking?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Oh, gosh.  I mean, I would -- I would say yes.

MS. MARTINEZ:  Okay.  And then could we very briefly go off record so I could close my blinds? I'm being blinded right now.

THE REPORTER:  Absolutely.  Just give me one moment.

(A recess was taken.)

THE REPORTER:  We are back on record.  Time is 11:59 a.m. Eastern.

BY MS. MARTINEZ:

Q.   So you testified earlier, ma'am, that you received trainings on report writing, correct?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Yeah.  I -- I just need to -- to clarify this report writing training.

BY MS. MARTINEZ:

Q.   Sure.

A.   I don't recall there ever being a formatted training.  It was a discussion about the basics needed to take the actual written report or the report on the commuter -- the computer, what we would notate as we

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

were speaking with, whether it be a victim or witness, suspect, et cetera.

Q.   Okay.  Understood.  And so, I want to ask you a couple of questions about how you would document what you were learning in an investigation during your time --

A.   Okay.

Q.   -- as a patrol officer.

A.   Okay.

Q.   Okay.  So as a patrol officer in 2004, what types of police reports would you commonly use to document your investigations?

A.   What kind of documents would I use?  So there was a written offense report or a written incident report.  There were arrest documents as well as eventually doing everything online.

Q.   Okay.  And when you say doing everything online, do you recall approximately what year that process of report writing became digital?

A.   In this, I don't.  It was within a couple years that I -- you know, prior to my retiring.

Q.   Okay.  But when you say written incident report, is that something that would be handwritten?

A.   Yes.

Q.   Okay.  And you stated that you reviewed one of



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

your reports in preparation for this deposition, correct?

A.   Yes.

Q.   Okay.  And that review was -- or strike that. That report was typed, right?

A.   Yes.  That was an online report.

Q.   Okay.  So would it be fair to say that then in 2004, since that report was typed, the process had become digital by that point?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  And you stated that the -- or strike that, please.  The written incident report, would that just be kind of a write-up of the initial crime and then any, you know, investigation that happened right at the outset?

A.   Yes.

Q.   And then when that process became digital, would officers submit different reports or was it the type of report that you could add to as the investigation progressed?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Okay.  So just -- just to clarify, you said when it was digital?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q. Yes.

A. Is that -- okay. Would you mind to repeat the question?

Q. Yeah. Sure. Sure. When officers would file digital reports about crimes that had occurred and the initial investigative steps, would they then file separate progress reports that were distinct from that initial report or could an officer build out that report and subsequently add to it as new -- or strike that, please -- as the investigation progressed?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: From what I recall, I would say yes to both.

BY MS. MARTINEZ:

Q. Okay. So it could be either scenario?

A. Yes.

Q. Okay. And as an investigation is progressing, are the officers or detectives assigned to assist with those investigations able to view those preliminary reports?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: I -- I honestly don't recall how that -- that process was back then.

BY MS. MARTINEZ:



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

49

Q.   Okay.  And would it typically be your practice to fill out these incident reports or supplemental reports on the same shift in which whatever you're documenting happened?

A.   It would be general practice, yes.

Q.   Okay.  And there could sometimes be certain things that meant you couldn't do it until the next shift or, you know, a couple days later, right?

A.   I would say that's correct, yes.

Q.   Okay.  But it would never -- or strike that, please.  In your experience, it would never go, you know, beyond a week or anything like that?

          MR. DIRISAMER:  Objection.  You can answer.

          THE WITNESS:  Not in my experience, no.

BY MS. MARTINEZ:

Q.   Okay.  And -- actually, strike that, please. In 2004, do you recall how you would submit either incident reports or supplemental reports?

A.   Well, at that point it was all online, I believe.

Q.   So would it be the case where, you know, you would fill it out and then, you know, there was a button or something to submit it and then it would go?

A.   Yes.

Q.   Okay.  And do you know if reports were subject



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

to approval in 2004?

A.   Gosh.

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I really don't recall the process.

BY MS. MARTINEZ:

Q.   Okay.  And as you sit here today, do you recall if once you submit a report, could you then go back and change it, or would you have to add to it?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  I really don't recall.

BY MS. MARTINEZ:

Q.   Okay.  And as you sit here today, do you recall --

MR. DIRISAMER:  Hold on.  We're froze.

MS. MARTINEZ:  Oh, okay.

MR. DIRISAMER:  I'm frozen.  Hold on.

MS. MARTINEZ:  Okay.

MR. DIRISAMER:  Okay.  I think we're back.  Sorry about that.

MS. MARTINEZ:  Oh, it's okay.  That happens.  That's okay.

MR. DIRISAMER:  You can answer the last question.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

MS. MARTINEZ: Joys of Zoom. Yeah. I -- we paused while you were frozen.

BY MS. MARTINEZ:

Q. So then my question was -- oh, okay. In the case where an officer would make edits to a report that had already been submitted, would there be a record of when those additions or edits were made?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: I don't recall.

BY MS. MARTINEZ:

Q. Okay. And as you sit here today, do you know if there was any criteria required for approving a report?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: I -- I don't recall.

BY MS. MARTINEZ:

Q. Okay. And you testified earlier that it -- or strike that, please. At any point in your career, do you recall ever showing anyone a photo array?

A. No. No, not that I produced, no.

Q. Okay. Do you recall ever showing someone a photo array that someone else produced?

A. No.

Q. Okay. And you testified earlier you don't recall ever receiving a training on photo arrays?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

A.  I don't believe so.  As far as how to produce them, no.

Q.  Okay.  Do you recall receiving any training at all related to photo arrays, you know, for example, selecting fillers?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No, I -- I don't believe I ever received that training.

BY MS. MARTINEZ:

Q.  Okay.  So would it be fair to say that as you sit here today, you don't know what the Columbus Division of Police policies or practices were around photo arrays?

A.  No.

Q.  Okay.  And then my last set of policy questions I want to ask, have you -- or strike that, please.  Are you familiar with the obligations of police under a case called Brady v. Maryland?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  You know, it's so familiar, but you'd have to refresh my memory.

BY MS. MARTINEZ:

Q.  Okay.  Do you recall ever hearing about

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

something called Brady evidence?

A.   Yes.

Q.   Okay.  And as you sit here today, do you recall what that means?

A.   Oh, my gosh, this is so bad.  I should know this.  No.

Q.   It's not bad.  You've been retired for quite a while.

A.   Yes.  Yes.

Q.   Okay.  So do you recall ever being trained on what the case Brady v. Maryland obliges police do during an investigation?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Gosh.  You know, I -- I know we had the training, but you're going to ask me specifics and I'm not going to be able to answer it anymore.

BY MS. MARTINEZ:

Q.   That's okay.  But you recall receiving a Brady training at some point?

A.   Yes.  Yes.

Q.   Okay.  And do you know if it was while you were at the academy or while you were a patrol officer?

A.   Both.  I do remember discussing it throughout the years.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. And do you recall ever learning that case requires that exculpatory evidence be turned over?

A. Yes.

MR. DIRISAMER: Objection. You can answer.

BY MS. MARTINEZ:

Q. Okay. And do you recall ever learning that case requires that evidence that may be used to impeach a state's witness also be turned over?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: Yes.

BY MS. MARTINEZ:

Q. Okay. And do you recall that that -- or strike that, please. Do you recall ever learning that that case requires the prevention of destroying material evidence?

A. Yes.

MR. DIRISAMER: Objection. You can answer.

BY MS. MARTINEZ:

Q. Okay. And as you sit here today, do you know how the prosecutor's office would receive police files from the Columbus Division of Police?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I don't know how they did it, no.

BY MS. MARTINEZ:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. Do you recall ever receiving any kind of subpoena for your files?

A. Are we talking about personal files?

Q. No. You're -- I'll -- yeah, I'll rephrase. I'll rephrase. That's a good point. Do you recall ever receiving a subpoena from the prosecutor's office for any police reports or your own notes pertaining to an investigation?

A. No.

Q. Okay. And during your career, do you recall ever seeing a Columbus Division of Police officer commit misconduct?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I don't recall.

BY MS. MARTINEZ:

Q. Okay. And during your career, do you -- sorry, I don't want to cut you off if you have more that you want to say.

A. No, I -- I'm just thinking I -- I'm so sorry. It's been such a long time ago.

Q. No, don't apologize. Okay. During your career, do you recall ever seeing a Columbus Division of Police detective commit misconduct?

A. No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  As you sit here today, do you recall ever seeing a Columbus Division, a police officer violate the law in any way?

MR. DIRISAMER:  Objection.  You can answer. I'm sorry.

THE WITNESS:  Oh, okay.  I didn't know.  No, I can't think of anything specifically.  No.

BY MS. MARTINEZ:

Q.   Okay.  And now I want to start getting into questions about how you would be assigned to scenes and questions about this case, okay?

A.   Okay.

Q.   So can you just explain to me how you would be assigned to respond to the scene of a crime back in October of 2004?

A.   That we would be assigned?  We would be dispatched if we were assigned.

Q.   Okay.  And when you say "dispatched," do you mean from the precinct, or might you be out patrolling your beat and you would get a call?

A.   Well, being that we were patrol officers, we'd be on patrol and then we would get dispatched via the radio.

Q.   Okay.  So that call would come in and they would tell you where to go?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

57

A.   Yes.

Q.   Okay.  And would you usually get some information about the crime that had occurred from dispatch?

A.   Yes.

Q.   Okay.  And would it usually be, you know, very in-depth information or would it kind of just be high level what you need to know?

A.   It varies.

Q.   And when you say, "it varies," is that -- strike that.  Would that depend on what the crime was?

A.   Yes.

Q.   Okay.  That sounds like a yes, but?

A.   Well, it would depend on the call activity.

Q.   Okay.  And when you say "call activity," what does that mean?

A.   Because information could continuously come in added to the run that we're being dispatched on.

Q.   Oh, okay.  And then would dispatch get back in contact with you and relay that new information?

A.   Yes.

Q.   Okay.

A.   Generally.

Q.   Okay.  And if something happened within your patrol area, would you be assigned to it or could you be

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


**KENTUCKIANA**
— COURT REPORTERS —

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

58

assigned outside of your patrol area?

A.   I think both.

Q.   Okay.  In the cases where you would be outside -- or strike that, please.  In the case where you would be assigned outside of your patrol area, would it be because you were the closest available responding officer?

A.   It could be, yes.

Q.   Okay.  Are there other circumstances you can think of where you might be dispatched to respond to a scene that's outside of your patrol area?

A.   Yes.

Q.   All right.  What are those other circumstances?

A.   My cruiser district may have been on the precinct line of another precinct or another cruiser district.

Q.   Okay.  And we start -- when you say "cruiser district," what does that mean?

A.   The precincts are broken down in a cruiser districts.

Q.   Okay.  Do you recall what other precincts were in the same cruiser district as 5?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yes.  We -- oh, my gosh.  The

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

southern border was at that time 6 Precinct.  Oh, my gosh.  We had -- it's changed so much in the last many years.  I believe we also lined up to 7 Precinct and 18 Precinct.

BY MS. MARTINEZ:

Q.  So you might have been dispatched to assist with things that happened within those precinct areas?

A.  Yes.

Q.  Okay.  And when you would arrive on scene, what would your responsibilities be at the onset?

A.  Well, that would depend on the call or the run.

Q.  So in a case like this, where there has been a robbery, but no one is actively on the scene anymore.  What would your responsibilities have been?

A.  To secure the scene.

Q.  And what would that entail?

A.  I don't know how to answer the question, because I would need more specifics because every run is different, and I took thousands of runs over the years.

Q.  Sure.  Let me -- I'll ask a couple different follow-up questions.  Would part of securing the scene entail, making sure that nobody is walking through where the crime happened?

A.  That would be part of it, yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

60

Q.   Okay.  And would it include making sure that there are no victims or suspects still at the scene?

A.   That they weren't at the scene?

Q.   Yeah. Or actually, sorry, let me -- yeah.  Let me rephrase that.  Would part of securing the scene include looking to see if there were any other -- actually, strike that as well.  Would securing the scene also include making sure no one disrupts any evidence?

A.   Yes.

Q.   Okay.  And would securing the scene at a high level, just mean trying to maintain it in the exact form it is now for when the evidence technicians come?

A.   Yes.

Q.   Okay.  Can you think of any other actions that were included in securing a scene outside of, you know, making sure nobody's walking through, making sure evidence isn't disrupted and that the scene is preserved?

A.   Was secure in the scene?  No, I would say -- I would say that would be it.

Q.   And when you would arrive on scene for a case like this, where it's a robbery case, would you interview witnesses?

MR. DIRISAMER:  Objection.  You can answer if you can.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

THE WITNESS:  So can you clarify what you mean by interview?  Because there is a difference between what patrol would do and what detectives would do, who responded.

BY MS. MARTINEZ:

Q.  Sure.  Actually, I mean, if you could explain that difference to me, that might clarify.

A.  Okay.  So it may be an issue where when patrol arrives we're asking if anybody witnessed the scene and they we're documenting their personal information so that they can be further interviewed later by detectives.

Q.  Okay.  Would it ever be your responsibility to have those more in-depth interviews with witnesses on the scene?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.  I mean, we would try to, you know, quickly gather whatever information they had in that moment.

BY MS. MARTINEZ:

Q.  Okay.  But generally, if you knew a detective was coming to take over the case, would you leave those longer interviews to the detectives?

A.  Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  Understood.  And in the instance where you are interviewing witnesses to get their contact information to pass along, you would take notes of that information, correct?

A.   Yes.

Q.   Okay.  In the case where, you know, maybe you're having a more substantive conversation with a witness, would you also take notes of whatever they told you?

A.   Yes.

Q.   Okay.  And then would you subsequently -- or actually, strike that, please.  With those notes, would you then memorialize those in a police report somewhere?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.  I mean, in general we would document the information we have.

BY MS. MARTINEZ:

Q.   Okay.  And in the case where, you know, you interview a witness prior to a detective arriving, when that detective would arrive, would you usually talk to them and tell them, you know, what you'd heard from the witnesses?

A.   Yes.

Q.   Okay.  And generally, in your experience in a

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

case where patrol officers first respond and then they request detectives, whose responsibility would it be to fill out that initial incident report?

A.   So in a -- like it -- as in -- in this case?

Q.   Sure.  Yeah, you can use this case as an example.

A.   Okay.  So the offense report would generally be filled out by one of the first responding officers.

Q.   And then at that point would usually be transferred over to the detective to write the supplemental reports?

A.   Yes.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   And in your experience, for what types of cases would you request detectives come to the scene?

A.   Generally any -- well, I don't say any, but serious crimes.  Felony offenses.

Q.   Okay.  Including aggravated robbery?

A.   Yes.

Q.   And after you had completed securing the scene and, you know, drafting this initial incident report, would the case then be handed over to detectives?

A.   Yes.

MR. DIRISAMER:  Objection.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q. Okay. And in those instances, would you ever, you know, stay on and continue investigating the case or at that point, would it be fully handed off?

A. In general, you know, once we handed it off to them, it was it was up to them to complete the process.

Q. Okay. And you wouldn't have, you know, further involvement in whatever investigation they then pursued?

A. Not likely.

Q. Okay. As you sit here today, can you think of any cases that you handed off to a detective and then did continue participating in?

A. Oh, goodness. I mean, the only time that I can think of that that would've even been the situation is if we were holding a crime scene.

Q. Okay. And when you say "holding a crime scene," what does that mean?

A. You could be assigned for a couple of hours watching a crime scene. And at some point somebody could approach you and say that they were, you know, a witness or had further information. Of course, you would document it and pass it on.

Q. Okay. Understood. But you -- strike that, please. Is it fair to say you don't recall a time you



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

ever handed a case off to detectives and then continued to be involved beyond that shift?

A.   No.  No.

Q.   Okay.

A.   I don't.

Q.   Okay.  And to the best of your recollection today, were there certain robbery detectives you worked with more than others back in 2004?

A.   I -- I really don't recall.

Q.   Okay.  And in your experience, would you agree that it's important to flush out leads quickly?

MR. DIRISAMER:  Objection. You can answer.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   And even potentially the same day, if possible?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  That generally was outside my scope of duty.

BY MS. MARTINEZ:

Q.   Sure.  Sure.  I'm asking, you know, questions about your experience and best practices.  So if -- would you agree that, you know, if it's possible to flush out a lead that same day, that would be important and you'd want to do that?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 150-5 Filed: 03/28/26 Page: 68 of 171 PAGEID #: 10888
The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

66

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  And would one of the reasons be because timeliness can impact the likelihood of catching a perpetrator, correct?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   And if an investigation were to be delayed, that meant that, you know, leads could go cold, right?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  Or evidence could be destroyed? Actually, strike that, please.  Or -- I want to clarify. I'm not talking about, you know, evidence collected by police, but you know, physical evidence, like, you know, a weapon that a perpetrator used could be destroyed or the person could get rid of it, correct?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Can you -- can you ask the question again?

BY MS. MARTINEZ:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

Q.   Yeah. Yeah.  I worded that very weird.  One of the reasons that you would want to investigate a lead quickly be because evidence that's, you know, out there could be destroyed or go missing, correct?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  And witnesses might disappear?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  I don't know how to answer that because --

BY MS. MARTINEZ:

Q.   I'll -- yeah, I'll rephrase.  I can rephrase. Would it also be important to, you know, follow up on these leads quickly because witnesses memories might fade?

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  Well, we would document all the witnesses that were known to us at that moment.

BY MS. MARTINEZ:

Q.   Sure.  I think my question is, you know, for an officer or detective who either gets, you know, a lead or some preliminary information about a witness, you'd want to follow up on that quickly because that witness's memories could fade.  Is that a fair

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

statement?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- I don't know how to answer that because I mean, I -- I don't -- I mean, I would never -- I wouldn't have any idea of knowing who has a great memory and who doesn't have a good memory. So I mean, like me, clearly, I don't have the best memory in this situation, so I'm not sure how to answer that for somebody else.

BY MS. MARTINEZ:

Q.  Sure.  Would it be fair to say that a witness's memory could fade?

MR. DIRISAMER:  Objection.  Can answer if you can.

THE WITNESS:  Sure.

BY MS. MARTINEZ:

Q.  Okay.  And would it be fair to say that if an investigation is delayed by an officer or a detective, the chance that that officer or detective misses something could increase?

MR. DIRISAMER:  Objection. You can answer if you can.

THE WITNESS:  I'm sure it's possible.

BY MS. MARTINEZ:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   And you testified earlier that you have responded to, I believe you said thousands of different types of crime scenes?

A.   Thousands of runs over almost 13 years, yes.

Q.   And just for the record, can you explain what a run is?

A.   Being dispatched by the radio room.

Q.   Okay.  And as you sit here today, do you recall how many robberies you were dispatched to?

A.   I have no idea.

Q.   Okay.  Was it something that was, you know, extremely rare or would you be assigned to investigate robbery scenes every now and then?

A.   It was not uncommon.

Q.   Okay. Okay.  Thank you.  Now, I want to ask you like two separate lines of questioning.  So the first is just a few questions based on your understanding of what your role is, and you can rely on police reports, and, you know, anything that you reviewed in answering those questions.  And then I'm going to get into questions about specific memories that you have today.  Okay.  So I just want to explain that at the outset, just so you know it doesn't cause any confusion as we go through them, okay?

A.   Okay.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. So based on, you know, your review of police reports, did you participate in the Loew Street robbery investigation?

A. Based on what I saw in that specific police report, yes.

Q. Okay. And what was your role?

A. I believe I was the one that submitted the report.

Q. And based on your review of the report and your trial transcript, do you believe you had any other role in the Loew Street robbery investigation?

A. Can you clarify what you mean by role?

Q. Sure. So you testified that you believed you submitted that first incident report, correct?

A. Yes.

Q. Okay. And from your review of the documents, do you believe that you did anything else in connection with the Loew Street robbery investigation?

A. Gathered the information for the report, yes.

Q. Okay. And what would that include?

A. What would that include?

Q. Uh-huh.

A. It would include information gathered by myself personally or other officers at the scene.

Q. Okay. And was it also -- or strike that,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

please. Did you also assist with securing the scene?

A.   Gosh, I don't remember.

Q.   Okay.

A.   I don't recall.

Q.   Okay.  But your understanding based on the reports that you reviewed is that you submitted this report, and you gathered the information that went into that report.  Either you did or other officers on the scene did, correct?

A.   Yes.

Q.   Okay.  And do you believe you played any other role in the Loew Street robbery investigation?

A.   Unless it was in the report. I don't know.

Q.   Okay.  And based on your review of the documents, were you working with a partner that day?

A.   Oh, I don't know the answer to that question.

Q.   Okay.  And so now I'm going to get into the line of questioning that is based on your memory here today.  So not relying on any report or anything that you've been told, but just your memory.  And I have a number of questions in -- that I'm going to ask you, and I want to make clear my purpose with these questions isn't to belabor the point about your memory. I just want to kind of make clear that at each stage, you know, if you do or don't have a memory of that thing happening

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

and see if it prompts any memory, okay?

A.    Okay.

Q.    Okay.  All right.  So as you sit here today, do you have any independent recollection of the Columbus Police investigation into the Loew Street robbery?

A.    No.

Q.    Okay.  And do you have any independent recollection of the crime scene of the Loew Street robbery reinvestigation?

A.    No.

Q.    Okay.  Do you have any independent recollection of any other officers who were at the scene?

A.    Recollection, no.

Q.    Okay.  Do you have any independent recollection of anything that happened at the scene?

A.    No.

Q.    Do you have any independent recollection of anything that was said by anyone at the scene?

A.    No.

Q.    Okay.  Do you have an independent recollection of what the house looked like that the robbery occurred at?

A.    No.

Q.    Do you have any independent recollection of



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

speaking to any witness at the scene?

A. No.

Q. Do you have any independent recollection of speaking with any of the victims the day of the robbery?

A. No, I don't.

Q. Okay. Do you have any independent recollection of any evidence that was collected from the scene?

A. No.

Q. Okay. Do you have any independent recollection of finding any drug paraphernalia at the scene?

A. No.

Q. Okay. Do you have any independent recollection of interacting with any other officer while at the scene?

A. No.

Q. Okay. Do you recall speaking with any -- or strike that, please. Do you have any independent recollection of speaking with any detective at the scene?

A. No.

Q. Do you have any independent recollection of whether there were lights on in the home at the time of the robbery?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

74

A.   No.

Q.   Okay.  Do you have any independent recollection of ever learning what the victims of the robbery said to detectives?

A.   Of learning what they said?

Q.   Or actually, let me rephrase, because, you know, I don't want to know about conversations you had with your Counsel. So do you have any independent recollection of learning what the victims of the robbery said to detectives back in 2004?

A.   Not at the time, no.

Q.   Okay.  But would it be fair to say, again as you sit here today, you have no recollection of learning about any conversation Detective Walker had with any of the victims from Detective Walker?

A.   No.  No, I don't.

Q.   Okay.  And do you have any independent recollection of learning that Detective Walker showed a single photograph of Mr. Horton to one of the victims after the robbery?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   No.  Okay.  Do you have any independent recollection of learning that one of the victims, a



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Mr. McClanahan, told Detective Walker that he believed a man named Richard Diggs committed the robbery?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. Was that no?

A. No.

Q. Okay. Do you have any independent recollection of learning that Detective Walker showed a photo array to both victims?

A. No.

Q. Do you have any independent recollection of learning about the results of that photo array?

A. No.

Q. Do you have any independent recollection of learning about Mr. Horton's alibi for the morning of the robbery?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. Okay. Do you have any independent -- oh, strike that. Excuse me. Do you have any independent recollection of learning that the fingerprints lifted from the scene were not a match for Mr. Horton back in 2004?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

76

A.   No.

Q.   Okay.  And do you have any independent recollection of learning that one set of the fingerprints from the scene was not a match for Mr. Horton or either of the victims?

A.   No.

Q.   Okay.  And do you have any independent recollection of learning that the DNA pulled from shell casings found at the scene were not a match for Mr. Horton?

A.   No.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   Okay.  Do you have any independent recollection of searching for any suspects?

A.   No.

Q.   Okay.  Do you have any independent recollection of testifying at Mr. Horton's criminal case?

A.   No.

Q.   Do you have any independent recollection of any other individuals who were suspects in the Loew Street robbery investigation at any time?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q. No. Okay. And after reviewing the documents that you reviewed in preparation for your deposition today, you still have no memories of the Loew Street robbery investigation?

A. No, not exactly. I have a familiarity now that I've read the testimony in the report, but...

Q. But like no actual memories?

A. No. No, I'm sorry.

Q. It's okay. Again -- yeah. No need to apologize, you know, this was 20 years ago. Okay. Is there anything that you think you could review that would help refresh your recollection of the Loew Street robbery investigation?

A. At -- at this point, I don't believe so.

Q. Okay. And as you sit here today, do you have any independent recollection of any case that you investigated that included Detective Walker?

A. Oh. First name, Brenda?

Q. Yes.

A. Not specifically.

Q. And from your review of the documents, do you believe you had any involvement in the Loew Street robbery investigation after the day that it happened?

A. I don't believe so.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. And as you sit here today, do you know if you sent any e-mails related to the Loew Street robbery?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I -- I don't remember.

BY MS. MARTINEZ:

Q. And as you sit here today, do you -- actually, strike that, please. From reviewing your reports, do you know where you went after leaving the crime scene?

A. No.

Q. Okay. Okay. I'm going to show you a couple of documents. I'm going to share my screen, so -- and I'll try to zoom, but if you ever can't see anything or read anything, just let me know and I'll do some tech on my end, okay?

A. Okay.

Q. Okay. So I'm going to show you first what we will mark as Exhibit 1, which is Bates stamped City 13 through 15. And let me -- okay. Sorry. I haven't shared my screen in a while. Okay. Are you able to see the document?

(Exhibit 1 was marked for identification.)

A. Okay. Yes.

BY MS. MARTINEZ:

Q. Okay. So first, I'm just going to kind of

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

slowly scroll through so you can get familiar but let me know if you want me to pause at any point. The section I want to ask you about, I'm going to read, and I'll direct you to, but I want to give you a second to just look at the document, okay?

A. Okay.

Q. So just let me know if I'm going too fast.

A. Okay.

Q. So first I want to ask you, do you recognize this document?

A. I do from speaking with Counsel.

Q. So this is one of the documents you reviewed in preparation for your deposition?

A. Yes.

Q. Oh, okay. And for the record, can you please explain what it is?

A. It looks like it's a progress report, preliminary progress report.

Q. And in your experience, at what point in an investigation would a preliminary progress report be filled out?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: It's not something that I ever recall doing as a patrol officer.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q.   Okay.  But you've seen documents that look like this throughout your career?

A.   Yes.

Q.   Okay.  And would it be fair to say that preliminary progress reports are usually drafted for the beginning of an investigation?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I don't know at what stage, no.

BY MS. MARTINEZ:

Q.   Okay.  But you say that you would never -- or strike that.  Because you don't recall ever filling out a progress report that looked like this?

A.   No.

Q.   Okay.  And so this report includes the date of the offense at the top, correct?

A.   Yes.

Q.   Okay.  Where it says October 9, 2004?

A.   Yes.

Q.   Okay.  And then there is also a date here at the bottom of Page 1, where it says, "12-27-04, cleared by arrest."  And that would be the date Mr. Horton was arrested, correct?

MR. DIRISAMER:  Objection. You can answer if



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

81

you know.

THE WITNESS: That's what it appears to state.

BY MS. MARTINEZ:

Q. Okay. And then on the very last page, it's got the BKW-CAB 12-30-04. Do you see that?

A. I do.

Q. Okay. Do you know what that stamp means?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: I -- I don't know.

BY MS. MARTINEZ:

Q. Okay. Would it be fair to say if this report lists December 27, 2004, as the date someone was arrested, that it was probably drafted after that?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: I -- drafted? I -- I don't -- I'm not sure.

BY MS. MARTINEZ:

Q. Sure. Yeah. My -- and again, this isn't to your personal knowledge, I'm just asking you, would it be fair to say that this report was likely drafted after December 27, 2004, because it's got someone listed as being arrested that day? Is that a fair statement?

MR. DIRISAMER: Objection. You can answer if

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you know.

THE WITNESS:  I would say fair to say completed.

BY MS. MARTINEZ:

Q.   Okay.

A.   But I don't -- I mean, in using the term drafted, I -- I don't know, you know, when I can answer that it was drafted.

Q.   Okay.  That's fair.  And then at the very bottom right of the first page, it says -- or actually, wait strike that, please.  And in your experience, would progress reports that you wrote usually be dated in some way?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  It would be dated whether written or online, yes.

BY MS. MARTINEZ:

Q.   Okay.  And in your experience, as an investigation was progressing, you would fill out new progress reports to document how the investigation was progressing, correct?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  I mean, I -- I hate to assume

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

anything because I feel like you're asking me questions that are outside of my scope of duty as a patrol officer.  I don't --

BY MS. MARTINEZ:

Q.  I can clarify.  I'm strictly asking within your experience, in your time on the job, would you fill out progress reports documenting your investigations as they were progressing?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Not this specific progress report.

BY MS. MARTINEZ:

Q.  Sure.  Would you fill out, you know, other types of progress reports documenting what you were doing as the investigation was progressing?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  You know, at -- at this point, I -- in this year, I honestly -- I -- I don't remember. I don't recall.

BY MS. MARTINEZ:

Q.  Okay.  Would it have been your practice to fill out all of your progress reports at the very end of an investigation?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  The -- it's like the offense report would be filled out with the information we received at the time of the incident.

BY MS. MARTINEZ:

Q.   Sure.  No.  My question is: Progress reports that you would write, in your experience as a patrol officer, would you fill those out as the investigation is progressing in your learning things, or would you fill them all out at the end of an investigation?

MR. DIRISAMER:  Objection.  Mischaracterizes testimony.  I don't believe she's ever testified that she would complete progress reports.

MS. MARTINEZ:  I believe she has, but I'll lay the foundation.

BY MS. MARTINEZ:

Q.   Ma'am, you testified earlier that you would fill out progress reports, correct?  But even if they did not look like this progress report?

A.   The reports that we filled out were categorized as either offense reports or incident reports, for example.  So I think maybe we're getting tied up in the terminology you used to describe a report.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Q.   Sure.   And I think I -- that makes sense.
When you would fill out an incident report and then you
would learn new information about an investigation,
would you fill that out as a separate progress report,
or would you add that on to the incident report?

MR. DIRISAMER:  Objection.  You can answer if
you can.

THE WITNESS:  So at this time, while it was
online, we could add additional information.

BY MS. MARTINEZ:

Q.   Okay. Okay.  Understood.  So you wouldn't
fill out separate and distinct progress reports for your
investigations, you would add more information to the
incident report?

MR. DIRISAMER:  Objection.  You can answer if
you can.

THE WITNESS:  Yes.  So from what I can recall,
we could continue to complete the progress report or
the incident report or the offense report.  And if
we had further information to give to detectives, we
would pass that on to them, yes.

BY MS. MARTINEZ:

Q.   Okay.  Understood.  So I want to quickly read
apart from the beginning here, if you'd like to follow
along.  It was on October 9, 2004, at approximately

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

8:30 a.m.  "Detective Bureau Personnel notified robbery Detective Brenda Walker, number 1176, that patrol officers were requesting robbery squad's assistance. Detective Walker spoke to Sergeant Charles Greene, number 5143, who advised of a residential robbery at 927 Loew Street.  Detective Walker, along with crime scene search unit Detective T. Seavers, number 1042 responded.  Upon arrival, detectives were met by Patrol Officer Pamela Rhodeback, number 1915 and Todd Rhodeback, number 1501, provided the following information.

"The officer stated that they were advised that the homeowners were victims of a residential robbery.  As they answered a knock at the door, the suspect forced his way inside and struck the male victim in the head with a handgun, causing him to fall on a rollout couch.  The male victim was then shot in the leg.  The suspect ransacked the living room and had tried to fold the female victim up in the foldout couch/bed.  The suspect took $40 before he fled. Officers told detectives that the male resident had been transported to Grant hospital for his injuries, and that the female resident was at the hospital with him." Okay.  So first, does this refresh your recollection of the Loew Street robbery investigation in any way?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 150-5 Filed: 03/28/26 Page: 89 of 171 PAGEID #: 10909
The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

87

A.   No.  I'm so sorry.  It doesn't.

Q.   That's okay.  And this information that you passed along to detectives, do you know where you learned that information from?

A.   It would only be an assumption.

Q.   Okay.  And what would your assumption be on where you learned that information?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yeah.  It's -- it's difficult to answer because I -- I don't recall.  I can only -- I -- I -- I don't want to assume anything.

BY MS. MARTINEZ:

Q.   Okay.  So you could have learned this from dispatch; is that fair?

A.   It's possible.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   Okay.  And you could have learned this from your investigation at the scene?

MR. DIRISAMER:  Objection.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   Okay.  As you sit here today, are you aware of any other ways that you might have learned this information outside of -- from dispatch or from your

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

88

investigation at the scene?

A. No. I mean, that's how we would gather the information.

Q. And this report doesn't say where you learned the information, right?

A. Not that I see.

Q. And again, if you want me to scroll down and go to the rest, please just let me know and I will, okay?

A. Okay.

Q. And this report also doesn't say where you went after the crime scene, right?

A. I don't believe I see that in there anywhere. No, it doesn't state that I can see.

Q. Okay. And you would have relayed all of the information that you had gotten at the time to the responding detectives; is that correct?

A. Yes, that's correct.

MR. DIRISAMER: Objection.

BY MS. MARTINEZ:

Q. Okay. And it also doesn't say here how long you were at the scene, correct?

A. I don't believe so.

Q. Okay. And you testified earlier that when you would respond to scenes, you would secure the scene and

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you might sometimes be detailed to stay there and hold the scene, correct?

A. Yeah, that could happen.

Q. And so, the amount of time that you spent at crime scenes as a patrol officer could vary based on the need?

A. Correct.

Q. Okay. And -- but as you sit here today, you don't know how long you were at the scene of the Loew Street robbery, correct?

A. I do not know.

Q. Okay. So that is all that I have for this first exhibit. I'm going to show you what we'll mark as Exhibit 2, which is Bates stamped City 8 through 12. I'm going to try just changing tabs here. Do you see a new document?

(Exhibit 2 was marked for identification.)

A. Yes.

BY MS. MARTINEZ:

Q. Okay. Great. So with the previous document, I'm going to scroll through it slowly, so you've got a chance to read and take a look. But the specific questions that I want to ask you, I'll direct you to each point and give you a moment to read it, okay?

A. Okay.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   But I'm going to scroll through just so you can kind of see it and get familiar and just tell me if you want me to pause at any point.

A.   Okay.

Q.   So I'm going to scroll back up to the top. And do you recognize this document?

A.   Yes.  That was the report that we would've taken when we were dispatched to a scene.

Q.   Okay.  And is that the incident report you were talking about earlier?

A.   It would've previously been a -- been titled an offense report, but yes, it's an offense report.

Q.   Okay.  And did you review this document in preparation for your deposition today?

A.   I have seen it before, yes.

Q.   Okay.  And you testified briefly to this earlier, but -- so this was a computer program.  And would you fill in the boxes for each of these, or how would you fill out this report?

A.   It would be filled out with either typing it in the box or a drop-down that would allow us to -- to pick.

Q.   Okay.  And when you were first filling out this report, you would put in as much information as you had that was responsive --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A. Correct.

Q. -- is that correct? Oh.

A. Yes.

Q. Okay. And it appears that at the top up here where it says report date, it says 10-9-2004, 9:29:49 a.m. Do you see that?

A. Yes.

Q. Okay. In your experience, would that be when this report was first started, or would that be when you first entered the offense report?

A. Well, that could be one and the same.

Q. Oh, okay. Yeah, sure. Let me rephrase. Would that timestamp be when you submitted the offense report, or would that be when you opened it to start a new offense report?

        MR. DIRISAMER: Objection.

        THE WITNESS: I don't remember.

BY MS. MARTINEZ:

Q. You don't remember?

A. I -- yeah, I -- yeah, I don't recall.

Q. Okay. And do you see where it says, "subject 450 robbery"?

A. Yes.

Q. Was 450, the classification code for a robbery?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Oh, my goodness.  In that report, I -- I don't recall learning the classification codes, but that would've been something that was a drop-down.  So we would've chosen that option.

Q.   Okay.  Okay.  And then it says that this report was entered by you.  Do you see that right here?

A.   Yes.

Q.   Okay.  And then it says that this report was also approved by you?

A.   Yes.

Q.   Okay.  And that was about an hour and 13 minutes after it was entered?

A.   Yes.  Is there a way that you can enlarge it? I'm trying to figure out how --

Q.   Yes.

A.   -- do it --

Q.   No, absolutely.  Absolutely.

A.   -- because with my bifocal -- oh, there we go. Thank you.

Q.   Is that better?  Okay.

A.   Okay. Great.  Perfect.

Q.   Yeah.  Sorry.  It's -- it gets small even for me and I'm, you know, 6 inches from my screen.  Okay. So -- sorry.  Do you see -- yeah, where it says approved by you?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.    Yes.

Q.    Okay.  So in your experience, would reports typically be submitted and approved by the same person?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  They could be, yes.

BY MS. MARTINEZ:

Q.    Okay.  And what does, you know, approved mean in this instance?  Does it mean, you know, that you reviewed it after the fact?

A.    From what I recall, that is the time that I would've submitted the report.

Q.    Okay.  The approved by would've been when it was submitted?

A.    Yes.

Q.    Okay.  Understood.  So then entered by could have been when you first opened the report?

A.    To start it.  Yes, I believe that's correct.

Q.    Okay.  Understood.  And were these types of reports ones that you would fill out, you know, in your vehicle in the field or would you fill them out back at the precinct?

A.    Both.

Q.    Okay.  And is there any way on the document itself to tell where you were filling it out from?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

94

A. Oh, I don't -- I don't know. Gosh, it's been so long ago. I don't see where it shows whether or not it was done in the cruiser or if it was done at the precinct.

Q. Okay. So if it doesn't say in this document, would it be fair to say, you know, you don't recall, so you don't know where it was filled out?

A. Correct. That would be correct.

Q. Okay. And then this is the type of report we discussed earlier, right, where people can add on to it after the fact?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: You know, that sounds familiar, but I -- honestly, I don't recall anymore how this process went.

BY MS. MARTINEZ:

Q. Okay. And I've got a couple questions about parts of it that might help, or they might not. On the bottom, I'm going to very quickly zoom back out for a second. At the bottom of this first page, and then do you see where it says, "Printed December 30, 2004 at 9:18 a.m."?

A. Yes.

Q. In your experience, would that be when this

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

report was printed out?

A. Well -- I mean, I'm -- I'm reading it there. So other than to state that-- I mean, yes, I can see it says it was printed at -- on December 30th at 9:18 a.m. I -- I don't know if I'm answering your question or not. I'm sorry.

Q. No, no, it's okay. Do you recall ever seeing a stamp like this on a report before?

A. I -- I don't recall ever paying -- paying attention to it, no.

Q. Okay. But this tiny stamp appears to say that this document was printed on December 30, 2004?

A. Correct.

Q. Okay. And so, in the instance -- or strike that, please. If this document had been printed out at December 30, 2004, and this was the type of report that officers or detectives could add to as an investigation progressed, would it be fair to say that things in this report could have been added up to December 30th?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I don't recall.

BY MS. MARTINEZ:

Q. Sure. My --

A. I -- I can't remember exactly what the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

reporting process was.  Most of the time that I was on, we did handwritten reports.  So this was fairly new even at that time.

Q.   Sure.  Sure.  I -- let me clarify.  This question isn't asking about your personal knowledge or memory.  I'm more asking if -- would it be fair to say that if this report, you know, as the stamp says, were printed on December 30, 2004, and if this were the type of report that officers and detectives could add to after the fact, would it be fair to say that information contained in this report could have been added up to December 30, 2004?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  I really don't recall.

BY MS. MARTINEZ:

Q.   Yeah.  Yeah.  I want to be clear.  And I'm not asking about your recollection.  My question is: In the case where this document is printed on December 30th, and --

A.   Yeah.

Q.   -- in the case where detectives and officers can add to this report after the fact, including more details, would it be fair to say then that information contained in this report could have been added up to

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

December 30th of 2004?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: Yeah. I -- I'm not trying to be difficult. I'm just -- I'm -- I'm trying to remember the process and I -- I do believe that information could be added to complete the report. But up to what time frame, I -- I really -- I don't know.

BY MS. MARTINEZ:

Q. Sure. And again, I think I'm also wording things weird. I'm not trying to -- you know, this isn't like a got you moment. I'm -- my question was more, in the world where officers and detectives can add to this report, you know, they can add notes and add information and things like that. If that's the case, could it be possible that that information was added to this report prior to December 30th when it was printed out?

MR. DIRISAMER: Objection. You can answer if you can.

BY MS. MARTINEZ:

Q. Is that a possibility?

A. I mean, in -- in a -- in a world where you're stating all this is possible, yes, I can believe it would be possible.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. But your testimony is that you don't recall exactly what the procedures or mechanisms were for adding information to these offense reports; is that accurate?

A. No, not as far as anybody adding to it other than myself after the -- after what I've entered.

Q. Okay. Okay. Understood. So now -- and would you agree that there's no way to tell from looking at the document when certain information was entered, correct?

A. Unless it's individually timestamped, which --

Q. Did you see any timestamp on the document?

A. No. I tried to -- I tried to look pretty thoroughly. I don't see any other timestamps in scrolling through it.

Q. And so would it be fair to say that there's no way to tell from looking at the document when certain information was entered?

A. Other than what I entered.

Q. Right. Other than when you first began the report and then submitted the report, correct?

A. Correct.

Q. Okay. And so in the world where officers or detectives can add to the offense report after the fact with new details, that information could have been added



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

at any point between October 9th and December 30th; is that a possibility?

        MR. DIRISAMER:  Objection.  You can answer if you know.

        THE WITNESS:  I really -- I really don't know.

BY MS. MARTINEZ:

    Q.    Sure. No, again, my -- again, I know I'm not -- I think we're getting into the same trap here, so I want to try to clarify.  And again, your testimony is preserved that you, as you sit here today, don't recall what the procedure was for, you know, whether or not officers or detectives could add to offense reports after the fact, correct?

    A.    I -- I -- I don't remember the process.

    Q.    Okay.  My question is: In the situation where detectives can add information after the fact, there are no other timestamps that would tell us when that information was added, correct?

    A.    I -- I don't know.  I honestly don't know.

    Q.    But you didn't see any when I was just going through the document?

    A.    I did not see any other timestamps.

    Q.    Okay.  Outside of the ones you testified to of when you began the report, entered the report, and the printed timestamp, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Correct.

Q.   Okay.  So now I'd like to go to -- I'm going to go to the middle of this first page, and then, again, I'll zoom in to make it a little bit easier, where it says "Report narrative.  Victim states he was robbed.  CSSU responded."  Do you see that?

A.   Yes.

Q.   Okay.  As you sit here today, do you know where that information came from?

A.   Without assuming, no.

Q.   Okay.  And as you sit here today, do you know whether -- or actually, strike that, please.  As you sit here today, do you know if you put that information in this report or if someone else added it after the fact?

A.   I do not.

Q.   Okay.  And then I'd like to go down a little further for offense notes.  I'm going to read this section, if you'd like to follow along.  "Victim states an unknown male knocked on the front door of his home.  Victim opened the door then was pistol whipped on the head by the suspect, knocking victim to the ground.  Suspect kept screaming at the victim using victim's nickname saying, quote, 'I know you just got paid, expletive.  Give me the money,' end quote.

"Suspect was standing over the victim, then

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

shot victim's leg.  Victim gave the suspect $40. Suspect became even more irate, wanting the rest of the money, and began ransacking the front room, turning over miscellaneous items.  Suspect then went to the girlfriend, also listed as a victim, who was laying on a hide-a-bed, and began slamming the bed closed on her over and over again, screaming, quote, 'Where's the money, expletive?' End quote.

"Suspect eventually left running out the front door of the residence.  Victims drove over to his sister's home at 1412 Gibbard Avenue where they then called 911."  As you sit here today, do you know where that information came from?

A.   I -- I don't recall.

Q.   And so as you sit here today, do you know if you put that information in or if someone else added that information in after the fact?

A.   I -- I honestly -- I -- I don't recall at this point.  I mean, it's -- the only thing I can say is that in general, you know, the narrative, the initial narrative would have been written by the officer taking the report.  But in this case, I don't know what the answer to that question is.

Q.   Okay.  And do you as you sit -- strike that, please.  Do you know if emergency calls were recorded in

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

2004?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: Yes, I believe they were.

BY MS. MARTINEZ:

Q. Okay. And do you know how they were stored?

MR. DIRISAMER: Objection. You can answer.

THE WITNESS: Oh, I -- no, I don't know.

BY MS. MARTINEZ:

Q. Okay. And did you review anything in preparation for your deposition today that made you believe that you spoke with the male victim that's described here at any point?

MR. DIRISAMER: Objection.

THE WITNESS: The victim? I -- I -- I -- I -- I don't recall.

BY MS. MARTINEZ:

Q. Okay. So would it be fair to say that this information could have been added later by someone who did speak to the male victim?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I -- I don't know.

BY MS. MARTINEZ:

Q. Okay. Now, I am going to go to Page 2 of the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

document here where it says, "Suspect 1, unknown suspect." Okay. Do you see that?

A. Yes.

Q. Okay. In your experience, if anyone had given a name of who they believed the perpetrator was at the time of this report being filled out, that would be documented here; is that correct?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: So as far as, like, documenting unknown suspect information?

BY MS. MARTINEZ:

Q. Yes.

A. The description?

Q. Yes. Like all -- or let me rephrase.

A. Okay.

Q. All the information that you had learned about the potential perpetrator, you would have put in this section when you filled out this report, correct?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: That would have been the course of action, yes.

BY MS. MARTINEZ:

Q. Okay. And so if someone had given you a name,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

you would put it here where it says name; is that fair to say?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- I would have, yes.

BY MS. MARTINEZ:

Q.   Okay.  And would you agree that it says the age here for -- under suspect is 40?

A.   Yes.  I mean, it would've been the approximate age, I'm sure, but...

Q.   And then for sex, it says "M-male"?

A.   Yes.

Q.   And race, it says "B-black"?

A.   Yes.

Q.   And then for height, do you see where it says 6'2"?

A.   Yes.

Q.   Okay.  And then would you agree that for weight it says 150?

A.   Yes.

Q.   Okay.  And then eye color, brown.  Do you see that?

A.   Yes.

Q.   Okay.  And then you see where it says, "hair color U-unknown"?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

A.   Yes.

Q.   Okay.  So first, as you sit here today, do you know where the information reflected here came from?

A.   I -- I don't.

Q.   Okay.  As you sit here today, do you know who input this information into the report?

A.   No.

Q.   Okay.  And -- but in your experience, information about the suspect would have come from people who saw the perpetrator, correct?

A.   Correct.

Q.   Okay.  But -- so would it be fair to say that today you are not aware of who gave the information that's reflected in this report?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No, I don't -- I don't know.

BY MS. MARTINEZ:

Q.   Okay.

A.   I -- I don't know exactly where that information came from, no.

Q.   Okay.  And as you sit here today, do you know how tall Mr. Horton was in 2004?

A.   I have absolutely no idea.

Q.   Okay.  And do you know what Mr. Horton's



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SGS Doc #: 150-5 Filed: 03/28/26 Page: 108 of 171 PAGEID #: 10928
The Deposition of PAMELA RHODEBACK, taken on November 20, 2024
106

weight was in 2004?

A.   No.

Q.   Okay.  And then do you see the fields that are not filled out?

A.   Yes.

Q.   Again beginning with hairstyle, hair length, facial hair, and complexion.  None of those are filled out?

A.   Correct.

Q.   Okay.  In your experience, if you had that information, would you input it here in the report?

A.   Yes.

MR. DIRISAMER:  Objection.

BY MS. MARTINEZ:

Q.   Okay.  And then I'm going to quickly read, if you'd like to follow along, for suspect notes.  It says, "Gray hoodie pulled tight over the face, light blue jeans.  Victim states he couldn't see the face, but the voice did sound familiar, believes he knows suspect." Okay.  As you sit here today, do you know who that information came from?

A.   Well, the -- the narrative states the victim.

Q.   Sure.  My question is: As you sit here today, do you have personal knowledge of who the information came from?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   I only have the knowledge that's in the notes.

Q.   Okay.  Understood.  And do you know if -- or strike that, please.  Do you know whether you input this information or if another officer or detective did?

A.   I don't recall.

Q.   Okay.  And if this narrative section were not in subsequent reports about the robbery that -- or actually, strike that, please.  If this narrative were not in printouts of the offense report that came from before December 30th, would it be fair to say that this information was likely added after that date?

        MR. DIRISAMER:  Objection.  You can answer if
    you can.

        THE WITNESS:  So to answer whether it was
    likely that it was added later, no.

BY MS. MARTINEZ:

Q.   Okay.  It's your opinion that this information was not added to this offense report after you filling it out?

        MR. DIRISAMER:  Objection.  She has testified
    she doesn't know who put it in, so I don't know how
    she can answer when it was put in.

        MS. MARTINEZ:  Yeah, no.  Counsel, I'm
    following up on her answer.

BY MS. MARTINEZ:



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   And again, I'm not trying to put words in your mouth.  That's why I'm asking these follow-up questions. I want to try to clarify and make sure I'm understanding, okay?

A.   Okay.

Q.   You stated that you believed it was unlikely that this narrative information was added after?

A.   After when, exactly?

Q.   Sure.  So my question was, if -- actually, let me take a step back.  So this document, again, has the little stamp that says, "printed December 30th," correct?

A.   Yes.

Q.   So if there were another printout of this document from before December 30th that did not have the suspect notes that are here, would it make sense, then, that those notes were added after the report had been printed on that earlier date?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- I -- I -- I -- I don't know. I'll be honest with you, the question doesn't make sense to me, so I --

BY MS. MARTINEZ:

Q.   That's -- yeah.  Yeah.  That's okay.  We'll

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

circle back when I show you that next report, okay?

A.    Okay.

Q.    That's probably easier so you have something you can look at and compare.

A.    Okay.

Q.    But -- so this -- these notes don't say that the victim could partially see the perpetrator's face, right?

A.    I -- from what I'm reading, it doesn't exclude that as a possibility.

Q.    Sure.  But it simply says he couldn't see the face, and then no other information given about the face; is that accurate?

A.    Well, the notes say victim states he couldn't see the face.

Q.    Okay.  And -- but it says that the voice did sound familiar?

A.    Yes.

Q.    Excuse me.  And would it be fair to say that you'd have to know -- actually, strike that, please. Would it be fair to say that you'd have to know someone relatively well to recognize them on voice alone?

MR. DIRISAMER:  Objection. You can answer if you can.

THE WITNESS:  I would say not necessarily.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q.   Okay.  Could one of the instances where it'd be easier to recognize someone on voice alone be if they have a very distinctive voice?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- I mean, it's -- it's so hard to answer that question not knowing, you know, the capabilities of somebody else to hear a voice.

BY MS. MARTINEZ:

Q.   Okay.  And then I want to take you to Page 4, which has Witness 1, Curry, Shelly, and other entity, Searcy, Cynthia.  Okay.  Do you see where it has witness notes included for Shelly Curry which state "Visiting victims at house when robbery occurred"?

A.   Yes.

Q.   Okay.  And as you sit here today, do you know where this information came from?

A.   No.

Q.   Okay.  And do you know who input this information?

A.   No.

Q.   Okay.  And then for Cynthia Searcy, it says, "Sister's home where 911 call came from."  Do you see that?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 150-5 Filed: 03/28/26 Page: 113 of 171 PAGEID #: 10933
The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

111

A.    Yes.

Q.    Okay.  As you sit here today, do you know where that information came from?

A.    No.

Q.    Okay.  Do you know who input that information?

A.    No.

Q.    Okay.  And has anything we've looked at for this document refreshed your recollection about the Loew Street robbery in any way?

A.    No, it hasn't.

Q.    Okay.  So then I'm going to show you what we'll mark as Exhibit 3, which is Bates stamped City 39 to 42.  Let me -- okay.  I got to close this really quickly.  All right.  Are you able to see this document where it's got "10-12-2004" on the top left?

            (Exhibit 3 was marked for identification.)

A.    Yes.

BY MS. MARTINEZ:

Q.    Okay. Great.  So I'm going to -- similar with the other ones, I'm going to kind of slowly scroll through to give you a chance to look.  If you want me to pause or stop at any point, just let me know, okay?

A.    Okay.

Q.    Okay.  Now I'm going to scroll back up to the top.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Are you able to enlarge it again?

Q.   Oh, yes, absolutely.  Do you want me to scroll through again with it zoomed in?

A.   No, it's fine.  I -- yeah, it's good.

Q.   Okay.  Is this enough?  I can do one more, I think, without it --

A.   No, no, it's fine.

Q.   Okay.  Do you recognize this document?

A.   Not as in something I filled out, no.

Q.   Okay.  Do you recall -- or strike that, please.  Did you review this document in preparation for your deposition today?

A.   I don't think so.

Q.   Okay.  And do you know what this document is?

A.   It looks like it's a progress report.

Q.   Okay.  And this would be a progress report for the robbery that was listed -- or strike that, please.  This would be a progress report for the Loew Street robbery investigation, correct?

A.   That's what it appears, yes.

Q.   Okay.  And your name is still listed here under reporting officer, correct?

A.   Correct.

Q.   Okay.  And this report date up on the top left says October 12, 2004, at 1:04:06 p.m.  Do you see that?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Yes.

Q.   Okay.  And it looks largely similar to the previous report that we looked at, correct?

A.   Yes.

Q.   Okay.  And so, I guess my first question is: In your experience, would October 12th be -- or actually, strike that.  Let me take one step back.  This report does not list as being approved by anyone; is that correct?

A.   I don't see it saying that, no.

Q.   Okay.  So the 10-12-2004 at 1:04:06, would that be in line with the previous report when this report was first opened?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  Can you click back to the last report real quick?

BY MS. MARTINEZ:

Q.   Yes.  Let me go back up to the first page.

A.   At the very top, yeah.

Q.   Yeah.

A.   So 66104.  Okay.  Can you -- yeah, you can click back to the second one?

Q.   Okay.  Sorry, the task bar keeps getting in my way.  Okay.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

114

A.   That's okay.  So I mean it -- okay.  So I'm sorry.  Go ahead and ask your question again.

Q.   So this report is not marked as being approved by anyone, correct?

A.   Correct.

Q.   Okay.  And you testified earlier that the date entered right here on the previous report would've been when you began that report, correct?

A.   I believe so, yes.

Q.   Okay.  So then would it also be fair to say that this timestamp of October 12, 2004, 1:06 -- or strike that, please.  1:04:06 p.m. would have been when this report was first began?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Well, this is the 0.2 document, and it does state that that's when it was entered.

BY MS. MARTINEZ:

Q.   Okay.  And when you say "0.2 document," are you referring to up here, Report number 0.2?

A.   Yes.

Q.   Okay.  And in your experience, what does it mean when there's the report number and then a point insert other number?

A.   It's an addition to the original document.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. And in your experience, when there are additional reports being added, would they import information from the first report, or would it be all new inserts?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: I -- I really don't know.

BY MS. MARTINEZ:

Q. Okay. But it would be fair to say that this is a -- strike that, please. It would be fair to say that this is a subsequent report connected to the previous report that we just looked at?

A. Yes, I believe so.

Q. Okay. And I'm going to scroll to the bottom of this document and then zoom in a little bit. Do you see where it says, "printed December 3, 2004, at 1:52 p.m."?

A. Can you scroll up just a touch?

Q. Yes. Do you see it right here?

A. Well, I have you in that corner on my screen.

Q. Oh, sorry. Okay. Yeah. I was scrolling the wrong way. I was scrolling the wrong way.

A. Okay.

Q. Okay.

A. Okay. Yes, I see it.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  Perfect.  And you testified earlier that you're not familiar with what this stamp in the bottom corner means; is that --

A.   Well, I mean, other than it just states it was printed then.

Q.   Okay.  And I want to quickly scroll back up. And again, if you want me to go back to Exhibit 2 at any point, please just let me know.  I'm going to try to move this bar out of the way.  There we go.  Okay.  So this report states "02.  Scene processed by CSSU." Correct?

A.   Yes.

Q.   Okay.  And that's different from the previous report, which I'll bring up, which has a different classification, correct? It's got --

A.   Yeah.  You're talking about where -- you're talking about specifically where it says "latent process"?

Q.   Yes.

A.   Okay.  Yes, this -- I mean, at that point in time, there -- there was nothing, it looks like, that I did with it.

Q.   Okay.  But then in this report, it says, "02. Scene processed by CSSU."

A.   Correct.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. And on Page 2 of this document, the descriptors that are given of the suspect on this document are the same as those from the previous report, correct?

A. It appears to be the same.

Q. Okay. Okay. And similarly to the previous report, as you sit here today, you don't know when this information was entered?

A. Do I know when the information was entered?

Q. Uh-huh.

A. No. I mean, I -- I can only see the same as what you see as far as the date and time at the top.

Q. Okay. And -- but the narrative section on our suspect notes on this report is not present, correct?

A. Correct. I don't see anything there.

Q. Okay. And in your experience, why might notes or narratives that are put on a report not be on a supplemental report?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: I -- I don't know if the system transfers it over to a second document or not.

BY MS. MARTINEZ:

Q. Okay. And -- but this report is listed as being printed on December 3rd, correct?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Yes.

Q.   Okay.  Whereas the previous one was listed as being printed on December 30th?

A.   Yes.

Q.   Okay.  So my question for you then is: In the circumstance where officers or detectives can go back and add to offense reports --

A.   Okay.  Yes.

Q.   -- could it be possible that those suspect notes were added at some point between December 3rd and December 30th?

        MR. DIRISAMER:  Objection.  You can answer if you can.

        THE WITNESS:  I -- I don't know.  I --

BY MS. MARTINEZ:

Q.   Well, yeah, sure.  My question is just, could that be a possibility?

A.   That they could be added later?

Q.   Between December 3rd, when this report was printed, and December 30th, when the other report was printed that does have the suspect notes.

        MR. DIRISAMER:  Objection.  You can answer if you can.

        THE WITNESS:  I don't know.  I -- I -- I don't want to diminish my role, but I was only a patrol

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
—COURT REPORTERS—

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

officer, and I was not an expert in this -- the tech part of any of this, so...

BY MS. MARTINEZ:

Q. Sure. Okay. So you -- as you sit here today, you don't know if that is a possibility or not?

A. Correct.

Q. Okay. And then on Page 4, scroll down a little bit, it still has "Witness 1, Curry, Shelly." Do you see that?

A. Yes.

Q. Okay. But there are no witness notes on this report?

A. Correct. I don't see any.

Q. Okay. And then do you see where it says "Searcy, Cynthia"?

A. Yes.

Q. Okay. And there are also no notes here pertaining to Ms. Searcy, correct?

A. Correct.

Q. Okay. But the other information transferred over? And if you want me to go back to the previous one, just let me know.

A. It -- it appears that that is correct.

Q. Okay. So would it be fair to say, then, in this instance as well, as you sit here today, you are

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

not sure of whether or not that information was added between December 3rd and December 30th?

MR. DIRISAMER:  Objection.

THE WITNESS:  Correct.

BY MS. MARTINEZ:

Q.  Okay.  And does anything about this report refresh your recollection of the Loew Street robbery in any way?

A.  No.

Q.  Okay.  So I'm going to show you now what we'll mark as Exhibit 4, which is Bates stamped City 34 through 35.  And then again, let me zoom in a little bit.  Okay.  And then similar with the previous ones, I'm going to scroll through slowly, and just let me know if you want me to stop anywhere.

(Exhibit 4 was marked for identification.)

A.  Okay.

BY MS. MARTINEZ:

Q.  Okay.  So my first question for you, ma'am, is: Do you recognize this document?

A.  I have never seen it, no.

Q.  Okay.  So you did not review it in preparation for your deposition today?

A.  No, I don't believe so.

Q.  Okay.  And do you know what this document is?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.    It looks like it's a latent XM document.

Q.    Okay.  And for the record, can you please explain what that is?

A.    A latent fingerprint exam.

Q.    Okay.  And would you agree that this report number is 0.3?

A.    Yes.

Q.    Okay.  And we've looked at the original report and 0.2 as well, correct?

A.    Yes.

Q.    Okay.  In your -- or strike that, please. During your career, would you ever fill out latent exam reports like this?

A.    No, not as a patrol officer.

Q.    Okay.  But you're listed here as the reporting officer because you filled out that initial offense report, correct?

A.    Correct, yes.

Q.    Okay.  And it says that this was entered into by Kimberly Sherrick (phonetic)?

A.    Yeah. I -- yes.

Q.    Okay.  Do you know who that is?

A.    No, I don't.

Q.    Okay.

A.    The name doesn't sound familiar.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. But it says it was entered on October 13, 2004, at 11:34:59 a.m.?

A. Yes.

Q. Okay. And similarly to the previous report, would it be in line with your understanding of how these reports are made that that was when the report was opened?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: I mean, from what I'm reading, it was -- it was entered on that date and time, so that would have been when the report was started.

BY MS. MARTINEZ:

Q. Okay. And this report is also not listed as being approved by anyone, correct?

A. Correct.

Q. Okay. And then I'm going to scroll down. Actually, I'm going to go to the bottom first. So let me zoom in. Do you see where this says, "printed December 29, 2004, at 1:50 p.m."?

A. Can you scroll it up just a touch?

Q. Oh, yep. Sorry. My face.

A. Okay. Yes. December 29th at 1:50 p.m., yes.

Q. Okay. And then I'm going to actually briefly scroll back up. Do you see where it says, "Report

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

narrative, one card, two lifts, no AFIS-quality prints, prints of value"?

A.   Yes.

Q.   Okay.  As you sit here today, what is your understanding of what AFIS is?

A.   Oh, my gosh.  I know -- gosh.  That was the -- the fingerprint system that we used, but I -- specific details about it, I -- I can't answer.

Q.   Okay.  But this -- or actually, strike that, please.  The second page of this is the latent comparison request form, correct?

A.   Yes.

Q.   Okay.  And do you recall during your career ever seeing a document that looked like this?

A.   No.  I don't think I ever filled one in.

Q.   Okay.  But do you recall seeing them during investigations, or you're familiar with what they look like?

A.   I've never seen that document, no.  I don't believe so.

Q.   Okay.  So this is the first you're ever seeing of latent comparison request analysis form?

A.   I believe so, yes.

Q.   Okay.  But this document appears to be -- or actually, strike that, please.  According to this

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

document, this is a latent comparison request for the Loew Street robbery, correct?

A. Yes.

Q. Okay. And it's got the suspect listed as Richard Horton?

A. Yes.

Q. Okay. And then in the results of latent examination, there's a stamp that says, "negative results." Do you see that?

A. Yes.

Q. In your experience for a fingerprint analysis, what does negative results mean?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: Well, I mean, it's negative results as in negative for latents.

BY MS. MARTINEZ:

Q. And does that mean that the prints that were tested were not a match for the individual listed?

A. No.

Q. Okay. In your experience -- or actually, strike that, please. What do you believe negative results here means?

MR. DIRISAMER: Objection. You can answer if you can.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

THE WITNESS:  Can you scroll up just a bit?

Can you scroll back up to the page in the report --

BY MS. MARTINEZ:

Q.  Yes.

A.  -- where it gave the narrative?  So from what I see here, there were no quality prints, which means that there weren't latents of enough -- of good enough quality to actually compare.  So it was --

Q.  Do you know -- oh, I'm sorry.  I didn't mean to cut you off.

A.  No, it's okay.  I mean, it says right there, "No prints of value."

Q.  Well, actually, it -- so it says, "No AFIS-quality prints."

A.  Right.

Q.  "Prints of value."  Do you know what "prints of value" means?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  Well, I -- I didn't write it, so anything I would say would be an assumption.  So I --

BY MS. MARTINEZ:

Q.  Okay.  No, yeah.  My question is just, you're not familiar with the term prints of value?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

A.   Well, I -- I am.  And the way this is written, it appears as though they're saying there are no prints of value.

Q.   Because it says no AFIS-quality prints?

A.   Correct.

Q.   Okay.  Okay.  So then, again, I just want to make sure I'm getting your testimony clear.  So then here where it says, "negative results," your belief is that that is because there are no prints that can be tested; is that correct?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Well, there are no prints of value, so that's the reason why the results came back negative.

BY MS. MARTINEZ:

Q.   Okay.  So then if I represented to you that Mr. Horton's fingerprints were run against prints recovered from the scene, would you --

A.   Yes.

Q.   -- dispute that?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I wouldn't dispute it, no.

BY MS. MARTINEZ:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Q.   Okay.  And it says that, at the bottom, that these results were sent to B. Walker, 1176, robbery, correct?

A.   Yes, that's correct.

Q.   And they were sent on November 4, 2004?

A.   November 4th, yes, 2004.

Q.   Okay.  Okay.  So as of November 4, 2004, detectives would have had the results of this latent comparison, correct?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  Ask me again?  I'm sorry.

BY MS. MARTINEZ:

Q.   Sure. Sure.  So as of November 4, 2004, when these results were sent, detectives would have had the results of the latent comparison?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  Well, not -- not necessarily.  I mean, it would take some time to run them.

BY MS. MARTINEZ:

Q.   So is it your -- or actually, strike that, please.  This says the date that the results were sent was November 4, 2004, correct?

A.   Let's see.  I -- examined and compared by,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

results sent to, date sent.  Okay.  So the -- yeah. Okay.  So it says the results were sent to Brenda Walker on 11-4 of '04.

Q.   So as of that date, Detective Walker would have had the results of the latent comparison, correct?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  It would depend on when she saw the results.

BY MS. MARTINEZ:

Q.   Sure. Sure.  My question is just, according to this document, the results were sent to her on November 4, 2004?

A.   Yes.

Q.   Okay.  And otherwise, the first page of this report resembles the first page of the two previous reports that we've looked at, correct?

MR. DIRISAMER:  Objection.  You can answer if you can.

BY MS. MARTINEZ:

Q.   And let me know if you want me to go back to those.

A.   Yeah.  Would -- I'm sorry, would you mind asking again?

Q.   Yeah, sure.  So the first page of this report



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

resembles the first page of the two previous reports that we've looked at, correct?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  So -- so this report that we're looking at now does resemble the previous two reports, yes.

BY MS. MARTINEZ:

Q.   Okay.  And it's also in reference to the 927 Loew Street robbery, correct?

A.   That's what it states, yes.

Q.   Okay. Great.  Does anything about this exhibit refresh your recollection of the Loew Street robbery investigation in any way?

A.   No.

Q.   Okay.  And then I'm going to show you what we'll mark as Exhibit 5, which is Bates stamped R Horton 1768 to 1770 for the caption, and then 1873 to 1877. Okay.  Are you able to see this, ma'am?

(Exhibit 5 was marked for identification.)

A.   Yes.  Could you enlarge it just a little bit?

BY MS. MARTINEZ:

Q.   Yes.  Yes, absolutely.  So again, similar with the previous, I'm going to scroll through.  I -- this is your criminal trial transcript.  So again, if there's --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

I'm going to direct you and read the parts that I want to ask you questions about, but I'll still scroll through, so you've got a moment to take a look and familiarize yourself. And just let me know if you want me to stop anywhere, okay?

A. Okay. Okay.

Q. So I'm going to scroll back up to Page 106, which is where -- or I guess technically 107, which is where your testimony begins, okay?

A. Okay.

Q. And my first question is: Do you recognize this document?

A. I do, yes.

Q. Okay. And would you agree it is the transcript of your testimony from Mr. Horton's criminal trial?

A. It appears to be, yes.

Q. Okay. And you testified that you reviewed this document in preparation for your deposition today?

A. Yes.

Q. Okay. And after reviewing the document, did you have any new memories of this case?

A. No.

Q. Okay. And did anything seem incorrect when you reviewed it?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   No.

Q.   Okay.

A.   I mean, nothing stood out as being incorrect. No.

Q.   Okay.  So the first section I'm going to read for you is going to be on Page 107, starting at Line 25, where it says, question: "What did you find when you got to 927 Loew Street?"  Answer: "Well, when we first arrived and there were probably three or four officers and our sergeant, we checked the house itself."  Okay.  So my first question is: Again, as you sit here today, do you recall the names of any of these other officers?

A.   Other than what I've seen in the documents, no.

Q.   No?  Okay.  And do you remember who your sergeant was at the time?

A.   Yeah.  Well, I was assigned to Charles Greene.

Q.   Okay.

A.   At the time, so...

Q.   Okay.  And how long was Sergeant Greene your sergeant?  Was it the entire time you were with 5A?

A.   Yes.

Q.   Okay.  And based on your testimony, mister -- or strike that, please. Based on your testimony,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case: 2:23-cv-03888-ALM-SCS Doc #: 150-5 Filed: 03/28/26 Page: 134 of 171 PAGEID #: 10954

Sergeant Greene was at the crime scene?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I can only go by what it says there, and it states, our sergeant.

BY MS. MARTINEZ:

Q. Yeah. Yeah. Or I'll -- I can go --

A. So it would have been --

Q. I'm sorry. I didn't mean to cut you off. Please continue.

A. It -- it just -- it would have been whatever sergeant responded at that time.

Q. Okay. And you testified earlier that you have no independent recollection of who was at the scene, correct?

A. Correct.

Q. Okay. Understood. And then on this same page, beginning at Line 13, I'm going to read you a quick section. It says, question: "And what did you -- what was your -- what did you do when you realized this was a crime scene?" Answer: "Basically at that point after the house was secure, as far as there was no people inside the house, we went ahead and we left the residence and we went outside around the residence to make sure that nobody could get back inside, since it

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

was at this point a crime scene."

Question: "This is part of the process of securing the scene?"  Answer: "Yes, that is exact -- excuse me.  Pausing quickly here.  This is in line with your testimony earlier that it would have been your responsibility to secure the scene at the time, correct?

A.   Yes.

Q.   Okay.  And part of that responsibility included preserving evidence like fingerprints and shell casings for the evidence technicians to come and catalog, correct?

A.   Yes.

Q.   Okay.  So then continuing on from that point. Answer: "And then at that point in time, a female, which I listed in my report as victim number two, Rhonda Curry, I believe her name is, she had shown up at the scene and began talking to me about what happened."  And as you sit here today, you have no independent recollection of this conversation with Ms. Curry, correct?

A.   Correct.

Q.   Okay.  So you can't tell me what she looked like?

A.   No.  Unless there was a description on the report, that's all I would have to refer to.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.    Sure.   But, yeah, you -- so you don't recall what she was wearing?

A.    No.

Q.    Okay.   You don't recall anything you said to her?

A.    No.

Q.    Okay.   You don't recall anything she said to you?

A.    No.

Q.    Okay.   You don't recall how long she was at the scene?

A.    No.

Q.    Okay.   And you don't recall why she was at the scene instead of the hospital?

A.    No.

Q.    Okay.   Anything that you learned from her, you would have put in a police report, correct?

A.    Yes.

Q.    Okay.   And that's because you would have -- strike that, please.   And that's because you would have had no reason to not include information from a victim in your report, correct?

        MR. DIRISAMER:   Objection.   You can answer if you can.

        THE WITNESS:   No.   I mean, I -- no.   I mean,

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

that -- if she gave me pertinent information, it would have been in the report.

BY MS. MARTINEZ:

Q. Okay. I guess -- and when you say, "pertinent information," that would have been anything whatsoever relevant to the Loew Street robbery, correct?

A. I believe so, yes.

Q. Okay. All right. So then I'm going to read from Page 109, beginning at Line 3. It says: question: "After you spoke with Rhonda Curry, what did you do next?" Answer: "Well, at that point in time, we asked robbery detectives to respond, and crime scene was called out. And after they arrived, we had enough of what had happened that at that point in time, I was able to leave the scene and I went to Grant just to check on the first victim, the male, to check on him to make sure that his injury was not life-threatening.

Question: "And what did you find out when you went to Grant?" Answer: "Basically, just that the injury was not life-threatening, and so at that point in time, I could go ahead and leave. I went back to the scene. That is when I did the report that you have there." Okay. So according to your testimony, once you asked for robbery detectives to arrive and CSSU officers, and they arrived, you then left, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   By my testimony, yes, that's correct.

Q.   Okay.  Okay.  And it would have -- strike that, please.  You testified earlier that it would have been your practice to relay the information you had learned on the scene to the detectives when they arrived, right?

A.   Yes.

Q.   Okay.  And are there any circumstances you can think of today where you would not have relayed that information to detectives prior to leaving the scene?

        MR. DIRISAMER:  Objection.

        THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   No?  Okay.  And then according to your testimony here, you then went to Grant Hospital, correct?

A.   I believe it says Grant, yes.

Q.   Okay.  But you have no recollection of doing that, right?

A.   No, I don't.

Q.   Okay.  And so then it would be fair to say that you don't have any recollection of who you spoke with at the hospital?

A.   It states I spoke with the first victim, the male.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. Wait, I'm sorry. Where do you see that?

A. On Line 9 and 10.

Q. Okay, I see where it states, "And I went to Grant just to check on the first victim, the male, to check on him to make sure that his injury was not life-threatening." So would you agree that your testimony doesn't say that you spoke with the male victim, correct?

A. It does not. No, I did not state that I spoke with him specifically. No.

Q. Okay. And as you sit here today, are you aware of whether or not Mr. McClanahan was immediately rushed to surgery when he got to the hospital?

A. I -- no, I don't recall.

Q. Okay. So could it be fair to say that you also got this information on his status from medical personnel?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I -- I don't recall.

BY MS. MARTINEZ:

Q. Okay. But if you had talked to any witness or victim at the hospital, you would have documented that in a police report, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 150-5 Filed: 03/28/26 Page: 140 of 171 PAGEID #: 10960
The Deposition of PAMELA RHODEBACK, taken on November 20, 2024
138

A. Yes.

Q. Okay. And do you recall reviewing in any of the reports you read in preparation for your deposition today, you writing out that you spoke with one of the victims at the hospital?

A. I'm sorry, ask me again.

Q. Sure. Do you recall reading in any of the reports or testimony that you reviewed prior to your deposition today, that would lead you to believe that you spoke with any witness or victim at the hospital?

A. At the hospital? I don't recall.

Q. Okay. It doesn't say that in any of the documents that we've looked at during the deposition today, right?

A. Not that I noticed.

Q. Okay. And then lastly, on Page 109, beginning at Line 18, it says, question: "And when you went back, you worked on the report, you stayed to help secure the scene?" Answer: "Yes." Okay. And earlier you testified that sometimes you would fill out your reports in the office and sometimes you would fill them out in the field, correct?

A. Yes.

Q. Okay. Does your testimony here make you believe that you filled out that original offense report

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

in the field?

A. Well, it states here in the question, "When you went back, you worked on the report, you stayed to help secure the scene." And I did answer, yes. So by reading this, it looks like I worked on the report, at least part of it, at the scene.

Q. Okay. And you testified earlier that that would be through a form of computer terminal that was in your vehicle?

A. Correct. Yeah, that was the way that offense report was taken.

Q. Okay.

THE REPORTER: And then I am so sorry to cut in. I had a Sarah Feldkamp join the waiting room. Is that --

MR. DIRISAMER: One of my -- it's one of my co-counsel.

THE REPORTER: Okay. Perfect. I'll go ahead and let her in.

MS. MARTINEZ: Okay.

BY MS. MARTINEZ:

Q. And according to your testimony here, you went back and stayed to make sure that the scene was secure, correct?

A. "You stayed to help secure the scene." Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.   And as you sit here today, do you have any independent recollection of being at the crime scene that second time?

A.   No.

Q.   Okay.   So you don't know if you talked to anyone when you got back?

A.   I don't know.

Q.   Okay.   And do you know where you went after the crime scene?

A.   Unless it states in my testimony, I don't recall.

Q.   Okay.   And does anything that we just looked at refresh your recollection of the Loew Street robbery investigation in any way?

A.   No.

Q.   Okay.   So then I will stop sharing.   Okay. You don't see the document anymore, right?

A.   Yeah, I just see you.

Q.   Okay.   I always want to check.   Okay.   So in one of the documents that we looked at, it listed an Officer Todd Rhodeback was also present for investigating the scene, correct?

A.   It did, yes.

Q.   Okay.   And I don't want to get too in-depth here, I just want to ask a couple of questions.   Is

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Officer Todd Rhodeback your ex-husband?

A.   Yes.

Q.   Okay.  And did you ever discuss the Loew Street -- actually, strike that, please.  Do you recall ever having a conversation with him about the Loew Street robbery investigation?

A.   I don't recall a conversation, no.

Q.   Okay.  And have you ever spoken with him about this civil lawsuit?

A.   No.

Q.   Okay.  And were the two of you in the same precinct back in October of 2004?

A.   I don't remember.  I mean, I believe if you -- if you were to pull up our assignments, I believe they would be different.

Q.   Okay.  And when you say, "different assignments," you mean different precincts?

A.   Yes.

Q.   Okay.  If -- strike that, please. In your career, were you ever assigned to a car with a patrol officer from another precinct?

A.   So to answer that question, when you have an unassigned day, that answer could be yes.

Q.   Okay.

A.   But it was not often.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  Understood.  And back in October of 2004, would you work with Officer Todd Rhodeback relatively frequently?

A.   Oh, goodness.  We did have times in our career when we did.  Whether or not that was one of them, I do not recall.

Q.   Okay.  And are you in contact with Officer Todd Rhodeback today?

A.   No.

Q.   Okay.  And as you sit here today, ma'am, do you have a professional opinion about Detective Brenda Walker?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No.  I didn't know her at all.  I might recognize her.  That would be about it.

BY MS. MARTINEZ:

Q.   Okay.  And so were you aware of any reputation she might have had back in 2004?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   No?

A.   No, I --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

Q.   Okay.  And so, would it be fair to say that you never had a social relationship with Detective Walker?

A.   No.

Q.   Okay.  And as you sit here today, do you recall ever witnessing Detective Walker suppress evidence at any time?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   No?  Okay.  Did you ever learn about Detective Walker suppressing evidence at any time?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   Okay.  And as you sit here today, did you ever witness Detective Walker fabricate evidence at any time?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   Okay.  And did you ever learn about Detective Walker fabricating evidence at any time?

MR. DIRISAMER:  Objection.

THE WITNESS:  No.

BY MS. MARTINEZ:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. Okay. And so you've never spoken about the robbery or the civil case with Detective Walker, correct?

A. Correct.

Q. Okay. And as you sit here today, do you know who Samuel Sias is?

A. That name sounds familiar. Who is it? I'm trying to think of who it is.

Q. If I represent to you that he was a detective with the Columbus Division of Police, does that refresh your recollection?

A. I -- yes, I do want to say I do recall him being part of the department. Yes.

Q. Okay. Do you have any professional opinion on Detective Sias's work as a detective?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. No? Okay. And were you aware of any reputation that he had back between 2004 and 2006?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. No? Okay. And so, would it be fair to say that you never had a social relationship with Detective

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Sias?

A. Correct.

Q. Okay. Did you ever witness Detective Sias suppress evidence at any time?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. Okay. Did you ever learn about Detective Sias suppressing evidence at any time?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. Okay. Did you ever witness Detective Sias fabricate evidence at any time?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. Did you ever learn about Detective Sias fabricating evidence at any time?

MR. DIRISAMER: Objection.

THE WITNESS: No.

BY MS. MARTINEZ:

Q. Okay. And did you ever talk about the robbery -- actually, strike that, please. Did you ever talk about the robbery with Detective Sias?

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A. Not that I recall.

Q. Okay. As you sit here today, can you think of any conversations that you ever had with Detective Sias?

A. No. No, I can't -- no, I can't think of any.

Q. Okay. And can you think of any conversations you ever had with Detective Walker?

A. Specifically, no.

Q. Okay.

A. But I feel like I know who she was, so apparently I -- I may have spoke with her at some point.

Q. Okay. Or you might recognize her face if you were shown it?

A. Yes.

Q. Okay. And as you sit here today, ma'am, do you have any opinion about whether or not Mr. Horton is guilty of the Loew Street robbery?

A. No.

Q. Okay. And you have no personal knowledge of who committed that crime, correct?

A. Correct.

Q. Okay. And have you ever heard of a man named Richard Diggs?

A. No.

Q. Okay. Have you ever heard of a man named Ricardo Diggs?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   No.

Q.   Okay.  And have you ever heard of a man named Kyle Ramsey?

A.   No.

MS. MARTINEZ:  Okay.  Counselor, are you okay if we take a quick two-minute break so I can go over my notes?

MR. DIRISAMER:  Yeah, that's fine.  Do you -- can I just stay here?  Do you want me to go somewhere?

MS. MARTINEZ:  Oh, no, no.  You -- yeah, you can stay.

MR. DIRISAMER:  Okay.

MS. MARTINEZ:  I'm just going to go over and see if I've got any more questions for you, ma'am.

MR. DIRISAMER:  No problem.

THE REPORTER:  All right.

(A recess was taken.)

THE REPORTER:  We are back on record.

BY MS. MARTINEZ:

Q.   Okay.  I just have one set of follow-up questions I'd like to ask you, ma'am.  You testified earlier that throughout your career with the Columbus Division of Police, you only testified as a witness in a criminal case two or three times; is that correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   That I can recall.  I mean, it -- yes.  Yes.

Q.   Okay.  And as you sit here today, under what circumstances would you be called to testify?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I mean, it would have been circumstances leading to, you know, the cases, whether it be -- I -- I'm really -- I'm trying to remember.  I mean, they all seem to be kind of basic.  I mean, I -- I don't -- you know, similar to this one here where I testified.

BY MS. MARTINEZ:

Q.   Okay.  So just about, you know, initially responding to a scene and efforts to secure the scene?

A.   Yes.

Q.   Okay.  But you stated that you had made thousands of runs throughout your career?

A.   I would say yes.

Q.   Okay.

A.   I -- yeah, I worked the inner city the whole time I was on the department, so we were pretty busy.

Q.   Okay.  And did you ever find it strange that you were only called to testify two or three times when you'd responded to thousands of calls?

MR. DIRISAMER:  Objection.  You can answer if

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you can.

THE WITNESS:  No.

BY MS. MARTINEZ:

Q.   Okay.  And as you sit here today, was there anything you believe, you know, that was particular or stood out about this case, and that that was why you were called to testify?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I'm sorry.  Would you mind asking me again?

BY MS. MARTINEZ:

Q.   Yeah. Sure. Sure.  Let me try to rephrase. Because from your testimony, right?  From the thousands of calls, you were only called to actually testify two or three times.  So then my question is: From your review of the reports, did you find anything that, you know, stood out to you as a reason that you might have been called to testify in this case?

A.   No.

Q.   Okay.  Okay.  And so we have been on record for about three hours at this point, correct?

A.   Yes.

Q.   Okay.  And we've looked at a number of exhibits related to the Loew Street robbery



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of PAMELA RHODEBACK, taken on November 20, 2024

150

investigation?

A.   Yes.

Q.   Okay.  And even from the three hours we spent on record, and reviewing the documents, you have no memories of the Loew Street robbery investigation of any kind, correct?

A.   No.

Q.   Okay.  And so would it be fair to say that there is no testimony you could give at trial for this case that's not memorialized in a police report somewhere?

A.   Correct.

MS. MARTINEZ:  Okay.  And those are all of the questions that I have for you, ma'am.  Thank you so much for your time.  I'm going to turn it over to your Counsel.

THE WITNESS:  Okay.  Thank you.

MR. DIRISAMER:  I don't have any questions at this time.  We'll read.

THE REPORTER:  All right.  Perfect.  And then Ms. Martinez, would we like to order a copy of the transcript?

MS. MARTINEZ:  Not at this time.

THE REPORTER:  Okay.  No problem.  And then Mr. Dirisamer?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

MR. DIRISAMER:  No, not at this time. Obviously, if that -- if Plaintiff's Counsel does, we -- that may change, but...

THE REPORTER:  Yes.  No problem.  All right. We are going off the record.

(Deposition Concluded at 2:06 p.m. ET)



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

CERTIFICATE OF REPORTER

STATE OF OHIO

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page here of by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded digitally by me and then reduced to type written form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability. I certify that I am not a relative or employee of either counsel, and that I am in no way interested financially, directly or indirectly, in this action.



KAYLEIGH KINNAMON,

COURT REPORTER / NOTARY

MY COMMISSION EXPIRES ON: 02/01/2029

SUBMITTED ON: 04/04/2025

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Exhibits**

**Exhibit 1_ Rhodeback** 78:18,22

**Exhibit 2_ Rhodeback** 89:14,17 116:7

**Exhibit 3_ Rhodeback** 111:12,16

**Exhibit 4_ Rhodeback** 120:11,16

**Exhibit 5_ Rhodeback** 129:17,20

---

**$**

**$40** 86:20 101:1

---

**0**

**0.2** 114:16,19, 20 121:9

**0.3** 121:6

**02** 116:10,24

**04** 128:3

---

**1**

**1** 78:18,22 80:22 103:1 110:12 119:8

**10** 137:3

**10-12-2004** 111:15 113:11

**10-9-2004** 91:5

**101** 5:8

**1042** 86:7

**106** 130:7

**107** 130:8

131:6

**109** 135:9 138:16

**11** 26:2,10 27:7 28:7,24 29:3

**11-4** 128:3

**1176** 86:2 127:2

**11:04** 5:4

**11:34:59** 122:2

**11:59** 45:13

**11A** 30:7,14 31:7

**11B** 26:17 27:2, 4,10,18 28:13, 14,16,23

**11C** 29:8,12,15

**12** 89:14 112:25 114:11

**12-27-04** 80:22

**12-30-04** 81:5

**12-CV-3888** 5:15

**12th** 113:6

**13** 30:19 41:4 69:4 78:18 92:11 122:2 132:18

**14** 25:25 26:8, 17 27:14,24

**1412** 101:11

**15** 19:14 78:19

**150** 104:19

**1501** 86:10

**1768** 129:18

**1770** 129:18

**18** 59:4 138:17

**1873** 129:18

**1877** 129:18

**19** 21:5

**1915** 86:9

**1996** 36:18

**1998** 28:19

**1:04:06** 112:25 113:11 114:12

**1:06** 114:11

**1:50** 122:20,23

**1:52** 115:17

---

**2**

**2** 89:14,17 102:25 116:7 117:1

**20** 19:14 21:6 77:11

**2004** 10:14 11:18 31:6,8 36:14 41:18,23 42:17 44:21 46:10 47:8 49:17 50:1 56:15 65:8 74:10 75:25 80:19 81:13,23 85:25 94:22 95:12,16 96:8, 12 97:1 102:1 105:23 106:1 112:25 114:11 115:16 122:2, 20 127:5,6,7, 14,24 128:13 141:12 142:2, 19 144:20

**2006** 14:3 144:20

**2009** 25:2,12 30:15

**2012** 22:11 23:7 24:5,18

**2013** 22:23 24:4,5

**2014** 23:20 24:4,7

**2015** 23:2,7

**2017** 23:5,8

**2024** 5:9

**20th** 5:8

**25** 131:7

**27** 81:13,23

**29** 122:20

**29th** 122:23

**2:00** 36:13

**2:06** 151:6

---

**3**

**3** 111:12,16 115:16 135:9

**30** 94:22 95:12, 16 96:8,12

**30th** 95:4,19 96:19 97:1,18 99:1 107:10 108:11,15 118:3,11,20 120:2

**34** 120:11

**35** 120:12

**39** 111:12

**3rd** 117:25 118:10,19 120:2

---

**4**

**4** 26:19 27:19 28:8,11 110:11 119:7 120:11, 16 127:5,7,14, 24 128:13

**40** 7:10 104:8

**40202** 5:8

**42** 111:13

**450** 91:22,24

**4A** 27:20,22

**4th** 127:6

---

**5**

**5** 26:4 31:14

34:25 36:2 58:23 129:17, 20

**5143** 86:5

**54** 7:8

**5A** 29:16 30:4,6 31:8,12 36:9,10 131:22

---

**6**

**6** 59:1 92:23

**6'2"** 104:16

**66104** 113:22

**6:00** 36:13

---

**7**

**7** 59:4

**730** 5:7

---

**8**

**8** 89:14

**88** 21:19

**8:30** 86:1

---

**9**

**9** 10:14 11:17 25:25 26:7,17 27:13,24 28:1 80:19 85:25 137:3

**90s** 21:5

**911** 101:12 110:24

**927** 10:15 11:18 86:6 129:9 131:8

**96** 26:25 37:1

**9:18** 94:23 95:4

**9:29:49** 91:6

**9th** 11:15 99:1

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

## A

**a.m.** 5:4 36:13 45:13 86:1 91:6 94:23 95:4 122:2

**ability** 7:20 8:25 9:7,14

**absolutely** 45:9 92:17 105:24 112:2 129:23

**academy** 25:25 26:12,16, 23 36:18 37:7, 11 39:12 53:23

**accident** 17:4, 6

**accurate** 9:1,8, 14 98:4 109:13

**accurately** 43:22

**action** 103:23

**actions** 60:14

**actively** 59:14

**activity** 57:14, 15

**actual** 45:24 77:8

**add** 47:21 48:10 50:10 85:5,9,13 94:10 95:17 96:9,23 97:14,15 98:24 99:12,16 118:7

**added** 57:18 95:19 96:11,25 97:7,17 98:25 99:18 100:14 101:16 102:19 107:11,15,18 108:7,17 115:2 118:10,18 120:1

**adding** 98:3,5

**addition** 114:25

**additional** 85:9 115:2

**additions** 51:7

**adjuster** 23:23

**advised** 86:5, 12

**affect** 8:25 9:4, 7,11,14

**affirm** 6:14

**AFIS** 123:5

**AFIS-QUALITY** 123:1 125:14 126:4

**age** 104:8,10

**aggravated** 34:1 63:19

**agree** 6:8 43:3 65:10,23 98:8 104:7,18 121:5 130:14 137:7

**ahead** 114:2 132:23 135:21 139:18

**Airlines** 23:15

**alibi** 75:16

**allegations** 17:5,15 18:9,25 20:14,21

**Alyssa** 5:19

**amount** 89:4

**analysis** 123:22 124:11

**annual** 40:14

**answering** 69:20 95:5

**answers** 7:21 8:4

**anymore** 7:11 53:17 59:14 94:15 140:17

**apologize** 55:22 77:11

**apparently** 146:10

**appearance** 5:16

**appearing** 5:21

**appears** 81:2 91:4 95:11 112:20 117:5 119:23 123:24 126:2 130:17

**applied** 22:7

**approach** 64:21

**approval** 50:1

**approved** 92:9,24 93:3,8, 13 113:8 114:3 122:15

**approving** 51:12

**approximate** 36:11 104:9

**approximately** 13:17 15:12 18:2 30:13 46:18 85:25

**area** 27:19 57:25 58:1,5,11

**areas** 59:7

**armed** 10:14

**array** 51:19,22 75:10,13

**arrays** 34:9 51:25 52:4,14

**arrest** 33:23 37:15 46:15 80:23

**arrested** 80:24 81:14,24

**arrests** 31:24

**arrival** 86:8

**arrive** 59:9 60:21 62:21 135:24

**arrived** 131:9 135:13,25 136:6

**arrives** 61:9

**arriving** 62:20

**assigned** 27:2 29:20,21 35:1 48:19 56:10,14, 16,17 57:25 58:1,5 64:19 69:12 131:18 141:20

**assignment** 26:11 28:2,6 29:17,18 31:2, 10

**assignments** 35:3 141:14,17

**assist** 48:19 59:6 71:1

**assistance** 86:3

**assisting** 43:15

**assume** 8:11 82:25 87:11

**assuming** 29:9 100:10

**assumption** 87:5,6 125:21

**attendant** 22:19,24 23:8, 13

**attending** 5:16,17,24

**attention** 95:10

**attorney** 12:15,23 14:7

**attorneys** 12:6 13:8,11,18,22 14:18

**Avenue** 101:11

**aware** 10:25 11:6,12 87:23 105:13 137:13

142:18 144:19

## B

**B-BLACK** 104:13

**bachelor's** 22:7 23:6 24:24

**back** 14:6 24:21 26:6 27:15,16 28:14 31:6 39:17 41:18,23 45:12 48:24 50:10,20 56:14 57:19 65:8 74:10 75:24 90:5 93:21 94:20 108:10 109:1 111:24 113:7, 16,19,23 116:6, 7 118:6 119:21 122:25 125:2 126:15 128:21 130:7 132:25 135:21 138:17 139:3,23 140:6 141:12 142:1, 19 144:20 147:19

**background** 16:16

**bad** 53:5,7

**bar** 113:24 116:9

**based** 69:17 70:1,4,9 71:5, 14,18 89:5 131:24,25

**basic** 37:13 148:10

**basically** 25:22 29:23 31:1 132:21 135:19

**basics** 45:23

**Bates** 78:18 89:14 111:12 120:11 129:17

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**beat** 56:20

**bed** 101:6

**began** 98:20 99:24 101:3,6 114:8,13 133:17

**beginning** 11:23 80:7 85:24 106:6 132:18 135:9 138:16

**begins** 130:9

**behalf** 5:20

**belabor** 71:23

**belief** 44:20 126:8

**believed** 70:13 75:1 103:5 108:6

**believes** 106:19

**benefits** 24:14

**bifocal** 92:18

**bit** 18:14 20:14 26:7 40:21 100:4 115:15 119:8 120:13 125:1 129:21

**BKW-CAB** 81:5

**blanks** 21:16

**blinded** 45:8

**blinds** 45:7

**blue** 106:17

**border** 59:1

**bottom** 80:22 82:10 94:20,21 115:14 116:3 122:18 127:1

**box** 90:21

**boxes** 90:18

**Brady** 52:19 53:1,11,20

**break** 8:18 147:6

**Brenda** 5:23 77:19 86:2 128:2 142:11

**briefly** 18:13 36:17 45:7 90:16 122:24

**bring** 116:14

**broken** 58:20

**brown** 104:21

**Bryan** 18:16

**build** 48:9

**Bureau** 86:1

**burglary** 35:16

**busy** 148:21

**button** 49:22

--------

## C

**C-H-R-I-L** 7:3

**call** 7:19 8:2 14:21 15:7 27:3 39:17 56:20,24 57:14,15 59:11 110:24

**called** 52:19 53:1 101:12 135:13 148:3, 23 149:7,15,19

**calls** 12:21 13:16 15:2 31:18,20,22 101:25 148:24 149:15

**camera** 6:3

**campus** 26:19 27:19

**Canal** 21:21,23

**capabilities** 110:9

**capacities** 39:19

**capacity** 39:21

**capital** 7:2,3

**caption** 129:18

**car** 17:3,6 29:21,22,25 42:10 141:20

**card** 123:1

**career** 25:15, 22 41:5 51:18 55:10,17,23 80:3 121:12 123:13 141:20 142:4 147:23 148:17

**case** 5:14 10:13 15:25 16:14,18,19 17:2,8,11,24 18:11 20:17 21:9,11 33:25 49:21 51:5 52:19 53:11 54:2,7,14 56:11 58:4 59:13 60:21,22 61:23 62:6,19 63:1,4, 5,23 64:3 65:1 76:19 77:17 96:19,22 97:16 101:22 130:22 144:2 147:25 149:6,19 150:10

**cases** 19:8,21, 23 58:3 63:16 64:12 148:7

**casings** 10:25 76:9 133:10

**catalog** 33:17, 22 34:3 133:11

**catching** 66:6

**categorized** 84:22

**causing** 86:16

**certification** 22:3,13,20,25 23:5,8 40:13,15

**certifications** 40:6,17,23

**certified** 22:18 37:14 39:16,24 40:5

**cetera** 46:2

**chance** 20:18 68:20 89:22 111:21

**change** 50:10 151:3

**changed** 59:2

**changing** 89:15

**charged** 10:18

**charges** 10:22

**Charles** 86:4 131:18

**check** 135:15, 16 137:5,6 140:19

**checked** 131:10

**Chicago** 5:21 20:2

**chosen** 92:4

**circle** 109:1

**circumstance** 118:6

**circumstances** 33:20,21 42:12 58:9,14 136:8 148:3,7

**CIT** 39:16,24

**city** 5:12,23 12:15,19 24:9 25:9 43:1 78:18 89:14 111:12 120:11 148:20

**civil** 16:7,14, 18,19 19:21,23 20:6 141:9 144:2

**civilian** 24:9,12

**claims** 23:23

**clarification** 32:14

**clarify** 12:5 14:25 45:19 47:25 61:1,7 66:17 70:12 83:5 96:4 99:9 108:3

**classification** 91:24 92:2 116:15

**clear** 9:17 14:12 71:22,24 96:17 126:7

**cleared** 80:22

**click** 113:16,23

**Clintonville** 27:19

**close** 28:18 45:7 111:13

**closed** 101:6

**closest** 58:6

**co-counsel** 14:13 139:17

**coaching** 27:3, 11,16,17

**code** 91:24

**codes** 92:2

**cold** 66:12

**collect** 33:17, 22

**collected** 66:18 73:7

**college** 21:24 22:1 24:21

**color** 104:21, 25

**Columbus** 5:12,23,24 10:15 11:18 16:23 17:9,25 20:3 24:10 25:9,15 26:1 30:18 41:18,22 44:20 52:12 54:21 55:11,23 56:2 72:4 144:10 147:23

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

commit 55:11, 24

committed 75:2 146:19

commonly 46:11

communications 22:8

commuter 45:25

Company 26:17 27:2,4,10 28:13 29:8,16 31:7,9

compare 109:4 125:8

compared 127:25

comparison 123:11,22 124:1 127:9,16 128:5

complaint 16:13 20:16

complete 21:24 22:3,25 64:6 84:14 85:18 97:7

completed 63:21 82:3

complexion 106:7

computer 15:9 42:9 45:25 90:17 139:8

concerned 20:1

concerns 10:14

Concluded 151:6

conditions 8:24 9:3

conducive 31:2

conducting 34:8

confusion 69:24

Congratulations 23:18

connected 115:11

connection 70:17

constantly 40:3,8

contact 32:8 57:20 62:2 142:7

contained 96:11,25

continue 64:3, 13 85:18 132:10

continued 65:1

continuing 133:13

continuously 57:17

convened 5:10

conversation 62:7 74:14 133:19 141:5,7

conversations 12:6 14:6 15:2 74:7 146:3,5

convicted 10:18

conviction 10:22

cool 22:17

copy 12:16 150:21

corner 115:20 116:3

correct 9:23 11:25 12:1 13:8,9 15:3,4,

20 23:9,21 25:4 31:21 32:5 33:17 34:2,5,14 36:16,19 37:8 45:16 47:2 49:9 62:4 66:7,21 67:4 70:14 71:9 80:17,24 82:22 84:19 88:17,18, 22 89:2,7,10 91:1,2 93:18 94:8 95:13 98:10,21,22 99:13,18,25 100:1 103:7,19 105:10,11 106:9 108:12 112:19,22,23 113:3,9 114:4, 5,8 116:11,15, 25 117:4,14,15, 25 119:6,13,18, 19,23 120:4 121:9,17,18 122:15,16 123:11 124:2 126:5,10 127:3, 4,9,24 128:5,17 129:2,10 132:15,16 133:6,11,20,21 134:17,22 135:6,25 136:1, 16 137:9,25 138:22 139:10, 24 140:22 144:3,4 145:2 146:19,20 147:25 149:22 150:6,12

correction 23:1

couch 86:17

couch/bed 86:20

counsel 5:18, 22 6:18 8:13 11:22 12:15,19 15:1 74:8 79:11 107:23 150:16 151:2

Counselor 147:5

count 7:11

couple 16:16 26:20 30:5,16 41:16 46:4,20 49:8 59:21 64:19 78:11 94:18 140:25

court 5:5,6,13 7:18 17:24 18:16 19:6 37:21

covered 28:3

covers 28:9 29:1

crime 10:18 32:7 33:10 34:5 35:3 47:15 56:14 57:3,11 59:24 64:16,17, 20 69:3 72:8 78:9 86:6 88:12 89:5 132:1,21 133:1 135:12 140:2,9 146:19

crimes 48:6 63:18

criminal 10:22 14:2 15:20 17:23,24 18:11 39:7 44:3 76:18 129:25 130:15 147:25

criteria 51:12

critical 39:17

cruiser 58:15, 16,18,20,23 94:3

CSSU 100:6 116:10,24 135:24

Curry 110:12, 14 119:8 133:16,19 135:10

cut 8:3 55:18 125:10 132:9 139:13

Cynthia

110:13,23 119:15

---

**D**

database 43:2

date 12:25 37:3 80:16,21,23 81:13 91:5 107:11 108:18 112:24 114:6 117:12 122:11 127:23 128:1,4

dated 82:12,16

David 5:22 13:4

day 5:9 29:21 30:1 65:15,24 71:15 73:4 77:24 81:24 141:23

days 29:22,24, 25 49:8

dealt 39:18

December 81:13,23 94:22 95:4,12,16,19 96:8,12,19 97:1,18 99:1 107:10 108:11, 15 115:16 117:25 118:3, 10,11,19,20 120:2 122:20, 23

defendant 44:3

defendants 39:7

defensive 41:1

degree 22:3,6, 10,13 23:6 24:24

delayed 66:11 68:19

department 24:13 25:5,7 144:13 148:21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**departments**
35:15,17

**depend** 33:18
57:11,14 59:11
128:8

**deponent**
11:24

**deposed** 19:3,
13,15,20 21:8

**deposition**
5:11 7:15
12:12,23 13:14,
22 16:11 47:1
77:3 79:13
90:14 102:11
112:12 120:23
130:19 138:3,9,
13 151:6

**depositions**
15:25 20:1

**depth** 19:11

**describe** 84:24

**description**
103:14 133:24

**descriptors**
117:2

**desk** 30:21

**destroyed**
66:16,20 67:4

**destroying**
54:14

**detailed** 89:1

**details** 96:24
98:25 123:8

**detective**
35:14,15 55:24
61:22 62:20,21
63:10 64:12
67:22 68:19,20
73:20 74:14,15,
18 75:1,9 77:18
86:1,2,4,6,7
107:4 128:4
142:11 143:2,6,
12,17,21 144:2,
9,15,25 145:3,
8,13,18,25
146:3,6

**detectives**
21:14 32:9,22
35:1,4 36:1
48:19 61:3,12,
24 63:2,16,23
65:1,7 74:4,10
85:20 86:8,21
87:3 88:17
95:17 96:9,22
97:14 98:24
99:12,16 118:6
127:8,15
135:12,24
136:5,10

**developing**
41:7

**Dexter** 14:14

**difference**
61:2,7

**difficult** 87:9
97:5

**Diggs** 75:2
146:22,25

**digital** 46:19
47:9,19,25 48:6

**diminish**
118:25

**diminished**
39:20

**direct** 6:20
79:4 89:23
130:1

**Dirisamer** 5:22
6:11 11:3,9
12:1 14:11
20:23 32:18
33:1 34:11,18
35:18 37:12,22
38:3,8,14,22
39:2,4,8 40:20,
25 41:9,24
43:6,11,18,24
44:4,12,22
45:3,17 47:10,
23 48:12,22
49:13 50:3,11,
16,18,20,24
51:8,14 52:6,20
53:13 54:4,9,
17,22 55:13

56:4 58:24
60:24 61:16
62:14 63:13,25
65:12,17 66:1,
8,13,22 67:5,9,
17 68:2,14,22
74:21 75:3,18
76:12,24 78:3
79:22 80:8,25
81:8,15,25
82:14,23 83:9,
17 84:1,12
85:6,15 87:8,
16,20 88:19
91:16 93:4
94:12 95:20
96:13 97:2,19
99:3 102:2,7,
14,21 103:8,20
104:3 105:15
106:13 107:12,
20 108:19
109:23 110:5
113:14 114:14
115:5 117:19
118:12,22
120:3 122:8
124:13,24
125:18 126:11,
22 127:10,17
128:6,18 129:3
132:2 134:23
136:11 137:19
139:16 142:13,
20 143:8,13,18,
23 144:16,21
145:5,10,15,20
147:8,13,16
148:4,25 149:8
150:18,25
151:1

**disappear**
67:8

**discuss** 141:3

**discussed**
37:24 94:10

**discussing**
53:24

**discussion**
45:23

**dismissed**
10:23 21:12

**dispatch** 31:22
57:4,19 87:14,
25

**dispatched**
56:17,18,22
57:18 58:10
59:6 69:7,9
90:8

**dispute**
126:21,24

**disrupted**
60:17

**disrupts** 60:8

**distinct** 48:8
85:12

**distinctive**
110:4

**district** 5:13,14
58:15,17,19,23

**districts** 58:21

**Division** 5:14
16:23 17:10,25
20:3 24:10
25:9,15 30:18
41:18,22 44:20
52:13 54:21
55:11,23 56:2
144:10 147:24

**DNA** 10:25 76:8

**document**
46:4,12 62:17
64:23 67:18
78:21 79:5,10
82:21 89:16,20
90:6,13 93:24
94:5 95:12,15
96:19 98:9,12,
17 99:21 103:1
108:10,15
111:8,14 112:8,
11,14 114:16,
19,25 115:15
117:1,3,22
120:20,25
121:1 123:14,
19,24 124:1
128:12 130:12,
19,21 140:17

**documented**

103:7 137:24

**documenting**
33:3 42:4 43:23
49:4 61:10
83:7,15 103:10

**documents**
15:6,17 46:13,
15 70:16 71:15
77:2,22 78:12
79:12 80:2
131:14 138:13
140:20 150:4

**domestic** 19:6
20:10

**door** 86:14
100:19,20
101:10

**Dorsey** 14:15

**drafted** 80:6
81:14,17,22
82:7,8

**drafting** 63:22

**drop-down**
90:21 92:3

**drove** 101:10

**drug** 73:11

**duty** 65:19 83:2

————————

**E**

————————

**e-mail** 12:24

**e-mails** 78:2

**earlier** 19:23
20:11 45:15
51:17,24 69:1
84:18 88:24
90:10,17 94:10
108:18 114:6
116:1 132:13
133:5 136:3
138:19 139:7
147:23

**early** 24:7,17

**easier** 100:4
109:3 110:3

**east** 26:1



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Eastern 5:4,14 45:13

edits 51:5,7

efforts 148:14

emergency 101:25

employed 23:10

employee 24:9,12,14

employment 16:22 17:2,9,25 20:2

end 26:18 78:15 83:24 84:11 100:24 101:8

enlarge 92:13 112:1 129:21

entail 31:17 59:17,23

entered 91:10 92:6,12 93:16 98:6,9,18,19 99:24 114:7,17 117:8,9 121:19 122:1,11

entire 25:15,19 36:8 131:22

entity 110:12

et al 5:12

evening 28:8, 12,24 29:3

eventually 46:16 101:9

evidence 33:14,17,22 34:3 53:1 54:2, 7,15 60:8,12,17 66:16,18,19 67:3 73:7 133:9,10 143:7, 12,17,22 145:4, 9,14,19

ex-husband 141:1

exact 12:25 28:21 37:3 38:10 60:11 133:3

exam 121:4,12

examination 6:20 124:8

examined 127:25

excessive 20:21

exclude 109:9

exculpatory 54:2

excuse 36:7 75:22 109:19 133:4

exhibit 78:18, 22 89:13,14,17 111:12,16 116:7 120:11, 16 129:12,17, 20

exhibits 149:25

experience 32:16 43:3 49:11,14 62:25 63:15 65:10,22 79:19 82:11,19 83:6 84:8 91:8 93:2 94:25 103:4 105:8 106:10 113:6 114:22 115:1 117:16 124:11, 21

expert 119:1

explain 24:11 56:13 61:6 69:5,22 79:16 121:3

expletive 100:24

expletive?' 101:8

extremely 69:12

eye 104:21

---

### F

F-I-D-L-E-R 10:3

FAA 22:20 23:5

fabricate 143:17 145:14

fabricating 143:22 145:19

face 106:17,18 109:7,12,13,15 122:22 146:11

facial 106:7

fact 6:8 93:10 94:11 96:10,23 98:24 99:13,16 100:14 101:17

fade 44:14 67:16,25 68:13

fair 8:11,22 9:17 13:20 17:19 18:5 30:17 33:9 35:22 44:7 47:7 52:11 64:25 67:25 68:12,18 74:12 80:5 81:12,22,24 82:2,9 87:14 94:6 95:18 96:6,10,24 98:16 102:18 104:1 105:12 107:10 109:19, 21 114:10 115:9,10 119:24 136:21 137:16 143:1 144:24 150:8

fairly 96:2

fall 86:16

familiar 36:4 52:18,22 79:1 90:2 94:14 106:19 109:17 116:2 121:25 123:17 125:25

144:7

familiarity 35:7 77:6

familiarize 130:4

fast 79:7

federal 18:16

feel 8:18 17:20 83:1 146:9

Feldkamp 139:14

Felony 63:18

female 86:19, 23 133:14

Fidler 10:3

field 93:21 138:22 139:1

fields 106:3

figure 92:14

file 16:3 48:5,7

filed 16:14 21:4

files 54:20 55:2,3

fill 21:15 49:2, 22 63:3 82:20 83:6,14,24 84:9,11,19 85:2,4,12 90:18,19 93:20, 21 121:12 138:20,21

filled 63:8 79:21 84:4,21 90:20 94:7 103:6,19 106:4, 7 112:9 121:16 123:15 138:25

fillers 52:5

filling 29:23 80:13 90:23 93:25 107:18

find 8:9 131:8 135:18 148:22 149:17

finding 73:11

fine 112:4,7 147:8

fingerprint 121:4 123:7 124:11

fingerprints 11:6 75:23 76:4 126:18 133:9

firearm 40:15

Fisher 6:6

fled 86:20

flight 22:19,24 23:8,13

flush 65:11,24

fold 86:19

foldout 86:19

folks 14:20

follow 67:14,24 85:24 100:18 106:16

follow-up 18:21 59:22 108:2 147:21

force 20:16,21

forced 86:15

forget 15:7 27:11

forgot 24:1 26:14,19

form 60:11 123:11,22 139:8

formatted 45:22

forms 37:8

found 11:1,8 76:9

foundation 84:16

frame 97:8

free 8:19 17:20



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**frequently** 142:3

**front** 100:19 101:3,9

**froze** 50:16

**frozen** 50:18 51:2

**full** 6:2 8:5 25:3

**fully** 64:4

___

**G**
___

**gather** 61:19 88:2

**gathered** 70:19,23 71:7

**gave** 35:3 101:1 105:13 125:5 135:1

**general** 17:5 35:4 49:5 62:16 64:5 101:20

**generally** 19:11 30:9 31:18 32:8,22 43:4 57:23 61:22 62:25 63:7,17 65:18

**Gerard** 14:18 15:1

**Gibbard** 101:11

**girlfriend** 101:5

**give** 6:14 7:21 26:14 45:9 79:4 85:20 89:24 100:24 111:21 150:9

**giving** 37:21

**good** 6:22,23 7:12 30:5 55:5 68:7 112:4 125:7

**goodness** 12:24 38:9 40:3 64:14 92:1

142:4

**gosh** 27:11,15 28:18 30:5 39:16 41:14 45:4 50:2 53:5, 14 58:25 59:2 71:2 94:1 123:6

**graduate** 21:17

**graduated** 26:23 36:18,25 39:11

**graduating** 26:12

**graduation** 37:3

**Grant** 86:22 135:15,19 136:15,17 137:5

**Gray** 106:17

**great** 11:20 12:2 68:7 89:20 92:21 111:19 129:12

**Greene** 86:4 131:18,21 132:1

**ground** 7:14 100:21

**guess** 32:14 113:5 130:8 135:4

**guilty** 146:16

___

**H**
___

**hair** 104:24 106:6,7

**hairstyle** 106:6

**hand** 6:13 42:13

**handed** 63:23 64:4,5,12 65:1

**handgun** 86:16

**handwritten** 42:19,21 46:23 96:2

**happen** 89:3

**happened** 44:10 47:16 49:4 57:24 59:7,24 72:16 77:24 133:17 135:14

**happening** 43:5,22 44:9 71:25

**hard** 110:7

**hate** 82:25

**head** 7:21 86:16 100:21

**hear** 7:23,24 10:8 18:20 36:4 110:9

**heard** 62:22 146:21,24 147:2

**hearing** 52:25

**height** 104:15

**helpful** 14:23

**hide-a-bed** 101:6

**high** 21:18 57:7 60:10

**hit** 7:10

**hold** 6:3 14:11 27:15 50:16,18 89:1

**holding** 64:16, 17

**home** 31:3 73:24 100:19 101:11 110:24

**homeowners** 86:13

**honest** 108:22

**honestly** 13:5 48:23 83:20 94:15 99:19

101:18

**hoodie** 106:17

**Horton** 5:12,20 10:19 11:2,8 74:19 75:24 76:5,10 80:23 105:23 124:5 129:17 146:15

**Horton's** 10:21 14:2 15:20 17:23 18:11 75:16 76:18 105:25 126:18 130:15

**hospital** 86:22, 23 134:14 136:15,23 137:14,24 138:5,10,11

**hour** 13:6 92:11

**hours** 13:21 36:12 64:19 149:22 150:3

**house** 72:22 110:15 131:10 132:22,23

**Hurst** 18:17

___

**I**
___

**ID** 6:3 33:6

**idea** 17:3 20:19 68:6 69:10 105:24

**identification** 34:9 38:21 78:22 89:17 111:16 120:16 129:20

**immediately** 137:13

**impact** 66:6

**impeach** 54:7

**import** 115:2

**important** 43:4,21 44:8

65:11,24 67:14

**in-** 19:10

**in-depth** 57:7 61:14 140:24

**inches** 92:23

**incident** 39:18 46:14,22 47:14 49:2,18 63:3,22 70:14 84:5,22 85:2,5,14,19 90:9

**include** 31:24 32:1 60:1,6,8 70:20,21,23 134:21

**included** 60:15 77:18 110:14 133:9

**includes** 80:16

**including** 13:12 63:19 96:23

**incorrect** 130:24 131:3

**increase** 68:21

**independent** 72:4,7,11,15, 18,21,25 73:3, 6,10,14,19,23 74:2,8,17,24 75:8,12,15,21, 22 76:2,7,14, 17,21 77:17 132:14 133:18 140:2

**individual** 124:19

**individually** 98:11

**individuals** 76:22

**information** 32:5,6,7,9 33:4 57:3,7,17,20 61:10,19 62:3, 4,17 64:22 67:23 70:19,23 71:7 84:4 85:3,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

9,13,20 86:11
87:2,4,7,25
88:3,5,16 90:24
96:10,24 97:7,
15,17 98:3,9,
18,25 99:16,18
100:9,13
101:13,16,17
102:19 103:11,
17 105:3,6,9,
13,21 106:11,
21,24 107:4,11,
17 108:7
109:12 110:18,
21 111:3,5
115:3 117:8,9
119:20 120:1
134:21 135:1,5
136:4,10
137:17

**initial** 26:11,13
47:15 48:7,9
63:3,22 101:20
121:16

**initially** 148:13

**injuries** 86:22

**injury** 17:6
135:17,20
137:6

**input** 105:6
106:11 107:3
110:20 111:5

**insert** 114:24

**inserts** 115:4

**inside** 86:15
132:23,25

**instance** 62:1
93:9 95:14
119:25

**instances**
19:19 64:2
110:2

**instituted** 40:9

**instructed**
8:14

**interacting**
73:15

**interrogate**

32:17

**interrogating**
32:25

**interrogation**
32:21 33:2

**interview**
32:13,15 60:23
61:2 62:20

**interviewed**
61:11

**interviewing**
32:1 38:2,7
62:2

**interviews**
61:14,24

**investigate**
67:2 69:12

**investigated**
77:18

**investigating**
43:16 64:3
140:22

**investigation**
16:8 43:5,21,23
44:19 46:5
47:16,22 48:11,
18 53:12 55:8
64:8 66:11
68:19 70:3,11,
18 71:12 72:5
76:23 77:5,14,
24 79:20 80:7
82:20,21 83:16,
25 84:9,11 85:3
86:25 87:19
88:1 95:17
112:19 129:14
140:14 141:6
150:1,5

**investigations**
42:5 46:12
48:20 83:7
85:13 123:17

**investigative**
44:8 48:7

**involved** 21:1
65:2

**involvement**

64:8 77:23

**irate** 101:2

**issue** 61:8

**items** 101:4

---

## J

**jeans** 106:18

**job** 31:24 83:6

**join** 139:14

**joining** 30:14

**Joys** 51:1

---

## K

**Kayleigh** 5:4

**Kentuckiana**
5:6

**Kentucky** 5:8

**Kimberly**
121:20

**kind** 28:2 46:13
47:15 55:1 57:7
71:24 78:25
90:2 111:20
148:9 150:6

**Kinnamon** 5:5

**knew** 35:4,6
61:22

**knock** 86:14

**knocked**
100:19

**knocking**
100:21

**knowing** 68:6
110:8

**knowledge**
81:21 96:5
106:24 107:1
146:18

**Kyle** 147:3

---

## L

**L-I-N-S-C-O-T-
T** 10:7

**largely** 113:2

**laser** 40:5

**lastly** 138:16

**late** 21:5 24:5,
18

**latent** 116:17
121:1,4,12
123:10,22
124:1,7 127:8,
16 128:5

**latents** 124:16
125:7

**law** 56:3

**lawsuit** 16:7
17:15 20:6,15
21:3,14 141:9

**lay** 84:15

**laying** 101:5

**lead** 65:24
67:2,23 138:9

**leading** 148:7

**leads** 65:11
66:12 67:15

**learn** 40:12,19
85:3 143:11,21
145:8,18

**learned** 37:17
87:4,7,13,18,24
88:4 103:17
134:16 136:5

**learning** 46:5
54:1,6,13 74:3,
5,9,13,18,25
75:9,13,16,23
76:3,8 84:10
92:2

**leave** 61:23
135:15,21

**leaving** 78:9
136:10

**left** 32:22 101:9
111:15 112:24
132:23 135:25

**leg** 86:18 101:1

**length** 106:6

**level** 57:8
60:11

**license** 22:21
23:2,7

**licensed** 22:16

**life** 31:3

**life-
threatening**
135:17,20
137:7

**lifted** 11:7
75:23

**lifts** 123:1

**light** 106:17

**lights** 73:24

**likelihood** 66:6

**limited** 32:4

**lined** 59:3

**lines** 69:16

**lineup** 34:17

**Linscott** 10:6

**list** 113:8

**listed** 81:23
101:5 112:17,
21 117:24
118:2 121:15
122:14 124:4,
19 133:15
140:20

**lists** 81:13

**living** 86:18

**located** 5:7
25:23

**location** 5:17

**Loew** 10:15
11:16,18 16:3,7
70:2,11,18
71:12 72:5,8

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

76:22 77:4,13, 23 78:2 86:6,25 89:9 111:9 112:18 120:7 124:2 129:10, 13 131:8 135:6 140:13 141:3,5 146:16 149:25 150:5

**long** 8:20 13:3, 17 15:14 17:12 23:16 24:2,15 26:7,9 27:9 28:1,16 29:3,12 30:4 36:23 37:5 55:21 88:21 89:9 94:2 131:21 134:10

**longer** 61:24

**looked** 72:22 80:14 111:7 113:3 115:12 121:8 123:14 128:17 129:2 133:22 138:13 140:12,20 149:24

**lot** 40:7

**loud** 7:21

**Louisville** 5:8

---

**M**

---

**M-MALE** 104:11

**made** 20:21 51:7 102:11 122:6 148:16

**Main** 5:7

**maintain** 60:11

**make** 8:8 43:22 44:9 51:5 71:22,24 100:4 108:3,16,22 126:7 132:25 135:16 137:6 138:24 139:23

**makes** 85:1

**making** 31:24 59:23 60:1,8,16

**male** 86:15,17, 21 100:19 102:12,20 135:16 136:25 137:5,8

**man** 10:18 75:2 146:21,24 147:2

**management** 22:7

**mark** 78:18 89:13 111:12 120:11 129:17

**marked** 78:22 89:17 111:16 114:3 120:16 129:20

**marriage** 10:2

**married** 10:5

**Martinez** 5:19 6:10,21 11:5, 13,22 12:2,3 14:22,24 21:2 32:19 33:8 34:12,20 35:21 37:19,25 38:5, 11,16,24 39:5, 10 40:22 41:3, 10 42:1 43:8, 13,19 44:1,6, 13,23 45:6,14, 20 47:12 48:1, 15,25 49:15 50:7,13,17,19, 22 51:1,3,10,16 52:10,24 53:18 54:5,11,18,25 55:16 56:8 59:5 61:5,21 62:18 63:14 64:1 65:14,20 66:4, 10,15,25 67:7, 12,20 68:11,17, 25 74:23 75:5, 20 76:13 77:1 78:6,24 80:1,11 81:3,11,19 82:4,18 83:4, 13,22 84:6,15, 17 85:10,22

87:12,17,22 88:20 89:19 91:18 93:7 94:17 95:23 96:16 97:10,21 99:6 102:5,9, 17,24 103:12, 24 104:6 105:18 106:14 107:16,23,25 108:24 110:1, 10 111:18 113:18 114:18 115:8 117:23 118:15 119:3 120:5,18 122:13 124:17 125:3,23 126:16,25 127:13,21 128:10,20 129:8,22 132:6 135:3 136:13 137:22 139:20, 21 142:17,23 143:10,15,20, 25 144:18,23 145:7,12,17,22 147:5,11,14,20 148:12 149:3, 12 150:13,21, 23

**Maryland** 52:19 53:11

**massage** 22:16,22 23:3,7

**match** 11:2,8 75:24 76:4,9 124:19

**material** 54:14

**matter** 5:11 20:10

**Mcclanahan** 75:1 137:13

**meaning** 16:4

**means** 29:20 53:4 81:7 116:3 124:23 125:6, 17

**meant** 49:7 66:12

**mechanisms** 98:2

**medical** 137:17

**medication** 9:7

**medications** 9:11

**meeting** 13:3 14:8,10,14

**memorialize** 62:13

**memorialized** 150:10

**memories** 44:14 67:15,25 69:21 77:4,8 130:22 150:5

**memory** 9:4, 11,15,16 36:1 44:10 52:23 68:7,9,13 71:18,20,23,25 72:1 96:6

**mental** 39:19, 20

**met** 86:8

**mid-2012** 24:18

**mid-watch** 28:8,12,24 29:4

**middle** 100:3

**mind** 48:3 128:23 149:10

**minutes** 13:19 92:12

**miscellaneous** 101:4

**Mischaracteriz es** 84:12

**misconduct** 55:12,24

**misses** 68:20

**missing** 67:4

**mister** 131:24

**moment** 45:10 61:20 67:19 89:24 97:13 130:3

**money** 101:2,8

**money,'** 100:24

**month** 23:17

**months** 24:16, 17 26:9,20 28:5,9 36:24 37:2,4

**morning** 6:22, 23 8:20 11:14 75:16

**mouth** 108:2

**move** 41:11 116:9

**murder** 18:16

---

**N**

---

**named** 10:19 21:14 75:2 146:21,24 147:2

**names** 9:24 10:1,4,10 131:12

**Nancy** 7:2

**narcotics** 33:23

**narrative** 100:5 101:20, 21 106:22 107:6,8 108:7 117:13 123:1 125:5

**narratives** 117:17

**Nationwide** 23:24

**necessarily** 109:25 127:19

**needed** 37:14



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

45:23

**negative**
124:8,12,15,16,
22 126:8,15

**nickname**
100:23

**nobody's**
60:16

**nods** 7:21

**non-** 14:18

**northeast** 26:5

**notate** 45:25

**note** 19:12

**note-taking**
38:13 41:20,23
44:21 45:2

**notebook**
42:22

**notes** 16:7
42:6,14,17,19,
21,24 43:4,21
44:8,18,19 55:7
62:3,8,12 97:15
100:17 106:16
107:1 108:16,
17 109:6,14
110:14 117:14,
16 118:10,21
119:11,17
147:7

**noticed** 138:15

**notified** 86:1

**November** 5:9
127:5,6,7,14,24
128:13

**number** 5:14
71:21 86:2,5,7,
9,10 114:20,23,
24 121:6
133:15 149:24

**O**

**object** 8:13

**Objection**
11:3,9 20:23
32:18 33:1

34:11,18 35:18
37:12,22 38:3,
8,14,22 39:2,8
40:20,25 41:9,
24 43:6,11,18,
24 44:4,12,22
45:3,17 47:10,
23 48:12,22
49:13 50:3,11
51:8,14 52:6,20
53:13 54:4,9,
17,22 55:13
56:4 58:24
60:24 61:16
62:14 63:13,25
65:12,17 66:1,
8,13,22 67:5,9,
17 68:2,14,22
74:21 75:3,18
76:12,24 78:3
79:22 80:8,25
81:8,15,25
82:14,23 83:9,
17 84:1,12
85:6,15 87:8,
16,20 88:19
91:16 93:4
94:12 95:20
96:13 97:2,19
99:3 102:2,7,
14,21 103:8,20
104:3 105:15
106:13 107:12,
20 108:19
109:23 110:5
113:14 114:14
115:5 117:19
118:12,22
120:3 122:8
124:13,24
125:18 126:11,
22 127:10,17
128:6,18 129:3
132:2 134:23
136:11 137:19
142:13,20
143:8,13,18,23
144:16,21
145:5,10,15,20
148:4,25 149:8

**obligations**
52:18

**obliges** 53:11

**occurred**

10:14 11:17
48:6 57:3 72:22
110:15

**October** 10:14
11:15,17 36:14
56:15 80:19
85:25 99:1
112:25 113:6
114:11 122:2
141:12 142:1

**offense** 15:8
46:14 63:7
80:17 84:3,22
85:19 90:12
91:10,13,15
98:3,24 99:12
100:17 107:9,
18 118:7
121:16 138:25
139:10

**offenses** 63:18

**office** 5:24
14:15,21 54:20
55:6 138:21

**officer** 18:16
25:12,14 26:22
29:23 30:19
31:4,12 32:13,
16 34:6,16,23
39:13 40:2 41:4
43:15 46:8,10
48:9 51:5 53:23
55:11 56:2 58:7
67:22 68:19,20
73:15 79:25
83:3 84:9 86:9,
12 89:5 101:21
107:4 112:22
119:1 121:14,
16 140:21
141:1,21 142:2,
7

**officers** 20:25
21:13 27:17
47:20 48:5,19
56:21 63:1,8
70:24 71:8
72:12 86:3,21
95:17 96:9,22
97:14 98:23
99:12 118:6
131:10,13
135:25

**official** 37:24
41:22

**Ohio** 5:14,24
10:15 11:18
21:23 22:2

**online** 5:5
46:16,18 47:6
49:19 82:17
85:9

**onset** 59:10

**opened** 91:14
93:17 100:20
113:13 122:7

**opinion** 107:17
142:11 144:14
146:15

**OPOTA** 37:14

**opportunity**
40:18

**option** 92:4

**order** 150:21

**original** 15:8
114:25 121:8
138:25

**OSU's** 27:19

**outcome** 21:11

**outset** 47:17
69:23

**P**

**P-A-M-E-L-A**
7:2

**p.m.** 36:13
112:25 114:12
115:17 122:20,
23 151:6

**pages** 15:13

**paid** 100:23

**Pamela** 5:11
6:5 7:1 9:18,21
86:9

**paper** 42:9

**paralegal**
14:19

**paraphernalia**
73:11

**part** 14:19
17:24 59:22,25
60:5 119:2
133:2,8 139:6
144:13

**partially** 109:7

**participate**
70:2

**participating**
64:13

**particulars**
38:10

**parties** 6:8

**partly** 20:5

**partner** 71:15

**parts** 94:19
130:1

**party** 19:8,18
20:6,15

**pass** 32:9 62:3
64:23 85:21

**passed** 87:3

**patrol** 25:12,14
26:22 30:18
31:4,12,14,19
32:4,13,16
34:6,16,23
39:13 40:2 41:4
46:8,10 53:23
56:21,22 57:25
58:1,5,11 61:3,
8 63:1 79:25
83:3 84:8 86:2,
8 89:5 118:25
121:14 141:20

**patrolling**
56:19

**pause** 79:2
90:3 111:22

**paused** 51:2

**Pausing** 133:4

**paying** 95:9

**payroll** 24:13



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
— COURT REPORTERS —

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

pending 5:12 8:22

people 94:10 105:10 132:23

Perfect 6:7 8:1 92:21 116:1 139:18 150:20

perform 34:17

period 27:3

perpetrator 66:7,20 103:5, 18 105:10

perpetrator's 109:7

person 10:17 66:21 93:3

personal 16:3, 4,6 17:6 33:4 55:3 61:10 81:21 96:5 106:24 146:18

personally 70:24

personnel 86:1 137:18

pertaining 17:6,9 55:7 119:18

pertinent 135:1,4

phone 12:21 13:8,11

phonetic 121:20

photo 34:8,9 38:21 51:19,22, 25 52:4,14 75:10,13

photograph 74:19

phrase 11:15

physical 66:19

pick 90:22

piece 42:9

pistol 100:20

plaintiff 5:20

Plaintiff's 5:18 151:2

plan 7:12

played 71:11

pocket 42:23

point 8:9,18,20 9:21 15:9 17:20 28:19 35:2 47:9 49:19 51:18 53:20 55:5 63:9 64:4,20 71:23 77:15 79:2,19 83:19 89:24 90:3 99:1 101:19 102:13 111:22 114:23 116:8,20 118:10 132:21 133:1,13,14 135:11,14,20 146:10 149:22

police 16:23 17:10,25 20:3 24:10 25:9,16 30:18 37:8 41:18,22 46:11 52:13,18 53:11 54:20,21 55:7, 11,24 56:2 62:13 66:19 69:19 70:2,4 72:5 134:17 137:25 144:10 147:24 150:10

Police's 44:20

policies 41:18 52:13

policy 41:22 44:20 52:16

poorly 25:11

position 25:23

possession 16:4

possibility 97:22 99:2 109:10 118:17

119:5

post-high 22:12

potential 103:18

potentially 65:15

practice 44:18 49:1,5 83:23 136:4

practices 41:6 52:13 65:22

precinct 25:18 26:1,2,3,4,8,19 27:7 28:8 31:14 32:17 34:25 35:1 36:2 56:19 58:16 59:1,4,7 93:22 94:4 141:12,21

precincts 28:3 58:20,22 141:17

preliminary 48:20 67:23 79:18,20 80:6

preparation 13:13,22 47:1 77:3 79:13 90:14 102:11 112:11 120:22 130:19 138:3

prepare 12:11, 14,23 16:10

preparing 12:20

present 14:7, 10,13,17 15:2 117:14 140:21

preserved 60:18 99:10

preserving 133:9

pretty 12:17 22:17 98:13 148:21

prevention

54:14

previous 89:20 113:3,12 114:7 115:12 116:13 117:3,6 118:2 119:21 120:13 122:4 128:16 129:1,6, 24

previously 90:11

printed 94:22 95:1,4,12,15 96:8,19 97:18 99:25 108:11, 18 115:16 116:5 117:25 118:3,20,21 122:19

printout 108:14

printouts 107:9

prints 123:1,2 124:18 125:6, 12,14,16,25 126:2,4,9,13,18

prior 46:21 62:20 97:18 136:10 138:8

probable 39:1

probation 26:16

probationary 26:22

problem 147:16 150:24 151:4

procedural 11:12

procedure 99:11

procedures 34:9 38:21 98:2

proceed 6:19

proceedings 5:1 11:25

process 11:12 32:21 42:4 46:19 47:8,19 48:24 50:6 64:6 94:16 96:1 97:6 99:14 116:18 133:2

processed 116:10,24

produce 52:1

produced 51:20,22

professional 142:11 144:14

program 22:4 36:23 37:5 40:9 90:17

progress 48:8 79:17,18,20 80:6,14 82:12, 21 83:7,11,15, 24 84:7,14,19, 20 85:4,12,18 112:15,16,18

progressed 41:5 47:22 48:11 95:18

progressing 48:18 82:20,22 83:8,16 84:10

prompts 72:1

property 33:24

prosecutor's 54:20 55:6

provide 8:25 9:7,14

provided 86:10

pull 141:14

pulled 76:8 106:17

purpose 71:22

pursued 64:9

put 31:10 90:24 100:13 101:16 103:18 104:1

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

107:21,22
108:1 117:17
134:17

---

## Q

quality 125:6,8

question 8:5,8,
10,11,14,16,21
14:16,23 25:11
48:4 50:25 51:4
59:18 66:24
67:21 71:16
84:7 95:5 96:5,
18 97:13 99:15
101:23 106:23
108:9,22 110:8
113:5 114:2
118:5,16
120:19 125:24
128:11 130:11
131:7,11
132:19 133:2
135:9,18
138:17 139:2
141:22 149:16

questioning
69:16 71:18

questions
9:18 12:4,9
16:17 18:21
19:11 41:17
46:4 52:17
56:10,11 59:22
65:21 69:17,20,
21 71:21,22
83:2 89:23
94:18 108:2
130:2 140:25
147:15,22
150:14,18

quick 7:14 14:5
31:6 113:17
132:19 147:6

quickly 11:22
41:11 61:19
65:11 67:3,15,
24 85:23 94:20
106:15 111:14
116:6 133:4

quote 100:23,
24 101:7,8

---

## R

race 104:13

radar 40:5

radio 56:23
69:7

raise 6:13

Ramsey 147:3

ransacked
86:18

ransacking
101:3

rare 69:12

read 16:13 77:7
78:14 79:3
85:23 89:22,24
100:17 106:15
130:1 131:5
132:18 135:8
138:3 150:19

reading 95:2
109:9 122:10
138:7 139:5

real 113:17

realize 25:10

realized
132:20

reason 43:14,
20 44:2 126:14
134:21 149:18

reasons 43:9
66:5 67:2

reassigned
30:22

recall 13:4
15:12,16 17:14
18:24 19:18
20:1,17 21:3,8,
11,13 28:21
30:13,25 32:12,
24 35:23 36:3,
11 37:20 38:1,
6,10,12,17,20,
25 39:6 40:1
41:15 45:22
46:18 48:13,23

---

49:17 50:5,9,
12,15 51:9,15,
19,21,25 52:3,
25 53:4,10,19
54:1,6,12,13
55:1,5,10,15,23
56:1 58:22
64:25 65:9 69:9
71:4 73:18
79:25 80:13
83:21 85:17
87:10 91:20
92:2 93:11
94:6,15 95:7,9,
22 96:15 98:2
99:10 101:14,
18 102:16
107:5 112:10
123:13,16
131:12 134:1,4,
7,10,13 137:15,
21 138:2,7,11
140:11 141:4,7
142:6 143:6
144:12 146:1
148:1

receive 22:10,
15,21 39:12
40:10 54:20

received 22:12
23:2,6 45:2,16
52:9 84:5

receiving
12:16 37:11
38:1,6,12,18,
20,25 39:6 40:1
51:25 52:3
53:19 55:1,6

recent 19:12

recently 10:5

recess 45:11
147:18

recognize 79:9
90:6 109:22
110:3 112:8
120:20 130:11
142:16 146:11

recollection
42:16 43:10
65:6 72:4,8,12,
14,16,18,21,25
73:3,7,11,15,

---

20,23 74:3,9,
13,18,25 75:9,
12,15,23 76:3,
8,15,18,21
77:13,17 86:24
96:18 111:8
120:7 129:13
132:14 133:19
136:18,22
140:2,13
144:11

record 5:3 6:2,
25 7:22 24:11
45:7,12 51:6
69:5 79:15
121:2 147:19
149:21 150:4
151:5

recorded
101:25

recovered
11:1 126:19

refer 133:25

reference
129:9

referring
114:20

reflect 44:10

reflected
105:3,14

refresh 43:10
52:23 77:13
86:24 120:7
129:13 140:13
144:10

refreshed
111:8

regard 41:20

regular 40:14

regularly 41:2

reinvestigatio
n 72:9

related 16:3,22
17:1 37:8 52:4
78:2 149:25

relating 16:7

---

relationship
143:2 144:25

relay 57:20
136:4

relayed 88:15
136:9

relevant 135:6

relief 25:25

rely 69:18

relying 44:10
71:19

remember
17:2,10,16,18
18:9,15,25
19:20,21 26:7
37:3,11 53:24
71:2 78:5 83:21
91:17,19 95:25
97:6 99:14
131:16 141:13
148:9

remotely 5:21,
25

repeat 48:3

rephrase 8:10
14:16 55:4,5
60:5 67:13 74:6
91:12 103:15
149:13

report 15:8,10,
13,15 31:11
37:15 38:18
43:2 45:16,19,
24 46:14,15,19,
23 47:5,6,8,14,
21 48:9 50:9
51:5,13 62:13
63:3,7,22 70:5,
8,9,14,19 71:7,
8,13,19 77:7
79:17,18,20
80:14,16 81:12,
22 83:12 84:4,
20,25 85:2,4,5,
14,18,19 88:4,
11 90:7,9,12,
19,24 91:5,9,
10,14,15 92:1,
6,8 93:12,17
94:9 95:1,8,16,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

19 96:7,9,11, 23,25 97:7,15, 17 98:21,24 99:24 100:5,14 101:22 103:6, 19 105:6,14 106:11 107:9, 18 108:17 109:1 112:15, 16,18,24 113:3, 8,12,13,17 114:3,7,8,13, 20,23 115:3,11, 12 116:10,14, 23 117:3,7,14, 17,18,24 118:19,20 119:12 120:6 121:5,8,17 122:4,6,12,14, 25 125:2 128:16,25 129:5 133:15, 25 134:17,22 135:2,22 137:25 138:18, 25 139:3,5,11 150:10

**reporter** 5:3,6 6:1,7,12,18 7:18 45:9,12 139:13,18 147:17,19 150:20,24 151:4

**Reporters** 5:7

**reporting** 96:1 112:22 121:15

**reports** 46:11 47:1,20 48:6,8, 21 49:2,3,18,25 55:7 63:11 69:19 70:2 71:6 78:8 80:6 82:12,21 83:7, 15,24 84:7,14, 19,21,22,23 85:12 93:2,20 96:2 98:3 99:12 107:7 115:2 118:7 121:13 122:6 128:17 129:1,7 138:3, 8,20 149:17

**represent** 144:9

**represented** 126:17

**representing** 5:6 11:24

**reputation** 142:18 144:20

**request** 30:21 63:2,16 123:11, 22 124:1

**requested** 30:23,25

**requesting** 86:3

**required** 51:12

**requires** 54:2, 7,14

**resemble** 129:6

**resembles** 128:16 129:1

**reserve** 28:2,6 29:17,18 30:8

**residence** 101:10 132:24

**resident** 86:21, 23

**residential** 86:5,13

**respond** 31:20 56:14 58:10 63:1 88:25 135:12

**responded** 31:22 61:4 69:2 86:8 100:6 132:12 148:24

**responding** 8:6 12:9 32:8 58:6 63:8 88:17 148:14

**responsibilitie s** 31:13 33:10, 14 34:8,23 59:10,15

**responsibility** 32:12 33:16,22 34:2,17 61:13 63:2 133:6,8

**responsive** 90:25

**rest** 88:8 101:2

**results** 75:13 124:7,9,12,16, 23 126:8,14 127:2,8,15,16, 23 128:1,2,5,9, 12

**retire** 25:1

**retired** 24:22 25:6,12 30:12 53:7

**retirement** 30:14

**retiring** 46:21

**review** 15:6,10, 19,23 47:4 70:1,9,16 71:14 77:12,22 90:13 102:10 112:11 120:22 149:17

**reviewed** 13:24 15:24 46:25 69:20 71:6 77:3 79:12 93:10 130:18, 25 138:8

**reviewing** 15:16 77:2 78:8 130:21 138:2 150:4

**Rhodeback** 5:11 6:1 9:22 86:9,10 140:21 141:1 142:2,8

**Rhonda** 133:15 135:10

**Ricardo** 146:25

**Richard** 5:12, 20 10:19 75:2 124:5 146:22

**rid** 66:21

**rights** 39:7

**robbed** 100:5

**robber** 11:7

**robberies** 69:9

**robbery** 10:14 11:1,15,16,17 16:3,8 34:1 35:16 59:14 60:22 63:19 65:7 69:13 70:3,11,18 71:12 72:5,9,22 73:4,25 74:4,9, 20 75:2,17 76:23 77:5,14, 24 78:2 86:1,3, 5,14,25 89:10 91:22,25 107:7 110:15 111:9 112:17,19 120:7 124:2 127:2 129:10, 13 135:6,12,24 140:13 141:6 144:2 145:23, 25 146:16 149:25 150:5

**role** 24:2,15 69:18 70:6,11, 12 71:12 118:25

**rollout** 86:17

**room** 33:24 69:7 86:18 101:3 139:14

**rules** 7:15

**run** 21:1 57:18 59:12,19 69:6 126:18 127:20

**running** 101:9

**runs** 59:20 69:4 148:17

**rushed** 137:14

———

**S**

**Sam** 7:3

**Samuel** 144:6

**Sarah** 139:14

**saved** 42:25 43:1

**scenario** 48:16

**scene** 11:1,7 33:11 34:5 35:3 56:14 58:11 59:9,14,16,22 60:2,3,5,7,10, 15,17,19,21 61:9,15 63:16, 21 64:16,18,20 70:24 71:1,9 72:8,13,16,19 73:1,8,12,16,21 75:24 76:4,9 78:9 86:7 87:19 88:1,12,22,25 89:2,9 90:8 116:10,24 126:19 132:1, 14,21 133:1,3, 6,17 134:11,14 135:12,15,22 136:5,10 138:19 139:4,6, 23,25 140:2,9, 22 148:14

**scenes** 56:10 69:3,13 88:25 89:5

**school** 21:18 22:13 24:21 25:3

**Schriltz** 6:5 7:1 9:19

**scope** 65:19 83:2

**screaming** 100:22 101:7

**screen** 78:12, 20 92:23 115:20

**scroll** 79:1 88:7 89:21 90:1,5 111:20, 24 112:2 115:14,18 116:6 119:7



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

120:14 122:17, 21,25 125:1,2 129:24 130:2,7

**scrolling** 98:15 115:21, 22

**search** 33:14 37:16 86:7

**searching** 76:15

**Searcy** 110:13, 23 119:15,18

**Seavers** 86:7

**section** 79:2 100:18 103:19 107:6 117:13 131:5 132:19

**secure** 59:16 60:19 88:25 132:22 133:6 138:18 139:4, 23,25 148:14

**securing** 33:10 59:22 60:5,7,10,15 63:21 71:1 133:3

**seizure** 37:16

**selecting** 52:5

**self-defense** 37:17

**sense** 8:8 85:1 108:16,23

**separate** 48:8 69:16 85:4,12

**September** 36:25

**sergeant** 86:4 131:10,17,21, 22 132:1,5,12

**service** 31:18

**set** 12:4 52:16 76:3 147:21

**sex** 104:11

**shakes** 7:21

**share** 78:12

**shared** 78:20

**sharing** 140:16

**shell** 10:25 76:8 133:9

**Shelly** 110:12, 14 119:8

**Sherrick** 121:20

**shift** 25:25 27:5,20 28:9,10 29:1,2,10,11 31:15 35:5,9, 11,12 36:9,12, 15 42:6 49:3,8 65:2

**shifts** 26:2

**shot** 86:17 101:1

**show** 78:11,17 89:13 109:1 111:11 120:10 129:16

**showed** 74:18 75:9

**showing** 51:19,21

**shown** 133:16 146:12

**shows** 94:2

**shy** 30:20

**Sias** 144:6 145:1,3,8,13, 18,25 146:3

**Sias's** 144:15

**side** 26:1,3,5 27:5

**similar** 111:19 113:2 120:13 129:23 148:10

**similarly** 117:6 122:4

**simply** 109:11

**single** 29:21 40:24 41:13,14

74:19

**sister's** 101:11 110:24

**sit** 19:25 30:24 32:24 35:22,25 41:21 50:8,14 51:11 52:12 53:3 54:19 56:1 64:11 69:8 72:3 74:13 77:16 78:1,7 87:23 89:8 99:10 100:8,11,12 101:12,15,24 105:2,5,22 106:20,23 110:17 111:2 117:7 119:4,25 123:4 131:12 133:18 137:12 140:1 142:10 143:5,16 144:5 146:2,14 148:2 149:4

**sitting** 5:24

**situation** 64:15 68:9 99:15

**slamming** 101:6

**slowly** 79:1 89:21 111:20 120:14

**small** 42:9,22 92:22

**social** 143:2 144:25

**solemnly** 6:13

**sound** 106:19 109:17 121:25

**sounds** 7:12 57:13 94:14 144:7

**southeast** 26:3 27:5

**southern** 5:13 59:1

**Southwest** 23:15,16,20

**space** 7:3 29:23

**speak** 12:18,22 13:17 32:4 102:20

**speaking** 13:21 46:1 73:1,4,18,20 79:11

**specialized** 39:12 40:1

**specific** 35:5, 16 69:21 70:4 83:11 89:22 123:7

**specifically** 8:14 40:4 56:7 77:21 116:17 137:11 146:7

**specifics** 53:16 59:19

**speed** 40:4

**spell** 6:24

**spent** 13:21 89:4 150:3

**spoke** 12:15 86:4 102:12 135:10 136:22, 24 137:8,10 138:4,10 146:10

**spoken** 13:8, 10 141:8 144:1

**spontaneous** 33:3

**squad's** 86:3

**stage** 71:24 80:10

**stages** 25:22

**stamp** 81:7 95:8,11 96:7 108:11 116:2 124:8

**stamped** 78:18 89:14 111:12 120:11 129:17

**standing** 100:25

**start** 8:5 36:21 42:20 56:9 58:18 91:14 93:18

**started** 25:25 91:9 122:12

**starting** 5:17 131:6

**starts** 30:9

**state** 5:16 6:2, 24 81:2 88:14 95:3 110:14 114:17 137:10

**state's** 54:8

**stated** 11:23 13:7,24 15:22 46:25 47:13 86:12 108:6 148:16

**statement** 18:5 44:7 68:1 81:24

**states** 5:13 100:5,18 106:18,22 109:14 116:4, 10 129:11 132:5 136:24 137:4 139:2 140:10

**stating** 97:24

**status** 137:17

**stay** 64:3 89:1 147:9,12

**stayed** 138:18 139:3,23,25

**step** 14:6,11 31:6 44:9 108:10 113:7

**steps** 48:7

**stint** 28:22

**stood** 131:3 149:6,18

**stop** 111:22

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

120:15 130:5 140:16

**stored** 102:6

**strange** 148:22

**Street** 5:7 10:15 11:16,18 16:3,7 70:2,11, 18 71:12 72:5,8 76:23 77:4,13, 23 78:2 86:6,25 89:10 111:9 112:18 120:7 124:2 129:10, 13 131:8 135:6 140:13 141:4,6 146:16 149:25 150:5

**strictly** 83:5

**strike** 14:9 15:23 16:24 17:22 19:7 20:2,13,20 22:9 31:5,7 32:11 34:7,15 35:14 36:8 47:4,13 48:10 49:10,16 51:18 52:17 54:13 57:11 58:4 60:7 62:12 64:24 66:17 70:25 73:19 75:22 78:8 80:13 82:11 95:14 100:12 101:24 107:3,8 109:20 112:10, 17 113:7 114:12 115:10 121:11 123:9, 25 124:22 127:22 131:25 134:20 136:2 141:4,19 145:24

**struck** 86:15

**stuff** 42:13

**subject** 40:13 49:25 91:22

**submit** 47:20 49:17,23 50:9

**submitted** 51:6 70:7,14 71:6 91:13 93:3,12,14 98:21

**subpoena** 55:2,6

**subsequent** 44:3 107:7 115:11

**subsequently** 48:10 62:11

**substance** 12:6

**substantive** 32:7 62:7

**suffer** 39:19

**Suite** 5:7

**supplemental** 49:2,18 63:11 117:18

**suppress** 143:6 145:4

**suppressing** 143:12 145:9

**surgery** 137:14

**suspect** 32:25 33:5,6,7 46:2 86:15,18,20 100:21,22,25 101:1,4,9 103:1,2,11 104:8 105:9 106:16,19 108:16 117:2, 14 118:9,21 124:4

**suspects** 32:13,17 38:7 60:2 76:15,22

**swear** 6:13

**system** 117:21 123:7

---

**T**

**tabs** 89:15

**tactical** 37:17 40:6

**tactics** 41:1

**takes** 7:9

**taking** 7:19 9:6,10 14:5 27:15 37:15 43:2 44:19 101:21

**talk** 8:2 12:8 62:21 145:23, 24

**talked** 34:22 137:23 140:5

**talking** 42:19 55:3 66:18 90:10 116:16, 17 133:17

**tall** 105:23

**task** 113:24

**tech** 78:14 119:1

**technically** 130:8

**technician** 5:5

**technicians** 60:12 133:10

**techniques** 37:17

**Ten** 23:17

**term** 82:6 125:25

**terminal** 139:8

**terminology** 84:24

**tested** 124:19 126:10

**testified** 16:17 17:24 18:10 19:23 20:5,11 38:17 45:15

51:17,24 69:1 70:13 84:13,18 88:24 90:16 99:23 107:20 114:6 116:1 130:18 132:13 136:3 138:20 139:7 147:22, 24 148:11

**testify** 148:3, 23 149:7,15,19

**testifying** 18:15,18 76:18

**testimony** 6:14 9:1,8,14 12:16 13:25 15:6,16,20 37:21 77:7 84:13 98:1 99:9 126:7 130:9,15 131:24,25 133:5 135:23 136:1,15 137:8 138:8,24 139:22 140:10 149:14 150:9

**Texas** 6:6

**that--** 95:3

**therapist** 22:16,22 23:3,7

**therapy** 22:19

**thing** 40:14,19 71:25 101:19

**things** 31:16 34:21 42:5 49:7 59:7 84:10 95:18 97:12,16

**thinking** 55:20

**thousands** 59:20 69:2,4 148:17,24 149:14

**tied** 84:24

**tight** 106:17

**time** 5:3,4 8:3, 13 9:16 11:14 19:12,16 25:3, 19 28:17 36:8,

18 37:7,11 45:12 46:6 55:21 59:1 64:14,25 73:24 74:11 76:23 83:6 84:5 85:8 88:16 89:4 93:11 96:1,3 97:8 103:6 116:21 117:12 122:11 127:20 131:17,20,22 132:12 133:6, 14 135:11,14, 21 140:3 143:7, 12,17,22 145:4, 9,14,19 148:21 150:15,19,23 151:1

**timeframes** 25:23

**timeliness** 66:6

**times** 12:18 13:10,12 16:20 18:2,3,10,24 19:5 20:8 142:4 147:25 148:23 149:16

**timestamp** 91:13 98:12 99:25 114:11

**timestamped** 98:11

**timestamps** 98:14 99:17,22

**tiny** 95:11

**titled** 90:11

**today** 5:6,8 7:7,15 9:1,8,15 12:12 13:12,14 19:25 30:24 32:24 35:23,25 41:21 50:8,14 51:11 52:12 53:3 54:19 56:1 64:11 65:7 69:8,22 71:19 72:3 74:13 77:4,16 78:1,7 87:23 89:8



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

90:14 99:10 100:8,11,13 101:12,15 102:11 105:2,5, 13,22 106:20, 23 110:17 111:2 112:12 117:7 119:4,25 120:23 123:4 130:19 131:12 133:18 136:9 137:12 138:4,9, 14 140:1 142:8, 10 143:5,16 144:5 146:2,14 148:2 149:4

**today's** 11:24

**Todd** 86:9 140:21 141:1 142:2,8

**told** 11:11 12:7 62:8 71:20 75:1 86:21

**Tom** 7:3

**top** 80:17 90:5 91:4 111:15,25 112:24 113:20 117:12

**total** 13:21

**touch** 22:18 115:18 122:21

**touched** 11:7

**trained** 37:20 40:4,9 53:10

**training** 22:25 37:8,14,18,24 38:1,6,12,18,21 39:1,6,12,15,18 40:2,15 45:1, 19,23 51:25 52:3,9 53:15,20

**trainings** 37:10 40:11,17 41:6,12 45:16

**transcript** 70:10 129:25 130:15 150:22

**transcripts** 15:24

**transfer** 31:1

**transferred** 28:7 63:10 119:20

**transfers** 30:21,25 117:22

**translate** 7:22

**transported** 86:22

**trap** 99:8

**trauma** 22:18

**trial** 13:25 14:3 15:5,16,20 17:23 44:3 70:10 129:25 130:16 150:9

**true** 35:13,14

**truth** 6:15,16

**truthful** 8:25 9:8

**turn** 33:23 150:15

**turned** 54:2,8

**turning** 101:3

**two-minute** 147:6

**type** 42:14,25 47:21 94:9 95:16 96:8

**typed** 47:5,8

**types** 46:11 63:15 69:3 83:15 93:19

**typically** 49:1 93:3

**typing** 90:20

---

### U

**U-UNKNOWN** 104:25

**Uh-huh** 34:4 70:22 117:10

**unassigned** 29:25 141:23

**uncommon** 69:14

**understand** 8:17 10:13,17, 21 11:16

**understanding** 41:17 69:18 71:5 108:4 122:5 123:5

**understood** 8:11 27:9 30:2 46:3 62:1 64:24 85:11,23 93:16, 19 98:7 107:2 132:17 142:1

**unit** 86:7

**United** 5:13

**University** 22:2

**unknown** 100:19 103:1, 11

**update** 43:14

**utterances** 33:3

---

### V

**vacated** 10:22

**varies** 57:9,10

**vary** 89:5

**vehicle** 93:21 139:9

**verbal** 7:21

**victim** 33:5,6 46:1 86:15,17, 19 100:5,18,20, 21,22,25 101:1, 5 102:12,15,20 106:18,22 109:7,14 133:15 134:21 135:16 136:24 137:5,9,24 138:10

**victim's** 100:22 101:1

**victims** 60:2 73:4 74:3,9,15, 19,25 75:10 76:5 86:13 101:10 110:15 138:5

**video** 5:5

**videoconferen ce** 5:10

**view** 48:20

**violate** 56:3

**Visiting** 110:14

**voice** 106:19 109:16,22 110:3,4,9

**Von** 6:5 7:1 9:19

---

### W

**wait** 8:4 23:1 82:11 137:1

**waiting** 139:14

**walk** 25:21

**Walker** 5:23 74:14,15,18 75:1,9 77:18 86:2,4,6 127:2 128:2,4 142:12 143:3,6,12,17, 22 144:2 146:6

**walking** 59:23 60:16

**wanted** 14:14 33:6

**wanting** 101:2

**watching** 64:20

**ways** 87:24

**weapon** 66:20

**wearing** 134:2

**week** 49:12

**weeks** 13:1 27:12,21,22

**weight** 104:19 106:1

**weird** 67:1 97:12

**West** 5:7

**whatsoever** 135:5

**whipped** 100:20

**widowed** 10:6

**Winchester** 21:21,23

**witness's** 67:25 68:13

**witnessed** 61:9

**witnesses** 32:2,5 38:2 60:23 61:14 62:2,23 67:8, 15,19

**witnessing** 143:6

**worded** 25:11 67:1

**wording** 97:11

**words** 108:1

**work** 23:14 37:8 142:2 144:15

**worked** 24:13 26:2,4,16,19 65:7 138:18 139:3,5 148:20

**working** 35:4, 7,9 36:1 71:15

**world** 97:14,23 98:23

**would've** 19:16 36:14 64:15 90:7,11 92:3,4 93:12,13 104:9 114:7



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**wow** 19:14

**write** 42:13
 63:10 84:8
 125:20

**write-up** 47:15

**writing** 38:18
 45:16,19 46:19
 138:4

**written** 45:24
 46:14,22 47:14
 82:16 101:21
 126:1

**wrong** 115:22

**wrote** 82:12

---
### X
---

**XM** 121:1

---
### Y
---

**year** 21:17
 22:9,10 24:3
 25:1 26:18,24
 28:18,21 29:5,
 13 40:10,18,24
 41:13,14 46:18
 83:20

**years** 19:14
 21:6 23:17
 29:14 30:5,14,
 16,19 41:5
 46:21 53:25
 59:3,20 69:4
 77:11

---
### Z
---

**zebra** 7:4

**zoom** 8:2 14:8,
 10,13 51:1
 78:13 94:20
 100:4 115:15
 120:12 122:19

**zoomed** 112:3



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —