# Exhibit 39



LOUISVILLE  LEXINGTON  LONDON  FLORENCE  CINCINNATI  INDIANAPOLIS  ORLANDO  JACKSONVILLE  TAMPA

# CASE NO. 23-CV-3888

## RICHARD HORTON

## V.

## CITY OF COLUMBUS, ET AL.

## DEPONENT:

## SHAUN LAIRD

## DATE:

## AUGUST 26, 2025



schedule@kentuckianareporters.com

☎ 877.808.5856 | 502.589.2273

www.kentuckianareporters.com

UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

CHIEF JUDGE ALGENON L. MARBLEY

MAGISTRATE JUDGE ELIZABETH P. DEAVERS

CASE NO. 23-CV-3888


RICHARD HORTON,

Plaintiff


V.


CITY OF COLUMBUS, COLUMBUS DIVISION

OF POLICE OFFICERS BRENDA K. WALKER

(BADGE #1176), MIEKO SIAS AS PERSONAL

REPRESENTATIVE OF THE ESTATE OF SAM SIAS

(BADGE #1871), AND AS-YET UNKNOWN

COLUMBUS POLICE OFFICERS,

Defendants


DEPONENT:  SHAUN LAIRD

DATE:      AUGUST 26, 2025

REPORTER:  EMMA MCGAHA

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

2

APPEARANCES

ON BEHALF OF THE PLAINTIFF, RICHARD HORTON:

Alyssa Martinez, Esquire

Loevy & Loevy

311 North Aberdeen

Third Floor

Chicago, Illinois 60607

Telephone No.: (312) 243-5900

E-mail: alyssa@loevy.com

(Appeared via videoconference)


ON BEHALF OF THE DEFENDANTS, CITY OF COLUMBUS, AND

COLUMBUS DIVISION OF POLICE OFFICER BRENDA K. WALKER

(BADGE #1176):

David Dirisamer, Esquire

Samantha Scherger, Esquire

Columbus Litigation Section

77 North Front Street

Fourth Floor

Columbus, Ohio 43215

Telephone No.: (614) 645-6945

E-mails: djdirisamer@columbus.gov

sjscherger@columbus.gov

(Appeared via videoconference)

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

APPEARANCES (CONTINUED)


Also Present: John Mairs, Intern at the City of
Columbus Litigation Section

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

4

INDEX

Page

PROCEEDINGS                                          6

DIRECT EXAMINATION BY MS. MARTINEZ                   8


EXHIBITS

Exhibit                                            Page

1 - Defendants' Fifth Supplemental Rule
    26(A)(1)(A) Disclosures in this Case           75

2 - E-mail from Shaun Laird to Clarence
    Tuller and Jonathan Schrig, Subject:
    Robbery Case File, dated 11-13-19
    (CITY 9527)                                    90

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

                          STIPULATION


The VIDEO deposition of SHAUN LAIRD was taken at
KENTUCKIANA COURT REPORTERS, 730 WEST MAIN STREET, SUITE
101, LOUISVILLE, KENTUCKY 40202, via videoconference in
which all participants attended remotely, on TUESDAY the
26th day of AUGUST 2025 at 2:01 p.m. (ET); said VIDEO
deposition was taken pursuant to the FEDERAL Rules of
Civil Procedure.  The oath in this matter was sworn
remotely pursuant to FRCP 30.

It is agreed that EMMA MCGAHA, being a Notary Public and
Court Reporter for the State of OHIO, may swear the
witness and that the reading and signing of the
completed transcript by the witness is not waived.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

6

PROCEEDINGS

THE REPORTER: We are now on the record. My name is Emma McGaha. I'm the online video technician and court reporter today, representing Kentuckiana Court Reporters located at 730 West Main Street, suite 101, Louisville, Kentucky 40202. Today's the 26th day of August 2025. The time is 2:01 p.m. Eastern.

We are convened by videoconference to take the deposition of Shaun Laird in the matter of Richard Horton v. City of Columbus, Columbus Division of Police officers, Brenda K. Walker, badge number 1176, Mieko Sias as personal representative of the Estate of Sam Sias, badge number 1871, and as-yet unknown Columbus police officers pending in the U.S. District Court for the Southern District of Ohio Eastern Division, case number 23-CV-3888.

Will everyone but the witness please state your appearance, how you're attending, and the location you're attending from, starting with the Plaintiff's counsel?

MS. MARTINEZ: Alyssa Martinez on behalf of Plaintiff Richard Horton, and I'm appearing remotely via Zoom.

MR. DIRISAMER: This is David Dirisamer. As

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
—COURT REPORTERS—

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

mentioned, I have my colleague Sam Scherger and one of our interns, John Mairs, with me.  We are attending via Zoom, and we are here at 77 North Front Street in Columbus.

THE REPORTER:  Thank you.  And Mr. Laird, will you please state your full name for the record?

THE WITNESS:  Sure.  It's Shaun Kevin Laird, and I'm attending via Zoom from my home in Powell, Ohio.

THE REPORTER:  I appreciate that, sir.  Would you be able to hold your ID up to the camera now?

THE WITNESS:  Yep.  Oh.

THE REPORTER:  Thank you.  Do all parties agree the witness is in fact Shaun Laird?

MS. MARTINEZ:  Yes.

MR. DIRISAMER:  Yes.

THE REPORTER:  All right.  You can lower that. And will you please raise your right hand, sir?

THE WITNESS:  Okay.

THE REPORTER:  Do you solemnly swear or affirm that the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes, I do.

THE REPORTER:  Thank you.  Counsel, you may begin.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

DIRECT EXAMINATION

BY MS. MARTINEZ:

Q. Good afternoon, sir.

A. Good afternoon.

Q. Can you please state and then spell your name for the record?

A. Yes. It is Shaun, S-H-A-U-N. Middle name is Kevin, K-E-V-I-N. And the last name is Laird, L-A-I-R-D.

Q. Thank you. And how old are you today, sir?

A. I am 57.

Q. I'm going to go over some quick ground rules at the outset here just so that we're on the same page, okay?

A. Okay.

Q. Okay. So there's a court reporter that's taking down everything that we say. So to the best of your ability, please try to give loud verbal answers. Head nods and shakes, particularly over Zoom, don't translate well for the record, okay?

A. Okay.

Q. Okay. And I ask that we please try to talk one at a time, again, so we can get that clean transcript. I'm going to do my absolute best to not cut off your answer. If you feel like I have, please let me

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

know.  I want to make sure you're able to get out your full answer.

And I ask that you please extend me that same courtesy, even if you know where my question is going. Please let me get that full question out before you start your answer, okay?

A.   Okay.

Q.   If a question that I ask you doesn't make sense, please let me know.  I'm more than happy to rephrase.  If you answer my question, I'm going to assume that you understood my question; is that fair?

A.   Yes.

Q.   Okay.  And from time to time, counsel on the call may object.  Unless you're specifically instructed not to answer a question, I ask that you please answer all of my questions, okay?

A.   Okay.

Q.   Okay.  And if you need a break at any point, please ask for one.  I don't anticipate we'll be here for very long this afternoon, but I'm more than happy to take a break whenever you need.  I just ask that it not be while a question is pending, okay?

A.   Okay.

Q.   Now, sir, do you have any conditions that might affect your ability to provide truthful and

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
—COURT REPORTERS—

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

accurate testimony today?

A.   No.

Q.   Okay.  And do you have any conditions that affect your memory?

A.   No.

Q.   Are you currently taking any medications that might affect your ability to provide truthful and accurate testimony today?

A.   No.

Q.   And are you currently taking any medications that affect your memory?

A.   No.

Q.   Okay.  So is there anything else that may affect your ability to provide truthful or accurate testimony today or your memory?

A.   No.

Q.   Okay.  Great.  And sir, do you understand that this case concerns the October 9th, 2004 armed robbery that occurred at 927 Loew Street in Columbus, Ohio?

A.   Yes.

Q.   And do you understand that the person who was charged and convicted of that crime was a man named Richard Horton?

A.   Yes.

Q.   And you understand that Mr. Horton's



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

conviction was vacated and that the criminal charges against him were subsequently dismissed?

A. Yes.

Q. And you understand that the detective who investigated that robbery was Detective Brenda Walker?

A. Yes.

Q. From time to time during the deposition this afternoon, sir, I may use the phrase the robbery or the Loew Street robbery. Can we understand that to mean that October 9th, 2004 robbery that occurred at 927 Loew Street?

A. Yes.

Q. Okay. Great. Thank you. Did you prepare for your deposition today, sir?

A. Yes.

Q. Okay. And what did you do to prepare?

A. I spoke to the city attorney on a number of occasions.

Q. Okay. And I want to preface my next set of questions with I don't want to know about the substance of your communication with counsel, okay?

A. Yes.

Q. Okay. So how many times did you speak with your attorneys in preparation for your deposition today?

A. From what I recall, three times.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  When was that first call?

A.   It's been several months ago.  I do not remember the first call.

Q.   And was it over the phone?

A.   Yes, it was.

Q.   Do you recall approximately how long that conversation lasted?

A.   No, I don't recall.  Probably less than a half hour.

Q.   And to the best of your knowledge, was anyone present on that call outside of you and your counsel?

A.   No.

Q.   And when was the second call with your counsel?

A.   I'm not sure of that date either, but it was within -- obviously, it was after the first one, and it was mostly to speak about that there would be a deposition.  It was just a notification of that.

Q.   Okay.  So would it be fair to say that that call probably lasted a few minutes?

A.   Yes.

Q.   And just to clarify, was that also over the phone?

A.   Yes.

Q.   Okay.  And to the best of your knowledge, was

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

anyone present for that call outside of you and your counsel?

A. No.

Q. And then the third conversation with your counsel, sir, when did that occur?

A. Was -- that was yesterday.

Q. And was that over the phone as well?

A. Yes, it was.

Q. And approximately how long was that conversation?

A. One hour.

Q. And to the best of your knowledge, was anyone outside of you and your counsel present for that call?

A. No.

Q. So outside of those three conversations, did you have any other conversations with your counsel in preparation for your deposition today?

A. No.

Q. And sir, did you review any documents in preparation for your deposition here today?

A. No.

Q. And outside of your attorneys, did you speak with anyone else in preparation for your deposition today?

A. No.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   And just to clarify, sir, have you ever read the complaint that was filed in the civil case?

A.   No.

Q.   And have you ever read any deposition transcripts for depositions that were taken in this civil case?

A.   No.

Q.   And sir, have you ever kept a personal file relating to the Loew Street robbery, meaning one that was in your personal possession?

A.   No.

Q.   Okay.  So then outside of those three conversations with your attorney, sir, did you do anything else to prepare for your deposition here today?

A.   No.

Q.   I'm going to ask you a few quick background questions now, sir.  Have you ever testified as a witness in a civil case?

A.   No.

Q.   And have you ever testified in court for a criminal case as part of your employment with the Columbus division and the police?

A.   Yes.

Q.   Approximately how many times?

A.   I would say less than five.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   Okay.  And were each of those when you were with the robbery unit or were they at different points throughout your career?

A.   They were earlier in the career during my time in patrol.

Q.   And have you ever been deposed before today, sir?

A.   No.

Q.   To the best of your knowledge, have you ever been a party to a civil lawsuit before, either as plaintiff or as a named defendant?

A.   No.

Q.   To the best of your knowledge, have you ever had any disciplinary complaints filed against you?

A.   Yes.

Q.   Okay.  Approximately how many?

A.   When you say -- just to clarify the question, when you say disciplinary complaints, you're talking about complaints from the employer?  You're -- you're --

Q.   No.  Fair point.  Yeah.  I'll  break it down. I'll separate it out.  To the best of your knowledge, have you ever had any disciplinary complaints filed against you by a citizen?

A.   Yes.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.    Okay.  Approximately how many?

A.    Probably less than -- I would say less than ten, probably less than five.

Q.    And as you sit here today, sir, do you recall any of the allegations for those complaints?

A.    They were all during my time in patrol.  So we're talking prior to 2001.

Q.    But do you recall any of the allegations that were made against you when you were a patrol officer?  I know I'm asking for quite a ways back.

A.    You are.  I would -- the only one that I can remember was a citizen claim that when I made a -- I basically pulled up to two people in a fight, and they walked away from each other.  And I asked them what the fight was about.  And later, the citizen complained that I had accused him of being a drug dealer.

Q.    Okay.  And are you aware of any disciplinary complaints that were filed against you while you were either a detective or a sergeant by a citizen?

A.    By a citizen?  I don't believe I ever had a complaint as a -- once I was promoted to sergeant.

Q.    And do you recall if there were any complaints while you were a detective prior to that promotion?

A.    I was only a patrol officer.  I was never a criminal detective prior to my promotion and multiple

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

years in my new rank.

Q.   Okay.  Thank you.  That clarification is helpful.  Okay.  So we talked about citizen complaints. As you sit here today, sir, are you aware of any disciplinary complaints that were filed against you by another officer or a supervisor?

A.   No.  I'm not aware of a complaint filed by either one.

Q.   Are you aware of any disciplinary complaint ever filed against you by any employer?

A.   Yes.

Q.   Okay.  And approximately how many?

A.   Two.

Q.   And do either of these pertain to your employment with the Columbus Division of Police?

A.   One was a traffic matter.  Well, everything as -- everything applies to employment, so -- as a public official.  One was -- neither one was in the -- during the work -- the time of work.

Q.   I believe you said one was a traffic matter?

A.   Yes.

Q.   Okay.  And what was the other?

A.   It was an intervention into a -- a squat, like a fight between two -- two parties of which I had to -- because of the action I -- I had taken, there was a



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
—COURT REPORTERS—

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

certain reporting process that I did not understand because it was off duty and it was my first year on the department.

Q. And was the traffic matter also while you were off duty?

A. Yes, it was.

Q. Okay. And were both of these complaints from when you were a patrol officer?

A. The first complaint was. The second complaint would've been after I was assigned to robbery in a traffic -- in the traffic -- the one we mentioned about traffic.

Q. Okay. And at any point, have you ever had any form of discipline imposed upon you as the result of a complaint?

A. Yes.

Q. Okay. And can you tell me a little bit about that?

A. In the first matter, I received a reprimand. And in the traffic matter, I received a reprimand and a -- what we refer to as a vacation forfeiture where you are -- I have to give up two days -- I gave up two days of vacation leave in lieu of suspension.

Q. And so, outside of everything we've talked about, are you aware of any other disciplinary complaint

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

that's ever been filed against you?

A.   No.

Q.   Just a few more background questions for you, sir.  In what year did you graduate from high school?

A.   1986.

Q.   And where'd you go?

A.   Groveport Madison High School.

Q.   And where's that located?

A.   It is in the Columbus area.  In the same county as Columbus.

Q.   And did you attain any post-high school education or certification or degree?

A.   I did attend college at two different universities, but I have no degree.

Q.   Okay.  Where did you go first?

A.   Ohio State University right after graduation from high school, and then Capital University in the late 90s into the 2000s.

Q.   And did you study anything specifically at OSU or were you doing, you know, gen eds?

A.   I was in just general major, basically.  Had not been declared at the time.

Q.   Okay.  And then what about when you were at Capital?

A.   I was majoring in psychology.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   But you testified that you didn't get any formal degree for completing those programs?

A.   That's right.

Q.   Did you receive any kind of certifications along the way?

A.   Are you talking about certifications outside of employment or within inside employment?

Q.   No.  Good point.  Let me rephrase.  So I'm still at the -- the college phase.  And, you know, sometimes --

A.   Okay.

Q.   -- even if you don't complete a program, you might get certifications along the way or, you know, a lesser degree, like an associates.  Did you get anything like that?

A.   No, I did not.

Q.   And are you currently employed, sir?

A.   No.  I'm retired.

Q.   Congratulations.

A.   Thanks.

Q.   And when did you retire?

A.   In 2022.

Q.   And was that from the Columbus Division of Police?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 152-9 Filed: 03/28/26 Page: 23 of 111 PAGEID #: 12640
The Deposition of SHAUN LAIRD, taken on August 26, 2025

21

A. Yes, it was.

Q. Okay. So sir, can you please give me a summary of your employment with the Columbus Division of Police, including assignment, rank, and time period?

A. Yes. I started in the police academy in 1991. We were out on our first probationary periods coaching in February and March into April of 1992. And then I was in patrol from '92 until 1997. And then, in January of -- it was around January of 1997, I had an assignment in background investigation, investigating new applicants for hire. I was promoted in June of 1997, and I was in patrol at that time. And I took the assignment as a sergeant in robbery in June of 2001.

Q. And were you a sergeant in robbery up until your retirement?

A. Yes.

Q. Okay. And did you have any other assignments throughout that period?

A. No.

Q. So I'm going to break this down a little bit and just ask you a couple of follow-up questions for each position, okay?

A. Okay.

Q. So when you first began probationary coaching, was that -- or strike that, please.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

When you first began probationary coaching, which precinct were you assigned to?

A. The first precinct was -- that I was assigned to was 8 Precinct on the west side of Columbus.

Q. And did you have one probationary coaching period, or did you have multiple that happened in that March, April 1992 time frame?

A. There were two coaching periods.

Q. Okay. Were they both out of 8 Precinct?

A. No. The second one was on 1 Precinct.

Q. And do you recall approximately how long those coaching periods lasted?

A. The first one traditionally, I believe, was five weeks, and the second one was four weeks.

Q. And were you assigned to a specific officer to shadow or was it more flexible?

A. You have a -- a specific -- what we call that field training officer that you are with that person every day for that period, unless there's a sickness or a -- something like that.

Q. Okay. Do you recall the name of the first field training officer that you were assigned to?

A. Yes.

Q. What is it?

A. It's Dave Pulvemacher. It's spelled

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

P-U-L-V-E-M-A-C-H-E-R.

Q. Thank you for that. I'm sure Madam Court Reporter appreciates you spelling that out.

A. Sure.

Q. Do you recall the name of the second field training officer that you were assigned to?

A. Yes. His name is George Smith.

Q. And then after the completion of that probationary coaching period, you were then assigned to patrol?

A. That's correct.

Q. Okay. And were you at the same precinct from 1992 through 1997?

A. No.

Q. Okay. Can you run me through which precincts you were at?

A. Certainly. I worked -- I was assigned to 2 Precinct. And then, from there, I went to our campus precinct, which is -- the number is four, but it was a specific detail that was assigned to the -- the bar establishments, the student bar establishments. It was referred to as the campus walkie crew at the time. From there, I went to 11 Precinct, which is the southeast side of Columbus. And then, from there, I went to the -- back to the west side. I was a fill in between 8 and

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

15 precincts.

Q. And was it out of that fill-in position that you were assigned to background investigations?

A. Yeah. That was the -- my last assignment before I went to the background investigation.

Q. Okay. In your own words, sir, what were your responsibilities as a patrol officer?

A. Respond to calls for service, proactive approaches towards crime or traffic.

Q. And during your time as a patrol officer, did you ever have occasion to create a photo array?

A. No.

Q. And did you ever have occasion to show a photo array to a witness?

A. Not as a patrol officer. No.

Q. And then I believe -- or sorry. Strike that, please. Where was background investigations located in 1997?

A. In headquarters. In the main building of headquarters.

Q. And is that the 120 Marconi?

A. That is correct.

Q. Okay. And you testified to this a little bit already, but what were your responsibilities as an officer with the background investigations unit?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   The responsibility was to interview police applicants, investigate police applicants, and prepare documents for -- for them to be reviewed for hiring.

Q.   And would it be fair to say that you had no occasion to create or show a photo array in that position?

A.   That's correct.

Q.   And then I believe you testified, sir, that in June of 1997, you had a patrol promotion?

A.   That's correct.

Q.   Okay.  And was that a promotion from your assignment and background investigations or had you already been assigned back out to patrol?

A.   No.  I was currently -- I was serving in background investigation when the -- during the date of the promotion.  And then, from that date, you are recycled back to patrol by seniority.

Q.   Okay.  And you were back on patrol from approximately June of 1997 through June of 2001?

A.   That's right.  Yes.

Q.   And can you please run me through the precincts you were assigned to in that period?

A.   Yes.  I was on 14 Precinct, and I was on 11 Precinct, and I did a -- about a month at the beginning on 3 Precinct.  There was also a time where there was a

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

temporary assignment to the Fraternal Order of Police office to negotiate our contract.

So we have -- just so that we're covering all the bases, there was a period of time where I was essentially assigned to the union offices to -- in the -- under collective bargaining to negotiate a contract for the police department.

Q. And was that during that June of 1997 to June of 2001 time period?

A. Yes, it was.

Q. Okay. And were your responsibilities with patrol during that stint the same as your previous time with patrol?

A. It's -- no in the fact that you are now a supervisor of patrol officers. So I guess there would be some crossover. Sergeants do respond to calls for service. Primary focus is to supervise police officers.

Q. And during your time as a sergeant of patrol, now, did you ever have occasion to create a photo array?

A. No.

Q. And did you ever have occasion to show a photo array to a witness?

A. No.

Q. And then in June of 2001, that's when you became a sergeant in the Robbery Division?



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A. That's correct.

Q. Okay. And in June of 2001, was robbery located at headquarters?

A. Yes, it was.

Q. And was it located at headquarters throughout the entirety of your time with the Robbery Division?

A. Yes, it was.

Q. And in your own words, sir, what were your responsibilities now as a sergeant in the Robbery Division?

A. It was the supervision of detectives investigating criminal cases and then information through the chain of command, meetings. There's a certain amount of administrative details.

Q. And you testified that sometimes the sergeant of patrol would go out on calls. In your capacity as a sergeant in the Robbery Division, would you ever go out and investigate robberies?

A. Sometimes.

Q. And under what circumstances might you go out and investigate a robbery?

A. Typically, it was if there was a big case that was garnering a lot of attention.

Q. And are there any other circumstances under which you yourself might go out as a sergeant and

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

investigate a robbery?

A.   Yes.  There would be times where just to stay involved with my detectives, I would -- may go out from time to time on certain cases or that maybe I was already outside of the headquarters and could respond to assist.

Q.   And during your time as a sergeant in the Robbery Division, did you ever have occasion to assemble a photo array?

A.   I don't believe I ever assembled one myself.

Q.   Did you ever have occasion to show a photo array to a witness?

A.   Yes, I did.

Q.   Okay.  And was that something that you did with -- actually strike that, please.

Do you recall approximately how many times you'd have shown a photo array to a witness?

A.   I would say it -- I -- I really can't recall how many times it was.  It was rare that I did that.

Q.   It was rare, but you recall it happening at least a couple of times?

A.   That's correct.

Q.   Okay.  And during your time as sergeant in the Robbery Division, were you always on the same shift?

A.   Yes.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.    And was that first shift -- or strike that, please.  Was that first watch?

A.    Yes.

Q.    And for the record, can you please explain what hours first watch is?

A.    Typically, it would be either -- for me, it was typically 7:00 to 3:00, could be 6A to 2P.  And then I had an amount of time where I would work other hours where sometimes my hours would be 9:00 to 5:00, 9A to 5P.  There was a certain amount of flexibility based on the needs of what needed done and at what time those tasks needed done.

Q.    And in your experience, sir, approximately how many detectives would be on shift with you?

A.    Typically, there were five detectives assigned to investigate cases.

Q.    And is that true for any shift?

A.    No.

Q.    Would other shifts have additional detectives or traditionally fewer detectives?

A.    Other shifts traditionally had more detectives based on the calls for service.

Q.    And was it the case where, you know, there always had to be one supervisor or sergeant present at all times or might there be some gaps where detectives

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

30

are working, but there's no sergeant on that same shift or in that day?

A.   There were many times where there was no supervisor there.

Q.   And was the title of your position for the entirety of your time with the Robbery Division sergeant or did you ever get, you know, any other title or designation or promotion like lieutenant?

A.   No, I did not.

Q.   And in your experience, approximately how many sergeants would be in the Robbery Division at a given time?

A.   For the first number of years, there were two sergeants assigned to three shifts at the robbery.  And then somewhere -- I'm not -- I can't recall the year, but at one point, we went to having three sergeants, one for each shift.

Q.   When you first started, do you recall which shifts did not have a sergeant on it?

A.   Yes.  When I first started, I was responsible for first and second shift and there was a third shift sergeant that was responsible only for third shift.

Q.   So you were responsible for first and second shift, but you traditionally worked first shift hours; is that correct?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.    That's correct on most days.  Essentially, those were most of the days that it -- when I worked 9A to 5P.  So I had some time on both shifts.

Q.    And then at some point, an additional sergeant was brought in for a second shift?

A.    Yes.

Q.    And since retiring in 2022, have you worked any other employment?

A.    No.

Q.    And just to make sure I've -- I've got my timeline down, you testified, I believe, that you started in the academy in 1991?

A.    Yes.

Q.    And were you taking psychology classes at Capital at the same time?

A.    No.

Q.    Oh, okay.  I see -- I see where I -- I mix that up.  Okay.  You were taking the Capital classes around the time of that patrol promotion?

A.    Yes.

Q.    And it sounded like you testified, sir, that you may have received some certifications through your employment?

A.    Yes.

Q.    Do you recall which certifications you

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

received?

A.   It's numerous, actually.  There's -- when I say certifications, a lot of the things were certificates presented at the end of training classes.

Q.   And to the best of your recollection, were those all internal trainings or did you do a mix of internal and external trainings?

A.   Periodically, there would be external trainings, but the largest majority were internal.

Q.   Okay.  And now, sir, there was also a burglaries division; is that correct?

A.   Yes.

Q.   In your own words, what's the distinction between the burglaries division and the Robbery Division?

A.   Robbery is the use of force or the threat of force to take property from a person.  Burglary would be responsible for basically a crime of trespass plus a offense committed in a structure.  So if a person is threatened or there's force used, then it would traditionally be a robbery.

     If it was what -- what most people would refer to as a break in or something like that of a house or a business, that would go to burglary.  So one is a crime against person.  The other is a crime against property.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   And just to clarify, sir.  The detectives that were under your purview, they didn't have assigned partners; is that correct?

A.   That's correct.

Q.   Sir, so as part of your training at the academy, you would've had various forms of police-work-related training; is that correct?

A.   Yes.

Q.   Okay.  As you sit here today, do you recall any -- or strike that, please.

As you sit here today, what topic areas do you specifically recall covering in your training at the academy?

A.   Well, the -- the -- it would -- it's so long of a list to -- the -- the state requires training in all fields of policing.  So it could be drunk driving training, defensive tactics, interacting with the elderly or assisting the handicap, first aid.  There are tremendous amount of -- of -- of subjects that are covered.

Q.   Okay.  No.  Yeah.  That -- that's fair.  I'll -- maybe I'll ask a couple specifics and see if you recall specifically covering that in your training.  Do you recall being trained on giving testimony in court?

A.   Yes.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2023
34

Q.    And do you recall being trained on interviewing witnesses?

A.    From what I recall, yes.

Q.    And do you recall being trained on interviewing suspects?

A.    From what I recall, yes.

Q.    Do you recall being trained on note-taking?

A.    No.

Q.    Okay.  Do you recall being trained on report writing?

A.    Yes.

Q.    Do you recall being trained on photo identification procedures?

A.    During the academy?  The time of the police academy?

Q.    Yes, sir.

A.    The initial training?  No, I do not.

Q.    Do you recall being trained on probable cause?

A.    Yes.

Q.    And do you recall being trained on the rights of criminal defendants?

A.    Yes.

Q.    Okay.  And now, sir, did you receive any additional specialized training when you received your patrol promotion?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   There was a two-week class for new supervisors.

Q.   And was that generally -- or sorry.  Strike that, please.

Were the trainings that you received as part of that two-week class generally on topics related to supervision and not, you know, lower-level patrol?

A.   Yes.

Q.   And did you receive any other specialized training when you got that promotion?

A.   Based on the promotion or after?

Q.   Yes, sir.

A.   Okay.  Based on the promotion, no.  There was no other specialized training that I remember.

Q.   And did you receive any specialized training when you were promoted to sergeant in the Robbery Division?

A.   No.

Q.   But it sounds like you testified, sir, that you received a number of certifications from training classes that you took throughout your career; is that correct?

A.   Yes.

Q.   Were these trainings that you elected to participate in?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

36

A.    Some.

Q.    Okay.  Do you recall which training -- or sorry.  Strike that, please.  So some of those trainings were mandatory?

A.    Yes.

Q.    Okay.  Do you recall which trainings were mandatory?

A.    Each year, we would have in-service training.  It would last from normally a couple of days to potentially a week, where all employees would be required to attend that.  And then there were other trainings throughout the years where you could either -- specialized training you could volunteer to go to.

Q.    And were there those mandatory in-service trainings in place throughout the entirety of your career with the Columbus Division of Police, or were they, you know, instituted at some point?

A.    There was a mandatory state required number of hours that has to be adhered to every year for police officer certification.

Q.    And as you sit here today, sir, do you recall any of the mandatory trainings that were provided for 2004?

A.    No, I do not.

Q.    As you sit here today, do you recall any of

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
—COURT REPORTERS—

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

the mandatory trainings for any point prior to 2004?

A.   No, I do not recall.

Q.   Okay.  And just to make sure I'm understanding.  This was mandatory for all officers, right?  It wasn't, you know, just patrol or just detectives.  It was everybody?

A.   Traditionally, the every year was for everybody.  Periodically, there may be a training where it was geared towards a certain part of the department.  Sometimes there might be something for detectives.  Sometimes there might be something for motorcycle officers or -- so -- we -- we -- there -- throughout the department, there was, from time to time, additional training provided.

Q.   Okay.  Sir, I'd like to ask you a couple of questions about the policies and practices for detectives under your purview back in 2004 as you understood them, okay?

A.   Okay.

Q.   Okay.  So can you explain to me, sir, how a robbery investigation would be assigned to a detective under your purview?

A.   Yes.  Typically, a call would come from the responding officers in patrol that were at a crime scene.  They would speak to a detective in the unit, and

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

the detective would respond to the scene.

Q. Okay. Would you ever have occasion to assign out a detective to investigate a robbery?

A. Yes.

Q. And can you walk me through what that process looks like?

A. It would basically be a -- a rare occasion where -- in our department, it was required that a detective was notified at the time if it was a felony crime against a person. Periodically, if there was a report that would come in in the morning without a detective assigned to it, which may have been either officer error or that no one was available at the time based on staffing, then I would assign that report to an -- a detective for follow up.

Q. I'm sorry. Taking a quick step back. In the instance where a call comes in and you know, the requesting officer speaks to a detective and that detective goes, was there a general line that the officer would call and then it would be dispatched to whoever was on shift, or how did that process work?

A. Yes. There was a general number for the robbery squad, which was a separate number from my office. So the call would come into the squad. And typically, they had a rotational system to who was up

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 152-9 Filed: 03/28/26 Page: 41 of 111 PAGEID #: 12658

for the next one. They try to fan out the responsibilities. The person taking the call generally would be the person that would respond to that crime.

Q. And I believe -- and I apologies if I'm misunderstanding. I believe you testified, sir, that if it were a felony crime, that you would be dispatching the detective?

A. No.

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I'm sorry. What'd you say, David?

MR. DIRISAMER: You can answer.

THE WITNESS: Okay. No, it wasn't me that would be -- it would be basically, if it was a -- they were required to make a call if it was a felony crime against person to notify a detective. Periodically, if I was to receive the report, which would be very rare because of that requirement, where there was no detective assigned to that report or no one notified at the time, then I would have to assign that report to someone based on caseload.

And that would only occur if the officer -- officer error or the officer forgot to call or maybe tried to call, but all the detectives were tied up



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

on other cases at the time and wasn't able to speak to someone.

BY MS. MARTINEZ:

Q.   Okay.  Now I understand.  Thank you.  And so, generally, most of the cases were assigned out through that first example you gave where a call comes in from the officer, it's assigned to a detective, and that detective goes and responds?

A.   Yes.  The -- the very largest majority of cases.

Q.   And in your experience, sir, in what instance might multiple detectives respond for a robbery investigation?

A.   Typically, it would be cases where there was -- it appeared from the call that there would be multiple tasks to accomplish or multiple witnesses to interview.

Q.   So it would generally be task-based?

A.   Yes.

Q.   Okay.  Would there ever be occasion to have multiple detectives assigned to investigate a robbery based on the severity of what had occurred?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Okay.  Not -- not based on the



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

severity.  That typically wasn't a determining factor.

BY MS. MARTINEZ:

Q.  So in your experience, sir, in 2004, approximately how many robbery investigations would detectives under your purview be working at a given time?

A.  I'm not able to recall what -- what the number would be on something like that.

Q.  Would it be fair to say that each detective is likely working more than one investigation at a time?

A.  Yes.

Q.  And in your -- actually, sorry.  Strike that, please.  In your experience, sir, were there ever certain detectives that worked more investigations than others?

A.  I don't understand what you mean.

Q.  Yeah.  No.  Fair.  That was a poorly worded question.  During your time as a sergeant, were there ever certain detectives under your purview who, you know, worked significantly more investigations than others or conversely, significantly less?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Okay.  No.  There were -- they



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

-- we tried to assign the cases on numerically based so that they were as equal as possible. There may be an occasion where a number of calls come in on one day and so there's a temporary number of cases that the person gets more on a given day. But traditionally, we kept a numerical score as to how many cases they had, and the cases were distributed to try to keep it as equal as possible.

BY MS. MARTINEZ:

Q. And sir, did detectives under your purview have any obligation to give you updates on the investigations that they were pursuing?

A. No.

Q. But if they had questions or concerns, they could come to you?

A. Yes.

Q. And was there ever any form of, you know, for example, roll call, where detectives would talk about investigations they were pursuing?

A. I would say the answer to -- I mean, it would be basically office talk in the morning. Not -- not an official roll call where they were asked to provide details. It would be basically office talk about maybe a case they had handled the day before, something like that.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. So it's just if the detective decides to bring it up in a conversation?

A. Yes.

Q. And when detectives under your purview are typing up police reports, whether it be progress reports or criminal investigation summaries, did those ever have to go to you for approval?

A. They -- we tried to review as many of those as we could, but based on the hours, the days off, and the -- the rest of the schedule, there was no requirement that they went through us.

Q. Okay. And if you did review a document, would you sign off somewhere or otherwise mark it as being reviewed?

A. Yes. Typically, on the outside of the packet that's -- that's kept, there would be a place for a supervisor review -- (coughs) excuse me -- supervisor review initials.

Q. Okay. But it was not a requirement for these reports to be filled out and approved; is that correct?

A. Yes, that's correct. It is not a requirement.

Q. And in your experience, when a detective under your purview has typed up a progress report, do they then have to submit it to you if you're available to review or would they put it in the investigative file

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

and then you could review it that way?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: They wouldn't -- they were not required to submit it to us.

BY MS. MARTINEZ:

Q. And was that also true for criminal investigation summaries?

A. Yes.

Q. And general offense case reports were done through the computer and a program that the Columbus Division of Police had; is that correct?

A. Yes.

Q. Okay. So those wouldn't go to you?

A. No. As far as being assigned to me?

Q. Yes, sir.

A. Or being reviewed by?

Q. Being reviewed by.

A. And are you speaking about the general -- the report that the officer makes or the report that the detective makes?

Q. The general offense case report that the officer makes.

A. Yes. The general offense report, when the officer makes it, the supervisor, it -- reviews those as

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

they -- as they appear each day.  That's part of the -- the duty of the supervisor is to review the cases during the -- as they're coming in.

Q.    Okay.  And is that -- are you talking about patrol?

A.    Yes.

Q.    And are you aware of the computer program that the Columbus Division of Police used back in 2004 for general offense case reports and DOT supplementaries?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Okay.  If it's the -- we -- we had a number of different reporting programs, and at some point, when I started -- so I don't want to get confused on the dates -- but when I started, we were still taking reports by hand in 2001.  And at one point, we went to a reporting system.  And so -- and I think we had that for a number of years.  Maybe a decade.  So if that's the reporting system that you're referring to, which at the time was called NetRMS, then -- then yes.

BY MS. MARTINEZ:

Q.    Okay.  And sir, as you sit here today, are you aware of whether there was any Columbus Division of Police policy on report writing in 2004?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   Yes.

Q.   Okay.  And what was the policy?

A.   It's very extensive, but there was a procedural -- we -- the department had standard operating procedures for every unit within the department.

Q.   And when you say every unit, you mean there was a specific standard operating procedure for the detectives bureau?

A.   That's true.  And then within the detective bureau, there was a secondary procedure for different units within that.

Q.   So would the robbery unit have its own standard operating procedure?

A.   As a supplement to the detective procedures, yes.

Q.   Okay.  And so, it's your belief that in 2004, somewhere in the standard operating procedures, there was a policy on report writing?

A.   From what I recall, yes.

Q.   Do you recall if it was in place when you were first made a sergeant of the Robbery Division in 2001?

A.   I remember procedures being in writing from the time that I started in 1991.

Q.   For report writing?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A. Right.

Q. Okay. And do you recall, sir, the last time you looked at any standard operating procedure that was in effect in 2004?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I don't recall that.

BY MS. MARTINEZ:

Q. Okay. Would it be fair to say that it was a number of years ago?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I can't recall, but it's -- yes, it -- I mean, that's 21 years ago, so I'm --

BY MS. MARTINEZ:

Q. And sir, in 2004, what did you understand the policy to be regarding detectives taking notes during a robbery investigation?

A. The policy -- I don't believe there was a policy on note-taking from what I can recall.

Q. Okay. As a sergeant, did you have any expectations for detectives under your purview concerning note-taking during a robbery investigation?

A. No.

Q. Would you agree, sir, that it would be

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

important for detectives to document the facts that they're learning about any given case during the investigation?

A. Yes.

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: Yes, I would agree that's important.

BY MS. MARTINEZ:

Q. Okay. And, in your own words, in your experience, why is that important?

A. So that the details of the cases can be recorded in some fashion.

Q. And would it be fair to say that it would also be helpful in terms of refreshing that officer's recollection down the road?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: Yes, I believe it would be helpful.

BY MS. MARTINEZ:

Q. And would it be fair to say that it would also be good practice to take notes because those notes could then be used against a criminal suspect at their subsequent trial?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I don't think there's a case where notes were used at a trial, handwritten notes, that I can recall.

BY MS. MARTINEZ:

Q. Was it generally your practice as a sergeant in the Robbery Division to attend the criminal trials for cases that your detectives worked?

A. No.

Q. Okay. So if handwritten notes were used, would it be fair to say it's probably not something you'd have known about?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: It would be something because I wasn't at the trial that I wouldn't have known about.

BY MS. MARTINEZ:

Q. And in your experience, sir, if a victim had given one of your detectives the name of someone they believed to be the perpetrator, that's information you would expect them to document, correct?

MR. DIRISAMER: Objection. You can answer if you can.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   And if a detective under your purview received a lead on who the perpetrator may be, would you expect that detective to follow up on that lead?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   And would you expect that detective to follow up on that lead as soon as feasibly possible?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  As soon as possible, yes.

BY MS. MARTINEZ:

Q.   And is it a fair statement to say that it's important to move quickly in a robbery investigation to flesh out leads before they disappear?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I don't -- I would say no.  The speed -- the speed of that is not -- is -- is not what's important.  It's the accuracy.

BY MS. MARTINEZ:

Q.   With the caveat that it's happening as soon as

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

possible; is that correct?

A.   Yes.

Q.   And, sir, were you aware of any Columbus Division of Police policy in 2004 that required detectives to timely document their investigations in official police reports?

A.   I can't recall.

MR. DIRISAMER:  Objection.  Answer if you can.

THE WITNESS:  I'm sorry.  I can't recall if that -- I can't recall from that time.

BY MS. MARTINEZ:

Q.   Okay.  Would you be concerned, sir, if you'd learned that a detective under your purview did not fill out any form of official police report pertaining to a robbery investigation until months after that robbery had occurred and after a suspect had been arrested?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No.  Just depending on the cases, depending on when the information comes in. There are quite often that a case is being worked and information comes in at a later time.

BY MS. MARTINEZ:

Q.   And what if -- and I know I'm asking you hypotheticals here.  What if that information had come

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

in at the outset of the investigation and it just wasn't memorialized in any form of police report until months later?

        MR. DIRISAMER:  Objection.  You can answer if you can.

        THE WITNESS:  It would depend on caseload and the information on each case and what else was pending as far as the time to have that recorded.

BY MS. MARTINEZ:

    Q.   Okay.  So it's fair to say that you could see a world in which that would not be inappropriate to wait that long before documenting anything.  Is that your testimony?

        MR. DIRISAMER:  Objection.  You can answer if you can.

        THE WITNESS:  Yes, I would say that there may be occasions where that might happen.

BY MS. MARTINEZ:

    Q.   Okay.  Would it be fair to say then that the flip is also true, that there may be occasions in which the circumstances mean that that was not an appropriate amount of time to wait?

        MR. DIRISAMER:  Objection.  You can answer if you can.

        THE WITNESS:  Once again, it's based on

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

caseload.  And so, if a detective had information and there was nothing else during that time, they would most likely start processing that information.

BY MS. MARTINEZ:

Q.    Sure.  Yeah.  And let me try to rephrase.  You know, I -- I've got your testimony that, you know, there are definitely circumstances that exist, which, you know, that would be an appropriate time frame.  My question is then the converse.  Would it be a fair statement to say that there are also circumstances under which that would not be an appropriate time frame?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.    Okay.  And in your experience, sir, is there ever occasion where a detective does not have to formally document material information that they learned in a police report?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.    Okay.  And what circumstances might those be?

A.    It would be something to where information

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

that was not actually germane to the case would be -- something that wasn't germane to the case, that didn't -- that once -- once the person looked at it, that it didn't relate to the case.

Q. Okay. Well, let me take a step back. Do you understand what I mean, sir, when I say material information?

A. Yes.

Q. Okay. And in your experience, what does that term mean to you?

A. Well, it means any information that is -- would be germane. It would be anything that is pertaining to the case that would be relevant. At times, though, things that are reported at the time of the initial report that the -- initially might be investigated, might not actually be something that is actually for that case.

Q. Okay, understood. So in that circumstance, the detective would not have an obligation to include that in a formal police report?

A. Yes.

Q. Okay. Can you think of any other instance under which material information does not need to be included in a formal police report?

MR. DIRISAMER: Objection. You can answer if

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you can.

THE WITNESS:  No, I can't think of another reason.

MS. MARTINEZ:  Okay.

MR. DIRISAMER:  Alyssa, are we -- am I close to a breaking point?

MS. MARTINEZ:  Yeah.  I've only -- I've maybe got three more questions in this line and then we can -- does that sound good?

MR. DIRISAMER:  Yeah.

MS. MARTINEZ:  Okay.

BY MS. MARTINEZ:

Q.  All right, sir, do you -- sorry, strike that, please.  Do you understand -- strike that as well, please.  Do you have an understanding of the term exculpatory evidence?

A.  Yes.

Q.  Okay.  And what does that mean to you in your experience, in your own words?

A.  It'd be any evidence that's beneficial to the defendant.

Q.  Okay.  And in your experience, sir, under what circumstances can a detective not include exculpatory evidence in a formal police report?

MR. DIRISAMER:  Objection.  You can answer if

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you can.

THE WITNESS: I'm not aware of any.

MS. MARTINEZ: Actually, now's a good -- now's a good pause point because we're going to turn over into something else.

THE REPORTER: Okay. We're going off record. The time is 3:08 p.m.

(A recess was taken.)

THE REPORTER: We are back on record for the deposition of Shaun Laird being conducted via videoconference. My name's Emma McGaha. Today is 8-26-25, and the time is 3:13 p.m. Thank you.

MS. MARTINEZ: Okay.

BY MS. MARTINEZ:

Q. Taking a quick step back, sir, if a detective under your purview was overwhelmed with the number of cases they were working and needed assistance, what would you expect them to do?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: They would come to the supervisor and advise the supervisor of the caseload.

BY MS. MARTINEZ:

Q. And what would you then do in response?

A. Supervisor --

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

MR. DIRISAMER:  Objection.  You can answer.

THE WITNESS:  I'm sorry.  Supervisor would review what their caseload was and see if there was any way that they could be helped.

BY MS. MARTINEZ:

Q.    And do you recall this ever happening during your time as a sergeant in the Robbery Division?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I can't recall specific times, no.

BY MS. MARTINEZ:

Q.    And you testified earlier, sir, I believe, that sometimes you would review police reports; is that correct?

A.    Yes.

Q.    And was that in the instance where officers submitted them for approval -- strike that, please.

Was that in the instance where detectives would submit them for approval?

A.    Yes.  Detectives would forward packages to the prosecutor on completed cases and periodically, time permitting, part of the duties were to try to review some of those.

Q.    And what was your responsibility in reviewing



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

those documents?  For example, are you reviewing them for accuracy?

A.  Yes.  You would review them for accuracy, do, you know, the logic and the reasoning, grammatical mistakes, things like that.

Q.  And when you would review for accuracy, would that have to be for investigations that you had assisted on?

A.  No.

Q.  Okay.  How else would you review for accuracy, sir?

A.  As the detectives, the ones that are assigned to me, as they were completing packages, periodically, those would be reviewed.  So it wouldn't be ones that I necessarily went to.  It would be things that I reviewed after the fact.

Q.  Okay.  I -- I'm sorry.  I -- I think I'm misunderstanding something.  So when you're reviewing these packets after the entire investigation has occurred, and there's been some arrest of a criminal defendant, you would then review those packets for accuracy.

And my question is: How would you know what was accurate and what wasn't if you were not a part of that investigation?

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   In many cases, you would know on the actual details.  You'd be looking for accuracy.  A lot of times, like I said, grammatical things, are the sentences making sense, are they describing the case in enough detail, things like that.

Q.   Okay.  Now I understand.  And was there anything that would determine which packets are being reviewed and which packets aren't?

A.   No, it was a case by case basis based on caseload and time permitting.

Q.   And would it be the detective who requested the review or would it be someone from the prosecutor's office?

A.   It would --

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  It would just be a -- a self-imposed review by the supervisor.

BY MS. MARTINEZ:

Q.   Okay.  So when you say self-imposed, you would elect which packets to review?

A.   Yes, time permitting.  If there was documents to -- that could be reviewed, I would try to review some of the cases time permitting.

Q.   Okay.  And approximately how frequently in

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

your practice would you self-elect to review a packet? Was it something you did weekly?

A.    I would -- it's hard to -- to give a -- a timeline on that based on caseload and other work-related duties.  It would just be a periodical review of different cases in the -- in the scope of the month or something like that.

Q.    And these were all cases that had closed in that time period?

A.    Yeah.  So it would be mostly cases that had closed, or you could look online on the computer to look at different cases to see how they're being progressed or the -- those same type of things.  You're looking for the logic and the reason of -- of what they're presenting and then grammatical mistakes and -- and grammar, things like that.

Q.    And I believe you testified that if you did this review, you would've signed somewhere on the packet?

A.    Yes.  On the arrest packets, there was a specific place for supervisors to put their initials.

Q.    And I believe you said you could review where cases were at online.  Can you speak a little bit to that and what that looked like?

A.    Yes.  Once the system was electronic to where,

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

like I said, when I started we were still taking paper reports. Once it was electronic, you could go in and look at detectives cases. You know, for instance, you could look at their name, pull up cases, and then review documents in those cases. We -- as you're looking at each one, you can pull up individual documents that had been saved.

Q. And do you recall in what year that online platform became available?

A. That's what I was trying to say earlier. I -- I can't recall exactly. It was around the time of -- I -- from what I remember, it was in the early -- the mid-2000s from what I believe. But I am not sure of the date.

Q. And as you sit here today, sir, would it be a fair statement to say that you're not aware if this platform was live in October of 2004?

A. That is a fair statement. I -- I do not know that.

Q. Okay. Would it be fair to say that there would be a record somewhere of this platform if it existed in October of 2004?

MR. DIRISAMER: Objection. You can answer if you know.

THE WITNESS: I do not know.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q.   And so, when you're using this online platform and you're looking through cases, would you review those packets on the computer, or would you use the computer to check out the investigations and then review the physical packet?

A.   It could be either.

Q.   So the entirety of the physical packet would also be available on the computer?

MR. DIRISAMER:  Objection.  You can answer if you know.

THE WITNESS:  I -- I -- especially at that point, so you -- it was a -- there have been a number of systems.  There was a switch in the report system, and then we're talking early online days at the time where there's a whole lot of documents that -- at the time that weren't uploaded to the computer, just based on computer technology. Nothing about the investigation.  I can't tell you during that timeline of all those years of when any of that stuff would've -- would've been available.

BY MS. MARTINEZ:

Q.   Okay.  And prior to that online platform being available, have you testified that detectives would write up their reports or would they write them up and

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

then someone would type those notes?

A. Typically, they were typing most of their work themselves. I can't remember. Some detectives used the dictation machine and had a typist. But majority of them still type them up. And all of it, of course, had to be typed for court purposes. But the initial reports at the time in those early years of the 2000s were -- initials [sic] reports were done by hand --

Q. Okay.

A. -- by patrol.

Q. And, oh, apologies. I didn't mean to cut you off, sir.

A. Yeah. By patrol. So patrol would generate the original report, and it would be out in the field with a clipboard writing it out. And then detectives would either type or use a typist to have their work completed.

Q. Okay. And the practice you referenced of detectives, you know, either typing up their own notes or having a -- a typist type them up, was that before this online platform and the switch to all reports being electronic?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I -- it certainly was, you know,

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

the handwritten note -- I mean, I think handwritten notes are all throughout the course of time. Because, obviously, when you're in the field interviewing a witness in a house, you're not working on a -- you're not typically working on a computer.

So we usually -- the witness especially then doing it with technology, there was no handheld anything. There was no -- typically, the victim would have to -- to have it on a computer. In those early days, they'd have to come out to the cruiser, and the officer would either have to write it down and input it in the cruiser or the victim would have to come to the cruiser and they would do it at the time within the cruiser.

Because that was the only type of computer at that time. There wasn't anything handheld. So it was very typical for officers or detectives to take handwritten notes at the scene.

BY MS. MARTINEZ:

Q. Okay. No, that's -- that's helpful. And let me try to rephrase my question. So in -- strike that, please.

The practice that we were just discussing where detectives would take those handwritten notes to

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
— COURT REPORTERS —

type up their formal police reports or have someone else type them up, was that practice before the change to this online platform where all reports are submitted electronically?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- I don't think the practice ever ended, because if you're -- if you're there talking to somebody in the alley, you usually don't have a computer.  You usually have a notepad, and you're writing down what they said.  So I think that still goes on today.  I -- I -- I wouldn't imagine there's any other -- that somebody's typing it out while the victim's saying it in the -- as you're taking that information at the scene.

BY MS. MARTINEZ:

Q.  Okay.  Sure.  Yeah.  And let me -- sorry.  Let me try to rephrase again.  I think I'm -- I'm -- I'm leading us off course.  So you testified, right, at a certain point it became electronic, and all police reports were submitted through that program, including progress reports and criminal investigation summaries; is that correct?

A.  Yes.

Q.  Okay.  And so, before that, we were discussing

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

that there was a practice of how the detectives would type those reports by hand or have someone else type those reports by hand; is that correct?

A.    Yes.

Q.    Okay.  Understood.  Okay.  And apologies if I already asked you this, sir.  Are you aware of any Columbus Division of Police policy in 2004 that required detectives to document exculpatory evidence that was collected during a robbery investigation?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I can't recall something from that time.

BY MS. MARTINEZ:

Q.    Okay.  And are you aware of any Columbus Division of Police policy from 2004 that were required detectives to disclose that exculpatory evidence to the prosecutor's office?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I can't recall if there was a policy such as that at that time.

BY MS. MARTINEZ:

Q.    Okay.  And to the best of your recollection, sir, in 2004, when a detective under your purview had

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

completed an investigation that resulted in the arrest of a suspect, how would the detective get that investigative file to the prosecutor's office?

A.   They would -- after they had finished the process, then we had a -- a unit that would take the finished packets down to the prosecutor's office.  So they would have a -- a slot to put them in.

Once they were completed in the -- in the office, in -- in the -- the administrative office of the detective bureau, and then those packets would be transported to the prosecutor's office by a division employee whose job it was to take communication from the prosecutor's office and bring it in and also to take what we had to bring to them.

Q.   Okay.  So just to make sure I'm understanding, you said there was a unit that was responsible for housing the finished packets; is that correct?

A.   No.

Q.   No.  Okay.

A.   So there was a division employee that was responsible for communication between the prosecutor's office and -- and our office.  And so, someone had no other role but to essentially pick up the mail and take it to them and pick up their mail and take it to us.

Q.   Okay.  And do you believe that this was the

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

practice that was in place in 2004?

A.   Yes.

Q.   Okay.  And when you say, take the mail back and forth, what -- strike that, please.

When you say take the mail back and forth, would that also then include packets or investigative files that were being sent to the prosecutor's office?

A.   Yes.

Q.   Okay.  And so, that investigative file would be given to that division employee who was the liaison by the detective who had investigated the robbery?

A.   They wouldn't give it to them directly.  There was a slot for different documents within our department where that person would pick up those documents and take them.

Q.   Okay.  And then, that file then goes to the prosecutor's office.  Would you -- or strike that, please.  Would the Robbery Division ever retain a copy of that file anywhere?

A.   Yeah.

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes, we did.  Every file was done in duplicate, one for the prosecutor and one for our own records within the office.



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. MARTINEZ:

Q.   Okay.  And was it the responsibility of whoever the lead detective was for an investigation to make that copy and then turn over the prosecutor's file?

A.   Yes.

Q.   And once that file is turned over to the prosecutor's office, would it ever be sent back for any reason?

A.   Not that I can think of.  No reason that I can ever imagine.

Q.   Okay.  And then, the -- that duplicate file that was kept by the Robbery Division, where would that file be stored?

A.   It would be stored in the Robbery Squad office.

Q.   And as you sit here today, sir, do you know what the retention policy was for those files in 2004?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No, I do not remember what the retention policy was at that time.

BY MS. MARTINEZ:

Q.   Okay.  Sorry, I'm just scrolling through my notes really quickly.  We've covered quite a bit.  And as you sit here today, sir, my last question on this



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

topic, are you aware of any Columbus Division of Police policy in place in 2006 that governed the disclosure of documents for reports or lab findings that occurred after a suspect had been arrested?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: No, I don't recall what the policies would've been.

BY MS. MARTINEZ:

Q. Okay. Just a few more policy and practice questions for you, sir. In 2004, what was your understanding of the policy or practice regarding photo identification procedures?

A. I don't recall what the procedures would've been at that time.

Q. And do you recall any policy or practice concerning fillers that go into a photo array?

A. I can't remember what the policy was at that time.

Q. Would it be a fair statement, sir, that it was important to select fillers who resemble the suspect?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: Yes.

BY MS. MARTINEZ:

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.   And would it be fair to say that it's important not to influence the witness in who to select?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  Yes.

BY MS. MARTINEZ:

Q.   And would it have been the responsibility of the tech -- strike that, please.

Would it have been the responsibility of the detectives under your purview to ensure that they were choosing appropriate fillers in the photo arrays that they were creating?

A.   Yes.

Q.   And in your experience, sir, if you had learned that a detective under your purview had created a suggestive photo array, what would you do?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  So you're asking on a hypothetical -- you're asking a hypothetical question?

MS. MARTINEZ:  Yes, sir.

THE WITNESS:  If I was to know that there was a problem with a -- a suggestive photo array or some type of procedure like that, it would be the

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

supervisor's job to step into that.

BY MS. MARTINEZ:

Q. And when you say step in, would that include talking with the detective about it?

A. Yes. It would be talking with the detective. It would be looking at -- potentially could be looking at training, looking at a detective's understanding of the procedures, and then -- and/or obviously coming up with a remedy for that situation before the case can go forward.

Q. And do you recall ever learning during your career, sir, about a detective under your purview creating a suggestive photo array?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I never remember a time where that was an issue.

BY MS. MARTINEZ:

Q. Okay. And during your time with the Columbus Division of Police, were you ever made aware of any detective telling a witness when showing that witness a photo array, this is the person police think did it?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I never remember a time where

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

that occurred.

BY MS. MARTINEZ:

Q. Would you agree that that would be improper?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: Yes, that would be improper.

BY MS. MARTINEZ:

Q. And during your time with the Columbus Division of Police, sir, were you ever made aware of any detective intentionally using fillers with physical characteristics that did not match the suspect in order to have the suspect stand out in the photo array?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: No, I am unaware of any time where that occurred.

BY MS. MARTINEZ:

Q. Would you agree that that would be improper?

MR. DIRISAMER: Objection.

THE WITNESS: Yes, I agree that would be improper.

BY MS. MARTINEZ:

Q. And during your time with the Columbus Division of Police, sir, were you ever made aware of any detective showing a single photograph of the suspect to

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 152-9 Filed: 03/28/26 Page: 76 of 111 PAGEID #: 12693

a witness before then showing that same suspect in a photo array to that same witness?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I am unaware of a detective ever doing that.

BY MS. MARTINEZ:

Q. And would you agree that that would be improper?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: Yes, that would be improper.

BY MS. MARTINEZ:

Q. And sir, have you ever heard of the Supreme Court case Brady v. Maryland?

A. Yes.

Q. Okay. And do you recall being trained on what that case obliges police to do pursuant to their investigations?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I can't recall specific -- specific training on Brady.

BY MS. MARTINEZ:

Q. Okay. Would it be fair to say that you

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

would've followed the mandates of Brady during your time as an officer with the Columbus Division of Police?

A.   Yes.

Q.   Okay.  Now, sir, turning to the Loew Street robbery.  And there are a couple documents I want to quickly show you.  But were you involved in the Loew Street robbery investigation in any way?

A.   I don't remember being involved in that investigation.

Q.   Okay.  And I know I asked you about preparation for your deposition, but now a bit more generally, outside of your counsel, have you spoken with anyone about the Loew Street robbery?

A.   No.

Q.   Okay.  So it'd be fair to say that you have no personal knowledge of anything related to the Loew Street robbery investigation?

A.   No.

Q.   Oh, sorry.  I think we --

A.   Oh.  Yes, it -- it is -- I do not have any knowledge to this case.

Q.   Okay.  Thank you, sir.

A.   From what I recall.

Q.   Okay.  So I'm going to show you, sir, what we'll mark as Exhibit 1.  Oh.  That is the wrong thing.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of SHAUN LAIRD, taken on August 26, 2025

76

All right.  Can you see my screen, sir?

(Exhibit 1 was marked for identification.)

A.  Yes.

BY MS. MARTINEZ:

Q.  Okay.  And let me know if you'd like me to zoom in a little bit further or zoom out, okay?

A.  Okay.

Q.  So do you see at this top here, where it says, "DEFENDANT'S FIFTH SUPPLEMENTAL RULE 26(A)(1)(A) DISCLOSURES"?

A.  Yes.

Q.  Okay.  So I'm going to represent to you, sir, that this was a document created by defendants in this case listing persons who may have knowledge pertaining to the case, okay?

A.  Okay.

Q.  So I'm going to go down to Page 15.  And do you see your name right here, sir?

A.  Yes.

Q.  Okay.  I'm just going to read this little section, if you'd like to follow along, and then ask you a few follow-up questions, okay?

A.  Okay.

Q.  "52.  Retired Sergeant Shaun Laird.  Sergeant Laird worked in the Columbus Division of Police's

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Robbery Unit, and, for a time, was the supervisor of Detective Brenda Walker.  Sergeant Laird has knowledge of Detective Brenda Walker's work in the Robbery Unit as well as the policies, practices, customs, and training of detectives in the Columbus Division of Police's Robbery Unit."  Okay.  Did I read that correctly, sir?

A.    Yes.

Q.    Okay.  So I'm going to stop sharing my screen.  So sir, what knowledge do you have of Detective Brenda Walker's employment?

A.    As it -- can you be more specific on that?

Q.    Sure.  So you were Detective Walker's supervisor on first shift, correct?

A.    Yes.

Q.    Do you recall if Detective Walker was already in the Robbery Division when you joined?

A.    Yes, she was.

Q.    Okay.  And do you recall how long Detective Walker was with the Robbery Division?

A.    I am not certain how long she had been there prior, but I remember actually dealing with her as an officer prior to my promotion in '97 as a -- I was a patrol officer, and I remember she was a detective when I was a patrol officer.

Q.    Oh, okay.  So you would have some interactions

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

on robbery crime scenes where she would be called out?

A. That's correct.

Q. Okay. Did you ever have any other interactions with her while you were a patrol officer?

A. No.

Q. But -- so when you joined the Robbery Division, you were her supervisor on first watch?

A. That's correct.

Q. Okay. And do you recall how long you were her supervisor on first watch?

A. Since when I started in '01. And then, at one point, she transferred to court liaison, our court liaison unit, in some fashion. And I can't remember what year that was, but it was -- I mean, I think we worked together for at least a decade or more.

Q. And to the best of your knowledge, were you on the same shift the entirety of that time?

A. Yes, I was.

Q. Okay. And did you ever directly investigate a robbery investigation with Detective Walker?

A. There were times -- a few times where I was at a scene where she was processing the scene.

Q. And as you say here today, do you recall why you as a sergeant were at the scene at the time?

A. Typically, the -- like we spoke about earlier,

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

it would usually cases that were going to get a lot of media attention, or the maybe just that I was -- happened to be outside of headquarters and could stop by to see if they needed anything.

Q. Were you involved with the evaluations of Detective Walker while she was in the robbery unit?

A. Yes, I was.

Q. And as you were her sergeant, would you be the only supervisor involved, or would other supervisors also be involved in the evaluation process?

A. The evaluation process is only the direct supervisor. It's reviewed through the bosses as it goes up the chain of command, but it's -- the initial evaluation is done solely by the immediate supervisor.

Q. Okay. And as her supervisor, would you ever observe her trainings while she was in the robbery unit, or was that up to each individual detective?

A. So the trainings were done at -- typically at the academy. Police academy. So it'd be lecture-style trainings. Each year, we were scheduled for those, and then that person would attend the training on the given day. And so, I wasn't -- I wouldn't have -- unless it just coincidentally I happened to be there at the same time. It's a training of 1,900 employees. And so, different people are scheduled on different days, and it

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

usually runs a couple of months.

Q.   And is that the mandatory service training you referred to earlier?

A.   Right.  That would be the mandatory service training.  If there were other classes that she had attended, either electives at the academy, it would -- once again, it would just be a coincidental thing where I'd be supervising her or being there while she's getting trained as well.

Q.   Okay.  And sir, if a disciplinary complaint were filed by a citizen against one of your detectives, is that something you would've been made aware of?

A.   Yes.

Q.   Would it have been your responsibility to investigate those complaints, or would that have been a separate division's responsibility?

A.   It would depend on the nature of the complaint.  So certain things were handled by internal affairs and certain complaints of a lesser extent were handled by the immediate supervisor.

Q.   Do you recall ever receiving a citizen complaint for Detective Walker?

A.   Not that I can recall.

Q.   Okay.  But to the extent those existed, would you have been made aware of them as her direct

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

supervisor?

A.   Yes, I would've been made aware.

Q.   Okay.  And as you sit here today, sir, are you aware of any disciplinary complaints that were filed against her by another officer?

A.   Nothing that I can remember.

Q.   Okay.  And same for those.  If -- if that complaint had occurred, would it be something you were made aware of?

A.   Yes.

Q.   And are you aware of any disciplinary complaints being filed against her by her employer, being the Columbus City -- strike that, please.

Are you aware of any disciplinary complaints that were filed against her by her employer?

A.   No, I am not aware of -- of any.

Q.   Okay.  And would those have also come through you?

A.   Yes.

Q.   Okay.  So as you sit here today, sir, is it fair to say you have no recollection of a disciplinary complaint being filed against Detective Walker by a supervisor for insubordination?

A.   No, I'm not aware of --

MR. DIRISAMER:  Objection.  You can answer if

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you can.

THE WITNESS:  I don't -- I wouldn't -- I don't recall anything.  I -- I don't remember anything like that.

BY MS. MARTINEZ:

Q.    Okay.  And are you aware of any disciplinary actions that were imposed upon Detective Walker as the result of any complaint?

A.    Nothing that I can recall.

Q.    And now, sir, what is your professional opinion of Detective Walker in her capacity as a detective?

A.    I believe she was a very thorough person.  She was a very knowledgeable person.  I always looked at her, as I did with my entire unit, as objective fact finders.  I'd never had any complaints from the prosecutor's office on completed work that she had done. I'm unaware of any cases that were returned or there was a problem during prosecution.  She was a very good employee, and I think she was very thorough and accurate.

Q.    Just to, again, make sure I'm getting her testimony clear, sir, as you say here today, you don't recall ever receiving a complaint from the prosecutor's office pertaining to Detective Walker?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   That's correct.

Q.   Okay.  And sir, you testified that all of the detectives under your purview were objective fact finders.  Did you ever have a detective under your purview that you believed was not meeting the mark of what a detective should be?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- periodically, there may be detectives that need help in certain ways.  I can't recall any specific situations.  But just like with any assignment, not everyone absorbs the work immediately or sometimes people need additional training.  And there are certain nuances as far as, like, for example, interviews -- interviews with suspects or -- or victims that -- where -- where people need additional training.

I can't -- I can't recall any of those situations, but it would be -- it would be -- I guess, in the course of 21 years, to think that there was never a time where an employee needed a little extra training, that would probably be -- it would probably be very realistic to believe that, yeah.

BY MS. MARTINEZ:

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q.    And, sir, do you recognize the name Sam Sias?

A.    Yes.

Q.    Okay.  And who was Detective Sias?

A.    He was a detective.  I -- from what I remember, he was assigned to third shift.  He was in our unit for a short period of time.

Q.    And as you sit here today, do you have any professional opinion about Detective Sias?

A.    I wasn't -- I wasn't around him enough to know hardly anything about him.

Q.    And sir, do you recognize the name Bradley Thomas?

A.    Yes, I do.

Q.    And who do you understand Detective Thomas to be?

A.    He was actually a detective that worked -- that I supervised for a number of years before I retired.

Q.    And he was on second shift; is that correct?

A.    I believe -- well, I -- I should say, he moved -- there were a number of different moves that he made from shift to shift.  Eventually, he ended up on first. I can't recall what shift he was on at the time.

Q.    Okay.  But you were his direct supervisor, I believe you said for a number of years?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   At the -- at the end of his -- at the end of my time, he had transferred at one point to first shift robbery, and then he became my -- my -- I became his direct supervisor.

Q.   (Sneezes).  Oh, apologies.  Okay.  And do you have a professional opinion on Bradley Thomas as a detective?

A.   Yes, I do.  He was also a very thorough -- like I said, he's a very objective person.  He understood case law.  He understood the cases that he investigated.  His work was very thorough.  And I always had positive comments from the prosecutor's office about his work.

Q.   And actually, taking a very quick step back, sir.  During your time as a sergeant with the Robbery Division, if the prosecutor's office wanted a detective to do some kind of follow-up investigating for a case they were trying that pertained to a robbery, would they put that call into you?

A.   No.  They would contact the detective -- typically, they'd contact the person directly.

Q.   And would they ask that person to do the follow-up work or might it be assigned out to somebody else?

A.   Based on caseload, it could be assigned to

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

somebody else. But typically, the majority of the time, it would've went back to the detective that had the case.

Q. And sir, did you ever have any form of social relationship with Detective Walker outside of work?

A. Yes.

Q. And can you tell me a little bit about that?

A. There would be times periodically. For instance, there was a golf tournament we'd play in each year, where -- once a year, you know? Periodically, we would have an event where some of the people from the unit would see each other at a party or something like that.

Q. Would you -- or strike that, please. At any point during your work with Detective Walker, would you ever have considered her a friend?

A. I would say I would consider her a friend, yes.

Q. And would you still consider her a friend today?

A. Yes.

Q. And when was the last time that you spoke with Detective Walker?

A. Two weeks ago.

Q. Two week. And did you talk at all about your

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

deposition here today?

A.    No.

Q.    Did you talk about this case at all?

A.    No.

Q.    Did you talk about the Loew Street robbery?

A.    No.

Q.    In what context did you see Detective Walker?

A.    It was at a funeral.

Q.    Oh, I'm sorry to hear that.

A.    It's okay.

Q.    And prior to that, when was the last time you'd spoken with Detective Walker?

A.    I'm going to say February last -- last February.

Q.    And was that similarly at some kind of social gathering?

A.    Yes.  It was a police reunion.

Q.    Okay.  In the last several years, have you and Detective Walker ever hung out just the two of you or your families together?

A.    No.  Not that I can remember, no.

Q.    Well, sir, is there anything else you can tell me about Detective Walker's employment with the Columbus Division of Police today?  Outside of what we've already talked about?

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
—COURT REPORTERS—

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

A.   No.  Like I said, it was all positive.

Q.   All right.  And I believe you testified earlier, sir, that as you say here today, you don't recall what the formal policies in place were back in 2004; is that correct?

A.   That's correct.

MR. DIRISAMER:  Objection.  You can answer if you can.

BY MS. MARTINEZ:

Q.   Okay.  And --

THE WITNESS:  That's correct.

BY MS. MARTINEZ:

Q.   Okay.  And I believe you also testified that you don't recall any of the specific mandatory trainings from 2004 or prior; is that correct?

A.   Yes, that's correct.

Q.   Okay.  Was there any mechanism by which supervisors like yourself, a sergeant in the Robbery Division, would monitor detectives' compliance with policies and procedures

A.   In the course of the -- you know, in the course of everyday supervision, you're -- you're -- you know, you're seeing behaviors that you're -- are -- have to be in compliance.  So it could be anything. Yeah.  So yes.  The answer is yes.  Yeah.

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Q. And it was just in the day to day?

A. The day to day.

Q. And I don't recall if I've asked you this, sir. As you sit here today, do you recall any of those optional elective trainings that were offered by the Columbus Division of Police in 2004 or before?

A. No, I can't recall what they would've been.

Q. Okay. And sir, do you recall -- actually, sorry. Strike that, please. Sir, do you know who Sergeant Kirk Alt is?

A. Yes.

Q. Okay. And what is your understanding of who Sergeant Alt is?

A. In the time that I -- I can't picture him by face, but he had to call to ask questions about this case.

Q. And were his questions about certain policies that may have been in place back in 2004?

A. From what I remember, yeah.

Q. Okay. Do you recall anything else about that conversation with Sergeant Alt?

A. I think he asked about procedures. He asked about, you know, if I still had copies of any of this -- these kind of things, which I don't. It was -- it was things like that in preparation to try to prepare

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

the documents that were needed, whatever documents existed for this case.

Q. And did you give Sergeant Alt all of the information that you had on the policies and procedures?

A. Yes. I -- I gave him what I remembered.

Q. Okay. Okay. Then outside of everything we've discussed so far, sir, is there anything else that you can tell me about the policies, practices, customs, or trainings of the Columbus Division of Police from back in 2004?

A. No. I -- I'm not able to recall what those policies and procedures were at that time.

Q. Okay. I'm going to show you the second of our two exhibits, sir. It's Bates stamped CITY 9527. Okay. Oh, no. That's not it. There we go. Okay. Are you able to see this, sir?

(Exhibit 2 was marked for identification.)

A. Yes.

BY MS. MARTINEZ:

Q. Okay. I'm going to quickly down so you can actually see the beginning of the chain, and then I'll scroll up so you have a chance to see the whole document, okay?

A. Okay. I see Jon Schrig. Okay. Okay.

Q. And I'll scroll up so you can see the rest of

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

it.

A.   Okay.

Q.   Do you recognize this document, sir?

A.   I -- I do not remember this conversation with Jon, no.

Q.   Okay.  But --

A.   But I mean, it's definitely from my e-mail address, yeah.

Q.   Oh, okay.  Great.  And it was sent Wednesday, November 13th, 2019?

A.   Okay.

Q.   Okay.  So do you -- or strike that, please.

You testified that you don't recall this specific communication with Jon, correct?

A.   Yes.

Q.   Okay.  Do you see where it references the prosecutor's office is calling concerning robbery case folder 552-04?

A.   Yes.

Q.   Do you have any memories you sit here today of speaking with the prosecutor's office about this case folder?

A.   No, I don't.

Q.   Okay.  And in your experience, sir, in what circumstances might you be asked to pull an old case and

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

review it?

A.   I --

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  I -- I can't -- I mean, I -- I can't remember what it was on this case.  Obviously, someone had contacted me about something about this case.  The files are kept in a warehouse after -- the retention for the files are kept in a warehouse after a certain amount of time because of the -- the size of storage of physical -- of physical files.

And so, it appears from the e-mail that someone from the prosecutor had called, asked about this case, and then I was communicating with Ed Tuller, Clarence Tuller, on -- he was the clerk assigned to the file area, and Jon Schrig was his supervisor.  And so, looking at this, someone had called.

I was contacting the person that was in charge of pulling that from our records warehouse.  And then, the -- and then, it appears that Jon Schrig was getting ahold of me to say that it was ready to be picked up.

BY MS. MARTINEZ:

Q.   I mean, predicted my next several questions.  But sir, can you think of any other instance in which

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

you were contacted to review a case file that was on appeal?

MR. DIRISAMER: Objection. You can answer if you can.

THE WITNESS: I -- I can't remember that.

MS. MARTINEZ: I'm going to stop sharing my screen. And how about we take a quick five-minute break so I can go over my notes and see if I've got anything else for you? Does that sound good?

MR. DIRISAMER: Yep.

THE REPORTER: We're going off record. The time is 4:00.

(A recess was taken.)

THE REPORTER: We are back on record for the deposition of Shaun Laird, being conducted via videoconference. My name is Emma McGaha. Today is 8-26-25 and the time is 4:04 p.m. Eastern. Thank you.

BY MS. MARTINEZ:

Q. Okay. So before the break, sir, I showed you that e-mail chain. And you testified that you have no memory of that correspondence or talking with the prosecutor's office about this case; is that correct?

A. That's right.

Q. Okay. So kind of taking a step more broadly,

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

do you have any memory whatsoever of any involvement in the appeals that took place in Mr. Horton's criminal case?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No, I -- I didn't -- I didn't know anything about it.

BY MS. MARTINEZ:

Q.   Okay.  And sir, do you recall learning back in 2004 that there was a local gang committing a string of robberies and home invasions across Columbus?

MR. DIRISAMER:  Objection.  You can answer if you can.

THE WITNESS:  No, I don't remember that.

MS. MARTINEZ:  Okay.  Those are all of the questions that I have for you, sir.  Thank you so much for your time this afternoon.  I'm going to turn it over to your counsel.

MR. DIRISAMER:  Thank you.  I -- we have no questions at this time.

THE REPORTER:  Okay.  And Mr. Dirisamer, do you have a preference on signature or do you want to explain that?

MR. DIRISAMER:  He'll -- he'll read.

THE REPORTER:  Okay.  Great.  And then,

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Ms. Martinez, would you like to order the transcript?

MS. MARTINEZ:  Not at this time.

THE REPORTER:  Okay.  You want to hold on video too?

MS. MARTINEZ:  Yes, please.

THE REPORTER:  All right.  And Mr. Dirisamer, would you like to order?  Would you like to hold?

MR. DIRISAMER:  Yeah.  We'll -- we'll -- we'll wait.  If -- if they're not ordering, I won't order.

THE REPORTER:  Okay.  We're going off record. The time is 4:05 p.m.

(Deposition concluded at 4:05 p.m. ET)

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

CERTIFICATE OF REPORTER

STATE OF OHIO

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page hereof by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded digitally by me and then reduced to typewritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skills and ability. I certify that I am not a relative or employee of either counsel, and that I am in no way interested financially, directly or indirectly, in this action.

EMMA MCGAHA,

COURT REPORTER / NOTARY

COMMISSION EXPIRES ON: 12/18/2028

SUBMITTED ON: 12/08/2025

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**Exhibits**

**Exhibit 1_
Laird** 75:25
76:2

**Exhibit 2_
Laird** 90:17

---

**0**

**01** 78:11

---

**1**

**1** 22:10 75:25
76:2

**1,900** 79:24

**101** 6:6

**11** 23:23 25:23

**1176** 6:13

**120** 24:21

**13th** 91:10

**14** 25:23

**15** 24:1 76:17

**1871** 6:14

**1986** 19:5

**1991** 21:5
31:12 46:24

**1992** 21:7 22:7
23:13

**1997** 21:8,9,11
23:13 24:18
25:9,19 26:8

---

**2**

**2** 23:17 90:17

**2000s** 19:18
63:7

**2001** 16:7
21:13 25:19
26:9,24 27:2
45:16 46:22

**2004** 10:18
11:10 36:23
37:1,17 41:4
45:8,25 46:17
47:4,16 51:4
61:17,22 66:7,
16,25 68:1
69:17 70:11
88:5,15 89:6,18
90:10 94:10

**2006** 70:2

**2019** 91:10

**2022** 20:23
31:7

**2025** 6:7

**21** 47:14 83:20

**23-CV-3888**
6:17

**26(A)(1)(A)**
76:9

**26th** 6:7

**2:01** 6:8

**2P** 29:7

---

**3**

**3** 25:25

**3:00** 29:7

**3:08** 56:7

**3:13** 56:12

---

**4**

**40202** 6:6

**4:00** 93:12

**4:04** 93:17

**4:05** 95:12,13

---

**5**

**52** 76:24

**552-04** 91:18

**57** 8:11

---

**5:00** 29:9

**5P** 29:10 31:3

---

**6**

**6A** 29:7

---

**7**

**730** 6:5

**77** 7:3

**7:00** 29:7

---

**8**

**8** 22:4,9 23:25

**8-26-25** 56:12
93:17

---

**9**

**90s** 19:18

**92** 21:8

**927** 10:19
11:10

**9527** 90:14

**97** 77:22

**9:00** 29:9

**9A** 29:9 31:2

**9th** 10:18 11:10

---

**A**

**ability** 8:18
9:25 10:7,14

**absolute** 8:24

**absorbs** 83:12

**academy** 21:5
31:12 33:6,13
34:14,15 79:19
80:6

**accomplish**
40:16

**accuracy**
50:23 58:2,3,6,
10,22 59:2

**accurate** 10:1,
8,14 58:24
82:21

**accused** 16:16

**action** 17:25

**actions** 82:7

**actual** 59:1

**additional**
29:19 31:4
34:24 37:13
83:13,17

**address** 91:8

**adhered** 36:19

**administrative**
27:14 67:9

**advise** 56:22

**affairs** 80:19

**affect** 9:25
10:4,7,11,14

**affirm** 7:20

**afternoon** 8:3,
4 9:20 11:8
94:17

**agree** 7:13
47:25 48:7
73:3,18,20 74:8

**ahold** 92:21

**aid** 33:18

**allegations**
16:5,8

**alley** 65:9

**Alt** 89:10,13,21
90:3

**Alyssa** 6:22
55:5

**amount** 27:14
29:8,10 33:19
52:22 92:10

**and/or** 72:8

**answers** 8:18

**anticipate** 9:19

**apologies** 39:4
63:11 66:5 85:5

**appeal** 93:2

**appeals** 94:2

**appearance**
6:19

**appeared**
40:15

**appearing**
6:23

**appears** 92:12,
20

**applicants**
21:11 25:2

**applies** 17:17

**appreciates**
23:3

**approaches**
24:9

**approval** 43:7
57:18,20

**approved**
43:20

**approximately**
12:6 13:9 14:24
15:16 16:1
17:12 22:11
25:19 28:16
29:13 30:10
41:5 59:25

**April** 21:7 22:7

**area** 19:9 92:16

**areas** 33:11

**armed** 10:18

**array** 24:11,14
25:5 26:19,22
28:9,12,17
70:17 71:16,24
72:13,22 73:12
74:2

**arrays** 71:11

**arrest** 58:20
60:20 67:1

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

arrested 51:16 70:4

as-yet 6:14

assemble 28:8

assembled 28:10

assign 38:2,14 39:22 42:1

assigned 18:10 22:2,3, 15,22 23:6,9, 17,20 24:3 25:13,22 26:5 29:15 30:14 33:2 37:21 38:12 39:20 40:5,7,21 44:15 58:12 84:5 85:23,25 92:15

assignment 21:4,9,13 24:4 25:12 26:1 83:12

assignments 21:17

assist 28:6

assistance 56:17

assisted 58:7

assisting 33:18

associates 20:15

assume 9:11

attain 19:11

attend 19:13 36:11 49:8 79:21

attended 80:6

attending 6:19,20 7:3,8

attention 27:23 79:2

attorney 11:17 14:13

attorneys 11:24 13:22

August 6:7

aware 16:17 17:4,7,9 18:25 45:7,24 51:3 56:2 61:16 66:6,15 70:1 72:20 73:9,24 80:12,25 81:2, 4,9,11,14,16,24 82:6

**B**

back 16:10 23:25 25:13,17, 18 37:17 38:16 45:8 54:5 56:9, 15 68:3,5 69:7 85:14 86:2 88:4 89:18 90:9 93:14 94:9

background 14:16 19:3 21:10 24:3,5, 17,25 25:12,15

badge 6:12,14

bar 23:20,21

bargaining 26:6

based 29:10,22 35:11,13 38:14 39:22 40:22,25 42:1 43:9 52:25 59:9 60:4 62:18 85:25

bases 26:4

basically 16:13 19:21 32:18 38:7 39:15 42:21,23

basis 59:9

Bates 90:14

began 21:24 22:1

begin 7:25

beginning 25:24 90:21

behalf 6:22

behaviors 88:23

belief 46:17

believed 49:22 83:5

beneficial 55:20

big 27:22

bit 18:17 21:20 24:23 60:23 69:24 75:11 76:6 86:7

bosses 79:12

Bradley 84:11 85:6

Brady 74:15,23 75:1

break 9:18,21 15:21 21:20 32:23 93:8,20

breaking 55:6

Brenda 6:12 11:5 77:2,3,9

bring 43:1 67:13,14

broadly 93:25

brought 31:5

building 24:19

bureau 46:9,11 67:10

burglaries 32:11,14

burglary 32:17,24

business 32:24

**C**

call 9:14 12:1, 3,11,13,20

13:1,13 22:17 37:23 38:17,20, 24 39:2,16,24, 25 40:6,15 42:18,22 85:19 89:15

called 45:20 78:1 92:13,17

calling 91:17

calls 24:8 26:16 27:16 29:22 42:3

camera 7:11

campus 23:18, 22

capacity 27:16 82:11

Capital 19:17, 24 31:15,18

career 15:3,4 35:21 36:16 72:12

case 6:17 10:18 14:2,6, 18,21 27:22 29:23 42:24 44:10,22 45:9 48:2 49:3 51:21 52:7 54:1,2,4, 13,17 59:4,9 72:9 74:15,18 75:21 76:14,15 85:10,17 86:3 87:3 89:16 90:2 91:17,21,25 92:6,8,14 93:1, 23 94:3

caseload 39:22 52:6 53:1 56:22 57:3 59:10 60:4 85:25

cases 27:12 28:4 29:16 40:1,5,10,14 42:1,4,7 45:2 48:12 49:9 51:19 56:17 57:22 59:1,24 60:6,8,10,12,23

61:3,4,5 62:3 79:1 82:18 85:10

caveat 50:25

certificates 32:4

certification 19:12 36:20

certifications 20:5,7,14 31:22,25 32:3 35:20

chain 27:13 79:13 90:21 93:21

chance 90:22

change 65:2

characteristic s 73:11

charge 92:18

charged 10:22

charges 11:1

check 62:5

choosing 71:11

circumstance 54:18

circumstance s 27:20,24 52:21 53:7,10, 24 55:23 91:25

citizen 15:24 16:12,15,19,20 17:3 80:11,21

city 6:11 11:17 81:13 90:14

civil 14:2,6,18 15:10

claim 16:12

Clarence 92:15

clarification 17:2

clarify 12:22

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

14:1 15:17 33:1

**class** 35:1,6

**classes** 31:14, 18 32:4 35:21 80:5

**clean** 8:23

**clear** 82:23

**clerk** 92:15

**clipboard** 63:15

**close** 55:5

**closed** 60:8,11

**coaching** 21:6, 24 22:1,5,8,12 23:9

**coincidental** 80:7

**coincidentally** 79:23

**colleague** 7:1

**collected** 66:9

**collective** 26:6

**college** 19:13 20:10

**Columbus** 6:11,15 7:4 10:19 14:22 17:15 19:9,10 20:24 21:3 22:4 23:24 36:16 44:11 45:8,24 51:3 66:7,15 70:1 72:19 73:8,23 75:2 76:25 77:5 81:13 87:23 89:6 90:9 94:11

**command** 27:13 79:13

**comments** 85:12

**committed** 32:19

**committing** 94:10

**communicatin g** 92:14

**communicatio n** 11:21 67:12, 21 91:14

**complained** 16:15

**complaint** 14:2 16:21 17:7,9 18:9,15, 25 80:10,18,22 81:8,22 82:8,24

**complaints** 15:14,18,19,23 16:5,18,22 17:3,5 18:7 80:15,19 81:4, 12,14 82:16

**complete** 20:13

**completed** 57:22 63:17 67:1,8 82:17

**completing** 20:2 58:13

**completion** 23:8

**compliance** 88:19,24

**computer** 44:11 45:7 60:11 62:4,9,18 64:6,10,16 65:10

**concerned** 51:12

**concerns** 10:18 42:14

**concluded** 95:13

**conditions** 9:24 10:3

**conducted** 56:10 93:15

**confused** 45:15

**Congratulatio ns** 20:20

**considered** 86:16

**contact** 85:20, 21

**contacted** 92:7 93:1

**contacting** 92:18

**context** 87:7

**contract** 26:2, 6

**convened** 6:9

**conversation** 12:7 13:4,10 43:2 89:21 91:4

**conversations** 13:15,16 14:13

**converse** 53:9

**conversely** 41:22

**convicted** 10:22

**conviction** 11:1

**copies** 89:23

**copy** 68:18 69:4

**correct** 23:11 24:22 25:7,10 27:1 28:22 30:25 31:1 32:11 33:3,4,7 35:22 43:20,21 44:12 49:23 51:1 57:15 65:23 66:3 67:17 77:13 78:2,8 83:1 84:19 88:5,6, 11,15,16 91:14 93:23

**correctly** 77:6

**corresponden ce** 93:22

**coughs** 43:17

**counsel** 6:21 7:24 9:13 11:21 12:11,14 13:2, 5,13,16 75:12 94:18

**county** 19:10

**couple** 21:21 28:21 33:22 36:9 37:15 75:5 80:1

**court** 6:4,5,16 8:16 14:20 23:2 33:24 63:6 74:15 78:12

**courtesy** 9:4

**covered** 33:20 69:24

**covering** 26:3 33:12,23

**create** 24:11 25:5 26:19

**created** 71:15 76:13

**creating** 71:12 72:13

**crew** 23:22

**crime** 10:22 24:9 32:18,24, 25 37:24 38:10 39:3,6,17 78:1

**criminal** 11:1 14:21 16:25 27:12 34:21 43:6 44:7 48:24 49:8 58:20 65:22 94:2

**crossover** 26:16

**cruiser** 64:11, 13,14,15

**customs** 77:4 90:8

**cut** 8:24 63:11

**D**

**date** 12:15 25:15,16 61:14

**dates** 45:15

**Dave** 22:25

**David** 6:25 39:12

**day** 6:7 22:19 30:2 42:4,5,24 45:1 79:22 89:1,2

**days** 18:22 31:1,2 36:9 43:9 62:15 64:11 79:25

**dealer** 16:16

**dealing** 77:21

**decade** 45:19 78:15

**decides** 43:1

**declared** 19:22

**defendant** 15:11 55:21 58:21

**DEFENDANT' S** 76:9

**defendants** 34:21 76:13

**defensive** 33:17

**degree** 19:12, 14 20:2,15

**department** 18:3 26:7 37:9, 13 38:8 46:4,6 68:13

**depend** 52:6 80:17

**depending** 51:19,20

**deposed** 15:6

**deposition** 6:10 11:7,14,24

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

12:18 13:17,20, 23 14:4,14 56:10 75:11 87:1 93:15 95:13

**depositions** 14:5

**describing** 59:4

**designation** 30:8

**detail** 23:20 59:5

**details** 27:14 42:23 48:12 59:2

**detective** 11:4, 5 16:19,23,25 37:21,25 38:1, 3,9,12,15,18,19 39:7,17,20 40:7,8 41:10 43:1,22 44:21 46:10,15 50:3, 5,10 51:13 53:1,17 54:19 55:23 56:15 59:11 66:25 67:2,10 68:11 69:3 71:15 72:4,5,12,21 73:10,25 74:5 77:2,3,9,12,15, 18,23 78:20 79:6,17 80:22 81:22 82:7,11, 12,25 83:4,6 84:3,4,8,14,16 85:7,16,20 86:2,5,15,23 87:7,12,19,23

**detective's** 72:7

**detectives** 27:11 28:3 29:14,15,19,20, 21,25 33:1 37:6,10,17 39:25 40:12,21 41:6,15,20 42:10,18 43:4 46:9 47:17,22

48:1 49:9,21 51:5 57:19,21 58:12 61:3 62:24 63:3,15, 19 64:18,25 66:1,8,17 71:10 77:5 80:11 83:3,10

**detectives'** 88:19

**determine** 59:7

**determining** 41:1

**dictation** 63:4

**direct** 8:1 79:11 80:25 84:24 85:4

**directly** 68:12 78:19 85:21

**Dirisamer** 6:25 7:16 39:9,13 40:23 41:23 44:2 45:10 47:5,11 48:5,17 49:1,14,24 50:6,12,19 51:8,17 52:4, 14,23 53:12,20 54:25 55:5,10, 25 56:19 57:1,8 59:15 61:23 62:10 63:23 65:5 66:10,19 68:21 69:18 70:5,22 71:3,17 72:14,23 73:4, 13,19 74:3,10, 20 81:25 83:7 88:7 92:3 93:3, 10 94:4,12,19, 21,24 95:7,9

**disappear** 50:18

**disciplinary** 15:14,18,23 16:17 17:5,9 18:25 80:10 81:4,11,14,21 82:6

**discipline** 18:14

**disclose** 66:17

**disclosure** 70:2

**DISCLOSURES** 76:10

**discussed** 90:7

**discussing** 64:24 65:25

**dismissed** 11:2

**dispatched** 38:20

**dispatching** 39:6

**distinction** 32:13

**distributed** 42:7

**District** 6:16

**division** 6:11, 17 14:22 17:15 20:24 21:3 26:25 27:6,10, 17 28:8,24 30:6,11 32:11, 14,15 35:17 36:16 44:12 45:8,24 46:22 49:8 51:4 57:7 66:7,16 67:11, 20 68:10,18 69:12 70:1 72:20 73:9,24 75:2 76:25 77:5,16,19 78:7 85:16 87:24 88:19 89:6 90:9

**division's** 80:16

**document** 43:12 48:1 49:23 51:5 53:18 66:8 76:13 90:23 91:3

**documenting** 52:12

**documents** 13:19 25:3 58:1 59:22 61:5,6 62:16 68:13,14 70:3 75:5 90:1

**DOT** 45:9

**driving** 33:16

**drug** 16:16

**drunk** 33:16

**duplicate** 68:24 69:11

**duties** 57:23 60:5

**duty** 18:2,5 45:2

---

**E**

**e-mail** 91:7 92:12 93:21

**earlier** 15:4 57:13 61:10 78:25 80:3 88:3

**early** 61:12 62:15 63:7 64:11

**Eastern** 6:8,17 93:17

**Ed** 92:14

**eds** 19:20

**education** 19:12

**effect** 47:4

**elderly** 33:18

**elect** 59:21

**elected** 35:24

**elective** 89:5

**electives** 80:6

**electronic** 60:25 61:2 63:22 65:20

**electronically** 65:4

**Emma** 6:3 56:11 93:16

**employed** 20:18

**employee** 67:12,20 68:10 82:20 83:21

**employees** 36:10 79:24

**employer** 15:19 17:10 81:12,15

**employment** 14:21 17:15,17 20:8 21:3 31:8, 23 77:10 87:23

**end** 32:4 85:1

**ended** 65:8 84:22

**ensure** 71:10

**entire** 58:19 82:15

**entirety** 27:6 30:6 36:15 62:8 78:17

**equal** 42:2,8

**error** 38:13 39:24

**essentially** 26:5 31:1 67:23

**establishments** 23:21

**Estate** 6:14

**evaluation** 79:10,11,14

**evaluations** 79:5

**event** 86:11

**Eventually** 84:22

**everyday** 88:22



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 152-9 Filed: 03/28/26 Page: 103 of 111 PAGEID #: 12720
The Deposition of SHAUN LAIRD, taken on August 26, 2025
101

evidence 55:16,20,24 66:8,17

**EXAMINATION** 8:1

exculpatory 55:16,23 66:8, 17

excuse 43:17

exhibit 75:25 76:2 90:17

exhibits 90:14

exist 53:7

existed 61:22 80:24 90:2

expect 49:23 50:4,10 56:18

expectations 47:22

experience 29:13 30:10 40:11 41:4,14 43:22 48:11 49:20 53:16 54:9 55:19,22 71:14 91:24

explain 29:4 37:20 94:23

extend 9:3

extensive 46:3

extent 80:19, 24

external 32:7,8

extra 83:22

___

**F**

face 89:15

fact 7:14 26:14 58:16 82:15 83:3

factor 41:2

facts 48:1

fair 9:11 12:19

15:21 25:4 33:21 41:10,18 47:9 48:14,22 49:12 50:16 52:10,19 53:9 61:16,18,20 70:20 71:1 74:25 75:15 81:21

families 87:20

fan 39:1

fashion 48:13 78:13

feasibly 50:11

February 21:7 87:13,14

feel 8:25

felony 38:9 39:6,17

fewer 29:20

field 22:18,22 23:5 63:14 64:3

fields 33:16

fight 16:13,15 17:24

file 14:8 43:25 67:3 68:9,16, 19,23 69:4,6, 11,13 92:16 93:1

filed 14:2 15:14,23 16:18 17:5,7,10 19:1 80:11 81:4,12, 15,22

files 68:7 69:17 92:8,9,11

fill 23:25 51:13

fill-in 24:2

filled 43:20

fillers 70:17,21 71:11 73:10

finders 82:16 83:4

findings 70:3

finished 67:4, 6,17

five-minute 93:7

flesh 50:18

flexibility 29:10

flexible 22:16

flip 52:20

focus 26:17

folder 91:18,22

follow 38:15 50:5,10 76:21

follow-up 21:21 76:22 85:17,23

force 32:16,17, 20

forfeiture 18:21

forgot 39:24

form 18:14 42:17 51:14 52:2 86:4

formal 20:2 54:20,24 55:24 65:1 88:4

formally 53:18

forms 33:6

forward 57:21 72:10

frame 22:7 53:8,11

Fraternal 26:1

frequently 59:25

friend 86:16, 17,19

Front 7:4

full 7:6 9:2,5

funeral 87:8

___

**G**

gang 94:10

gaps 29:25

garnering 27:23

gathering 87:16

gave 18:22 40:6 90:5

geared 37:9

gen 19:20

general 19:21 38:19,22 44:10, 19,22,24 45:9

generally 35:3, 6 39:2 40:5,18 49:7 75:12

generate 63:13

George 23:7

germane 54:1, 2,12

give 7:21 8:18 18:22 21:2 42:11 60:3 68:12 90:3

giving 33:24

golf 86:9

good 8:3,4 20:9 48:23 55:9 56:3,4 82:19 93:9

governed 70:2

graduate 19:4

graduation 19:16

grammar 60:16

grammatical 58:4 59:3 60:15

Great 10:17 11:13 91:9

94:25

ground 8:12

Groveport 19:7

guess 26:15 83:20

___

**H**

half 12:8

hand 7:18 45:16 63:8 66:2,3

handheld 64:8,17

handicap 33:18

handled 42:24 80:18,20

handwritten 49:4,11 64:1, 19,25

happen 52:17

happened 22:6 79:3,23

happening 28:20 50:25 57:6

happy 9:9,20

hard 60:3

he'll 94:24

Head 8:19

headquarters 24:19,20 27:3,5 28:5 79:3

hear 87:9

heard 74:14

helped 57:4

helpful 17:3 48:15,20 64:21

high 19:4,7,17

hire 21:11

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 152-9 Filed: 03/28/26 Page: 104 of 111 PAGEID #: 12721
The Deposition of SHAUN LAIRD, taken on August 26, 2025

102

hiring 25:3

hold 7:11 95:4, 8

home 7:8 94:11

Horton 6:11,23 10:23

Horton's 10:25 94:2

hour 12:9 13:11

hours 29:5,8,9 30:24 36:19 43:9

house 32:23 64:4

housing 67:17

hung 87:19

hypothetical 71:20

hypotheticals 51:25

___

**I**

ID 7:11

identification 34:13 70:13 76:2 90:17

imagine 65:12 69:10

immediately 83:13

important 48:1,8,11 50:17,23 70:21 71:2

imposed 18:14 82:7

improper 73:3, 6,18,21 74:9,12

in-service 36:8,14

inappropriate 52:11

include 54:19 55:23 68:6 72:3

included 54:24

including 21:4 65:21

individual 61:6 79:17

influence 71:2

information 27:12 49:22 51:20,22,25 52:7 53:1,3,18, 25 54:7,11,23 65:15 90:4

initial 34:17 54:15 63:6 79:13

initially 54:15

initials 43:18 60:21 63:8

input 64:13

inside 20:8

instance 38:17 40:11 54:22 57:17,19 61:3 86:9 92:25

instituted 36:17

instructed 9:14

insubordinatio n 81:23

intentionally 73:10

interacting 33:17

interactions 77:25 78:4

internal 32:6,7, 9 80:18

interns 7:2

intervention 17:23

interview 25:1 40:17

interviewing 34:2,5 64:4

interviews 83:15

invasions 94:11

investigate 25:2 27:18,21 28:1 29:16 38:3 40:21 78:19 80:15

investigated 11:5 54:16 68:11 85:11

investigating 21:10 27:12 85:17

investigation 21:10 24:5 25:15 37:21 40:13 41:11 43:6 44:8 47:18,23 48:3 50:17 51:15 52:1 58:19,25 62:19 65:22 66:9 67:1 69:3 75:7,9,17 78:20

investigations 24:3,17,25 25:12 41:5,15, 21 42:12,19 51:5 58:7 62:5 74:19

investigative 43:25 67:3 68:6,9

involved 28:3 75:6,8 79:5,9, 10

involvement 94:1

issue 72:17

___

**J**

January 21:8,9

job 67:12 72:1

John 7:2

joined 77:16 78:6

Jon 90:24 91:5, 14 92:16,20

June 21:11,13 25:9,19 26:8,24 27:2

___

**K**

K-E-V-I-N 8:8

Kentuckiana 6:5

Kentucky 6:6

Kevin 7:7 8:8

kind 20:5 85:17 87:15 89:24 93:25

Kirk 89:10

knowledge 12:10,25 13:12 15:9,13,22 75:16,21 76:14 77:2,9 78:16

knowledgeabl e 82:14

___

**L**

L-A-I-R-D 8:9

lab 70:3

Laird 6:10 7:5, 7,14 8:8 56:10 76:24,25 77:2 93:15

largest 32:9 40:9

lasted 12:7,20 22:12

late 19:18

law 85:10

lawsuit 15:10

lead 50:4,5,11 69:3

leading 65:19

leads 50:18

learned 51:13 53:18 71:15

learning 48:2 72:11 94:9

leave 18:23

lecture-style 79:19

lesser 20:15 80:19

liaison 68:10 78:12,13

lieu 18:23

lieutenant 30:8

list 33:15

listing 76:14

live 61:17

local 94:10

located 6:5 19:8 24:17 27:3,5

location 6:19

Loew 10:19 11:9,10 14:9 75:4,6,13,16 87:5

logic 58:4 60:14

long 9:20 12:6 13:9 22:11 33:14 52:12 77:18,20 78:9

looked 47:3 54:3 60:24 82:14

lot 27:23 32:3 59:2 62:16 79:1

loud 8:18

Louisville 6:6

lower 7:17

lower-level

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

35:7

**M**

**machine** 63:4

**Madam** 23:2

**made** 16:9,12
46:22 72:20
73:9,24 80:12,
25 81:2,9 84:21

**Madison** 19:7

**mail** 67:23,24
68:3,5

**main** 6:5 24:19

**Mairs** 7:2

**major** 19:21

**majoring**
19:25

**majority** 32:9
40:9 63:4 86:1

**make** 9:1,8
31:10 37:3
39:16 67:15
69:4 82:22

**makes** 44:20,
21,23,25

**making** 59:4

**man** 10:22

**mandates** 75:1

**mandatory**
36:4,7,14,18,22
37:1,4 80:2,4
88:14

**March** 21:7
22:7

**Marconi** 24:21

**mark** 43:13
75:25 83:5

**marked** 76:2
90:17

**Martinez** 6:22
7:15 8:2 40:3
41:3 42:9 44:6
45:22 47:8,15

48:9,21 49:6,19
50:2,9,15,24
51:11,23 52:9,
18 53:4,15,23
55:4,7,11,12
56:3,13,14,23
57:5,12 59:19
62:1,22 64:20
65:16 66:14,23
69:1,22 70:9,25
71:6,22 72:2,18
73:2,7,17,22
74:7,13,24 76:4
82:5 83:25
88:9,12 90:19
92:23 93:6,19
94:8,15 95:1,3,
6

**Maryland**
74:15

**match** 73:11

**material** 53:18
54:6,23

**matter** 6:10
17:16,20 18:4,
19,20

**Mcgaha** 6:3
56:11 93:16

**meaning** 14:9

**means** 54:11

**mechanism**
88:17

**media** 79:2

**medications**
10:6,10

**meeting** 83:5

**meetings**
27:13

**memorialized**
52:2

**memories**
91:20

**memory** 10:4,
11,15 93:22
94:1

**mentioned** 7:1
18:11

**mid-2000s**
61:13

**Middle** 8:7

**Mieko** 6:13

**minutes** 12:20

**mistakes** 58:5
60:15

**misunderstan
ding** 39:5 58:18

**mix** 31:17 32:6

**monitor** 88:19

**month** 25:24
60:7

**months** 12:2
51:15 52:2 80:1

**morning** 38:11
42:21

**motorcycle**
37:11

**move** 50:17

**moved** 84:20

**moves** 84:21

**multiple** 16:25
22:6 40:12,16,
21

**N**

**name's** 56:11

**named** 10:22
15:11

**nature** 80:17

**necessarily**
58:15

**needed** 29:11,
12 56:17 79:4
83:21 90:1

**negotiate**
26:2,6

**Netrms** 45:21

**nods** 8:19

**North** 7:3

**note** 64:1

**note-taking**
34:7 47:20,23

**notepad** 65:10

**notes** 47:17
48:23 49:4,11
63:1,19 64:2,
19,25 69:24
93:8

**notification**
12:18

**notified** 38:9
39:21

**notify** 39:17

**November**
91:10

**now's** 56:3

**nuances** 83:14

**number** 6:12,
14,17 11:17
23:19 30:13
35:20 36:18
38:22,23 41:8
42:3,4 45:13,18
47:10 56:16
62:14 84:17,21,
25

**numerical**
42:6

**numerically**
42:1

**numerous**
32:2

**O**

**object** 9:14

**Objection** 39:9
40:23 41:23
44:2 45:10
47:5,11 48:5,17
49:1,14,24
50:6,12,19
51:8,17 52:4,
14,23 53:12,20
54:25 55:25
56:19 57:1,8
59:15 61:23

62:10 63:23
65:5 66:10,19
68:21 69:18
70:5,22 71:3,17
72:14,23 73:4,
13,19 74:3,10,
20 81:25 83:7
88:7 92:3 93:3
94:4,12

**objective**
82:15 83:3 85:9

**obligation**
42:11 54:19

**obliges** 74:18

**observe** 79:16

**occasion**
24:11,13 25:5
26:19,21 28:8,
11 38:2,7 40:20
42:3 53:17

**occasions**
11:18 52:17,20

**occur** 13:5
39:23

**occurred**
10:19 11:10
40:22 51:16
58:20 70:3
73:1,16 81:8

**October** 10:18
11:10 61:17,22

**offense** 32:19
44:10,22,24
45:9

**offered** 89:5

**office** 26:2
38:24 42:21,23
59:13 66:18
67:3,6,9,11,13,
22 68:7,17,25
69:7,15 82:17,
25 85:12,16
91:17,21 93:23

**officer** 16:9,24
17:6 18:8
22:15,18,22
23:6 24:7,10,
15,25 36:20
38:13,18,20

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case: 2:23-cv-03888-ALM-SCS Doc #: 152-9 Filed: 03/28/26 Page: 106 of 111 PAGEID #: 12723
The Deposition of SHAUN LAIRD, taken on August 26, 2025
104

39:23,24 40:7 44:20,23,25 64:12 75:2 77:22,23,24 78:4 81:5

**officer's** 48:15

**officers** 6:12, 15 26:15,17 37:4,12,24 57:17 64:18

**offices** 26:5

**official** 17:18 42:22 51:6,14

**Ohio** 6:16 7:9 10:19 19:16

**online** 6:3 60:11,23 61:8 62:2,15,23 63:21 65:3

**operating** 46:5,8,14,18 47:3

**opinion** 82:11 84:8 85:6

**optional** 89:5

**order** 26:1 73:11 95:1,8,10

**ordering** 95:10

**original** 63:14

**OSU** 19:19

**outset** 8:13 52:1

**overwhelmed** 56:16

---

**P**

**P-U-L-V-E-M- A-C-H-E-R** 23:1

**p.m.** 6:8 56:7, 12 93:17 95:12, 13

**packages** 57:21 58:13

**packet** 43:15 60:1,19 62:6,8

**packets** 58:19, 21 59:7,8,21 60:20 62:4 67:6,10,17 68:6

**paper** 61:1

**part** 14:21 33:5 35:5 37:9 45:1 57:23 58:24

**participate** 35:25

**parties** 7:13 17:24

**partners** 33:3

**party** 15:10 86:12

**patrol** 15:5 16:6,9,24 18:8 21:8,12 23:10 24:7,10,15 25:9,13,17,18 26:12,13,15,18 27:16 31:19 34:25 35:7 37:5,24 45:5 63:10,13 77:23, 24 78:4

**pause** 56:4

**pending** 6:15 9:22 52:8

**people** 16:13 32:22 79:25 83:13,17 86:11

**period** 21:4,18 22:6,19 23:9 25:22 26:4,9 60:9 84:6

**periodical** 60:5

**periodically** 32:8 37:8 38:10 39:18 57:22 58:13 83:9 86:8,10

**periods** 21:6 22:8,12

**permitting** 57:23 59:10,22, 24

**perpetrator** 49:22 50:4

**person** 10:21 22:18 32:17,19, 25 38:10 39:2, 3,17 42:5 54:3 68:14 72:22 79:21 82:13,14 85:9,21,22 92:18

**personal** 6:13 14:8,10 75:16

**persons** 76:14

**pertain** 17:14

**pertained** 85:18

**pertaining** 51:14 54:13 76:14 82:25

**phase** 20:10

**phone** 12:4,23 13:7

**photo** 24:11,13 25:5 26:19,21 28:9,11,17 34:12 70:12,17 71:11,16,24 72:13,22 73:12 74:2

**photograph** 73:25

**phrase** 11:8

**physical** 62:6, 8 73:10 92:11

**pick** 67:23,24 68:14

**picked** 92:22

**picture** 89:14

**place** 36:15 43:16 46:21 60:21 68:1 70:2 88:4 89:18 94:2

**plaintiff** 6:23

15:11

**Plaintiff's** 6:20

**platform** 61:9, 17,21 62:2,23 63:21 65:3

**play** 86:9

**point** 9:18 15:21 18:13 20:9 30:16 31:4 36:17 37:1 45:14,17 55:6 56:4 62:13 65:20 78:12 85:2 86:15

**points** 15:2

**police** 6:12,15 14:22 17:15 20:25 21:4,5 25:1,2 26:1,7, 17 34:14 36:16, 19 43:5 44:12 45:8,25 51:4,6, 14 52:2 53:19 54:20,24 55:24 57:14 65:1,20 66:7,16 70:1 72:20,22 73:9, 24 74:18 75:2 79:19 87:17,24 89:6 90:9

**Police's** 76:25 77:5

**police-work-related** 33:7

**policies** 37:16 70:8 77:4 88:4, 20 89:17 90:4, 8,12

**policing** 33:16

**policy** 45:25 46:2,19 47:17, 19,20 51:4 66:7,16,22 69:17,21 70:2, 10,12,16,18

**poorly** 41:18

**position** 21:22 24:2 25:6 30:5

**positive** 85:12 88:1

**possession** 14:10

**post-high** 19:11

**potentially** 36:10 72:6

**Powell** 7:8

**practice** 48:23 49:7 60:1 63:18 64:24 65:2,7 66:1 68:1 70:10,12,16

**practices** 37:16 77:4 90:8

**precinct** 22:2, 3,4,9,10 23:12, 18,19,23 25:23, 24,25

**precincts** 23:15 24:1 25:22

**predicted** 92:24

**preface** 11:19

**preference** 94:22

**preparation** 11:24 13:17,20, 23 75:11 89:25

**prepare** 11:13, 16 14:14 25:2 89:25

**present** 12:11 13:1,13 29:24

**presented** 32:4

**presenting** 60:15

**previous** 26:12

**Primary** 26:17

**prior** 16:7,23, 25 37:1 62:23 77:21,22 87:11



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

88:15

**proactive** 24:8

**probable** 34:18

**probationary** 21:6,24 22:1,5 23:9

**problem** 71:24 82:19

**procedural** 46:4

**procedure** 46:8,11,14 47:3 71:25

**procedures** 34:13 46:5,15, 18,23 70:13,14 72:8 88:20 89:22 90:4,12

**PROCEEDINGS** 6:1

**process** 18:1 38:5,21 67:5 79:10,11

**processing** 53:3 78:22

**professional** 82:10 84:8 85:6

**program** 20:13 44:11 45:7 65:21

**programs** 20:2 45:13

**progress** 43:5, 23 65:22

**progressed** 60:12

**promoted** 16:21 21:11 35:16

**promotion** 16:23,25 25:9, 11,16 30:8 31:19 34:25 35:10,11,13 77:22

**property** 32:17,25

**prosecution** 82:19

**prosecutor** 57:22 68:24 92:13

**prosecutor's** 59:12 66:18 67:3,6,11,13,21 68:7,17 69:4,7 82:17,24 85:12, 16 91:17,21 93:23

**provide** 9:25 10:7,14 42:22

**provided** 36:22 37:14

**psychology** 19:25 31:14

**public** 17:17

**pull** 61:4,6 91:25

**pulled** 16:13

**pulling** 92:19

**Pulvemacher** 22:25

**purposes** 63:6

**pursuant** 74:18

**pursuing** 42:12,19

**purview** 33:2 37:17,22 41:6, 20 42:10 43:4, 23 47:22 50:3 51:13 56:16 66:25 71:10,15 72:12 83:3,5

**put** 43:25 60:21 67:7 85:19

___

**Q**

___

**question** 9:4,5, 8,10,11,15,22 15:17 41:19

53:9 58:23 64:22 69:25 71:21

**questions** 9:16 11:20 14:17 19:3 21:21 37:16 42:14 55:8 70:11 76:22 89:15,17 92:24 94:16,20

**quick** 8:12 14:16 38:16 56:15 85:14 93:7

**quickly** 50:17 69:24 75:6 90:20

___

**R**

___

**raise** 7:18

**rank** 17:1 21:4

**rare** 28:19,20 38:7 39:19

**read** 14:1,4 76:20 77:6 94:24

**ready** 92:21

**realistic** 83:23

**reason** 55:3 60:14 69:8,9

**reasoning** 58:4

**recall** 11:25 12:6,8 16:4,8, 22 22:11,21 23:5 28:16,18, 20 30:15,18 31:25 33:9,12, 23,24 34:1,3,4, 6,7,9,12,18,20 36:2,6,21,25 37:2 41:8 46:20,21 47:2, 7,13,20 49:5 51:7,9,10 57:6, 10 61:8,11 66:12,21 70:7,

14,16 72:11 74:17,22 75:23 77:15,18 78:9, 23 80:21,23 82:3,9,24 83:11,18 84:23 88:4,14 89:3,4, 7,8,20 90:11 91:13 94:9

**receive** 20:5 34:23 35:9,15 39:18

**received** 18:19,20 31:22 32:1 34:24 35:5,20 50:3

**receiving** 80:21 82:24

**recess** 56:8 93:13

**recognize** 84:1,11 91:3

**recollection** 32:5 48:16 66:24 81:21

**record** 6:2 7:6 8:6,20 29:4 56:6,9 61:21 93:11,14 95:11

**recorded** 48:13 52:8

**records** 68:25 92:19

**recycled** 25:17

**refer** 18:21 32:22

**referenced** 63:18

**references** 91:16

**referred** 23:22 80:3

**referring** 45:20

**refreshing** 48:15

**relate** 54:4

**related** 35:6 75:16

**relating** 14:9

**relationship** 86:5

**relevant** 54:13

**remedy** 72:9

**remember** 12:3 16:12 35:14 46:23 61:12 63:3 69:20 70:18 72:16,25 75:8 77:21,23 78:13 81:6 82:3 84:5 87:21 89:19 91:4 92:6 93:5 94:14

**remembered** 90:5

**remotely** 6:23

**rephrase** 9:10 20:9 53:5 64:22 65:18

**report** 34:9 38:11,14 39:18, 20,22 43:23 44:20,22,24 45:25 46:19,25 51:14 52:2 53:19 54:15,20, 24 55:24 62:14 63:14

**reported** 54:14

**reporter** 6:2,4 7:5,10,13,17, 20,24 8:16 23:3 56:6,9 93:11,14 94:21,25 95:4, 7,11

**Reporters** 6:5

**reporting** 18:1 45:13,17,19

**reports** 43:5, 20 44:10 45:9, 16 51:6 57:14 61:2 62:25 63:6,8,21 65:1,

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

3,21,22 66:2,3 70:3

**represent** 76:12

**representative** 6:13

**representing** 6:4

**reprimand** 18:19,20

**requested** 59:11

**requesting** 38:18

**required** 36:11,18 38:8 39:16 44:5 51:4 66:7,16

**requirement** 39:19 43:10,19, 21

**requires** 33:15

**resemble** 70:21

**respond** 24:8 26:16 28:5 38:1 39:3 40:12

**responding** 37:24

**responds** 40:8

**response** 56:24

**responsibilities** 24:7,24 26:11 27:9 39:2

**responsibility** 25:1 57:25 69:2 71:7,9 80:14,16

**responsible** 30:20,22,23 32:18 67:16,21

**rest** 43:10 90:25

**result** 18:14 82:8

**resulted** 67:1

**retain** 68:18

**retention** 69:17,21 92:9

**retire** 20:22

**retired** 20:19 76:24 84:18

**retirement** 21:15

**retiring** 31:7

**returned** 82:18

**reunion** 87:17

**review** 13:19 43:8,12,17,18, 25 44:1 45:2 57:3,14,23 58:3,6,10,21 59:12,18,21,23 60:1,6,18,22 61:4 62:3,5 92:1 93:1

**reviewed** 25:3 43:14 44:17,18 58:14,15 59:8, 23 79:12

**reviewing** 57:25 58:1,18

**reviews** 44:25

**Richard** 6:10, 23 10:23

**rights** 34:20

**road** 48:16

**robberies** 27:18 94:11

**robbery** 10:18 11:5,8,9,10 14:9 15:2 18:10 21:13,14 26:25 27:2,6,9,17,21 28:1,8,24 30:6, 11,14 32:14,16, 21 35:16 37:21 38:3,23 40:12, 21 41:5 46:13, 22 47:18,23 49:8 50:17 51:15 57:7 66:9

68:11,18 69:12, 14 75:5,7,13,17 77:1,3,6,16,19 78:1,6,20 79:6, 16 85:3,15,18 87:5 88:18 91:17

**role** 67:23

**roll** 42:18,22

**rotational** 38:25

**RULE** 76:9

**rules** 8:12

**run** 23:15 25:21

**runs** 80:1

---

**S**

**S-H-A-U-N** 8:7

**Sam** 6:14 7:1 84:1

**saved** 61:7

**scene** 37:25 38:1 64:19 65:15 78:22,24

**scenes** 78:1

**schedule** 43:10

**scheduled** 79:20,25

**Scherger** 7:1

**school** 19:4,7, 11,17

**Schrig** 90:24 92:16,20

**scope** 60:6

**score** 42:6

**screen** 76:1 77:8 93:7

**scroll** 90:22,25

**scrolling** 69:23

**secondary**

46:11

**section** 76:21

**select** 70:21 71:2

**self-elect** 60:1

**self-imposed** 59:18,20

**seniority** 25:17

**sense** 9:9 59:4

**sentences** 59:4

**separate** 15:22 38:23 80:16

**sergeant** 16:19,21 21:13, 14 26:18,25 27:9,15,17,25 28:7,23 29:24 30:1,6,19,22 31:4 35:16 41:19 46:22 47:21 49:7 57:7 76:24 77:2 78:24 79:8 85:15 88:18 89:10,13,21 90:3

**sergeants** 26:16 30:11,14, 16

**service** 24:8 26:17 29:22 80:2,4

**serving** 25:14

**set** 11:19

**severity** 40:22 41:1

**shadow** 22:16

**shakes** 8:19

**sharing** 77:8 93:6

**Shaun** 6:10 7:7,14 8:7 56:10 76:24 93:15

**shift** 28:24 29:1,14,17 30:1,17,21,22, 24 31:5 38:21 77:13 78:17 84:5,19,22,23 85:2

**shifts** 29:19,21 30:14,19 31:3

**short** 84:6

**show** 24:13 25:5 26:21 28:11 75:6,24 90:13

**showed** 93:20

**showing** 72:21 73:25 74:1

**shown** 28:17

**Sias** 6:13,14 84:1,3,8

**sic** 63:8

**sickness** 22:19

**side** 22:4 23:24,25

**sign** 43:13

**signature** 94:22

**signed** 60:18

**significantly** 41:21,22

**similarly** 87:15

**single** 73:25

**sir** 7:10,18 8:3, 10 9:24 10:17 11:8,14 13:5,19 14:1,8,13,17 15:7 16:4 17:4 19:4 20:18 21:2 24:6 25:8 27:8 29:13 31:21 32:10 33:1,5 34:16,23 35:12, 19 36:21 37:15, 20 39:5 40:11 41:4,14 42:10 44:16 45:23



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

47:2,16,25 49:20 51:3,12 53:16 54:6 55:13,22 56:15 57:13 58:11 61:15 63:12 66:6,25 69:16, 25 70:11,20 71:14,22 72:12 73:9,24 74:14 75:4,22,24 76:1,12,18 77:6,9 80:10 81:3,20 82:10, 23 83:2 84:1,11 85:15 86:4 87:22 88:3 89:4,8,9 90:7, 14,16 91:3,24 92:25 93:20 94:9,16

**sit** 16:4 17:4 33:9,11 36:21, 25 45:23 61:15 69:16,25 81:3, 20 84:7 89:4 91:20

**situation** 72:9

**situations** 83:11,19

**size** 92:11

**slot** 67:7 68:13

**Smith** 23:7

**Sneezes** 85:5

**social** 86:4 87:15

**solely** 79:14

**solemnly** 7:20

**somebody's** 65:13

**sound** 55:9 93:9

**sounded** 31:21

**sounds** 35:19

**southeast** 23:23

**Southern** 6:16

**speak** 11:23 12:17 13:22 37:25 40:1 60:23

**speaking** 44:19 91:21

**speaks** 38:18

**specialized** 34:24 35:9,14, 15 36:13

**specific** 22:15, 17 23:20 46:8 57:10 60:21 74:22,23 77:11 83:11 88:14 91:14

**specifically** 9:14 19:19 33:12,23

**specifics** 33:22

**speed** 50:22

**spell** 8:5

**spelled** 22:25

**spelling** 23:3

**spoke** 11:17 78:25 86:22

**spoken** 75:12 87:12

**squad** 38:23, 24 69:14

**squat** 17:23

**staffing** 38:14

**stamped** 90:14

**stand** 73:12

**standard** 46:4, 8,14,18 47:3

**start** 9:6 53:3

**started** 21:5 30:18,20 31:12 45:14,15 46:24 61:1 78:11

**starting** 6:20

**state** 6:18 7:6

8:5 19:16 33:15 36:18

**statement** 50:16 53:10 61:16,18 70:20

**stay** 28:2

**step** 38:16 54:5 56:15 72:1,3 85:14 93:25

**stint** 26:12

**stop** 77:8 79:3 93:6

**storage** 92:11

**stored** 69:13, 14

**Street** 6:6 7:4 10:19 11:9,11 14:9 75:4,7,13, 17 87:5

**strike** 21:25 24:16 28:15 29:1 33:10 35:3 36:3 41:13 55:13,14 57:18 64:22 68:4,17 71:8 81:13 86:14 89:9 91:12

**string** 94:10

**structure** 32:19

**student** 23:21

**study** 19:19

**stuff** 62:21

**subjects** 33:19

**submit** 43:24 44:5 57:20

**submitted** 57:18 65:3,21

**subsequent** 48:25

**subsequently** 11:2

**substance** 11:20

**suggestive** 71:16,24 72:13

**suite** 6:6

**summaries** 43:6 44:8 65:22

**summary** 21:3

**supervise** 26:17

**supervised** 84:17

**supervising** 80:8

**supervision** 27:11 35:7 88:22

**supervisor** 17:6 26:15 29:24 30:4 43:17 44:25 45:2 56:21,22, 25 57:2 59:18 77:1,13 78:7,10 79:9,12,14,15 80:20 81:1,23 84:24 85:4 92:16

**supervisor's** 72:1

**supervisors** 35:2 60:21 79:9 88:18

**supplement** 46:15

**SUPPLEMENT AL** 76:9

**supplementari es** 45:9

**Supreme** 74:14

**suspect** 48:24 51:16 67:2 70:4,21 73:11, 12,25 74:1

**suspects** 34:5 83:16

**suspension** 18:23

**swear** 7:20

**switch** 62:14 63:21

**system** 38:25 45:17,19 60:25 62:15

**systems** 62:14

**T**

**tactics** 33:17

**taking** 8:17 10:6,10 31:14, 18 38:16 39:2 45:16 47:17 56:15 61:1 65:15 85:14 93:25

**talk** 8:22 42:18, 21,23 86:25 87:3,5

**talked** 17:3 18:24 87:25

**talking** 15:18 16:7 20:7 45:4 62:15 65:9 72:4,5 93:22

**task-based** 40:18

**tasks** 29:12 40:16

**tech** 71:8

**technician** 6:4

**technology** 62:18 64:8

**telling** 72:21

**temporary** 26:1 42:4

**ten** 16:3

**term** 54:10 55:15

**terms** 48:15

**testified** 14:17, 20 20:1 24:23 25:8 27:15 31:11,21 35:19



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

39:5 57:13 60:17 62:24 65:19 83:2 88:2,13 91:13 93:21

**testimony** 7:21 10:1,8,15 33:24 52:13 53:6 82:23

**thing** 75:25 80:7

**things** 32:3 54:14 58:5,15 59:3,5 60:13,16 80:18 89:24,25

**Thomas** 84:12, 14 85:6

**threat** 32:16

**threatened** 32:20

**tied** 39:25

**time** 6:7 8:23 9:13 11:7 15:4 16:6 17:19 19:22 21:4,12 22:7 23:22 24:10 25:25 26:4,9,12,18 27:6 28:4,7,23 29:8,11 30:6,12 31:3,15,19 34:14 37:13 38:9,13 39:21 40:1 41:7,11,19 45:20 46:24 47:2 51:10,22 52:8,22 53:2,8, 11 54:14 56:7, 12 57:7,22 59:10,22,24 60:9 61:11 62:16,17 63:7 64:2,15,17 66:13,22 69:21 70:15,19 72:16, 19,25 73:8,15, 23 75:1 77:1 78:17,24 79:24 83:21 84:6,23 85:2,15 86:1,22 87:11 89:14 90:12 92:10

93:12,17 94:17, 20 95:3,12

**timeline** 31:11 60:4 62:20

**timely** 51:5

**times** 11:23,25 14:24 28:2,16, 19,21 29:25 30:3 54:14 57:10 59:3 78:21 86:8

**title** 30:5,7

**today** 6:4 8:10 10:1,8,15 11:14,24 13:17, 20,24 14:14 15:6 16:4 17:4 33:9,11 36:21, 25 45:23 56:11 61:15 65:12 69:16,25 78:23 81:3,20 82:23 84:7 86:20 87:1,24 88:3 89:4 91:20 93:16

**Today's** 6:7

**top** 76:8

**topic** 33:11 70:1

**topics** 35:6

**tournament** 86:9

**traditionally** 22:13 29:20,21 30:24 32:21 37:7 42:6

**traffic** 17:16,20 18:4,11,12,20 24:9

**trained** 33:24 34:1,4,7,9,12, 18,20 74:17 80:9

**training** 22:18, 22 23:6 32:4 33:5,7,12,15, 17,23 34:17,24

35:10,14,15,20 36:2,8,13 37:8, 14 72:7 74:23 77:4 79:21,24 80:2,5 83:14, 17,22

**trainings** 32:6, 7,9 35:5,24 36:3,6,12,15,22 37:1 79:16,18, 20 88:14 89:5 90:9

**transcript** 8:24 95:2

**transcripts** 14:5

**transferred** 78:12 85:2

**translate** 8:20

**transported** 67:11

**tremendous** 33:19

**trespass** 32:18

**trial** 48:25 49:4, 17

**trials** 49:8

**true** 29:17 44:7 46:10 52:20

**truth** 7:22

**truthful** 9:25 10:7,14

**Tuller** 92:14,15

**turn** 56:4 69:4 94:18

**turned** 69:6

**turning** 75:4

**two-week** 35:1,6

**type** 60:13 63:1,5,16,20 64:16 65:1,2 66:2 71:25

**typed** 43:23 63:6

**typical** 64:18

**typically** 27:22 29:6,7,15 37:23 38:25 40:14 41:1 43:15 63:2 64:5,9 78:25 79:18 85:21 86:1

**typing** 43:5 63:2,19 65:13

**typist** 63:4,16, 20

———————

**U**

———————

**U.S.** 6:15

**unaware** 73:15 74:5 82:18

**understand** 10:17,21,25 11:4,9 18:1 40:4 41:17 47:16 54:6 55:14 59:6 84:14

**understanding** 37:4 55:15 67:15 70:12 72:7 89:12

**understood** 9:11 37:18 54:18 66:5 85:10

**union** 26:5

**unit** 15:2 24:25 37:25 46:5,7,13 67:5,16 77:1,3, 6 78:13 79:6,16 82:15 84:6 86:12

**units** 46:12

**universities** 19:14

**University** 19:16,17

**unknown** 6:15

**updates** 42:11

**uploaded** 62:17

———————

**V**

———————

**vacated** 11:1

**vacation** 18:21,23

**verbal** 8:18

**victim** 49:20 64:9,13

**victim's** 65:14

**victims** 83:16

**video** 6:3 95:4

**videoconferen ce** 6:9 56:11 93:16

**volunteer** 36:13

———————

**W**

———————

**wait** 52:11,22 95:10

**walk** 38:5

**walked** 16:14

**Walker** 6:12 11:5 77:2,15,19 78:20 79:6 80:22 81:22 82:7,11,25 86:5,15,23 87:7,12,19

**Walker's** 77:3, 10,12 87:23

**walkie** 23:22

**wanted** 85:16

**warehouse** 92:8,9,19

**watch** 29:2,5 78:7,10

**ways** 16:10 83:10

**Wednesday** 91:9

Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

week 36:10 86:25

weekly 60:2

weeks 22:14 86:24

west 6:5 22:4 23:25

What'd 39:11

whatsoever 94:1

where'd 19:6

witnesses 34:2 40:16

worded 41:18

words 24:6 27:8 32:13 48:10 55:19

work 17:19 29:8 38:21 63:2,16 77:3 82:17 83:12 85:11,13,23 86:5,15

work-related 60:5

worked 23:17 30:24 31:2,7 41:15,21 49:9 51:21 76:25 78:15 84:16

working 30:1 41:6,11 56:17 64:5

world 52:11

would've 18:10 33:6 60:18 62:21 70:8,14 75:1 80:12 81:2 86:2 89:7

write 62:25 64:12

writing 34:10 45:25 46:19,23, 25 63:15 65:11

wrong 75:25

**Y**

year 18:2 19:4 30:15 36:8,19 37:7 61:8 78:14 79:20 86:10

years 17:1 30:13 36:12 45:18 47:10,14 62:20 63:7 83:20 84:17,25 87:18

yesterday 13:6

**Z**

zoom 6:24 7:3, 8 8:19 76:6



Kentuckiana Reporters
110 North Wacker Drive, Suite 2500
Chicago, IL 60606

KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com